UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE №: 3:21-cr22(S2)-MMH-MCR

UNITED STATES OF AMERICA,

v.

MATTHEW RAYMOND HOOVER,

_____/

**MOTION TO TRANSFER VENUE**

Pursuant to Federal Rule of Criminal Procedure 21, Defendant Matthew Raymond Hoover ("Defendant") respectfully moves this Court to transfer venue to the United States District Court for the Eastern District of Wisconsin, Green Bay Division. This Motion is based on this Motion; Declaration of Zachary Z. Zermay, Request for Judicial Notice, and Exhibits-A – B. Mr. Hoover also requests an evidentiary hearing on the matter so he can subpoena his medical professionals[1] to testify as to his condition. In support of this Motion, Defendant states:

---

[1] After speaking with a lawyer with Aspirus Health, it is Defense counsel's understanding that Dr. Joshua Pogorelec, D.O. and Andrew Padley, N.P. who are the medical professionals treating Mr. Hoover are not providing an affidavit as to Mr. Hoover's health because they do not want to be involved in these proceedings. Accordingly, it is necessary to subpoena their testimony. *See* Dec. of Zachary Z. Zermay.

1

## I. LEGAL STANDARD

A defendant may move a court to "transfer the proceeding, on one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). "Rule 21 of the Federal Rules of Criminal Procedure has been interpreted to permit a severance so that an indictment may be transferred as to one defendant and not as to others. It is true that the transfer can be made only as to those defendants who request the transfer but it may be granted over the opposition of co-defendants." *Yeloushan v. United States*, 339 F.2d 533, 536-37 (5th Cir. 1964).

"A change of venue under Rule 21(b) considers a number of factors, the significance of which will vary depending on the facts of a given case, namely (1) location of the defendant; (2) location of witnesses; (3) location of events likely to be in issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions in each district; and (10) any other specific element which might affect the transfer. Rule 21(b) also requires consideration of the interests of justice." *United States v. Albedhady-Sanchez*, No. 2:12-cr-48-FtM-29SPC, 2012 U.S. Dist. LEXIS 171108, at *2-3 (M.D. Fla. Dec. 3, 2012) (cleaned up) (citing *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44, 84 S. Ct. 769, 11 L. Ed. 2d 674 (1964); *United States v.*

*Walker*, 665 F.3d 212, 224 (1st Cir. 2011)). These "factors are neither exhaustive nor exclusive[.]" *United States v. Burke*, 607 F. Supp. 2d 1314, 1323 (M.D. Fla. 2009) (Judge Merryday's Order granting alleged members of the Gambino Organized Crime Family's Rule 26(b) motion to transfer venue from the Middle District of Florida to the Eastern District of New York where the alleged conspiracy included citizens of Florida and other states for their convenience).

"[T]he mere fact of proper venue in the district where the Government brings the prosecution does not require that trial be held therein." *United States vs. Roseman*, et al. No. 19-20178-CR-ALTONAGA (S.D. Fla. Dec. 11, 2020) (citing *United States v. Haley*, 504 F. Supp. 1124, 1125 (E.D. Pa. 1981) (transferring conspiracy prosecution to Northern District of Georgia); *United States v. Fritts*, No. CR05-00216, 2005 WL 3299834, at *2 (N.D. Cal. Dec. 6, 2005) ("[T]here is no presumption in criminal cases in favor of the government's choice of forum.")). "No one of these considerations is dispositive, and [i]t remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (citation and internal quotation omitted) (emphasis added). The relative importance of each of these factors varies according to the circumstances of the case. *See United States v. Radley*, 558 F. Supp. 2d 865, 877 (N.D. Ill. 2008); *United States v. Valdes*, No. 05-CR-156 (KMK), 2006 WL

3

738403, at *3 (S.D.N.Y. Mar. 21, 2006) (same); *United States v. White*, No. 04-CR-219-01-SM, 2005 WL 2093029, at *1 (D.N.H. Aug 26, 2005) (same). A defendant is not required to establish "truly compelling circumstances" for a change of venue. *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995) (stating "[i]t is enough if, all relevant things considered, the case would be better off transferred to another district."). A court also does not need to find a "substantial balance of inconvenience to transfer." *United States v. Holland*, No. 17-CR-20054-Martinez/Goodman, 2017 WL 1433265, at *7-8 (S.D. Fla. Apr. 24, 2017) (finding that the "'substantial balance of inconvenience' standard is not found in any binding authority"). Instead, "the standard [for a transfer] is a flexible one." *Id*.

