UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:21-cr-22(S2)-MMH-MCR

MATTHEW RAYMOND HOOVER

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby submits its response in opposition to defendant's Motion to Dismiss (Doc. 95) and Supplement to Motion to Dismiss & To Declare Unconstitutional the National Firearms Act of 1934 (Doc. 101) (collectively referred to as the "Motion to Dismiss"). Defendant's Motion to Dismiss largely rehashes arguments that his co-defendant has already advanced and that this Court has already roundly rejected. *See* Docs. 30, 42, 45, 49 (transcript of motion hearing). The Court should again reject these arguments and deny defendant's motion.

Defendant advances the following arguments:

1. That the indictment against him is insufficiently pleaded (Motion to Dismiss at 1-4, 8-10, 13-14).

2. That the Auto Key Cards that he is charged with conspiring and aiding and abetting to transfer are not sufficiently alleged to meet the definition of a machinegun as set forth in Title 26, United States Code, Section 5845(b) (*id.* at 3-4, 10-13).

3. That the National Firearms Act ("NFA") is unconstitutionally vague (*id.* at 4-6, 14-20).

4. That the indictment violates his right to free speech (*id.* at 6-7, 20-22).

5. That the indictment is an overstep of the government's authority to tax and spend (*id.* at 7-8, 22-23, supplement at 3).

6. That the Bureau of Alcohol, Tobacco, Firearms, and Explosives rendered Auto Key Cards machineguns "by administrative fiat" outside of the bounds of its authority and the NFA is therefore unconstitutional under the Second Amendment in light of the Supreme Court's recent ruling in *New York State Rifle & Pistol Ass'n v. Bruen*, No. 20-843, 2022 WL 2251305 (2022) (supplement generally).

Because most of these arguments were already addressed in the United States' response to defendant Ervin's motion to dismiss and ruled on by this Court, the United States incorporates its previous response (Doc. 35) and this Court's previous rulings by reference.

## MEMORANDUM OF LAW

**I.    Defendant Ignores Controlling Precedent, Including This Court's Previous Rulings in This Case, Which Foreclose Most of His Arguments**

Defendant entirely ignores this Court's previous rulings on his co-defendant's motion to dismiss in this very case. Although the motion to dismiss that was filed by defendant Ervin (Doc. 30) was directed at the first Superseding Indictment (Doc. 25), defendant Hoover does not even attempt to provide a justification for why this

2

Court should now rule differently than it did when it rejected Ervin's motion to dismiss in July 2021. The present operative indictment (that is, the Second Superseding Indictment, Doc. 57) is largely the same as the previous iteration, with the major changes being the addition of defendant Hoover, the addition of the Title 18, United States Code, Section 371 conspiracy count (Count One of the Second Superseding Indictment), and the switch of some substantive counts from being charged under Title 26, United States Code, Section 5861(j) (Count Eight of the first Superseding Indictment), to being charged under Section 5861(e) (Counts Two through Seven of the Second Superseding Indictment). Defendant does not contend that any of these changes should alter the Court's previous rulings (although he does take the first crack at arguing that the Section 371 conspiracy count is insufficient).

There is nothing about the content of the Second Superseding Indictment that would shift this Court's previous rulings, which largely foreclose the arguments advanced by defendant. In summary, the Court previously ruled as follows:

1. That the indictment *was* sufficiently pleaded under controlling Eleventh Circuit precedent (with the exception of the structuring counts to the extent they did not allege which other law of the United States was violated in connection with the structuring – an insufficiency resolved with a Bill of Particulars (Doc. 46), and which is irrelevant here as that allegation was removed from the Second Superseding Indictment). *See* Tr. of July 8, 2021, Mot. Hr'g at 9 ("[T]here's no question that the indictment is sufficient in terms of satisfying the requirements that the

3

Eleventh Circuit articulated, and that is it presents – as to each of the charges, it presents the essential elements of the charged offense; it notifies Mr. Ervin of the charges to be defendant against; and particularly in light of the specificity in this indictment, there's no question that it would enable him to rely upon a judgment under the indictment as a bar against double jeopardy."). Although the counts in which defendant is charged (Counts One through Seven of the Second Superseding Indictment) are somewhat different than those previously analyzed by this Court, defendant has not advanced any argument that would be just cause for this Court to rule differently on his motion.

