## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

Case No. 3:21-cr-22(S3)-MMH-MCR

v.

MATTHEW RAYMOND HOOVER

_____

### O R D E R

**THIS CAUSE** is before the Court on two motions filed by Defendant Matthew Raymond Hoover: the Motion to Transfer Venue (Doc. 96; Motion to Transfer)[1] and the Motion to Sever Trial (Doc. 97; Motion to Sever), both of which were filed on June 21, 2022 (collectively, the "Motions").[2]  In support of the Motion to Transfer, Hoover attaches a declaration from his lawyer, Zachary Z. Zermay (Doc. 96-2; Zermay Decl.).   The Government filed responses to Hoover's Motions on July 20, 2022.  See United States' Response in Opposition

---

[1]     Attached to the Motion to Transfer, citing Rule 201 of the Federal Rules of Evidence, Hoover includes a request that the Court take judicial notice of two opinions from other district judges sitting in the Middle District of Florida in unrelated criminal cases.  See Request for Judicial Notice in Support of Defendant's Motion to Transfer Venue (Doc. 96-1).  There is no need to ask the Court to take judicial notice of legal authority, the Court is authorized to and will consider any legal authority asserted by the parties in their briefing.  See Nat'l Min. Ass'n v. Sec'y, U.S. Dep't of Labor, 812 F. 3d 843, 875 n. 33 (11th Cir. 2016) (courts "can and [do] take account of all relevant authorities in determining the content of the law.").

[2]     Hoover attached requests for oral argument to the Motions and requested an evidentiary hearing on the Motion to Transfer.  See Request for Oral Argument on Motion to Sever (Doc. 97-1); see Request for an Evidentiary Hearing and Oral Argument on Motion to Transfer Venue (Doc. 96-3).  The Government did not address these requests in its filings.  Upon review of the Motions, Responses, and the relevant authority, the Court finds that oral argument on the Motions and an evidentiary hearing on the Motion to Transfer are not necessary or warranted.  Accordingly, the requests are denied.

to Defendant's Motion to Transfer Venue (Doc. 104; Response to Motion to Transfer); <u>see</u> United States' Response in Opposition to Defendant's Motion to Sever Trial (Doc. 105; Response to Motion to Sever).[3]  Accordingly, the Motions are ripe for resolution.

## I.      Relevant Background

The government initiated the instant criminal proceeding on March 3, 2021, by filing a Criminal Complaint (Doc. 1) against Defendant Kristopher Justinboyer Ervin charging that, on or around February 22, 2021, Ervin

> did knowingly possess a firearm as defined under Title 26, United States Code, Section 5845(a) and (b), that is, a machine gun conversion device, that was not then registered to the defendant in the National Firearms Registration and Transfer Record,

in violation of Title 26, United States Code, Sections 5861(d) and 5871.

<u>See</u> Criminal Complaint at 1.  Eight days later, on March 11, 2021, a grand jury returned a one-count indictment charging Ervin with the same offense.  <u>See</u> Indictment (Doc. 17).  On April 1, 2021, the grand jury returned a superseding indictment charging Ervin with causing a financial institution to fail to file a Currency Transaction Report (CTR) in violation of 31 U.S.C. § 5324(a)(1) (Count

---

[3]      On August 4, 2022, Hoover also filed motions for leave to file replies to the Government's responses.  <u>See</u> Motion to for [sic] Leave to File Reply to Opposition to Motion to Sever Trial (Doc. 111); <u>see</u> Motion to for [sic] Leave to File Reply to Opposition to Motion to Transfer Venue (Doc. 112).  On August 5, 2022, the Court entered orders denying the motions. <u>See</u> Orders (Doc. 116 &117).

One), structuring a transaction at a federally-insured financial institution while violating another law of the United States in violation of 31 U.S.C. § 5324(a)(3) (Counts Two through Seven), transporting or causing to be transported unregistered firearms in interstate commerce in violation of 26 U.S.C. §§ 5861(j) & 5871 (Count Eight), and possessing unregistered machinegun conversion devices in violation of 26 U.S.C. §§ 5861(d) & 5871 (Counts Nine through Fourteen). See Indictment (Doc. 25; First Superseding Indictment).

