UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                CASE NO. 3:21-cr-22(S3)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE TRIAL TESTIMONY OF DEFENDANTS' PROPOSED EXPERT WITNESSES**

In anticipation of trial in this case, both defendants have disclosed retired ATF Special Agent Daniel O'Kelly as a purported expert witness in an unspecified field. Docs. 56, 107. Additionally, Defendant Hoover disclosed Hill Redwine as a purported expert witness in an unspecified field. Doc. 130. These notices do not comply with the disclosure requirement of Fed. R. Crim. P. 16(b)(1)(C) because they fail to include summaries of Mr. O'Kelly's and Mr. Redwine's opinions and the bases and reasons for those opinions.[1] Furthermore, defendants have failed to carry their burden to establish any of the three prongs of the Eleventh Circuit's test for admissibility of expert testimony as to either expert. The United States moves *in limine* to exclude the proposed testimony from trial on the grounds that defendants have not complied with Rule 16, and because defendants have not established that either purported expert is an expert in any relevant field, have not demonstrated that

---

[1] This is particularly noteworthy with regard to Defendant Hoover's disclosure of Mr. Redwine as a purported expert, which disclosure comes after defendants had an opportunity to review the government's previous motion to exclude Mr. O'Kelly (Doc. 118) and yet is somehow even more threadbare than the previous disclosure.

the proffered opinions are based on any sort of reliable principle or method, and on the ground that the proposed testimony would not help the jury understand the evidence or decide facts in issue.

## BACKGROUND

As relevant to the proposed testimony of the purported experts, defendants are charged with conspiring to violate the National Firearms Act (NFA) by transferring unregistered machinegun conversion devices that they referred to as "Auto Key Cards" as well as substantive violations of the NFA. Doc. 57. As described in the operative indictment, "Auto Key Cards . . . consisted of cards machined from stainless steel, into which were etched the design for machinegun conversion devices known as lightning links, which constituted machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b)." *Id.* at 2.

### I. Defendants' Disclosure of Mr. O'Kelly

Defendants have both proposed to call Mr. O'Kelly, a retired ATF Special Agent, as an expert witness at trial, although neither identifies any field of expertise purportedly held by Mr. O'Kelly that is relevant to this case. Instead, defendants simply assert that Mr. O'Kelly "has been recognized as an expert witness in Federal and State courts" and "has testified and/or consulted as an expert on the topics of use of force, self-defense with a firearm, ballistics, gunshot residue, interstate nexus, federal and state firearm regulations, trade dress, ATF rulings, ATF compliance and procedures, shooting reconstruction, firearm classification, firearm design, and wrongful death" – nearly all of which have nothing to do with his proposed

testimony in this case.  It is unclear what, exactly, defendants mean by "firearm classification," which is the only potentially pertinent category of purported expertise of Mr. O'Kelly.  Nor is it clear whether Mr. O'Kelly has ever been recognized as an expert in that area by a court, or instead simply was "consulted" on the topic, and in any event, whether the firearm at issue was a machinegun or some other sort of firearm.

Nevertheless, defendants propose that Mr. O'Kelly will testify that Auto Key Cards "do not legally establish or satisfy any of the four definitions of a machinegun" in that

> (1) They do not, and cannot shoot, (2) They do not have any of the four elements in the CFR definition of the frame/receiver of a machinegun, (3) They are not a part nor a combination of parts designed and intended for use in converting a weapon into a machinegun, (4) They are not a combination of parts from which a machinegun can be assembled.

Doc. 56 at 1-2; Doc. 107.  Defendants' notices provide no insight into the basis of Mr. O'Kelly's opinion.  Defendants have provided no report from Mr. O'Kelly that would explain his methodology or reasoning in coming to his conclusion. Defendants do not contend that Mr. O'Kelly has ever examined or in any way tested an Auto Key Card.[2]

---

[2] The United States has received no request to permit examination of an Auto Key Card, and assumes that neither defendants, nor their counsel, nor Mr. O'Kelly is in possession of one given that Auto Key Cards are contraband.

