# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

Case No. 3:21-cr-22(S3)-MMH-MCR

v.

MATTHEW RAYMOND HOOVER

_____

# O R D E R

**THIS CAUSE** is before the Court on two motions to dismiss filed by

Defendant Matthew Raymond Hoover:[1] (1) the Motion to Dismiss (Doc. 132;

First Motion)[2] and (2) the Motion to Dismiss for First and Second Amendment

Violations and to Declare Unconstitutional the National Firearms Act of 1934

---

[1]  Notably, rather than ask the Court for permission to exceed the page limit for filing a motion to dismiss under Rule 3.01(a), Local Rules, United States District Court, Middle District of Florida (Local Rule(s)), counsel for Hoover filed two motions to dismiss. This is improper.  Counsel for Hoover similarly evaded requesting the Court for the appropriate relief in filing Hoover's Notice Regarding Expert Disclosure (Doc. 107), which the Court construed, in that instance, as a motion for extension of time, see Endorsed Order (Doc. 109). Here, the Court will permit Hoover to exceed the page limits, but cautions counsel for Hoover that going forward, the Court will strike filings that do not comply with the Federal Rules of Criminal Procedure or the Local Rules of this Court.

[2]  Attached to the First Motion, citing Rule 201 of the Federal Rules of Evidence, Hoover includes a request that the Court take judicial notice of the Federal Register as well as a letter from the Bureau of Alcohol, Tobacco, Firearms, and Explosives in which the agency opines that a device, different than that at issue in the instant case, is not regulated under the National Firearms Act.  See Request for Judicial Notice in Support of Defendant's Motion to Dismiss (Doc. 132-1).  With regard to his reference to the Federal Register, "[Federal Courts] take judicial notice of documents published in the Federal Register." Longo v. Seminole Indian Casino-Immokalee, 813 F.3d 1348, 1350 n. 2 (11th Cir. 2016) (citing 44 U.S.C. § 1507).  As to the letter, however, the Court finds it is not relevant to whether the device at issue in the instant action is regulated by the National Firearms Act. As such, it is not an adjudicative fact of which this Court need take judicial notice.  See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) ("Adjudicative facts are facts that are relevant to a determination of the claims presented in a case.").

(Doc. 133; Second Motion), both of which were filed on September 22, 2022 (collectively, the "Motions").[3]   The Government filed a response to Hoover's Motions on October 7, 2022.   <u>See</u> United States' Omnibus Response in Opposition to Defendant's Motions to Dismiss (Doc. 138; Response). Accordingly, the Motions are ripe for resolution.

## I.    Relevant Background

The government initiated the instant criminal proceeding on March 3, 2021, by filing a Criminal Complaint (Doc. 1) against Defendant Kristopher Justinboyer Ervin charging that, on or around February 22, 2021, Ervin

> did knowingly possess a firearm as defined under Title 26, United States Code, Section 5845(a) and (b), that is, a machine gun conversion device, that was not then registered to the defendant in the National Firearms Registration and Transfer Record,

in violation of Title 26, United States Code, Sections 5861(d) and 5871.

<u>See</u> Criminal Complaint at 1.   Eight days later, on March 11, 2021, a grand jury returned a one-count indictment charging Ervin with the same offense.   <u>See</u> Indictment (Doc. 17).   On April 1, 2021, the grand jury returned a superseding indictment charging Ervin with causing a financial institution to fail to file a Currency Transaction Report (CTR) in violation of 31 U.S.C. § 5324(a)(1) (Count

---

[3]     Hoover first filed a Motion to Dismiss on June 21, 2022.   <u>See</u> Motion to Dismiss (Doc. 95).   However, the grand jury returned a Third Superseding Indictment (Doc. 120) on August 31, 2022, and the Court denied the motion to dismiss as moot.   <u>See</u> Minute Entry (Doc. 126).

One), structuring a transaction at a federally-insured financial institution while violating another law of the United States in violation of 31 U.S.C. § 5324(a)(3) (Counts Two through Seven), transporting or causing to be transported unregistered firearms in interstate commerce in violation of 26 U.S.C. §§ 5861(j) & 5871 (Count Eight), and possessing unregistered machinegun conversion devices in violation of 26 U.S.C. §§ 5861(d) & 5871 (Counts Nine through Fourteen). See Indictment (Doc. 25; First Superseding Indictment).

Ervin filed a motion to dismiss the First Superseding Indictment, see Motion to Dismiss Superseding Indictment and Memorandum of Law (Doc. 30), which the Court denied on July 8, 2021. See Transcript (Doc. 48). On January 22, 2022, the grand jury returned a Second Superseding Indictment which in addition to charging Ervin, charged Defendant Matthew Raymond Hoover with committing federal crimes. See Indictment (Doc. 57; Second Superseding Indictment). On August 31, 2022, the grand jury returned a Third Superseding Indictment in which it modified several of the allegations in the Second Superseding Indictment and included an additional count of transferring, and aiding and abetting the transferring, of unregistered machinegun conversion devices via the U.S. mail as to both defendants. See Indictment (Doc. 120; Third Superseding Indictment). In all, the Third Superseding Indictment now alleges eighteen separate crimes. In Count One, Hoover and Ervin are charged with conspiring to transfer unregistered machinegun conversion devices in violation

of 18 U.S.C. § 371.  Id. at 1-10.  In Counts Two through Eight, Hoover and Ervin are charged with substantive counts of transferring, and aiding and abetting the transferring, of unregistered machinegun conversion devices via the U.S. mail to various individuals, in violation of 26 U.S.C. §§ 5861(e) & 5871.  Id. at 10-14.  The remaining counts of the Third Superseding Indictment pertain only to Ervin and again charge him with causing a financial institution to fail to file a CTR (Count Nine), structuring transactions at a federally-insured financial institution to evade reporting requirements (Counts Ten through Fifteen), and possessing unregistered machinegun conversion devices (Counts Sixteen to Eighteen).  Id. at 14-17.  The Third Superseding Indictment also contains various forfeiture allegations which relate to each count.  See id. at 16-19.