"There is no constitutional requirement that all parties defendant in a multiple indictment be tried in the same district. Rule 21 of the Federal Rules of Criminal Procedure has been interpreted to permit a severance so that an indictment may be transferred as to one defendant and not as to others. It is true that the transfer can be made only as to those defendants who request the transfer but it may be granted over the opposition of co-defendants." *Yeloushan v. United States*, 339 F.2d 533, 536-37 (5th Cir. 1964) (citing *United States v. Erie Basin Metal Products Company, Inc.*, et al., D.C., 79 F.Supp. 880).

Indeed, a conspirator's liability does not depend on a coconspirator having been tried or even identified, as long as the Government produces

evidence from which the conspiracy might be inferred. *United States v. Meléndez-González*, 892 F.3d 9, 17-18 (1st Cir. 2018); *United States v. Camara*, 908 F.3d 41, 46-7 (4th Cir. 2018); *United States v. Mitchell*, 792 F.3d 581, 582-83 (5th Cir. 2015); *United States v. Mann*, 701 F.3d 274, 296 (8th Cir. 2012); United States v. Price, 258 F.3d 539, 545 (6th Cir. 2001); *United States v. Contreras*, 249 F.3d 595, 598 (7th Cir. 2001). Accordingly, case law makes it clear that there is no need for two alleged conspirators to be tried together.

## II. FACTS

On January 26, 2022, Defendant, who is a citizen of the Village of Coloma in the State of Wisconsin, was charged with one count of a violation of 18 U.S.C. 371 for making YouTube videos[2] and—without any facts pled to sufficiently buttress the allegations—with six counts of violating 26 U.S.C. §§ 5861(e) & 18 U.S.C. § 2. *See* ECF. 57 at ¶¶ 2; 5 – 7 (The Government alleges in a conclusory manner that Defendant violated 26 U.S.C. §§ 5861(e) & 18 U.S.C. § 2 in Counts 2 – 7, and yet, it fails to state any facts to buttress its legal conclusions—or separate its allegations into factual statements organized by paragraphs).

The charge alleging a violation of 18 U.S.C. 371 alleges an array of non-substantive overt acts—mostly consisting of "video[s] created by HOOVER []

---

2 For reasons more thoroughly stated in Defendant's Motion to Dismiss, Defendant submits that the Government failed to plead sufficient facts—which even taken in the light most favorable to the Government—would lead to the conclusion that Defendant violated 18 U.S.C. 371.

posted to the YouTube channel CRS Firearms. In the video[s], . . . HOOVER described autokeycards.com as the sponsor of his video and promoted sales of Auto Key Cards." The Government has failed to allege any of Mr. Hoover's actions that would constitute a substantive violation of federal law.[3]

The Indictment thoroughly describes Mr. Ervin's location by stating that his "overt acts, among others, [happened] in the Middle District of Florida and elsewhere[.]" ECF 57 at ¶¶ 5, 7(a), (d) – (e), (n) – (p), (w). The only mention of Mr. Hoover's location in the entire Indictment was the Government admission that he is a resident of Coloma, Wisconsin. ECF 57 at ¶ 2.

Mr. Hoover is a lifelong resident of Coloma, Wisconsin. His family, including his wife, children, and extended family also live in the Wisconsin. Mr. Hoover has no family, friends, supporters, or means to support himself in Jacksonville, Florida. Mr. Hoover suffers from anxiety that prevents him from flying from Wisconsin to Florida. It is Defense Counsel's understanding[4] that Mr. Hoover is either being treated for his extremely high risk for cancer, or has cancer, and is receiving treatment in Wisconsin. Unfortunately, the medical

---

[3] The Indictment does not charge a substantive violation of 18 U.S.C. 371 by HOOVER. The only substantive crimes charged in the Indictment are 26 U.S.C. §§ 5861(e) & 18 U.S.C. § 2 in Counts 2 – 7.

[4] Neither of Mr. Hoover's attorneys are medical professionals. Mr. Hoover respectfully submits that an evidentiary hearing to subpoena the medical professionals sworn testimony regarding his treatment and health.

professionals treating Mr. Hoover are not cooperating, and it is reasonably necessary to subpoena their sworn testimony.

Further, the costs attendant to a lengthy trial in Jacksonville will impede his ability to prepare an effective defense.