2. That the question of whether an Auto Key Card meets the definition of a machinegun "is a question only the jury can decide," *id.* at 12, and that controlling Eleventh Circuit precedent foreclosed any "pretrial determination of the sufficiency of the evidence," *id.* (citing *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004), *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)).

3. That the NFA is *not* unconstitutionally vague. Tr. of July 8, 2021, Mot. Hr'g at 15 (noting that the Fifth Circuit had rejected a Fifth Amendment vagueness challenge to the NFA in pre-1981 case law in *United States v. Campbell*, 427 F.2d 892 (5th Cir. 1970), and therefore the vagueness argument was "simply . . . not a meritorious argument.").

4

    4.       That defendant's argument that the prosecution violates the defendant's right to free speech under the First Amendment "asks the Court to rule on facts that aren't in the indictment," in contravention of controlling Eleventh Circuit precedent. *Id.*

    5.       That the argument that the NFA exceeds Congress's authority to tax and spend was "foreclosed by Eleventh Circuit precedent . . . most recently in *United States v. Bolatete*," 977 F.3d 1022, 1032 (11th Cir. 2020). *Id.* at 16 (also citing *United States v. Ross*, 458 F.2d 1144 (5th Cir. 1972); *United States v. Spoerke*, 568 F.3d 1236, 1245 (11th Cir. 2009)).

Thus, the only arguments defendant advances that have not already been considered – and rejected – by this Court in this case are his first (arguably) and sixth arguments – which this Court should also reject. The United States will address each of these arguments in turn, and as to defendant's other arguments, relies upon its memorandum in response to defendant Ervin's motion to dismiss (Doc. 35) and this Court's previous rulings on that motion at the July 8, 2021, Motion Hearing.

       As with defendant Ervin's motion, defendant Hoover's Motion to Dismiss is at best devoid of pertinent legal authority for his arguments or, worse, ignores well-established and controlling contrary authority. In many instances, defendant grounds his arguments in misconstructions of the applicable legal definitions in this case. Moreover, defendant's Motion to Dismiss depends on determination of facts that must be found by a fact finder at trial, and therefore it would be error for this

Court to grant the motion. There is no basis to dismiss the Second Superseding Indictment.

## II. The Indictment States Offenses Under Federal Law and Dismissal is Not Warranted

As noted above, this Court already ruled that the first Superseding Indictment was sufficiently pleaded, and that it has no authority under Eleventh Circuit precedent to delve into factual disputes in deciding a motion to dismiss. Defendant makes no effort to justify why his motion should be treated any differently.

When ruling on a motion to dismiss an indictment for failure to state an offense, "a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). The court must view that language "in the light most favorable to the government." *Id.* at 1258. "The propriety of granting a motion to dismiss an indictment under [Fed. R. Crim. P.] Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974). Because the sufficiency of an indictment is determined on its face, it is reversible error for a Court to look beyond the face of the indictment in ruling on a motion to dismiss for failure to state an offense. *See generally Sharpe*, 438 F.3d 1257 (reversing dismissal of indictment where "the allegations in the indictment were sufficient to state the charged offenses as a matter of law . . . because the counts contained all of the elements of the offense charged and informed the defendants of

6

the charges they faced"); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (reversing the dismissal of an indictment and explaining "[t]here is no summary judgment procedure in criminal cases" and "[n]or do the rules provide for a pre-trial determination of sufficiency of the evidence.").

Under Fed. R. Crim. P. 7(c), "[t]he indictment [] must be a 'plain, concise, and definite written statement of the essential facts constituting the offense charged . . . .'" "The indictment is sufficient if "[i]t (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007) (quoting *United States v. Woodruff*, 296 F.4d 1041, 1046 (11th Cir. 2002)).

Defendant moves to dismiss the counts in which he is charged – that is, Counts One through Seven of the Second Superseding Indictment – because, he contends, the United States was required to allege a "plus factor" to demonstrate that the device at issue was designed and intended solely and exclusively for converting a weapon into a machinegun. Motion to Dismiss at 3. First, defendant relies on interpretation of a different statutory definition – the definition of destructive device found at Title 26, United States Code, Section 5845(f) – for his contention that a "plus factor" is required here, in a prosecution concerning machineguns as defined in a separate and differently worded subsection of the statute (Section 5845(b)). *Id.* Defendant cites no authority for this contention.