Ervin filed a motion to dismiss the First Superseding Indictment, see Motion to Dismiss Superseding Indictment and Memorandum of Law (Doc. 30), which the Court denied on July 8, 2021. See Transcript (Doc. 48). On January 22, 2022, the grand jury returned a Second Superseding Indictment which in addition to charging Ervin, charged Defendant Matthew Raymond Hoover with committing federal crimes.  See Indictment (Doc. 57; Second Superseding Indictment). Specifically, in Count One of the Second Superseding Indictment, Hoover and Ervin were charged with conspiring to transfer unregistered machinegun conversion devices in violation of 18 U.S.C. § 371. Id. at 2.  In Counts Two through Seven, Hoover and Ervin were charged with substantive counts of transferring, and aiding and abetting the transferring, of unregistered machinegun conversion devices via the U.S. mail to various individuals, in violation of 26 U.S.C. §§ 5861(e) & 5871. Id. at 10-13.  The remaining counts of the Second Superseding Indictment pertained only to Ervin and again charged

him with causing a financial institution to fail to file a CTR (Count Eight), structuring a transaction at a federally-insured financial institution while violating another law of the United States (Counts Nine through Fourteen), and possessing unregistered machinegun conversion devices (Counts Fifteen to Seventeen). Id. at 13-16. The Second Superseding Indictment also contained various forfeiture allegations which relate to each count. See id. at 16-19.

Hoover sought severance of the charges against him and a transfer of his case to the Green Bay Division of the Eastern District of Wisconsin. See generally Motions. On August 31, 2022, the grand jury returned a Third Superseding Indictment that modified several of the allegations and included an additional count of transferring, and aiding and abetting the transferring, of unregistered machinegun conversion devices via the U.S. mail as to both defendants. See Indictment (Doc. 120; Third Superseding Indictment). Because these changes do not impact the Court's analysis of whether the charges against Hoover should be severed or his case should be transferred, the Court proceeds to resolve the instant Motions.

## II.   Motion to Sever

### a.   Summary of the Arguments

In the Motion to Sever, Hoover argues that because Ervin, his co-defendant and alleged co-conspirator, is individually charged with illegally structuring financial transactions, evidence of these crimes "will be non-

probative, yet highly prejudicial" to Hoover.  <u>See generally</u> <u>id.</u>  In Hoover's view, "the Government's claim that Mr. Ervin allegedly structured transactions will necessarily taint the jury's perception of Mr. Hoover and his state of mind with respect to the Gun Charges." <u>Id.</u> at 7.  With regard to whether instructions from the Court could alleviate any of the purported confusion, Hoover maintains that "[a]ny limiting instructions advising the jury for which purposes it can consider various pieces of evidence that relate to Messrs. Hoover and Ervin will be lost on the jury when it ultimately retires to deliberate after a multi-week trial." <u>Id.</u> at 9.  He speculates that evidence of Ervin's banking transactions will cause the jury to question "whether Mr. Ervin was allegedly hiding the movement of money because the Auto Key Card is an illegal machinegun and both defendants perceived it as such – which would wildly prejudice Mr. Hoover in his defense given that scienter is an element of the offenses that Mr. Hoover is charged with." <u>Id.</u>  Finally, Hoover contends that severing his charges for trial "will significantly reduce the overall length of the trial, result in substantial cost savings, and preserve judicial resources." <u>Id.</u>

The Government responds first by arguing that Hoover's burden is "exceedingly high," especially in light of the fact that he requests severance from an alleged co-conspirator.  <u>See</u> Response to Motion to Sever at 4-5.  The Government notes that limiting instructions can "generally cure any potential prejudice from a joint trial." <u>Id.</u> at 6.  The Government also contends that the

evidence related to Ervin's structured financial transactions is relevant to the charged conspiracy because Ervin allegedly shared the proceeds involved in the structured transactions with Hoover.  Id. at 6-7.  According to the Government, Hoover's acceptance of cash payments and items of value "through the mail is evidence of his awareness of the illegality of his actions in furtherance of the conspiracy – and his desire to conceal them." Id. at 7.  Even if evidence of Ervin's structuring charges was irrelevant to Hoover, the Government maintains that he has not shown that such evidence would prejudice him, Hoover's arguments are entirely speculative, and Hoover has made no showing that the appropriate instructions would not be sufficient.  See id. at 8-11.  To the extent Hoover asserts that severing the trials would be more efficient, the Government contends his argument "runs counter to both simple logic and binding case law." Id. at 11.