Defendants provide only Mr. O'Kelly's CV in support of his purported expertise. *See generally* Doc. 56-1. Mr. O'Kelly's CV provides no basis for concluding that he possesses expert-level specialized knowledge or has undergone training in making determinations of what is, and is not, a machinegun. The only glimmer arises from his accounting of his responsibilities for one year from 2002-2003 when he was a "Firearm Instructor Coordinator" for ATF's Tampa Field Division. *See id.* at 3. Mr. O'Kelly claims that during that time, he had responsibility for "NFA firearm examinations/determinations" and "[m]ade determinations as to whether an item is a non-gun vs. a firearm, according to Title 18 and Title 26, U.S. Code." *Id.*

## II. Mr. O'Kelly's Previous Statements About Auto Key Cards

Although defendants disclose no details about Mr. O'Kelly's opinions or their basis, Mr. O'Kelly has previously described his views on Auto Key Cards. In March 2021, Mr. O'Kelly participated in an interview that was posted to the YouTube channel "GunGuyTV" in which he discussed Auto Key Cards and this prosecution.[3] In that video, Mr. O'Kelly explained that lightning links had been classified as machineguns by ATF "decades ago," and that they "fall under . . . definition 3 of a machinegun, that is, any device solely and exclusively designed and intended to convert a semi-automatic to a machinegun, or to fire full automatic,

---

[3] Mr. Ervin was arrested and charged by criminal complaint on March 3, 2021. Doc. 2. Mr. O'Kelly's GunGuyTV interview was posted to YouTube on March 31, 2021, although it is unclear exactly what date the interview was recorded.

4

same thing." GunGuyTV, "ATF is at it again! Interview with Dan O'Kelly" at 3:00-3:30, *available at* https://www.youtube.com/watch?v=zydbHNMLG4k (attached as Exhibit A to Doc. 118[4]). Mr. O'Kelly went on to say that ATF was relying on a "concept called indexing," which Mr. O'Kelly described as the idea that if you scribed a line where a fold or cut should be, or dimpled metal where a hole should be drilled to complete an illegal device, that was the same as folding, cutting, or drilling the item, which Mr. O'Kelly stated he found "ridiculous." *Id.* at 5:00-5:30. Mr. O'Kelly explained that his opinion is based on his perception that "there's a big difference between putting a dimple on a piece of metal and drilling a hole that actually does you any good." *Id.* at 5:30-5:37. Mr. O'Kelly then went on to discuss that ATF "was actually shot down on this issue in federal court in the *United States v. Prince* case years ago," presumably referring to *United States v. Prince*, 2009 WL 1875709, No. 09-10008-JTM (D. Kan. 2009), *reversed on other grounds in United States v. Prince*, 593 F.3d 1178 (10th Cir. 2010). *Id.* at 5:37-6:57. Mr. O'Kelly then stated that "ATF has been, uh, remand – reprimanded – you know, put in their place on this indexing issue, but they stick to it." *Id.* at 6:57-7:04.

At that point in the interview, the host of GunGuyTV inquired of Mr. O'Kelly how much of ATF's actions in this area are "political" and Mr. O'Kelly responded that it was "a lot of times." *Id.* at 7:05-7:28. After some further discussion,

---

[4] Due to court and office closures as a result of Hurricane Ian, the undersigned is unable to physically file a copy of the exhibit, and instead incorporates the previously-filed copy that was attached to Doc. 118.

5

Mr. O'Kelly stated that he was personally bothered that when an item is "in a gray area" ATF "seem[s] to always lean toward the 'you can't have it' or, 'yeah we're gonna call it NFA' when they don't have to."  *Id.* at 8:30-8:54.

Later in the interview, the host of GunGuyTV inquired of Mr. O'Kelly "what do you think the odds are of them actually convicting this poor guy over this Auto Key Card thing?"  *Id.* at 10:20-10:26.  Mr. O'Kelly responded that he believed it would depend on "whether the judge that hears the case – or the jury that hears the case – is pro-gun or anti-gun."  *Id.* at 10:27-10:35.

In other words, Mr. O'Kelly has previously expressed his opinions that (1) lightning links *are* machineguns and have been classified as such by ATF for "decades," (2) implied that he believes that Auto Key Cards are in a "gray area" in terms of whether they are NFA items, and (3) explained that his opinion that Auto Key Cards are not sufficiently completed to be classified as machineguns is based on the *Prince* case.  Notably, Mr. O'Kelly developed his opinions about Auto Key Cards within weeks of the initiation of this prosecution and prior to the production of the vast majority of the discovery to the defense.