The Court summarizes the factual basis for the charges against Hoover in the Third Superseding Indictment here.  The Government alleges that beginning in or about October 2020, and continuing through around July 2021, Defendants Ervin and Hoover conspired to transport unregistered machinegun conversion devices through Ervin's Auto Key Card business.  See Third Superseding Indictment at 2-3.  The Auto Key Cards, which Ervin allegedly designed and sold,

> consisted of cards machined from stainless steel, into which were etched the design for machinegun conversion devices known as lightning links, which constituted machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b) in that they are a combination of parts

designed and intended for use in converting a weapon into a machinegun.

Id. at 2.  The Government explains "[a] lightning link was a particular design of auto sear," which is

> a category of machinegun conversion devices that may be installed into an otherwise semi-automatic AR-15 type rifle and function to convert the AR-15 type rifle to fire more than one shot by a single function of the trigger.

Id.  As part of the conspiracy, Hoover created and posted various videos to his YouTube Channel, CRS Firearms, in which he "promoted the sale of [Ervin's] Auto Key Cards."  Id. at 3.  For example:

> b.     On or about November 4, 2020, a video created by Hoover was posted on the YouTube channel CRS Firearms.  In the video, titled "Is this An ATF Trap And How Does It Work," Hoover described how to order an Auto Key Card and further described how to cut the lightning link from the Auto Key Card and install it into an AR-15 style rifle, thus converting the AR-15 style rifle into a machinegun.
>
>             . . .
>
> l.     On or about January 8, 2021, a video created by Hoover was posted to the YouTube channel CRS Firearms.  In the video, titled "This Makes an illegal Machine gun," Hoover described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

Id. at 4, 7.  Shortly after Hoover would post videos identifying autokeycard.com as a sponsor and promoting the sale of Auto Key Cards, Ervin would mail Hoover cash or items of value such as a Louis Vuitton bag or video production equipment.  See generally id. at 4-10.

As further part of the conspiracy, less than three weeks after the grand jury returned the First Superseding Indictment in this case, Ervin, Hoover, and another individual "participated in a phone call in which they discussed plans to continue selling Auto Key Cards and create additional videos promoting Ervin and his Auto Key Card business." Id. at 10.  Around this same time in March 2021, and up until July 2021, Hoover and the other individual raised funds to use, in part, to obtain Ervin's release so he and Hoover "could continue to pursue their conspiratorial goals." Id. at 10.  Hoover now seeks dismissal of Counts One through Eight of the Third Superseding Indictment.

## II.    Summary of the Arguments

In the First Motion, Hoover asserts that the Government has "failed to state a crime" against him.  First Motion at 9.  Hoover contends that in order for a device to qualify as a machinegun under 26 U.S.C. § 5845(b), "it must (1) be a part or combination of parts; (2) which is designed and intended – and in the case of a single 'part' – solely and exclusively for use in converting a weapon into a machine gun." Id. at 10.  Hoover argues that the Government has failed to sufficiently allege that the Auto Key Card was designed for use in converting a weapon into a machinegun. Id.  In addition, Hoover argues that

> the Indictment is facially defective because there is no "plus" factor alleged to sustain the legal conclusion that these cards are designed and intended solely for use as a weapon, as required by the statute. They are mere stainless-steel cards, into which a design was lightly etched.

6

Id. at 11.  Similarly, Hoover asserts that as pled, the Auto Key Card is not a "combination of parts" or a "part" under the statute, it is merely a drawing on a single card.  Id. at 12-14.  For the same reasons, Hoover maintains that the Government has "failed to state sufficient ultimate facts to sustain [the aiding and abetting] allegations."  Id. at 15.

Hoover next raises various constitutional challenges to several of the charges in the Third Superseding Indictment.  First, Hoover contends

> [a]s applied against Mr. Hoover 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 are unconstitutionally vague under the Fifth Amendment. Mr. Hoover had no reason to believe, at any point, that he would be engaging in criminal conduct if—as alleged—he entered into an agreement with a tchotchke salesman to discuss stainless steel cards with a design on them on his YouTube channel.

Id. at 15-16.  Hoover also contends that "the government is acting outside the limits of the taxing and spending clause" because it "will not accept the payment of the tax required by the charged statute, and yet nonpayment presents serious criminal consequences and permanent deprivations of liberty."  Id. at 21-22.

In the Second Motion, Hoover argues that "[f]acially and as applied, 26 § U.S.C. 5845(b) is a content-based restriction that is simultaneously overbroad and under inclusive."  Second Motion at 3.  According to Hoover, it is overbroad to the extent that

> the broad sweep of the § 5845(b), as wielded here, violates "the requirement that a legislature establish minimal guidelines to

> govern law enforcement." <u>Kolender</u>, 461 U.S. at 358.[4] There are no such guidelines in the law or regulations. Any item, including shoelaces, may constitute a "machinegun."

<u>Id.</u> at 4.  As it applies here, Hoover also maintains the statute is under inclusive:

> To wit, if it applied here and not, for example, to an electronic massage gun with the same schematic drawn on it that could help relax muscles (or rapidly engage a semiautomatic rifle's trigger). Given this result, it "necessarily [and impermissibly] entrusts lawmaking [regarding this content-based restriction or otherwise] to the moment-to-moment judgment of the policeman on his beat." <u>See</u> <u>City of Chi. v. Morales</u>, 527 U.S. 41, 60 (1999).

<u>Id.</u> at 4-5.  In addition, Hoover contends that under the United States Supreme Court's recent decision in <u>Bruen</u>,[5]

> the only way a court may conclude Defendant's conduct falls outside the scope of the Second Amendment's unqualified command remains clear: the Government must prove the particular regime in question is consistent with the history and tradition of the United States.

Second Motion at 7-8.  Hoover further asserts that "the Government has the burden to prove the regime in question is consistent with the history and tradition of firearms regulations in this country <u>around the founding era</u>." <u>Id.</u> at 8 (emphasis added).   Hoover concludes that the history and tradition of the United States does not support a categorical ban of machineguns and that it certainly does not support banning Auto Key Cards,

> a tchotchke the Government alleges might possibly, with transformative labor, one day become a machinegun.  Further,

---

[4]     <u>Kolender v. Lawson</u>, 461 U.S. 352, 358 (1983).

[5]     <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 142 S. Ct. 2111 (2022).