### III. ARGUMENT: CONSISTENT WITH SIMILAR CASES IN THE MIDDLE DISTRICT OF FLORIDA APPLYING THE *PLATT* FACTORS, THIS CASE AGAINST MR. HOOVER SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF WISCONSIN

In *Platt v. Minnesota Mining & Manufacturing*, 376 U.S. 240 (1964), the United States Supreme Court wrote that "[t]he determination of proper venue in a criminal case requires determination of where the crime was committed. The provision for trial in the vicinity of the crime is a safeguard against the <u>unfairness and hardship</u> involved when an accused is prosecuted in a remote place." (Emphasis in original.) Rule 21(b) of the Federal Rules of Criminal Procedure was enacted by Congress after *Platt* to deal with multi-venue cases. Rule 21(b) permits a court to transfer a case to another district "for the convenience of the parties and witnesses and in the interests of justice."[5]

The *Platt* factors are as follows: "(1) location of the defendant; (2) location of witnesses; (3) location of events likely to be in issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the

---

5 Mr. Hoover does not argue that the Middle District of Florida is an improper venue here.

7

parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions in each district; and (10) any other specific element which might affect the transfer. Rule 21(b) also requires consideration of the interests of justice." *United States v. Albedhady-Sanchez*, No. 2:12-cr-48-FtM-29SPC, 2012 U.S. Dist. LEXIS 171108, at *2-3 (M.D. Fla. Dec. 3, 2012) (cleaned up, citing *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44, 84 S. Ct. 769, 11 L. Ed. 2d 674 (1964); *United States v. Walker*, 665 F.3d 212, 224 (1st Cir. 2011)).

In the instant case, the *Platt* and other relevant factors weigh heavily in favor of transferring this action to the Eastern District of Wisconsin, which is the location where Mr. Hoover is a resident.

First: location of the defendant: Mr. Hoover is a life-long resident Coloma, Wisconsin, and the closest federal courthouse to his residence is in Green Bay, Wisconsin. Venue in Green Bay would clearly be more convenient for Mr. Hoover, and travel would be difficult for reasons atypical of most defendants, because Mr. Hoover has faced and is facing significant health issues, treatment related to those issues, and has a fear of flying. *See* Dec. of Zachary Z. Zermay at ¶¶ 2 – 7.

The first factor clearly tends in favor of transfer. He lives over 1,250 miles from Jacksonville – as does all of his family, friends, and supporters. *See United States v. Ferguson*, 432 F.Supp. 2 559, 562 – 564 (E.D. Va. 2006) (case transferred to defendant's home district in interests of justice) (*citing United*

8

*States v. Lenihan,* 19 F.3d 1430, 1994 WL 102149 at *4 (4th Cir. Mar. 29, 1994); *see also, United States v. Russell,* 582 F. Supp. 660, 662 (S.D.N.Y. 1984) (stating that "wherever possible, defendants should be tried where they reside"); *United States v. Radley,* 558 F.Supp.2d 865, 877 (N.D. Ill. 2008) (ordering a change of venue on the basis that home district is more convenient for defendants and their families); *United States v. Muratoski*, 413 F. Supp.2d 8, 11 (D.N.H. 2005) (finding it a physical, emotional, and economic hardship a criminal defendant to be tried by the Government far from home).

As demonstrated by the Indictment, the Government alleges that Mr. Hoover made 12 YouTube videos and one phone in the Eastern District of Wisconsin.[6] The Government has not alleged that Mr. Hoover ever went to Florida—let alone engage in an overt act in furtherance of the alleged conspiracy, within the Middle District of Florida. *See Ferguson,* 432 F. Supp.2d at 565-566 (case transferred where only 7 of 78 overt acts occurred in venue of indictment; *see also Radley*, 558 F.Supp.2d at 879-880 (finding that where acts occurred in both district, facts that acts most likely to be at issue occurred in transferee district weighed in favor of transfer).

Second *Platt* factor: location of the witnesses. The Government has represented that there are potentially thousands of witnesses in this case that

---

6 Given that the acts to be introduced at trial occurred in Wisconsin – the overwhelming majority of the documents involved are there as well.

9

either purchased the Auto Key Cards or watched Mr. Hoover's YouTube channel—and that does not include the federal agents that investigated this matter. It is unlikely that the Government is going to call every potential witness that either bought an Auto Key Cards or watched Mr. Hoover on YouTube—and it is likely that many of the alleged witnesses to Mr. Hoover's actions are citizens of the Eastern District of Wisconsin or reside in federal districts surrounding it. It appears that most of the Government's witnesses will be required to travel by aircraft to Jacksonville anyway. Mr. Hoover respectfully submits that it will be no less convenient for these witnesses to travel by plane to Green Bay, Wisconsin. On the other hand, if Mr. Hoover were to offer witnesses in support of his defense concerning his case-in-chief, any such witness would reside in Wisconsin. It is respectfully submitted that this factor strongly favors transfer.