7

Second, and perhaps more fundamentally, defendant cherry picks the portions of the definition of machinegun that suit his argument and ignores the inconvenient parts that do not. The definition of machinegun in Section 5845(b) brings within its ambit not only "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun" but also any "combination of parts designed and intended[] for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). In other words, the "solely and exclusively" language only applies to individual parts that function on their own as machinegun conversion devices. Thus, the "solely and exclusively" language on which he relies for his argument that a "plus factor" must be alleged would only be applicable to single parts, which the Second Superseding Indictment does not allege Auto Key Cards to be.

In any event, Count One of the Second Superseding Indictment alleges that the Auto Key Cards that are the subject of this case "constituted machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b)," (Doc. 57 at 2), and Counts Two through Seven each allege that defendant aided and abetted the transfer of "machinegun conversion devices constituting machineguns, as defined in 26 U.S.C. § 5845(a) and 5845(b)" which is sufficient under this Court's previous ruling and Eleventh Circuit precedent to allege that the devices at issue meet the definition of a machinegun in the statute. Moreover, a grand jury, having been advised of the elements of the charged offenses and the facts of this case, has found probable cause to believe that the items at issue in this case meet the definition of a machinegun in

Title 26, United States Code, Section 5845(a) and (b), and found the Second Superseding Indictment to be a true bill.

Defendant also complains generically that the Second Superseding Indictment is insufficient in that it does not "plead sufficient facts to allege that each conspirator . . . 'specifically intended that some conspirator commit each element of the substantive offense.'" Motion to Dismiss at 8 (quoting *Ocasio v. United States*, 589 U.S. 282, 287 (2016)). Defendant's contentions about how the conspiracy charge is insufficient are unclear, but again appear to revolve around his misconception that Section 5845(b) requires the pleading of a "plus factor" to demonstrate that the items at issue were "designed and intended solely and exclusively" for converting weapons into machineguns. *Id.* at 9. In any event, the Manner and Means portion of the Count One conspiracy charge lay out in detail the roles that each defendant played in the conspiracy, and the charge alleges that the object of the conspiracy was to transfer unregistered machinegun conversion devices in violation of federal law. *See* Doc. 57 at 2-4. Twenty-five separate overt acts are alleged to have been undertaken by the conspirators. *Id.* at 4-10. The conspiracy charge plainly is sufficient under Eleventh Circuit precedent.

Similarly, Counts Two through Seven each allege the unlawful transfer of unregistered machinegun conversion devices. *Id.* at 10-13. The language and degree of detail in these counts is substantially the same as in Count Eight of the first Superseding Indictment, which this Court already has ruled was sufficient under Eleventh Circuit precedent. *See* Tr. of July 8, 2021, Mot. Hr'g at 9.

III. **The ATF Did Not Render Auto Key Cards Machinegun Conversion Devices by Administrative Fiat, There Is No Basis To Declare the NFA Unconstitutional, and In Any Event, Defendant's Argument Invites the Court to Delve Into Disputed Issues of Fact For the Jury**

As part of his supplemental briefing regarding the Supreme Court's recent decision in *Bruen*, defendant advanced an argument that "the ATF's decision that the [Auto Key Card] at issue – a stainless steel card with some lines lightly thereupon engraved – was a machinegun came completely by administrative fiat, absent even notice and comment." Supplement at 5. According to defendant's logic, this Court should therefore declare the NFA facially unconstitutional under the Second Amendment as an unlawful extension of discretion to the ATF. *Id.*

The foundation on which defendant's *Bruen* argument is constructed misconstrues ATF's role in determining whether an item meets the statutory definition of a machinegun in Section 5845(b), and the rest of defendant's logic crumbles along with it. Moreover, the state of the law is that the Supreme Court has reviewed the NFA and determined that it is not unconstitutional under the Second Amendment, and this Court is bound by that precedent. *See United States v. Miller*, 307 U.S. 174 (1939) (holding that the NFA did not offend the Second Amendment). *Bruen* did not overrule this precedent, nor did *Bruen* even mention the NFA (or machineguns), much less provide any guidance that would compel a determination

that it *intended* to declare the NFA unconstitutional or machineguns to be outside of the government's authority to regulate firearms.[1]