> **b.   Legal Standard**

Pursuant to Rule 8(a), the government may charge a defendant with multiple offenses in the same indictment "if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  The Eleventh Circuit instructs that Rule 8 is to be broadly construed in favor of joinder.  See United States v. Dominguez, 226 F.3d 1235, 1238 (11th Cir. 2000).

Rule 14, in turn, "recognizes that joinder, even when proper under Rule 8(a), may prejudice either a defendant or the Government." Zafiro v. United States, 506 U.S. 534, 538-39 (1993). Rule 14 provides, in relevant part, that "[i]f the joinder of offenses or defendants in an indictment appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). When presented with a motion pursuant to Rule 14, the Court must "balance the defendant's right to a fair trial against the public's interest in efficient and economic administration of justice." United States v. Berkman, 433 F. App'x 859, 862 (11th Cir. 2011). "In conducting this analysis, the district court must grant a motion for severance only where denial would 'result[] in compelling prejudice against which the district court [can] offer[] no protection." United States v. Whitfield, No. 08-60229-CR, 2009 WL 3042394, at *3 (S.D. Fla. Sept. 18, 2009) (quoting United States v. Dowd, 451 F.3d 1244, 1249 (11th Cir. 2006)) (alterations in original). In United States v. Walser, the Eleventh Circuit reaffirmed that "some prejudice" is not sufficient to mandate severance; instead, the defendant carries a heavy burden to go beyond mere conclusory allegations and show that he would receive an unfair trial and suffer compelling prejudice. 3 F.3d 380, 386 (11th Cir. 1993). The court further explained:

> The test for assessing compelling prejudice is whether
> under all the circumstances of a particular case it is
> within the capacity of jurors to follow a court's limiting
> instructions and appraise the independent evidence
> against a defendant solely on that defendant's own acts,
> statements and conduct in relation to the allegations
> contained in the indictment and render a fair and
> impartial verdict.  If so, "though the task be difficult,"
> there is no compelling prejudice.  Moreover, if the
> possible prejudice may be cured by a cautionary
> instruction severance is not required.

Id. at 386-87 (internal citations omitted).

### c.   Analysis

The Court finds that Hoover has failed to demonstrate that he will suffer

prejudice from having his case tried with Ervin let alone, "compelling prejudice

against which the district court [can] offer[] no protection."  Whitfield, No. 08-

60229-CR, 2009 WL 3042394, at *3.  Notably,

> [t]he possibility that evidence against codefendants may 'spill over'
> on the defendant is insufficient to demonstrate compelling
> prejudice.  See, e.g., United States v. Adams, 1 F.3d 1566, 1578
> (11th Cir. 1993) (upholding denial of severance, despite disparity of
> evidence, because no compelling prejudice from joinder where
> evidence against defendant intertwined with criminal actions of
> codefendants, and jury instructed to separate evidence and that it
> could convict some defendants and acquit others).

United States v. Souffrant, 517 F. App'x 803, 812 (11th Cir. 2013).  Moreover, in

conspiracy cases such as this, "the general principle is well-settled that "persons

who are charged together should also be tried together."  Adams, 1 F.3d at 1578

(quoting United States v. Saget, 991 F.2d 702, 707 (11th Cir. 1993)).  Indeed,

the Eleventh Circuit has found that a district court did not abuse its discretion by denying motions for severance where evidence was introduced in a joint trial that some coconspirators, but not others, committed a murder, evidence far more prejudicial than evidence of a potentially illegal monetary transaction. See United States v. Lopez, 649 F.3d 1222, 1238 (11th Cir. 2011).

Hoover and Ervin are charged as co-conspirators and as such the general rule that they also should be tried together applies.  In support of severance, Hoover speculates that evidence of Ervin's financial transactions "will necessarily taint the jury's perception of Mr. Hoover and his state of mind with respect to the Gun Charges."  Motion to Sever at 7.  He further contends,

> [w]ith respect to the Structuring Charges, the jury will likely believe that Mr. Hoover knew (or must have known) about the alleged financial transactions, but did nothing to prevent it. And a jury will simply not be able to keep track of which evidence is being offered with respect to the Gun Charges and Structuring Charges—particularly given the mountain of evidence that will be presented during a complex multi-week trial.