### III. Defendant Hoover's Disclosure of Mr. Redwine

Defendant Hoover has disclosed Hill Redwine as purported expert, although no field of expertise is identified for Mr. Redwine.  Doc. 130 at 1.  Defendant Hoover identifies Mr. Redwine as "the owner of H&M Gunworks" and states that he has an unspecified number of "years of full-time experience as a firearms designer with knowledge of reverse engineering, manual machining, welding and

6

metalworking." *Id.* For a more full discussion of Mr. Redwine's training and qualifications, Defendant Hoover refers to an attached CV, which lays out Mr. Redwine's background in well fewer than 100 words. *Id.* at Attachment A. None of those words is "machinegun." *Id.* Based on his claimed expertise, Mr. Redwine apparently has developed the identical opinion of Mr. O'Kelly – that is, that Auto Key Cards do not meet the statutory definition of a machinegun. *Id.* at 1-2.

## MEMORANDUM OF LAW

### I.  Admissibility of Expert Testimony

The introduction of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the principles and methods reliably. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that such evidence is not only relevant, but reliable. The Supreme Court reasoned that the district court's gatekeeping function was especially important since an expert's opinion "can be both

powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.

Under Eleventh Circuit precedent, to determine the admissibility of expert testimony, trial courts must consider if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Stahlman*, 934 F.3d 1199, 1219 (11th Cir. 2019) (citations omitted); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citation omitted). As the proponent of the expert, the defendant bears the burden of establishing these three basic requirements. *Frazier*, 387 F.3d at 1260; *Cook ex rel. Estate of Tessler v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1107 (11th Cir. 2005); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002); *United States v. Chu*, Case No. 3:11-cr-286-J-34MCR, Doc. 242 at 8 (M.D. Fla. Nov. 7, 2012); *see also United States v. Cross*, 928 F.2d 1030, 1049 (11th Cir. 1991) ("A properly qualified expert witness may testify regarding his specialized knowledge in a given field if it 'would assist the trier of fact to understand the evidence or to determine a fact in issue.'").

Where a party fails to provide an expert disclosure that meets the requirements of Rule 16, the proposed expert's testimony may also be excluded on that basis. *See* Fed. R. Crim. P. 16(d)(2)(C) ("If a party fails to comply with this rule, the court

may[] prohibit that party from introducing the undisclosed evidence."); *United States v. Barile*, 286 F.3d 749, 758 (4th Cir. 2002) (no abuse of discretion where Court excluded testimony because the defendant's disclosure "did not describe [the witness's] opinions beyond stating the conclusion he had reached and did not give the reasons for those opinions as required under Rule 16(b)(1)(C)").

## II. Defendants' Expert Disclosure is Inadequate to Establish that Mr. O'Kelly Possesses Expertise Pertinent to This Case

As described above, defendants' disclosures of Mr. O'Kelly as an expert broadly paint him as an expert in myriad areas, none of which is pertinent to *this* case. For example, defendants claim that Mr. O'Kelly has expertise in areas including "use of force, self-defense with a firearm, ballistics, gunshot residue, interstate nexus, federal and state firearm regulations, trade dress, ATF rulings, ATF compliance and procedures, shooting reconstruction, firearm classification, firearm design, and wrongful death," but do not explain how any of these claimed areas of expertise qualify him to render an opinion in this case.