> ATF's decision that the tchotchke at issue – a stainless steel card with some lines lightly thereupon engraved – was a machinegun came completely by administrative fiat, absent even notice and comment.

Id. at 9.  In the alternative, Hoover contends that the application of § 5861 and § 5871 is unconstitutional as applied to him because there is no historical justification for

> an administrative agency's unilateral declaration that an alleged drawing of a component – a component the possession of which subjects the holder to lengthy prison terms – is the component itself.

Id. at 11-12.

In its Response, the Government largely relies on the Court's rulings on Ervin's previous motion to dismiss and its arguments in response to that motion. See Response at 2-5.  As to Hoover's argument that the Government was required to allege a "plus factor," the Government contends that Hoover improperly relies on authority addressing "a separate and differently worded subsection of the statute."  Id. at 7-8.  To the extent Hoover relies on the language, "any part designed and intended solely and exclusively [to convert a weapon into a machinegun]," to support his argument that proof of a "plus factor" is required, the Government notes that Hoover ignores that a machinegun also encompasses any "combination of parts designed and intended[ ] for use in converting a weapon into a machinegun."  Id. at 8 (citing 26 § U.S.C. 5845(b)) (emphasis added).  According to the Government, "the Third

9

Superseding Indictment makes clear that the government is proceeding on a theory that Auto Key Cards are a combination of parts, and thus the 'solely and exclusively' language has no role in this case." Id. The Government further maintains that the Third Superseding Indictment lays out the charged offenses in the language of the relevant statutes and provides sufficient facts regarding each Defendant's role in the alleged conspiracy. See id. at 9-10.

As to Hoover's arguments under Bruen, the Government asserts that Hoover "misconstrues ATF's role in determining whether an item meets the statutory definition of a machinegun in Section 5845(b)." Id. at 11. In addition, the Government contends that the Supreme Court's decision in Bruen does not overrule binding precedent that holds the National Firearms Act, 26 U.S.C. §§ 1132—1132q (NFA) constitutional under the Second Amendment. Id. The Government notes that the definition set forth in § 5845(b) was promulgated by Congress, and although it "intends to present evidence at trial in the form of testimony from an ATF expert regarding his opinion as to the classification of Auto Key Cards as machineguns under Section 5845(b)," the ultimate determination is for the trier of fact. Id. at 11-12. Finally, the Government asserts that the NFA's restrictions on machineguns are supported by the Supreme Court's decision in District of Columbia v. Heller, which recognized the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" Id. at 12-13 (quoting 554 U.S. 570, 627 (2008)).

## III.   Legal Standard

Under Rule 7(c)(1), Federal Rules of Criminal Procedure (Rule(s)), an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"  The Eleventh Circuit Court of Appeals has articulated a three part test to determine the sufficiency of an indictment:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

United States v. Steele, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal citation and quotation omitted).  An indictment is generally sufficient "if it sets forth the offense in the words of the statute."  Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Adkinson, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment need do little more than track the language of the statute).  Indeed, the Eleventh Circuit has explained that an indictment that tracks the language of the statute is sufficient "as long as the language sets forth the essential elements of the crime."  United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983).  However, an indictment that follows the statute is nevertheless insufficient if it fails to adequately apprise the defendant of the charged offense.  United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006).  Thus, if an indictment tracks the language of the criminal statute, it

11

must include enough facts and circumstances to inform the defendant of the specific offense being charged.  United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003).   This is necessary "not only to give the defendant notice as guaranteed by the [S]ixth [A]mendment, but also to inform the court of the facts alleged to enable it to determine whether the facts are sufficient in law to support a conviction."  See Belt v. United States, 868 F.2d 1208, 1211 (11th Cir. 1989).  An indictment does not, however, have to "allege in detail the factual proof that will be relied upon to support the charges."  United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978).[6]  Additionally,

> [i]n ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes.  It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.

Sharpe, 438 F.3d at 1263 (internal citation and quotation omitted).  Notably, "[t]here is no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."  United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992).  However, "[i]t is perfectly proper, and in fact mandated, that [a] district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense."  United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983).

---

[6]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

## IV.   Discussion

### a. Failure to State an Offense

As his argument that the Government has "failed to state sufficient ultimate facts to allege a crime," Hoover recites allegations from the Third Superseding Indictment and the language of relevant statutes and then concludes, "[a]s pled, the Government has failed to state a crime against Mr. Hoover with its scattershot allegations." See First Motion at 8-9.[7]  It is unclear what Hoover means by the Government's "scattershot allegations" or on what legal basis he contends the Third Superseding Indictment fails "to state a crime."   Hoover cites Ocasio v. United States, 578 U.S. 282, 292 (2016), and contends that the case supports the proposition that "the Government is required to plead sufficient facts to allege that each conspirator must have 'specifically intended that some conspirator commit each element of the substantive offense.'"  First Motion at 8 (emphasis added).  But he provides no

---

[7]     Throughout the First Motion Hoover repeatedly objects that the Third Superseding Indictment fails to present "sufficient ultimate facts," is conclusory, and "fail[s] to state a crime."  See generally First Motion.  These arguments suggest that Hoover is attempting to invoke the civil pleading standards adopted in Bell Atlantic v. Twombly, 550 U.S. 554 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) to this criminal case.  Civil pleading standards simply are not applicable to assess the sufficiency of an indictment returned by a grand jury.  United States v. Vaughn, 722 F.3d 918, 926, 928-29 (7th Cir. 2013); United States v. Coley, No. CR415-187, 2016 WL 743432, at *1 (S.D. Ga. Feb. 23, 2016), report and recommendation adopted by 2016 WL 1032876 (S.D. Ga. Mar. 14, 2016).  Also Hoover's discussion in footnote 2 of the First Motion arguing that the Court may take judicial notice of certain facts in ruling on a motion to dismiss without converting the motion to one for summary judgment similarly appears to confuse the applicability of the Federal Rules of Civil Procedure with the rules that apply here, the Federal Rules of Criminal Procedure.

discussion of this proposition or its application to the specific circumstances here.  Id.  In Ocasio, the Supreme Court addressed a defendant's challenge to his conspiracy conviction, and in doing so described what the Government must prove at trial, not what it must plead in an indictment.  Ocasio, 578 U.S. at 292.  The Court determined that "[a] defendant may be convicted of conspiring to violate the Hobbs Act based on proof that he reached an agreement with the owner of the property in question to obtain that property under color of official right," id. at 300, a proposition with no apparent applicability here.  Indeed, it appears that Ocasio involves not only a different procedural posture than that of this case, but also addresses circumstances and charges not presented here.  Because Hoover does not articulate the basis or import of his contention that the Third Superseding Indictment contains "scattershot allegations," present legal authority supporting dismissal on those grounds, or cite factually or procedurally similar case law, the Court finds his argument to be entirely without merit.