Third *Platt* factor: location of events likely to be in issue. The site of Mr. Hoover's alleged acts—and indeed all of his acts in the time period—were in Coloma, Wisconsin. It appears the only reason that Mr. Hoover was indicted in this matter in the Jacksonville Division of the Middle District of Florida is because Mr. Ervin was indicted first. "[T]here is no presumption in criminal cases in favor of the government's choice of forum," and the Government's arbitrary decision to indict Mr. Hoover in Jacksonville carries little weight in light of the *Platt* factors. *See United States v. Fritts*, No. CR05-00216, 2005 WL

3299834, at *2 (N.D. Cal. Dec. 6, 2005). Mr. Hoover respectfully submits that this factor strongly favors transfer.

Fourth *Platt* factor: location of records and documents. Given that most of the documents and records likely to be involved at trial are in electronic format, the parties can transport documents with little difficulty. *See Weaver*, 2013 WL 12438331, at *10 (finding this factor neutral because "[i]n today's age of electronically stored information, documents can be transported easily"). As a result, this *Platt* factor is neutral.

Fifth *Platt* factor: Disruption of business. Mr. Hoover currently maintains an automotive YouTube channel to generate income. All his recording equipment and editing hardware is located in his residence in Coloma, Wisconsin. Mr. Hoover often records videos on nights and weekends. During his trial, Mr. Hoover would have the opportunity to record his videos on nights and weekends and generate a meaningful income. If Mr. Hoover is unable to work during trial, it will severely impact his business and family's financial stability. As a result, there could be a future disruption to the business unless Mr. Hoover is able to continue to work leading up to and during his trial. Put differently, "[t]rial in [Wisconsin] would enable the defendant to maintain his employment while standing trial . . . . [and] a potential reduction in the disruption of employment '"is an additional factor in favor of a transfer."'

11

*United States v. Hanley*, No. 94 Crim. 394 (DAB), 1995 WL 60019, at *3 (S.D.N.Y. Feb. 10, 1995). Thus, this factor favors transfer.

Sixth *Platt* factor: Expense to the Parties. This factor supports a transfer to the Eastern District of Wisconsin. *See Platt*, 376 U.S. at 243-44; *United States v. Benjamin*, 623 F. Supp. 1204, 1214 (D.D.C. 1985) (granting transfer under Rule 21(b) and noting that "[t]ravel and lodging expenses are an obvious factor to be considered"). For Mr. Hoover, it will be much more expensive to have a four (4) week trial in the Middle District of Florida. Given that the vast majority of potential defense witnesses reside in the Eastern District of Wisconsin, Mr. Hoover is faced with astronomical expenses to call witnesses in his defense, including: airfare across the country; lodging close to the courthouse; and daily meals and incidental costs. Mr. Hoover will be required, at a minimum, to pay for three (3) days of per diem expenses for each witness because it will take each witness one (1) day to travel from Wisconsin to Florida, one (1) day to testify, and one (1) full day to travel back to Wisconsin. *See Platt,* 376 U.S. at 243-44.

To make matters more costly, defense witnesses may be forced to stay in Florida for multiple days while waiting to be called to the witness stand. The expense of paying for visitors for such a lengthy period in Jacksonville is obvious to those who live there as residents year-round. These expenses will present a financial hardship to Mr. Hoover, who, as previously explained, is

treating for cancer and has been unable to avail himself of his primary source of income—that being his firearms YouTube channel and federal firearms license—because of the nature of these proceedings. If the Defendants' trial is conducted in Wisconsin, only government personnel—for which well-suited alternatives surely exist in Wisconsin—and any witnesses residing outside of Wisconsin might have to travel there. As for the non-Wisconsin witnesses, many of them will face air travel regardless of the location of the trial. "While a trial in [Wisconsin] might cause greater expense to the Government then it would to [Mr. Hoover], the Government is clearly in a better position to bear that expense." *Ohran*, 2000 WL 620217, at * 4. Like in *Ohran*, this factor tends towards transfer.