The machinegun conversion devices at issue in this case are alleged to meet the definition set forth in Section 5845(b), which of course was promulgated by Congress, not "an unelected bureaucrat" as alleged by defendant. *See generally* Doc. 57 (alleging devices to meet the definition in Section 5845(b)). While the United States intends to present evidence at trial in the form of testimony from an ATF expert regarding his opinion as to the classification of Auto Key Cards as machineguns under Section 5845(b) (*see* Doc. 55), as this Court previously ruled, "the question of whether this keycard [meets the definition of a machinegun] is a question that only the jury can decide." Tr. of July 8, 2021, Mot. Hr'g at 12. As with defendant's other requests for this Court to step into the shoes of the jury and decide factual issues, the Court should likewise reject this invitation. The Supreme Court's *Bruen* decision bears no impact on this case because the ultimate determination of whether Auto Key Cards meet the statutory definition of a machinegun will be decided by a jury and is not a discretionary decision of a government agency.

---

[1] The *Bruen* court held that the Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home," *Bruen*, 2022 WL 2251305, at *5, and that New York's public carry licensing regime was unconstitutional to the extent that it required individuals wishing to exercise that right to demonstrate to government licensing officials a valid justification for doing so.

11

Moreover, the NFA's restrictions on machineguns are well in line with what the Supreme Court's decision in *Heller* recognized (and Justice Kavanaugh's concurrence in *Bruen* echoed) to be the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). For example, under English common law, "the offence of riding or going armed, with dangerous or unusual weapons, [was] a crime." 4 William Blackstone Commentaries *148. In the United States, too, courts have long acknowledged that a man commits "an offence at common law" when he "arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." *State v. Langford*, 3 Hawks 381, 383 (NC 1824). Accordingly, the Second Amendment encompasses only arms "of the kind in common use." *Heller*, 554 U.S. at 624 (quoting *Miller*, 307 U.S. at 179). The Supreme Court has explained that the common-use limitation is consistent with the Second Amendment's prefatory clause: "The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense." *Heller*, 554 U.S. at 624. Thus, the common-use limitation – which supports the NFA restrictions at issue here – "is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627; *see also United States v. Tagg*, 572 F.3d 1320, 1326 (11th Cir. 2009) (rejecting defendant's Second Amendment-based challenge to the constitutionality of the NFA and finding that "pipe bombs are not typically possessed by law-abiding citizens for lawful purposes" and therefore fell within "the historical tradition of prohibiting the

carrying of dangerous and unusual weapons." (quoting *Heller*, 554 U.S. at 627)); *United States v. Fincher*, 538 F.3d 868, 870, 873-74 (8th Cir. 2008) (after *Heller*, defendant's possession of a machinegun was not protected by the Second Amendment because machineguns were "not in common use by law-abiding citizens for lawful purposes and therefore [fell] within the category of dangerous and unusual weapons that the government can prohibit for individual use"), *cert. denied*, 555 U.S. 1174 (2009).

Defendant's as-applied challenge to the constitutionality of the NFA appears to be based solely on his contention that he is being prosecuted based on "an administrative agency's unilateral declaration" and fails for the same reasons articulated above.

## **CONCLUSION**

Defendant has presented this Court with no legal basis to dismiss the Second Superseding Indictment.   Most of defendant's arguments have already been considered – and squarely rejected – by this court.   Defendant's remaining arguments – that the indictment is insufficient and that the NFA is unconstitutional

13

under the Second Amendment – are not meritorious and should likewise be rejected.

The Court should therefore deny defendant's motion.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By:    s/ *Laura Cofer Taylor*
        LAURA COFER TAYLOR
        Assistant United States Attorney
        USA No. 170
        E-mail: Laura.C.Taylor@usdoj.gov

        DAVID B. MESROBIAN
        Assistant United States Attorney
        USA No. 188
        E-mail: David.Mesrobian@usdoj.gov

        300 N. Hogan Street, Suite 700
        Jacksonville, Florida 32202
        Telephone:  (904) 301-6300
        Facsimile:   (904) 301-6310

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Zachary Zermay
>Matthew Larosiere
>*Counsel for defendant Matthew Raymond Hoover*
>
>Alex King
>*Counsel for defendant Kristopher Justinboyer Ervin*

>*s/ Laura Cofer Taylor*
>LAURA COFER TAYLOR
>Assistant United States Attorney