Id. at 8.  This argument amounts to nothing more than "the possibility that evidence against [Ervin] may 'spill over'" on Hoover, see Adams, 1 F.3d at 1578.  However, he has failed to show that any such "spillover" cannot be remedied by limiting instructions to the jury.   This is plainly insufficient to warrant severance.

To the extent Hoover argues that severance here would actually serve the interests of judicial economy, the Court is somewhat baffled.  Motion to Sever at 9-10.  Hoover asserts that,

> [s]evering Mr. Hoover from this joint trial will significantly reduce the overall length of the trial, result in substantial costs savings, and preserve judicial resources. One less defendant in a joint trial where the Government's case-in-chief will last several weeks will mean one less attorney objecting to evidence and conducting cross-examination of various witnesses, which otherwise would consume time. Moreover, Mr. Hoover intends to put on a significant defense case-in-chief. Accordingly, severing Mr. Hoover from this joint trial, and trying him in a separate trial will be more efficient.

<u>Id.</u>  This argument inexplicably focuses solely on the impact severing his trial will have on the trial of the charges that would remain against Ervin.  That is not the relevant inquiry.  It is well-settled that

> [j]oint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources. <u>Zafiro v. United States</u>, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993); <u>Puiatti v. McNeil</u>, 626 F.3d 1283, 1309 (11th Cir.2010); <u>United States v. Day</u>, 405 F.3d 1293, 1297 (11th Cir.2005); <u>see also</u> <u>Richardson v. Marsh</u>, 481 U.S. 200, 210, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987) ("It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.").

<u>Lopez</u>, 649 F.3d at 1233.  Hoover's argument regarding the effect of severance on the trial of Ervin's charges completely ignores the fact that the Court, the

10

witnesses, and another jury still will have to separately try the case against Hoover, a significant duplication and unnecessary drain on resources. Because Hoover has not shown that he will suffer compelling prejudice and the interests of judicial economy favor a joint trial, the Motion to Sever is due to be denied.

## IV.   Motion to Transfer

### a.    Legal Standard

The Court next turns to Hoover's Motion to Transfer venue to the Eastern District of Wisconsin pursuant to Rule 21(b). <u>See generally</u> Motion to Transfer.[4] Rule 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). Notably, "[a] criminal defendant does not have a constitutional right to be tried in the district encompassing his residence." <u>United States v. Kopituk</u>, 690 F.2d 1289, 1322 (11th Cir. 1982). Moreover, "[a] transfer of venue is completely within the discretion of the trial court and the decision to deny a change of venue request will be reversed only for abuse of discretion." <u>United States v. Smith</u>, 918 F.2d 1551, 1556 (11th Cir. 1990) (citations omitted).

---

[4]      Although Hoover is now charged in the Third Superseding Indictment, the Government added a charge, but did not delete any charges. <u>Compare</u> Second Superseding Indictment <u>with</u> Third Superseding Indictment. Thus, the arguments raised by the Government regarding venue remain applicable to the Third Superseding Indictment, particularly those regarding the location of events, evidence, witnesses, and expenses.

This Court has explained, "[t]he Rule 21(b) determination answers to 'convenience' and the 'interests of justice,' which are informed in turn by the factors enumerated in <u>Platt v. Minnesota Mining and Manufacturing Company</u>, 376 U.S. 240, 243–44, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964)." <u>See</u> <u>United States v. Gotti</u>, 593 F. Supp. 2d 1260, 1269 (M.D. Fla. 2008).  These factors, which "are neither exhaustive nor exclusive," include:

> (1) location of corporate defendant;[5] (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

<u>Id.</u>

**b.    Summary of the Arguments**

Hoover argues that the <u>Platt</u> factors weigh in favor of transferring this action to the district encompassing his residence, the Eastern District of Wisconsin.  <u>See</u> Motion to Transfer at 8.  He contends that the Eastern District of Wisconsin is more convenient for him and his family especially because he "is facing significant health issues, treatment related to those issues, and has a fear of flying."  <u>Id.</u>  Of the potentially thousands of witnesses that purchased auto