Furthermore, a careful review of Mr. O'Kelly's CV does not disclose any basis for concluding that he possesses expertise in making determinations of what is, and is not, a machinegun. Mr. O'Kelly represents that from May 2002 until May 2003, he was a "Firearm Instructor Coordinator (as ATF Agent)" for ATF and, in that role, states that he performed "NFA firearm examinations/determinations." A review of the position description for a Firearms Instructor Coordinator during the time period when Mr. O'Kelly performed that function reveals that the job responsibilities

9

included conducting complex investigations and "development, implementation and coordination of Bureau firearms training programs." *See* SPD418 Firearms Instructor Coordinator position description (attached as Exhibit B to Doc. 118). It does not include making determinations about whether an item is a machinegun. *Id.*

To the contrary, since at least 1989, ATF field agents have been instructed that they may measure "[t]he length of the barrel on a rifle or shotgun" to determine "whether it is a firearm as defined" by inserting a rod down the muzzle of the firearm and then measuring the rod. ATF O 3310.4B "Firearms Enforcement Program" at § 18 (attached as Exhibit C to Doc. 118).[5]  Field agents also may measure "[t]he overall length of a rifle or shotgun" to "determine whether or not it is a firearm as defined." *Id.* at § 19.  Thus, field agents are trained, and authorized, to measure firearm barrels and overall lengths to determine whether those firearms are short-barreled shotguns or short-barreled rifles.  Field agents are not authorized to make classification decisions regarding machineguns – that role is designated to specialists at the Firearms and Ammunition Technology Division (formerly the Firearms Technology Criminal Branch).  *Id.* at § 11(d) (the Firearms Technology Branch provides technical assistance, including evaluating firearms "for proper classification under Federal law"); § 11(f) ("Experts are available at Headquarters for the identification and classification of firearms. . . . Special agents can make use of

---

[5] This version of the Firearms Enforcement Program was in force until it was superseded by ATF O 3310.4C on March 19, 2013.

10

these experts . . . ."); § 175(c) ("Analysts shall examine and determine the classification of [] sample[s] . . . ."). Mr. O'Kelly has never had a role at this division, has never received the advanced training provided to ATF's Firearms Enforcement Officers who are charged with making machinegun classifications, and has never been tasked by ATF with making classification decisions about machineguns. Despite listing, single-spaced, three full pages of "Specialized Training" in his CV, Mr. O'Kelly lists only a single training course that appears to relate to machineguns. *See* Doc. 56-1 at 5-8 (representing that Mr. O'Kelly took a course in 2015 titled "The Machineguns and Machinegun Conversions"). *Id.* at 5.

In short, Mr. O'Kelly's CV reflects that while he may have expertise in certain areas not relevant here – such as interstate nexus – there is no basis for concluding that he possesses knowledge and expertise about machineguns and the NFA that would assist the jury. His testimony should, therefore, be excluded on the basis that defendant has failed to meet his burden to demonstrate that Mr. O'Kelly "is qualified to testify competently regarding the matters he intends to address." *See Stahlman*, 934 F.3d at 1219; *Frazier*, 387 F.3d at 1260.

### III. Defendant Hoover's Expert Disclosure is Inadequate to Establish that Mr. Redwine Possesses Expertise Pertinent to This Case

Defendant Hoover's disclosure of Mr. Redwine sets forth that he has experience with "firearms design, reverse engineering, manual machining, welding, and metalworking," including "reverse engineering firearms." Doc. 130 at Ex. A. It is unclear what experience Mr. Redwine has with machineguns and machinegun

11

conversion devices, if any, because it is not mentioned anywhere in his CV nor the disclosure.   No outside training is referenced aside from Mr. Redwine's undergraduate degree in photography.   *Id.*   There is no conceivable basis on which this Court could find from this disclosure that Mr. Redwine is qualified to testify at trial in this case as an expert in anything at all.

IV.   **Defendants Fail to Establish that Mr. O'Kelly Relied on Appropriate Authorities in Forming His Opinion**

Defendants' disclosures provide no basis whatsoever for Mr. O'Kelly's proffered opinion that Auto Key Cards are not machineguns.   *See generally* Doc. 56.   A review of Mr. O'Kelly's previous statement during his GunGuyTV interview reflects that Mr. O'Kelly relies principally upon *Prince*, 2009 WL 1875709, as the foundation for his opinion.   As this Court has already ruled, "reliance on . . . the *Prince* case . . . is really not persuasive for a myriad of reasons."   July 8, 2021, Mot. Hr'g Tr. at 14.   As this Court noted in distinguishing *Prince* from the facts of this case, the *Prince* court "was reviewing a statute with a different definition, so that's unavailing."   *Id.*[6]

In addition to the rationale cited by this Court for distinguishing *Prince*, there is also the matter that *Prince* is an unpublished case originating from the District of

---

[6] The *Prince* case concerned the definition of a firearm under Title 18, United States Code, Section 921(a)(3), not the definition of a machinegun under Title 26, United States Code, Section 5845(a) and (b).   Those definitions contain substantial dissimilarities including, critically, that Section 921(a)(3) does not contain the "designed and intended . . . for use in converting a weapon" language that is in Section 5845(b).