Next, Hoover contends that the Government only alleges that the Auto Key Card was designed for use in converting a weapon into a machinegun once and merely recites the statute.  First Motion at 9-10.  According to Hoover, this is "insufficient as a matter of law."  Id. at 10.  However, Hoover's suggestion that the Government was required to plead the specific facts supporting its contention that the Auto Key Cards at issue fall within the definition of a

machinegun is inaccurate.  Here, Hoover is charged with violating 26 U.S.C. § 5861(e) which makes it a federal offense to transfer a firearm that is not registered in the National Firearms Registration and Transfer Record.  The relevant inquiry on a motion to dismiss an indictment is whether the indictment "presents the elements of the charged offense." See Steele, 178 F.3d at 1233-34. Thus, the question is whether the Government has alleged the elements of a violation of 26 U.S.C. § 5861(e).  While § 5845(b) provides the definition of what constitutes a machinegun, which in turn, falls within the definition of a firearm for purposes of § 5861, that does not transform factual allegations of how the object at issue falls within the definition of a machinegun into an additional element necessary to charge a violation of § 5861.  Indeed, Hoover cites no authority supporting his argument that factual allegations satisfying this definitional section are required to be included in an indictment.  Notably, another district judge in this circuit has rejected such a contention. See United States v. Hassoun, 477 F. Supp. 2d 1210, 1227 n. 9 (S.D. Fla. 2007)[8] ("Failure to specifically cite to, or include the text of a definitional provision in an Indictment's count does not render it insufficient.") (citing United States v. Pennington, 168 F.3d 1060, 1065 (8th Cir. 1999)).  The Third Superseding

---

[8]      The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Indictment in this case alleges the elements of the offense in the language of the statute and alleges that the Auto Key Cards

> into which were etched the design for machinegun conversion devices . . . constituted machineguns as defined in 26 U.S.C. § 5845(a) and § 5845(b) in that they are a combination of parts designed and intended for use in converting a weapon into a machinegun.

See Third Superseding Indictment at 2.  This is sufficient.

Hoover's "plus factor" argument is equally unavailing.  The Eleventh Circuit's decision in United States v. Hammond, 371 F.3d 776, 780 (11th Cir. 2004), on which Hoover relies in support of this argument, is inapplicable here for two reasons.

First, the procedural posture of Hammond makes its holding inapposite. In Hammond, the Eleventh Circuit reviewed a trial court's post-trial decision to grant a defendant's motion for judgment of acquittal after the jury convicted him of both making and possessing a firearm in violation of 26 U.S.C. §§ 5845, 5822, 5861(f).  Id. at 777.  In affirming the trial court's decision, the Eleventh Circuit determined that "[t]he evidence was insufficient to permit the jury to find beyond a reasonable doubt that Hammond's device was designed as a weapon" such that it fell within the definition of a firearm.  Id. at 782.  This determination that the evidence produced at trial was insufficient to support the defendant's conviction, lends no support for Hoover's request to dismiss the Third Superseding Indictment at this pre-trial stage of the proceedings.  See

16

United States v. Baxter, 579 F. App'x 703, 705 (11th Cir. 2014)[9] ("[There is] no summary judgment procedure in criminal case. Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence." (quoting Critzer, 951 F. 2d at 307)).

Second, the Eleventh Circuit's determination that to sustain a conviction in Hammond the government was required to present proof that the device made and possessed by Hammond was an "explosive plus proof that it was designed as a weapon," id. at 780, simply has no application here. Hammond was charged with "making and possessing of a 'firearm' without first registering, paying tax on, and obtaining approval to make and possess the firearm" in violation of 26 U.S.C. § 5822, 5861(f). Id. at 779-80. The "firearm in question" was an explosive device, specifically

> a cardboard tube, approximately thirteen inches long and one-and-one half inches in diameter. The circular wall of this tube was made of ten layers of industrial grade cardboard and was approximately three-eighths of an inch thick. The inside of the tube was filled with a mixture of approximately nine ounces of pyrodex, an explosive powder, ground pyrodex, and smokeless gunpowder. The ends of the cardboard tube were crimped and dipped in liquid candle wax. The whole device was re-enforced with three layers of different types of tape. A green fuse, wrapped in aluminum foil, was placed through one of the ends and ran to the center of the device.

---

[9]    The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Id. at 778.  As relevant to the charges against Hammond, the term "firearm" includes a destructive device, which in turn is defined as, among other things, any explosive device.  Id. at 780.  However, the definition of a "destructive device" specifically excludes any explosive device "which is neither designed nor redesigned for use as a weapon."  See id.; see also 26 U.S.C. § 5845(f).  The Government's theory in Hammond was that the cardboard tube was a destructive device that constituted a firearm.  371 F.3d at 780.  Although the government presented evidence that the object was an explosive device, it failed to present evidence that it was designed for use as a weapon.  Id.  The Eleventh Circuit explained that because the definition of a destructive device excluded from coverage "any explosive device not designed for use as a weapon," a device would not fall under the statutory framework regulating firearms merely because it explodes.  Id.  Instead, "[s]tatutory coverage depends upon proof that a device is an explosive plus proof that it was designed as a weapon."  Id.  As such, the Eleventh Circuit concluded that "[n]o explosive can constitute a destructive device within the meaning of the statute unless it has this 'plus' factor."  Id. (emphasis added).