Seventh *Platt* factor: Counsels' Location. Mr. Hoover's counsel are in Lee County and Palm Beach County, Florida—which are several hour drives from the United States District Courthouse in Jacksonville. While Mr. Hoover may incur expense for his counsel to stay in Wisconsin,  he could explore the possibility of working with local counsel for trial. Indeed, Mr. Hoover would not even be required to retain local counsel because, pursuant to the Eastern District of Wisconsin's Local Rule 83, counsel qualify for admission to that court's bar. Moreover, the expense to Mr. Hoover to pay for his Florida-based counsel to stay in Green Bay during a trial—as opposed to Jacksonville—would not be significantly higher and certainly would be much less than the costs to

13

transport numerous possible defense witnesses from Wisconsin to Florida. On balance, for Mr. Hoover, the location of counsel factor favors a transfer to the Eastern District of Wisconsin.

The United States can prosecute this case from any location. "The United States enjoys office, staff, and resources at every federal venue and typically not disadvantaged in the Rule 21(b) sense by a transfer." *Burke*, 607 F.Supp.2d at 1324. While the United States Attorney's Office for the Middle District of Florida may argue that it faces inconvenience by a transfer to Wisconsin, "an inconvenience to the Government is given little weight when other considerations of convenience suggest a transfer." *Id.* (citations and internal quotations omitted). This is because the "'interests of justice' under Rule 21(b) are governed by the history of and the participants in the charged crime and not by an arcane staffing decision by the United States." *Id.*

Eighth *Platt* factor: Accessibility of the place of trial. The United States District Court for the Eastern District of Wisconsin, Green Bay Division is much more accessible to Defendant than the United States District Court for the Middle District of Florida, Jacksonville Division. This is particularly due to his fear of flying. Furthermore, the federal courthouse in Green Bay equally accessible to Defendant's counsel, witnesses, and the Government as courthouse in Jacksonville is. This because both cities have major

14

international airports. Defendant respectfully submits that this factor tends to favor a transfer of venue.

Ninth *Platt* factor: Docket conditions. As to docket conditions, in *United States v. Motz*, 652 F.Supp.2d 284, 292 (E.D.N.Y. 2009), the Court wrote: "[t]his factor carries no weight in the Court's analysis because it is difficult to discern, with any degree of precision, whether the respective dockets favor or disfavor a transfer of venue. The Court declines to speculate – simply by looking at docket statistics – about whether the trial would be delayed int the event of transfer[.]" Respectfully, this favor neither favors nor disfavors a transfer.

Tenth *Platt* factor: Any other special circumstances that might affect the transfer. Testimony and evidence offered at an evidentiary hearing on this Motion will show that there are at least two special circumstances that justify transfer. First, on October 26, 2021, Mr. Hoover was treated by Dr. Joshua Pogorelec, who has an office in Portage, Wisconsin, for one 5 mm polyp and one 40 mm polyp in his colon. *See* Dec. of Zachary Z. Zermay at ¶¶ 2 – 3. On January 14, 2022, Aspirus Health generated another medical record which stated: "high risk colon cancer surveillance" in it and the document reflected that Mr. Hoover had had another 7 mm polyp removed from his colon that same day. *See id.* at ¶ 3. Further, on November 16, 2021, the medical professionals at Aspirus Health found that "[t]here are multiple bilateral noncalcified lung nodules with the largest, in the right lower lobe, measuring

15

less than 3 mm in diameter." Moreover, that same medical record from November 16, 2021 states: "CLINICAL INDICATION: Colon polyp, cancerous." *See id.* at ¶ 4. Second, Mr. Hoover was seen by Andrew Padley, nurse practitioner of Aspirus Health for his fear of flying and anxiety. Mr. Padley's offices are located in Oxford, Wisconsin and Pardeeville, Wisconsin. Medical records indicate that there are medications that Mr. Hoover could take before flying, but "this would do very little to help his anxiety and nightmares several days before he would fly." *See id.* at ¶ 6. Respectfully, this final factor favors a transfer.

**WHEREFORE** Defendant respectfully moves this Court to transfer all counts against Mr. Hoover to the Eastern District of Wisconsin, Green Bay Division, and for any further relief that this Court deems just and proper.

DATED: June 21, 2022

_____
Zachary Z. Zermay, Esq.
1762 Windward Way
Sanibel, FL 33957
Email: zach@zermaylaw.com
Telephone: 239-699-3107
*Lead Counsel for Defendant*

/s/Matthew Larosiere
Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Defendant*

16

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 21, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Zachary Z. Zermay*
Zachary Z. Zermay, Esq.