---

5       "Although Platt referenced 'corporate defendant,' other courts have expanded this factor to include the location of individual defendants as well."  <u>United States v. Marks</u>, No. CRIM. 12-0240-WS, 2013 WL 203409, at *1 (S.D. Ala. Jan. 17, 2013) (citing <u>United States v. Jordan</u>, 223 F.3d 676, 685 (7th Cir. 2000); <u>United States v. Heaps</u>, 39 F.3d 479, 483 (4th Cir. 1994); <u>United States v. Maldonado–Rivera</u>, 922 F.2d 934, 966 (2nd Cir. 1990)).

key cards or watched Hoover's relevant YouTube videos, Hoover contends that "it is likely that many . . . are citizens of the Eastern District of Wisconsin or reside in federal districts surrounding it." Id. at 10. Additionally, any witnesses Hoover offers would reside in Wisconsin. Id. As to the location of the events at issue, Hoover argues that all of his acts occurred in Coloma, Wisconsin and the only apparent reason he was indicted in the Jacksonville Division is because Defendant Ervin was indicted here first. Id. Hoover contends most of the relevant records are in electronic format and can be easily transported to either district. Id. at 11. With regard to the disruption of his business, Hoover maintains he would be unable to work during trial because all of his equipment for recording for his YouTube channel is located at his home in Wisconsin. Id.

Hoover further argues that the expense of a four-week trial in Jacksonville will be "astronomical," and that he will have to pay for airfare, lodging, meals, and other costs for himself and his witnesses. Id. at 12. And any witnesses who do not reside in Wisconsin will have to travel regardless of the location. Id. at 13. He also maintains that he "has been unable to avail himself of his primary source of income – that being his firearms YouTube channel and federal firearms license – because of the nature of these proceedings." Id. Hoover contends that both of his attorneys are several hours away from the Jacksonville Division in Lee County and Palm Beach County, Florida and although he would still have to pay for them to stay in Wisconsin,

he could explore the possibility of hiring local counsel.  Id.  Nevertheless, it would not be significantly more expensive for counsel to stay in Green Bay as compared to Jacksonville.  Id. at 13-14.  Hoover argues that the Green Bay Division is more accessible to him, especially due to his fear of flying and states that the docket conditions of the courts are "difficult to discern, with any degree of precision." Id. at 14 (quoting United States v. Motz, 652 F. Supp. 2d 284, 292 (E.D.N.Y. 2009).  Finally, Hoover contends that his medical condition and fear of flying present special circumstances that favor transfer of his case.  Id. at 15-16.

In response, the Government concedes that Hoover's residence weighs in favor of transferring the case but maintains that this factor should be afforded little weight.  See Response to Motion to Transfer at 3-4.  As to the location of potential witnesses, the Government argues that this factor strongly weighs against transfer.  Id. at 4.  The Government identifies specific categories of witnesses that it expects to testify at trial, most of whom reside in the Jacksonville, Florida area.  See id. at 4-8.  The Government additionally contends that the location of events likely to be in issue primarily occurred in and around Jacksonville.  Id. at 9.  Specifically, Ervin

> resided in Jacksonville throughout the conspiracy, operated his Auto Key Cards business from his residence in Orange Park, obtained the assistance of multiple friends and family members who reside in the Jacksonville area to help with the Auto Key Cards business, contracted with Jacksonville-area machine shops to

> manufacture the Auto Key Cards for him, utilized his bank account at a Jacksonville-area credit union to carry out the financial aspects of the conspiracy, and distributed Auto Key Cards to customers and compensation to defendant via common carriers in the Jacksonville area.

Id.  The Government notes that while the videos Hoover produced were made in Wisconsin, they were viewed by individuals across the country and led to purchases of the Auto Key Cards from Ervin in the Middle District of Florida. Id.  Further, the Government argues that Hoover knew Ervin was operating his Auto Key Card business in the Jacksonville area when he "entered into a conspiratorial agreement" with him and urged his viewers to send their payment to Ervin at his Jacksonville, Florida post office box.  Id. at 10.