12

Kansas and is therefore not binding on proceedings here in the Middle District of Florida. The *Prince* opinion itself is nearly devoid of analysis to support the court's conclusion that the AK flats at issue in that case were not firearms and therefore provides no compelling rationale for this Court to follow and rule similarly here. *See Prince*, 2009 WL 1875709 at *3 (explaining that "[t]he court carefully considered . . . expert testimony . . . and reviewed the material submitted by the government concerning ATF opinions" but "simply does not believe that a flat piece of metal with laser perforations and holes constitutes [a firearm]"). Moreover, the opinion was reversed on other grounds, and in reversing the District of Kansas, the Tenth Circuit did not adopt the district court's interpretation of the statutory definition of a firearm. *See Prince*, 593 F.3d at 1185 n.3 ("Because the government has not raised the issue on appeal, we need not decide whether the flats at issue are 'receivers' and therefore 'firearms' under 18 U.S.C. § 921(a)(3)(B)."). The District Court's opinion has only been cited by other courts twice since it was issued in 2009, and in neither of those cases did the citing court adopt the reasoning in *Prince* as pertinent to defendant's argument, and neither of those cases is from within the Eleventh Circuit. *See United States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010); *United States v. Lacy*, No. 09-CR-135, 2009 WL 3756987, *1 (E.D. Wis. Nov. 6, 2009). In other words, the *Prince* case is hardly the legal juggernaut that Mr. O'Kelly makes it out to be. *See* GunGuyTV, "ATF is at it again! Interview with Dan O'Kelly" at 5:37-7:04 (O'Kelly claiming that ATF "was actually shot down" in *Prince* and "reprimanded – you know, put in their place on this indexing issue").

13

Beyond his expressed reliance on *Prince*, neither Mr. O'Kelly's previous interview nor defendants' disclosures provide any sort of rationale for or explanation of the basis of Mr. O'Kelly's opinion. Certainly, there is no indication that Mr. O'Kelly has ever physically examined an Auto Key Card or performed any testing that he could inform the jury of. Nor does it appear that Mr. O'Kelly reviewed any other evidence in this case before rendering his opinion – initial discovery was produced to defendant Ervin on March 24, 2021, and Mr. O'Kelly's GunGuyTV interview was posted only one week later. That initial discovery, consisting of approximately 1600 pages, has subsequently been eclipsed, with total discovery now standing at approximately 34,000 pages. Defendants have thus failed to meet their burden to demonstrate the reliability of Mr. O'Kelly's methodology in forming his opinion under the second prong of *Stahlman*, 934 F.3d at 1219. Mr. O'Kelly's testimony should, therefore, be excluded on this ground as well. *See Cook* 402 F.3d at 1111 ("[A] trial court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained." (internal quotations omitted)).

**V.  Defendants Fail to Establish that Mr. Redwine Relied on Appropriate Authorities in Forming His Opinion**

Defendants proffer no basis for Mr. Redwine's opinion. As with Mr. O'Kelly, to the knowledge of the undersigned, Mr. Redwine has never examined an Auto Key Card. Having disclosed *no* authorities on which Mr. Redwine relied in

forming his opinion, defendants certainly have not established that those authorities were appropriate. His testimony should be excluded on this ground as well.