The Government's theory here is not that Hoover transferred an unregistered "destructive device" as defined in 26 U.S.C § 5845(f) but instead an unregistered "machinegun" as defined in 26 U.S.C. § 5845(b).  See Third Superseding Indictment at 2.  Thus, Hammond's "plus factor" analysis has no

applicability.  Moreover, to be a machinegun under the statute, an object must be a "weapon."  26 U.S.C. § 5845(b) ("The term 'machinegun' means <u>any weapon</u> . . . ") (emphasis added).  Proof that a device is a "machinegun" – i.e. a "weapon" renders additional proof that it would be unnecessary and entirely redundant.  Hoover's attempt to extend the Eleventh Circuit's holding in <u>Hammond</u> to apply to devices which constitute a firearm because they fall within the definition of a machinegun is unavailing.  The Government is not required to allege or prove a "plus factor" to support a conviction here.

The Court next turns to Hoover's contention that the Government has "conclusively demonstrated that the Auto Key Cards are not machinegun conversion devices as a matter of law because as pled in the Indictment, the Auto Key Card is not a 'part' or 'combination of parts.'"  First Motion at 12-13.  Hoover maintains that "[t]o embrace the Government's position that a card with a design on it is a 'part' – or even more absurdly, that a single card is a 'combination of parts' – under § 5845 (b) would be to ignore the plain and ordinary language of the word."  <u>Id.</u> at 14.  This argument, of course, is really a challenge to the sufficiency of the evidence in support of the charge which is improper at this stage of the proceeding.  This is so because the Rules provide no such summary judgment type remedy.  <u>See</u> <u>United States v. Salman</u>, 378 F.3d 1266, 1268 (11th Cir. 2004) ("There is no summary judgment procedure in criminal cases.") (quoting <u>Critzer</u>, 951 F.2d at 307).

Notably, in <u>Salman</u>, the Eleventh Circuit reversed a district court's decision to dismiss an indictment based on a similar challenge to merits of the charges. <u>See</u> 378 F.3d at 1267.  In that case, the defendant was charged under a statute that required proof he was "illegally or unlawfully in the United States."  <u>Id.</u>  The defendant "filed a motion to dismiss the indictment, maintaining that he was not 'illegally or unlawfully' in the United States, as a matter of law, at the time of his arrest."  <u>Id.</u>  Based on the undisputed facts, the district court agreed and dismissed the indictment.  <u>Id.</u>  On appeal, the Eleventh Circuit reversed the district court's decision and instructed that "[b]y looking beyond the face of the indictment and ruling on the merits of the charges against [the defendant], the district court in effect granted summary judgment in favor of the defendant."  <u>Id.</u> (citations omitted).  The court explained that

> the government is entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. A motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure.

<u>Id.</u>; <u>see also</u> <u>United States v. Ershova</u>, 791 F. App'x 158, 162 (11th Cir. 2019). ("Although [the defendant] argues her conduct did not constitute a violation of § 1542 in that her notarization was not a 'statement,' that argument is outside the scope of a motion to dismiss.").

Here, Hoover argues that his conduct did not constitute a violation of § 5861 because his product was not a machinegun "part" or "combination of parts" as a matter of law.  See First Motion at 12-14.  This argument does not go to the sufficiency of the allegations of the Third Superseding Indictment but rather the sufficiency of the charge.  See Ershova, 791 F. App'x at 162.  The Court declines, on a motion to dismiss, to determine whether the facts as presented meet the definition of a machinegun part under 26 U.S.C. § 5845(b) as a matter of law.  As Salman instructs, the "sufficiency of a criminal indictment is determined from its face.  The indictment is sufficient if it charges in the language of the statute."  Id.  Here, as discussed above, the Third Superseding Indictment does just that.  It is sufficient on its face and Hoover's contention otherwise is unavailing.

To the extent Hoover argues that the aiding and abetting charges pursuant to 18 U.S.C. § 2 should be dismissed because the substantive charges are insufficient, his argument fails because the Court finds that the Third Superseding Indictment is sufficient as to the substantive charges.

**b. Vagueness**

The Court turns next to Hoover's constitutional challenges.  Hoover contends that as applied to him, 26 U.S.C. §§ 5861(e) and 5871, and 18 U.S.C. § 2, are unconstitutionally vague.  First Motion at 15.  In support, Hoover seems

21

to focus his challenge on the definition of "machinegun" found in 26 U.S.C. § 5845(b) as applied to the facts of his case.  See id. at 15-21.

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  United States v. Fisher, 289 F.3d 1329, 1333 (11th Cir. 2002) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)).  "The first step in a vagueness inquiry is to examine the plain language of the statute.  The touchstone of the inquiry is the meaning of the statute in light of common understanding and practice."  United States v. Wayerski, 624 F.3d 1342, 1347 (11th Cir. 2010) (internal quotations omitted and citation omitted).  However, Hoover does not address any particular language in the statute. Instead, he simply asserts that "[i]n no event would a reasonably intelligent person foresee that the conduct charged in this case – talking about a card with a drawing on it – would be deemed criminal."  First Motion at 15.[10]

---

[10]    Notably, Hoover fails to cite or apply authority regarding the void for vagueness doctrine and instead cites to cases addressing ambiguity.  "[V]agueness and ambiguity are different legal concepts."  See Rafferty v. Denny's, Inc., 13 F.4th 1166, 1199 (11th Cir. 2021) (Luck, C. J., concurring). It is also worth noting that many circuit courts that have addressed vagueness challenges to the language in § 5845(b) have found the statute to be constitutional. See Akins v. United States, 312 F. App'x 197, 200 (11th Cir. 2009) ("Section 5845(b) also is not unconstitutionally vague . . . [u]se of the word 'function' instead of 'pull' to reference the action taken by a gunman to commence the firing process is not so confusing that a man of common intelligence would have to guess at its meaning."); see also United States v. Campbell, 427 F.2d 892, 893 (5th Cir. 1970) (finding the language "any combination of parts designed and intended for use in converting a weapon into a machine gun" is not unconstitutionally vague); see also United States v. Carter, 465 F.3d 658, 664 (6th Cir. 2006) (holding § 5845(b) does not

Absent explanation regarding how the ordinary meaning of the language in the statute failed to put Hoover on notice that his conduct was prohibited, Hoover's statutory vagueness argument fails.