In response to Hoover's arguments regarding the location of the evidence, the Government disputes that the documents and records to be used in trial are primarily in electronic format.  Id.  According to the Government, while there is substantial electronically stored evidence, there is also physical evidence stored in Jacksonville that would be difficult to transport including:

> computer equipment, manufacturing equipment, more than 1500 Auto Key Cards, firearms, and other evidence seized from codefendant Ervin's residence; large boxes of cut up Auto Key Cards surrendered by one of the machine shops that had manufactured the cards at Ervin's direction; and dozens of mailings seized from the postal stream in the Jacksonville area.

Id. at 10-11.

With regard to whether the Jacksonville location disrupts Hoover's business because he is unable to record his videos while traveling, the Government points to various videos on Hoover's YouTube Channel in which he appears to be filming on the road or at locations other than his residence. See id. at 11-13. As to the location of witnesses, the Government asserts that Hoover has not identified any witnesses that would have to travel to Florida for trial or that Jacksonville would be a particularly costly destination. Id. at 13. Additionally, the Government contends that while Hoover has submitted medical records indicating that he had polyps removed from his colon, he has not indicated any specific treatment he will be required to undergo during the trial or that would otherwise make traveling for trial more difficult. Id. at 14. As to Hoover's claim that he is "unable to avail himself of his primary source of income" due to the pending charges, see Motion to Transfer at 13, the Government notes that Hoover and his attorneys are currently posting videos to Hoover's channel and raising money for his legal expenses through various crowdfunding sources, like GoFundMe. Response to Motion to Transfer at 15.

The Government further maintains that the location of counsel disfavors transfer because counsel for the Government is in Jacksonville and all of Defendants' counsel are in Florida. Id. at 16. As to accessibility of the place of trial, the Government maintains that the majority of its witnesses are in Jacksonville, the defense attorneys can access the courthouse within a short

drive, and both the Jacksonville and Green Bay divisions have international airports that are approximately a 15-minute drive from their respective courthouses. Id. at 16-17. The Government states that it is unaware of the docket conditions in Green Bay, but notes that this Court is ready to conduct this trial during the November trial term. Id. at 17. Finally, the Government contends that Hoover's alleged co-conspirator has not requested a transfer to Green Bay and "[a] severance of the defendants so that this Court could transfer defendant's trial to Green Bay would result in substantial inefficiencies and waste of judicial and government resources." Id. at 18. The Government concludes that Hoover's purported special circumstances are unavailing where he has not described any treatment that would be disrupted by a trial in Jacksonville nor has he demonstrated why his fear of flying is a strong enough reason to transfer this case when he has driven to Jacksonville for proceedings related to his case before. Id.

    **c.**    **Discussion**

    It is undisputed that Hoover and his family reside in Coloma, Wisconsin. However, "[a] criminal defendant has no right to be tried in the place of his domicile, and the defendant's concerns about the expense and inconvenience of being tried away from home are ordinarily of little relevance to a motion for a change of venue." United States v. Bagnell, 679 F.2d 826, 832 (11th Cir. 1982) (internal citations omitted). Moreover, Hoover's codefendant and alleged

coconspirator resides in the Middle District of Florida. Thus, to the extent this factor weighs in favor of Hoover, the Court affords it little weight.

Although Hoover contends that "it is likely that many of the alleged witnesses to Mr. Hoover's actions are citizens of the Eastern District of Wisconsin or reside in the federal districts surrounding it," he fails to identify any of these witnesses or the subject of their testimony with particularity and merely speculates that they will be located near the district to which he seeks transfer. See Motion to Transfer at 10. Hoover also does not present any evidence that any of his anticipated witnesses would be unable to travel to the Middle District of Florida.

In the Response to the Motion to Transfer, the Government identifies specific categories of witnesses that are located in the Middle District of Florida including: approximately five friends and family members of Ervin who assisted him with the Auto Key Card business, three to five employees from Jacksonville machine shops that manufactured the Auto Key Cards, three purchasers of the Auto Key Cards, two or three credit union employees who interacted with Ervin when he made structured withdrawals, post office employees from locations in Jacksonville from which Ervin distributed Auto Key Cards and received orders for Auto Key Cards, an employee from the Louis Vuitton store in Jacksonville from which Ervin purchased a bag and sent it to Hoover, the government agents who conducted the investigation, and an expert witness who resides in

Jacksonville.  <u>See</u> Response to Motion to Transfer at 4-8.  Rule 21 accords weight not just to the convenience of the defendant, but also to the convenience of all "'parties and witnesses.'"  <u>Kopituk</u>, 690 F.2d at 1322.  For these reasons, the Court finds this factor weighs against transfer.