VI. **Defendants Have Not Established that either Mr. O'Kelly's or Mr. Redwine's Opinion Will Assist the Jury**

Defendants' disclosures reflect that Mr. O'Kelly's and Mr. Redwine's testimony will be, simply, that Auto Key Cards do not meet the definition of a machinegun. Defendants have failed to proffer any details of how either Mr. O'Kelly or Mr. Redwine developed his respective opinion that Auto Key Cards are not machineguns, and the proposed testimony therefore "offers nothing more than what lawyers for the parties can argue in closing argument." *Frazier*, 387 F.3d at 1262. Devoid of any specificity, this Court cannot conclude that the proposed testimony would assist the jury, and it should be excluded. *Id.* at 1260. Defendants' counsel can adduce and emphasize facts that they believe support their position that the Auto Key Card is not sufficiently complete to be adjudged a machinegun and argue that position to the jury. The jury can then decide – based on reason and common sense – whether the facts establish that an Auto Key Card is a machinegun as defined by the Court in the jury instructions. No expert assistance is needed for the jury to make that determination. From the defendants' disclosures, it appears that Mr. O'Kelly and Mr. Redwine each would testify, in essence, that if he were a member of the jury, he would find that an Auto Key Card is not a machinegun. Even if either proposed expert had relevant expertise in the area of

15

classification decisions regarding machineguns, that testimony would improperly invade the province of the jury.

Furthermore, the subject matter of the proposed opinion testimony – that is, whether the Auto Key Card is sufficiently complete to be classified as a machinegun – is not outside of the province of an average juror and does not meet the helpfulness prong for that reason.  *Edwards v. Shanley*, 580 Fed. App's 816, 823 (11th Cir. 2014) ("For testimony to satisfy the third requirement – assisting the trier of fact – the testimony must 'concern[] matters that are beyond the understanding of the average lay person.'" (quoting *Frazier*, 387 F.3d at 1262)); *Hibiscus Assocs. Ltd. v. Bd. of Trustees of Policemen and Firemen Retirement Sys. of City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995) ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves.").

Moreover, "expert witnesses 'are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct.'"  *Simon v. Healthsouth of Sarasota Ltd.*, Case No. 8:12-cv-236-VMC-AEP, 2021 WL 268496 at *4 (M.D. Fla. Jan. 27, 2021) (quoting *Dahlgren v. Muldrow*, No. 1:06-cv-65-MP-AK, 2008 WL 186641 at *5 (N.D. Fla. Jan. 18, 2008)); *see also SEC v. Spartan Secs. Grp.*, Case No. 8:19-cv-448-T-33CPT, 2020 WL 7024885 at *5 (M.D. Fla. Nov. 30, 2020) ("[T]estifying experts may not offer legal conclusions." (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1112 N.8 (11th Cir. 2005))).  That is exactly what Mr. O'Kelly and Mr.

Redwine seek to do by offering their opinions that Auto Key Cards do not meet the legal statutory definition of a machinegun. "[C]ourts must remain vigilant against the admission of legal conclusions," *United States v. Long*, 300 Fed. App'x 804, 814 (11th Cir. 2008) (quoting *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977)), and this Court should exclude the testimony of both experts on that basis as well.

## CONCLUSION

Defendants have failed to establish any of the three pre-requisites of admissibility of the proposed testimony of either of the purported experts (qualifications, methodology, and assistance to the jury of the testimony). Additionally, their disclosures do not meet the requirements of Fed. R. Crim. P. 16. Furthermore, the United States previously laid out all of these arguments in its previous motion to exclude Mr. O'Kelly's testimony, giving notice to the defendants of the woeful inadequacy of their disclosures. Doc. 118. Yet, neither defendant

made any effort to rectify these inadequacies and make a disclosure meeting the requirements of Rule 16.   This court should, therefore, exclude the testimony.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By:    *s/ Laura Cofer Taylor*
        LAURA COFER TAYLOR
        Assistant United States Attorney
        USA No. 170
        E-mail: Laura.C.Taylor@usdoj.gov

        DAVID B. MESROBIAN
        Assistant United States Attorney
        USA No. 188
        E-mail: David.Mesrobian@usdoj.gov

        300 N. Hogan Street, Suite 700
        Jacksonville, Florida 32202
        Telephone:   (904) 301-6300
        Facsimile:    (904) 301-6310

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Zachary Zermay
>Matthew Larosiere
>*Counsel for defendant Matthew Raymond Hoover*
>
>Alex King
>*Counsel for defendant Kristopher Justinboyer Ervin*

>*s/ Laura Cofer Taylor*
>LAURA COFER TAYLOR
>Assistant United States Attorney