This argument also fails for a second reason. Hoover's challenge to whether the conduct he engaged in constitutes a crime more accurately raises an issue of fact for resolution by the jury – whether the device at issue constitutes a machinegun under § 5845(b). See United States v. Jimenez, 191 F. Supp. 3d 1038, 1040 (N.D. Cal. 2016). In Jimenez, the defendant was similarly charged under statutes that incorporate the definition of machinegun found in § 5845(b). See id. at 1040. As relevant here, the defendant moved to dismiss the charges arguing, amongst other things, that the laws were unconstitutionally vague as applied to him specifically with regard to the meaning of the term "machinegun." Id. at 1045. The court rejected his argument finding that while the defendant framed his attack as a vagueness challenge, what he really raised was a question of fact. Id. at 1045-46. The court found that such issues of fact were not suitable for resolution on a motion to dismiss the indictment. Id. In doing so, the court first noted that it could not

---

present risk that "ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement."); United States v. Olofson, 563 F.3d 652, 660 (7th Cir. 2009) ("To the extent Olofson contends that the statutes are fatally vague due to the way "automatically" is used in the incorporated definition of "machinegun" from § 5845(b), we disagree."); see also United States v. McCauley, 601 F.2d 336, 340 (8th Cir. 1979).

conclude on the record before it that the term "machinegun" was vague as applied to the defendant where if he had read § 5845(b) prior to purchasing the receiver he would have been "on notice that his conduct could be proscribed because what he was about to purchase could be a 'part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun.'" Id. at 1046.  Next, the court concluded that "[w]hether the evidence ultimately shows that the lower receiver he bought fits that definition is a question that the Court cannot answer on a motion to dismiss.  That is for the trier of fact to decide."  Id. (internal citation omitted); see also United States v. Was, 684 F. Supp. 350, 354 (D. Conn. 1988), aff'd, 869 F.2d 34 (2d Cir. 1989) ("Whether the auto sears allegedly sold by defendants are in fact 'designed and intended for use in converting a weapon into a machinegun' is, therefore, a question for proof at trial and cannot be decided as a matter of law.").

Like the Jimenez defendant, Hoover also improperly characterizes his argument as a vagueness challenge.  He contends that

> [a]s pled in the Indictment, the Government defined Auto Key Cards as "cards machined from stainless steel, into which were etched the design for machinegun conversion devices."  Even looking at the Government's vague and conclusory pleading liberally, the Auto Key Card would require significant transformative labor and machining of the card to cause it to fit into the rear internal area of the receiver, where the machinegun automatic sear would be installed.

First Motion at 20-21.  His argument is not that the statute is vague but that his object does not fall within the statutory definition.  In so arguing, however, he ignores that the Government alleges that Hoover knew that a lightning link was capable of being cut from the design on the Auto Key Cards and placed into an AR-15 style rifle to convert it into a machinegun.  <u>See</u> Third Superseding Indictment at 4-5 ("In the video, titled 'Is this An ATF Trap And How Does It Work,' Hoover described how to order an Auto Key Card and further described how to cut the lightning link from the Auto Key Card and install it into an AR-15 style rifle, thus converting the AR-15 style rifle into a machinegun.").  As with the receiver in <u>Jimenez</u>, whether the Auto Key Cards sold by Ervin constitute a "part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun," is a question of fact for the jury, not a question to be resolved by the Court on a motion to dismiss.

Perplexingly, in the First Motion, Hoover discusses <u>Chevron</u> deference at some length, suggesting a fundamental misunderstanding of either the charges at issue here or the applicability of <u>Chevron</u> deference.  <u>See</u> First Motion at 15-20.  As the Eleventh Circuit Court of Appeals has explained, "<u>Chevron</u> deference applies only when 'Congress delegated authority to the agency generally to make rules carrying the force of law, <u>and</u> the agency interpretation claiming deference was promulgated in the exercise of that authority.'"  <u>CSX Corp. v.</u>

<u>United States</u>, 18 F. 4th 672, 685 (11th Cir. 2021).  Here, the Government does not charge or allege that the Auto Key Cards at issue fall within the definition of the term firearm – such that they must be registered – based on a regulation promulgated by the ATF or any other government agency.  Rather, the government charges that the Auto Key Cards at issue fall within the definition of the term "machinegun" under § 5845(b) and for that reason are firearms that must be registered.  Third Superseding Indictment at 2.  Section 5845 is a federal statute enacted by Congress, not a regulation promulgated by an agency.[11]  Hoover's reliance on the Supreme Court's recent decision in <u>W. Virginia v. Env't Prot. Agency</u>, 142 S. Ct. 2587 (2022), which addressed whether the Environmental Protection Agency's issuance of a new rule that required existing coal fired power plants to "reduce their own production of electricity, or subsidize increased generation by natural gas, wind, or solar sources," was within the power granted to it by the Clean Air Act, <u>see</u> 142 S. Ct. at 2599, is similarly misplaced.  Because the definition at issue here was not based on a regulation promulgated by a government agency, authority addressing an

---

[11]     Equally concerning is Hoover's argument about <u>Chevron</u> deference in which he cites <u>Gun Owners of America, Inc. v. Garland</u>, 19 F. 4th 890, 901 (6th Cir. 2021) for the proposition that "<u>Chevron</u> does not displace the rule of lenity."  First Motion at 18.  What the court actually said in <u>Gun Owners</u> was "the rule of lenity does not displace <u>Chevron</u> simply because an agency has interpreted a statute carrying criminal penalties."  Counsel is reminded of the duty of candor to the Court and the importance of accurately reciting the holdings of a case in court filings.

agency's promulgation of rules is not relevant to the charges brought against Hoover or the resolution of his Motions to Dismiss.

Even if Hoover raised a true vagueness challenge to § 5845, the Eleventh Circuit has suggested that a vagueness challenge presented in a motion to dismiss is premature.  See United States v. Ferguson, 142 F. Supp. 2d 1350, 1355 (S.D. Fla. 2000) (citing United States v. Baker, 19 F.3d 605 (11th Cir. 1994)) ("The Eleventh Circuit looked to the particular evidence adduced at trial in assessing whether or not § 1957 was constitutionally void due to vagueness as applied.  Thus, Defendant's vagueness challenge should properly be raised through a Rule 29 motion for judgment of acquittal, when the Court can assess whether a reasonable person would have understood that the conduct adduced to prove the offenses was prohibited by § 1957.").  As such the Court declines to address it here.  For all these reasons, the Court finds that Hoover's purported vagueness challenge provides no basis for the dismissal he seeks.