As to the location of events likely to be at issue, Hoover contends all of his actions occurred in Coloma, Wisconsin and that the only reason he was indicted in the Middle District of Florida is because Ervin was indicted first.  <u>See</u> Motion to Transfer at 10.  However, Hoover does not dispute that venue is proper here.  <u>Id.</u> at 7, n. 5.  The relevant inquiry is the location of the events likely to be at issue, and here Hoover is charged with transferring, and conspiring to transfer unregistered, machinegun conversion devices.  <u>See generally</u> Third Superseding Indictment.  The production and distribution of these devices occurred in the Middle District of Florida, his alleged conspirator received payments for the devices and arranged to send payment to Hoover from the Middle District of Florida, and several of the individuals alleged to have made the purchases of the devices are located in the Middle District of Florida.  Although Hoover is alleged to have promoted the sale of the Auto Key Cards as part of the alleged conspiracy via an online platform, and most of the filming occurred in Coloma, the material events at issue in the case occurred in the Jacksonville area.  As such, this factor weighs against transfer.

In light of the existence of various pieces of physical evidence seized in the Jacksonville area, the Court finds the location of documents and records likely to be involved weighs against transfer.   Specifically, as noted above, the Government identifies

> computer equipment, manufacturing equipment, more than 1500 Auto Key Cards, firearms, and other evidence seized from co-defendant Ervin's residence; large boxes of cut up Auto Key Cards surrendered by one of the machine shops that had manufactured the cards at Ervin's direction; and dozens of mailings seized from the postal stream in the Jacksonville area.

Response to Motion to Transfer at 10-11.  Although much of the other evidence in the case is capable of being electronically stored and transferred, what physical evidence exists is located in the Middle District of Florida and supports keeping the case here.

Hoover reports that "he has been unable to avail himself of his primary source of income – that being his firearms YouTube channel and federal firearms license – because of the nature of these proceedings."   Motion to Transfer at 13.  Yet, he also attempts to obtain a transfer of venue by asserting that if he has to attend a multi-week trial in Jacksonville, Florida, he will be unable produce YouTube videos to generate income.  See id. at 11.  It is unclear how spending several weeks in Jacksonville could further disrupt Hoover's business if he cannot operate his YouTube channel.  Notwithstanding Hoover's inconsistent representations to the Court, it appears that he can operate his

business on nights and weekends and from different locations, as evidenced by published videos in a car, in hotel rooms, and in other locations throughout the country.  Hoover does not contend that he cannot transport his equipment to Jacksonville.  The Court finds the disruption to Hoover's business does not warrant transfer.

Turning to the expense to the parties, Hoover contends, on behalf of himself and his witnesses, that they will incur significantly greater lodging and travel expenses for a trial in Jacksonville, Florida, than if the trial were in Green Bay, Wisconsin.  In support, Hoover relies on United States v. Ohran, in which the defendant sought transfer from New York to Florida and

> identified a number of Florida residents who w[ould] testify as character witnesses for him and argue[d] persuasively that the impact of their testimony on a jury would be greater in Florida where they live and work than it would be on a jury in New York.

No. 99 CR, 142 (JSM), 2000 WL 620217, at *3 (S.D.N.Y. May 12, 2000).  Because the government identified some witnesses in New York, but others some distance from New York and Florida, the court found the location of the witnesses factor neutral.  Id.  The court further concluded, "[w]hile a trial in Florida might cause greater expense to the Government than it would to [the defendant], the Government is clearly in a better position to bear that expense."  Id. at *4.  Here, unlike the defendant in Ohran, Hoover does not identify any witness by name or description and does not state the number of witnesses he

expects to call.  It is unclear if his purported witnesses are character witnesses, expert witnesses, or witnesses expected to present evidence related to the charges against him.  See United States v. Snipes, No. 5:06-CR-22-OC-10GRJ, 2007 WL 2572198, at *8 n. 25 (M.D. Fla. Sept. 5, 2007) (finding Ohran distinguishable because in Ohran, a majority of the witnesses, not just a majority of character witnesses, resided in other districts).  Thus, on the record before the Court, although it will undoubtedly be more expensive for Hoover to go to trial in Jacksonville compared with Green Bay, the Court has not been given relevant data to assess the relative travel costs for Hoover and his witnesses such that the Court can meaningfully consider this factor in its analysis.[6]  In light of the foregoing, the Court finds this factor neither weighs in favor or against transfer.