### c. Taxing and Spending Clause

Hoover next argues that § 5845, enacted pursuant to Congress' authority under the Taxing and Spending Clause, "is unconstitutional as applied" to him. First Motion at 22 (emphasis added).  "An as-applied challenge addresses whether a statute is unconstitutional on the facts of a particular case." United States v. Madison, 337 F. Supp. 3d 1186, 1194–95 (M.D. Fla. 2018) (citing United States v. Vickers, 578 F.2d 1057, 1058 (5th Cir. 1978)).  However,

Hoover's argument that "the government is acting outside the limits of the taxing and spending clause" is not tied to any fact-specific discussion.  <u>See</u> First Motion at 21-22.  Moreover,

> [a]n as-applied challenge to the constitutionality of a statute generally cannot be raised in a pretrial motion to dismiss, since it necessary [sic] involves an examination of the facts of the case.  <u>See United States v. Pope</u>, 613 F.3d 1255, 1260-61 (10th Cir. 2010) (ruling that district court was unable to properly resolve defendant's pretrial motion to dismiss indictment where defendant claimed that his charge under 18 U.S.C. § 922(g)(9) was unconstitutional under Second Amendment because he possessed guns only for defense of self, family, and property).

<u>United States v. Thomas</u>, No. 1:18-CR-141-MLB-AJB, 2021 WL 3674123, at *18 (N.D. Ga. May 17, 2021), <u>report and recommendation adopted</u>, No. 1:18-CR-141-MLB, 2021 WL 2886015 (N.D. Ga. July 9, 2021).

To the extent Hoover appears to argue that the statute is unconstitutional as applied because the machineguns are unlawful and cannot be taxed, <u>see</u> First Motion at 22, this argument is precluded by Eleventh Circuit precedent.  <u>See United States v. Spoerke</u>, 568 F.3d 1236, 1245-46 (11th Cir. 2009) ("A statute does not cease to be a valid tax measure because it deters the activity taxed, because the revenue obtained is negligible, or because the activity is otherwise illegal.").   In <u>Spoerke</u>, the Eleventh Circuit determined that the constitutionality of the NFA as applied to the defendant did not depend on whether he could legally possess the pipe bombs at issue.  <u>Id.</u>  Thus, Hoover's as-applied challenge under the Taxing and Spending Clause is due to be denied.

Insofar as Hoover's argument is actually a facial challenge to the "charged statute," this too fails.  "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself."  See United States v. Frandsen, 212 F.3d 1231, 1235 (11th Cir. 2000) (citing Jacobs v. Florida Bar, 50 F.3d 901, 905–06 (11th Cir. 1995)).   The Eleventh Circuit has determined that "[t]he National Firearms Act is facially constitutional," pursuant to Congress' taxing power.  Spoerke, 568 F.3d at 1245 ("Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons.") (quoting United States v. Ross, 458 F.2d 1144, 1145 (5th Cir. 1972)); see also United States v. Bolatete, 977 F.3d 1022, 1030 (11th Cir. 2020).  Accordingly, the First Motion is due to be denied to the extent Hoover argues the NFA exceeds Congress' Taxing and Spending power.[12]

---

[12]   Hoover's argument that "the government will not accept the payment of the tax required by the charged statute, and yet nonpayment presents serious criminal consequences and permanent deprivations of liberty," see First Motion at 22, appears to present a due process challenge similar to that presented in United States v. Dalton, 960 F.2d 121, 123 (10th Cir. 1992).  In Dalton,

> John Dalton, an attorney, accepted a firearm as a fee from a client, who was a licensed firearms dealer and who had converted the weapon into a machinegun in 1989. Dalton was found guilty of possessing and transferring an unregistered firearm in violation of the National Firearms Act, I.R.C. §§ 5861(d), (e) (NFA). A separate criminal statute prohibits the possession of any machinegun made after that statute's effective date in 1986. 18 U.S.C. § 922(o) (1988). It is undisputed that the government will not permit the registration of machineguns covered by section 922(o), and will not accept the tax which would otherwise be required by the registration requirements of the National Firearms Act. Dalton contends that due process bars his conviction under a statute which punishes his failure to register when that registration is precluded by law.

### d. Overbroad and Underinclusive

In the Second Motion, Hoover additionally argues that "[f]acially and as applied, 26 U.S.C.[ ] § 5845(b) is a content-based restriction that is simultaneously over broad and underinclusive." Second Motion at 3. Under the "First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." United States v. Williams, 553 U.S. 285, 292 (2008). On the other hand, "[u]nderinclusivity creates a First Amendment concern when the State regulates one aspect of a problem while declining to regulate a different aspect of the problem that affects its stated interest in a comparable way." Williams-Yulee v. Fla. Bar, 575 U.S. 433, 451 (2015). Both doctrines address statutes that regulate protected speech, implicating the First Amendment. The Court finds that the statute at issue here does not implicate the First Amendment and these doctrines are inapplicable.

The statute which Hoover is charged with violating, conspiring to violate, and aiding and abetting the violation of, 26 U.S.C. § 5861(e), prohibits the

---

Id. at 122. The Tenth Circuit agreed and vacated Dalton's conviction and remanded the case with instruction to dismiss the indictment. However, the Eleventh Circuit has declined to follow the Tenth Circuit's holding in Dalton and recognized that other circuits have rejected the court's reasoning in Dalton as well. See United States v. Rivera, 58 F.3d 600, 602 (11th Cir. 1995) ("Moreover, the Fourth, Fifth, and Seventh Circuits have rejected the reasoning of Dalton, even in cases involving machine guns. All three circuits have upheld convictions under § 5861(d) for possession of machine guns, notwithstanding that 18 U.S.C. § 922(o) makes registration of machine guns impossible.").