As to the location of counsel, both of Hoover's attorneys are located in Florida.  The prosecuting attorneys are located in or around Jacksonville, Florida.  Hoover's contention that he could "explore the possibility of working with local counsel for trial" if it were transferred to Wisconsin, is too speculative to support transfer.  Because all of the attorneys working on this case are located in Florida, the Court finds this factor weighs against transfer.

---

[6]     Of arguable relevance, is the Government's argument regarding the significant fundraising efforts that Hoover and his attorneys have undertaken on his YouTube channel. Response to Motion to Transfer at 15.  According to the Government, a GoFundMe account naming counsel for Hoover as a beneficiary has raised over $115,000 to fund Hoover's legal expenses in this case.

Hoover does not suggest that the federal courthouse in Jacksonville, Florida, is less accessible than the federal courthouse in Green Bay, Wisconsin. As to docket conditions, despite reports on judicial caseloads published by the Administrative Office of the United States Court being readily available to the public, Hoover does not attempt to present evidence or argument that the docket conditions in the Eastern District of Wisconsin favor transfer. Hoover makes no suggestion that he would obtain a trial earlier in Green Bay, and most recently filed a motion to continue the trial. See Joint and Unopposed Motion to Continue Trial (Doc. 119) filed on August 30, 2022. The Court affords this factor no weight.

Finally, Hoover contends there are two special circumstances that warrant transfer of this case to the Eastern District of Wisconsin. First, Hoover submits a declaration from his lawyer with various medical records attached reflecting medical office visits and procedures he had to remove polyps from his colon. Hoover points to a CT scan from November 16, 2021, that states: "CLINICAL INDICATION: Colon polyp, cancerous" and suggests a follow up in six months. See Zermay Decl. ¶¶ 4-5. Hoover does not explain why these medical records, the most recent of which is from eight months ago, demonstrate a need for his case to be transferred to the Eastern District of Wisconsin. Hoover also does not identify any scheduled treatments, appointments, surgeries, or other future medical care that would make his being in Jacksonville for several

weeks for trial problematic.  Although Hoover seeks to subpoena the testimony of his health care providers to provide additional testimony, the Court does not find this necessary.  If Hoover were receiving care that impeded his ability to attend trial, he would be able to attest to such circumstances himself.

Second, Hoover submits a letter from a nurse practitioner that describes his fear of flying:

> Matthew R Hoover was evaluated in my office on April 29, 2022 to discuss his fear of flying.  He does report that he gets extreme anxiety from flying and will have nightmares several days beforehand.  He expresses that he needed to drive to Florida for a court case which has been taxing on him and his family because he prefers to drive which requires him to be gone most of the week.  We did discuss potential medications that he could take beforehand for flying to help his anxiety but this would do very little to help his anxiety and nightmares several days before he would fly.

See Zermay Decl., Ex. A.  Although his fear of flying makes it more difficult to travel to Florida for trial, he does not offer any evidence regarding why driving is not a feasible alternative.

In sum, only one of the Platt factors weighs in favor of transfer and it is entitled to little weight.  Hoover's fear of flying is not sufficient to overcome the weight of the remaining factors and the existence of an alleged conspirator in this district.  In light of the foregoing, the Court finds the Motion to Transfer is due to be denied.

Accordingly, it is

**ORDERED:**

1. Defendant Matthew Raymond Hoover's Motion to Sever (Doc. 97) is
**DENIED.**

2. Defendant Matthew Raymond Hoover's Motion to Transfer Venue
(Doc. 96) is **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida, this 2nd day of
September, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc28

Copies to:
Counsel of Record