transfer of unregistered machineguns. This statute contains no speaker-focused or content-based restrictions on speech. See Otto v. City of Boca Raton, Fla., 981 F.3d 854, 861 (11th Cir. 2020) (regulation of non-expressive conduct rather than speech does "not implicate the First Amendment at all."). Section 5861 prohibits the act of transferring an unregistered firearm and § 5845 defines the term firearm. Included amongst the items which falls within the definition of the term "firearm" is a machinegun which is defined in § 5845(b). The terms of § 5861 stand in stark contrast to Florida's Firearm Owners' Privacy Act, Chapter 2011–112, Laws of Florida (codified at Fla. Stat. §§ 790.338, 456.072, 395.1055, & 381.026) (FOPA) which was found to implicate the First Amendment. See Wollschlaeger v. Governor, Fla., 848 F.3d 1293, 1302–03 (11th Cir. 2017). The FOPA contained the following provisions:

> The record-keeping provision, § 790.338(1), states that a doctor or medical professional "may not intentionally enter any disclosed information concerning firearm ownership into [a] patient's medical record" if he or she "knows that such information is not relevant to the patient's medical care or safety, or the safety of others." The inquiry provision, § 790.338(2), states that a doctor or medical professional "should refrain from making a written inquiry or asking questions concerning the ownership of a firearm or ammunition by the patient or by a family member of the patient, or the presence of a firearm in a private home" unless he or she in "good faith believes that this information is relevant to the patient's medical care or safety, or the safety of others[.]" The anti-discrimination provision, § 790.338(5), states that a doctor or medical professional "may not discriminate against a patient based solely" on the patient's ownership and possession of a firearm. The anti-harassment provision, § 790.338(6), states that a doctor or medical professional "should refrain from unnecessarily harassing

a patient about firearm ownership during an examination."

Id. at 1302–03.  In evaluating that statute, the Eleventh Circuit held "that the record-keeping, inquiry, and anti-harassment provisions of FOPA constitute speaker-focused and content-based restrictions on speech."  Id. at 1307. Specifically, "[t]he record-keeping and inquiry provisions expressly limit the ability of certain speakers—doctors and medical professionals—to write and speak about a certain topic—the ownership of firearms—and thereby restrict their ability to communicate and/or convey a message."  Id.  The court found,

> [t]he anti-harassment provision also limits speech on the basis of its content. Although it is certainly possible to harass through conduct, see, e.g., Black's Law Dictionary 831 (10th ed. 2014), we think the limiting text of the anti-harassment provision ("during an examination") is more normally read in this medical setting to refer to questions or advice to patients concerning the subject of firearm ownership.

Id.  The relevant statutes here are not "content-based restrictions" as Hoover suggests, and as such, Hoover's arguments that they are overbroad and under inclusive are without merit.

### e.  New York State Rifle & Pistol Ass'n, Inc. v. Bruen

According to Hoover, in light of the Supreme Court's recent decision in Bruen, "the Government has the burden to prove that the regime in question is consistent with the history and tradition of firearms regulation in this country around the founding era."  Second Motion at 8.  In New York State Rifle & Pistol Ass'n, Inc. v. Bruen, the Supreme Court held that "the Second and Fourteenth

Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. 2111, 2122 (2022). Because the State of New York only issued public-carry licenses when an applicant demonstrated a special need for self-defense, the Supreme Court found "the State's licensing regime violates the Constitution." Id. In doing so, the Supreme Court reiterated the standard for applying the Second Amendment stating:

> [w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 2129-30. As the Government points out, the Supreme Court's holding in Bruen did not overturn D.C. v. Heller, in which the Court recognized the importance of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. 570, 627 (2008) (citations omitted). The Heller Court struck down a law prohibiting handgun possession, but in doing so noted that the Second Amendment "only protects the right to own certain weapons, and it 'does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes.'" United States v. Henry, 688 F. 3d 637, 639-40 (9th Cir. 2012) (quoting Heller, 554 U.S. at 625). The Court "did not specify the types of weapons that qualify as 'dangerous and unusual,' but the Court suggested that it would be 'startling' for the Second Amendment to protect

machineguns." Id. at 640 (citing Heller, 554 U.S. at 624).  Notably, "[s]ince Heller was decided, every circuit court to address the issue has held that there is no Second Amendment right to possess a machine gun." Id. (citing United States v. Allen, 630 F.3d 762, 766 (8th Cir. 2011); United States v. Marzzarella, 614 F.3d 85, 94–95 (3d Cir. 2010); Hamblen v. United States, 591 F.3d 471, 472, 474 (6th Cir. 2009); United States v. Fincher, 538 F.3d 868, 874 (8th Cir. 2008), cert. denied, 555 U.S. 1174, 129 S.Ct. 1369, 173 L.Ed.2d 591 (2009)); see also United States v. Zaleski, 489 F. App'x 474, 475 (2d Cir. 2012) (relying on Heller to find that "the Second Amendment does not protect [the defendant's personal possession of machine guns."); see also Hollis v. Lynch, 827 F.3d 436, 448-41 (5th Cir. 2016) ("Machine guns are dangerous and unusual and therefore not in common use.  They do not receive Second Amendment protection . . .").  Hoover provides no basis for concluding that the Supreme Court's decision in Bruen would undermine this line of authority.  Thus, to the extent Hoover contends "nothing in the applicable history and tradition of the United States supports the categorical ban of machineguns," see Second Motion at 9, his argument is unavailing.

In sum, the Court finds that the Government's allegations in the Third Superseding Indictment present the essential elements of the charged offenses, notify Hoover of the charges to be defended against, and enable him to rely upon a judgment under the Third Superseding Indictment as a bar against double

jeopardy. <u>See</u> <u>Steele</u>, 178 F.3d at 1233-34. To the extent Hoover presents a vagueness challenge, his argument raises factual issues to be resolved by the jury. The Court further finds Hoover's Taxing and Spending Clause argument to be foreclosed by Eleventh Circuit precedent and his First Amendment challenges to be misplaced. Finally, Hoover's contention that the Supreme Court's holding in <u>Bruen</u> suggests that the statutes at issue violate the Second Amendment is unsupported by the relevant authority. Accordingly, the Motions are due to be denied.

In light of the foregoing, it is

**ORDERED:**

Defendant Matthew Raymond Hoover's Motion to Dismiss (Doc. 132) and Motion to Dismiss for First and Second Amendment Violations & To Declare Unconstitutional the National Firearms Act of 1934 (Doc. 133) are **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida, this 18th day of October, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc28

Copies to:
Counsel of Record

35