UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                           CASE NO. 3:21-cr-22(S3)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE TRIAL TESTIMONY
OF DEFENDANTS' PROPOSED EXPERT WITNESSES**

In anticipation of trial in this case, defendant Ervin[1] has disclosed retired ATF Special Agent Daniel O'Kelly as a purported expert witness "regarding several areas related to firearms generally, ATF procedures and investigation techniques, the rules and regulations that govern machineguns and the National Firearms Act generally, the use and function of 'lightning links', and specifically the items alleged by the Government to be machine guns or 'lightning links'." Doc. 165. Defendant Hoover disclosed Hill Redwine as a purported expert witness "as to the mechanical necessities to manufacture a machinegun [and] the relative ease with which one could manufacture a 'lightning link' with a variety of means." Doc. 167.

These notices do not comply with the disclosure requirement of Fed. R. Crim. P. 16(b)(1)(C)[2] because they fail to include summaries of Mr. O'Kelly's and

---

[1] Previously, defendant Hoover had also advanced Mr. O'Kelly as a proposed expert witness for trial, however, defendant Hoover did not join defendant Ervin's disclosure of Mr. O'Kelly in this round of disclosures nor make his own independent disclosure of Mr. O'Kelly. Thus the government assumes that defendant Hoover has abandoned Mr. O'Kelly as a proposed expert.

[2] Rule 16(b)(1)(C) was amended as of December 1, 2022, to require a more detailed

Mr. Redwine's opinions and the bases and reasons for those opinions. Furthermore, defendants have failed to carry their burden to establish any of the three prongs of the Eleventh Circuit's test for admissibility of expert testimony as to either expert. The United States moves *in limine* to exclude the proposed testimony from trial, except as specified below, on the grounds that defendants have not complied with Rule 16, and because the proposed experts do not actually possess expertise in the proposed fields, have not demonstrated that the proffered opinions are based on any sort of reliable principle or method, and on the ground that the proposed testimony would not help the jury understand the evidence or decide facts in issue.

## BACKGROUND

As relevant to the proposed testimony of the purported experts, defendants are charged with conspiring to violate the National Firearms Act (NFA) by transferring unregistered machinegun conversion devices that they referred to as "Auto Key Cards" as well as substantive violations of the NFA. Doc. 57. As described in the operative indictment, "Auto Key Cards . . . consisted of cards machined from stainless steel, into which were etched the design for machinegun conversion devices known as lightning links, which constituted machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b)." *Id.* at 2.

---

disclosure of proposed expert witnesses. The government's disclosures were made under the previous version of the rule. As a matter of fairness, the government has no objection to defendant's disclosures being held to the standard of the previous version of Rule 16.

I.   **Defendant Ervin's Disclosure of Mr. O'Kelly**

Defendant Ervin's disclosure of Mr. O'Kelly appears to be kept deliberately vague, including a proposal that he "testify regarding several areas related to firearms generally." Doc. 165 at 2. It is impossible to evaluate whether Mr. O'Kelly possesses expertise in "several areas related to firearms generally," and whether that testimony has any relevance to this case. With regard to Mr. O'Kelly's proposed testimony about the "rules and regulations that govern machineguns and the National Firearms Act generally," defendant Ervin's disclosure provides no basis for concluding that Mr. O'Kelly possesses any expertise in this area. Rather, the disclosure focuses on Mr. O'Kelly's level of knowledge with regard to firearms interstate nexus, "firearms technology determinations" (a term that is undefined), and training law enforcement officers regarding firearms. Doc. 165 at 2. Defendant Ervin flatly proposes that Mr. O'Kelly "can also discuss with the jury the role and function of Federal Firearms Licensees and payers of Special Occupation Tax" and "explain to the jury the law surrounding the National Firearms Act, including the process, procedure, and regulations regarding the National Firearms Act and the Gun Control Act." *Id.* at 4. Nowhere does defendant reveal where Mr. O'Kelly would have obtained such specialized, expert-level knowledge.

Mr. O'Kelly may be qualified to testify about "the basic function of firearms, how they work, and the function of the various parts of the firearm," *id.* at 3, although it is unclear why this testimony will be necessary, because the government intends to explain these things through its own witnesses in its case in chief.

Finally, defendant Ervin proposes that Mr. O'Kelly be permitted to testify "based on his decades of firearm experience, training in NFA and non-NFA Firearms, training specific to machineguns, and myriad of other training and experience that the devices alleged by the Government to be machineguns would not function as such without substantial machining and modification." *Id.* at 4. Defendant does not explain what training and experience Mr. O'Kelly possesses in lightning links that would qualify him to render such an opinion, nor does defendant disclose the source of the "detailed copies, specifications, photographs, and measurements of the devices the government has alleged are machineguns" upon which Mr. O'Kelly relies. *Id.* Despite being given numerous opportunities, Mr. O'Kelly has not personally examined the physical evidence in this case. Defendant Ervin discloses no information about the training or sources that Mr. O'Kelly relied upon and provides no report that would explain his conclusions. Defendants provide only Mr. O'Kelly's CV in support of his purported expertise. *See generally* Doc. 56-1. Mr. O'Kelly's CV provides no basis for concluding that he possesses expert-level specialized knowledge on the topics of his proposed testimony, with the exception of his testimony on the mechanistic functioning of firearms.

## II. Mr. O'Kelly's Previous Statements About Auto Key Cards

Although defendants disclose no details about Mr. O'Kelly's opinions or their basis, Mr. O'Kelly has previously described his views on Auto Key Cards. In March 2021, Mr. O'Kelly participated in an interview that was posted to the YouTube channel "GunGuyTV" in which he discussed Auto Key Cards and this

prosecution.[3]  In that video, Mr. O'Kelly explained that lightning links had been classified as machineguns by ATF "decades ago," and that they "fall under . . . definition 3 of a machinegun, that is, any device solely and exclusively designed and intended to convert a semi-automatic to a machinegun, or to fire full automatic, same thing."  GunGuyTV, "ATF is at it again! Interview with Dan O'Kelly" at 3:00-3:30, *available at* https://www.youtube.com/watch?v=zydbHNMLG4k (attached as Exhibit A to Doc. 118).  Mr. O'Kelly went on to say that ATF was relying on a "concept called indexing," which Mr. O'Kelly described as the idea that if you scribed a line where a fold or cut should be, or dimpled metal where a hole should be drilled to complete an illegal device, that was the same as folding, cutting, or drilling the item, which Mr. O'Kelly stated he found "ridiculous."  *Id.* at 5:00-5:30.  Mr. O'Kelly explained that his opinion is based on his perception that "there's a big difference between putting a dimple on a piece of metal and drilling a hole that actually does you any good."  *Id.* at 5:30-5:37.  Mr. O'Kelly then went on to discuss that ATF "was actually shot down on this issue in federal court in the *United States v. Prince* case years ago," presumably referring to *United States v. Prince*, 2009 WL 1875709, No. 09-10008-JTM (D. Kan. 2009), *reversed on other grounds in United States v. Prince*, 593 F.3d 1178 (10th Cir. 2010).  *Id.* at 5:37-6:57.  Mr. O'Kelly then stated

---

[3] Mr. Ervin was arrested and charged by criminal complaint on March 3, 2021.  Doc. 2.  Mr. O'Kelly's GunGuyTV interview was posted to YouTube on March 31, 2021, although it is unclear exactly what date the interview was recorded.

that "ATF has been, uh, remand – reprimanded – you know, put in their place on this indexing issue, but they stick to it."  *Id.* at 6:57-7:04.

At that point in the interview, the host of GunGuyTV inquired of Mr. O'Kelly how much of ATF's actions in this area are "political" and Mr. O'Kelly responded that it was "a lot of times."  *Id.* at 7:05-7:28.  After some further discussion, Mr. O'Kelly stated that he was personally bothered that when an item is "in a gray area" ATF "seem[s] to always lean toward the 'you can't have it' or, 'yeah we're gonna call it NFA' when they don't have to."  *Id.* at 8:30-8:54.

Later in the interview, the host of GunGuyTV inquired of Mr. O'Kelly "what do you think the odds are of them actually convicting this poor guy over this Auto Key Card thing?"  *Id.* at 10:20-10:26.  Mr. O'Kelly responded that he believed it would depend on "whether the judge that hears the case – or the jury that hears the case – is pro-gun or anti-gun."  *Id.* at 10:27-10:35.

In other words, Mr. O'Kelly has previously expressed his opinions that (1) lightning links *are* machineguns and have been classified as such by ATF for "decades," (2) implied that he believes that Auto Key Cards are in a "gray area" in terms of whether they are NFA items, and (3) explained that his opinion that Auto Key Cards are not sufficiently completed to be classified as machineguns is based on the *Prince* case.  Notably, Mr. O'Kelly developed his opinions about Auto Key Cards within weeks of the initiation of this prosecution and prior to the production of the vast majority of the discovery to the defense.

6

### III.  Defendant Hoover's Disclosure of Mr. Redwine

Defendant Hoover has disclosed Hill Redwine as a purported expert. Doc. 167. Defendant Hoover identifies Mr. Redwine as "the owner of H&M Gunworks" and states that he has an unspecified number of "years of experience as a firearms designer, with experience manufacturing, designing, and reverse engineering machineguns as well as other firearms." *Id.* at 1. For a more full discussion of Mr. Redwine's training and qualifications, Defendant Hoover refers to an attached CV, which lays out Mr. Redwine's background in well fewer than 100 words. *Id.* at Exhibit-A. None of those words is "machinegun." *Id.* Based on his claimed expertise, Mr. Redwine is proposed to testify "as to the mechanical necessities to manufacture a machinegun [and] the relative ease with which one could manufacture a 'lightning link' with a variety of means." *Id.* at 2.

## MEMORANDUM OF LAW

### I.  Admissibility of Expert Testimony

The introduction of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the

principles and methods reliably. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that such evidence is not only relevant, but reliable. The Supreme Court reasoned that the district court's gatekeeping function was especially important since an expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.

Under Eleventh Circuit precedent, to determine the admissibility of expert testimony, trial courts must consider if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Stahlman*, 934 F.3d 1199, 1219 (11th Cir. 2019) (citations omitted); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citation omitted). As the proponent of the expert, the defendant bears the burden of establishing these three basic requirements. *Frazier*, 387 F.3d at 1260; *Cook ex rel. Estate of Tessler v. Sheriff of Monroe Cty.,* 402 F.3d 1092, 1107 (11th Cir. 2005); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002); *United States v. Chu*, Case No. 3:11-cr-286-J-34MCR, Doc. 242 at 8 (M.D. Fla. Nov. 7, 2012); *see also United States v. Cross*, 928 F.2d 1030, 1049 (11th Cir. 1991) ("A properly qualified expert witness

may testify regarding his specialized knowledge in a given field if it 'would assist the trier of fact to understand the evidence or to determine a fact in issue.'").

Where a party fails to provide an expert disclosure that meets the requirements of Rule 16, the proposed expert's testimony may also be excluded on that basis. *See* Fed. R. Crim. P. 16(d)(2)(C) ("If a party fails to comply with this rule, the court may[] prohibit that party from introducing the undisclosed evidence."); *United States v. Barile*, 286 F.3d 749, 758 (4th Cir. 2002) (no abuse of discretion where Court excluded testimony because the defendant's disclosure "did not describe [the witness's] opinions beyond stating the conclusion he had reached and did not give the reasons for those opinions as required under Rule 16(b)(1)(C)").

## II. Defendant Ervin's Expert Disclosure is Inadequate to Establish that Mr. O'Kelly Possesses Expertise Pertinent to This Case

Defendant Ervin's disclosure of Mr. O'Kelly paints him as an experienced former federal agent who has extensive knowledge of "regular, every day" firearms. Doc. 154 at 1 & n.1. Defendant Ervin states that Mr. O'Kelly has testified as an expert witness in state and federal courts but does not share what the topic of such expert testimony was. *Id.* at 1. The topics on which Mr. O'Kelly purports to have "testified and/or consulted as an expert" are largely irrelevant to this case, and include "use of force, self-defense with a firearm, ballistics, gunshot residue, interstate nexus, federal and state firearm regulations, trade dress, ATF rulings, ATF compliance and procedures, shooting reconstruction, firearm classification, firearm

9

design, and wrongful death." *Id.* at 1-2. Later, it is claimed that Mr. O'Kelly was "involved in . . . NFA determinations" during some portion of his career. *Id.* at 2-3.

A careful review of Mr. O'Kelly's CV does not disclose any basis for concluding that he possesses expertise that would allow him to opine on the amount of machining and/or modification that would be required for the lightning links manufactured by Mr. Ervin to function. *See id.* at 4. Mr. O'Kelly represents that from May 2002 until May 2003, he was a "Firearm Instructor Coordinator (as ATF Agent)" for ATF and, in that role, states that he performed "NFA firearm examinations/determinations." A review of the position description for a Firearms Instructor Coordinator during the time period when Mr. O'Kelly performed that function reveals that the job responsibilities included conducting complex investigations and "development, implementation and coordination of Bureau firearms training programs." *See* SPD418 Firearms Instructor Coordinator position description (attached as Exhibit B to Doc. 118). It does not include responsibilities indicative of having developed an expertise in the functioning of machinegun conversion devices. *Id.*

Since at least 1989, ATF field agents have been instructed that they may measure "[t]he length of the barrel on a rifle or shotgun" to determine "whether it is a firearm as defined" by inserting a rod down the muzzle of the firearm and then measuring the rod. ATF O 3310.4B "Firearms Enforcement Program" at § 18

(attached as Exhibit C to Doc. 118).[4]  Field agents also may measure "[t]he overall length of a rifle or shotgun" to "determine whether or not it is a firearm as defined." *Id.* at § 19.  Thus, field agents are trained, and authorized, to measure firearm barrels and overall lengths to determine whether those firearms are short-barreled shotguns or short-barreled rifles.  Field agents are not authorized to make classification decisions regarding machineguns – that role is designated to specialists at the Firearms and Ammunition Technology Division (formerly the Firearms Technology Criminal Branch).  *Id.* at § 11(d) (the Firearms Technology Branch provides technical assistance, including evaluating firearms "for proper classification under Federal law"); § 11(f) ("Experts are available at Headquarters for the identification and classification of firearms. . . . Special agents can make use of these experts . . . ."); § 175(c) ("Analysts shall examine and determine the classification of [] sample[s] . . . .").  Mr. O'Kelly has never had a role at this division, has never received the advanced training provided to ATF's Firearms Enforcement Officers who are charged with analyzing potential NFA items and making machinegun classifications, and has never been tasked by ATF with making classification decisions about machineguns.  Despite listing, single-spaced, three full pages of "Specialized Training" in his CV, Mr. O'Kelly lists only a single training course that appears to relate to machineguns.  *See* Doc. 56-1 at 5-8 (representing that

---

[4] This version of the Firearms Enforcement Program was in force until it was superseded by ATF O 3310.4C on March 19, 2013.

Mr. O'Kelly took a course in 2015 titled "The Machineguns and Machinegun Conversions"). *Id.* at 5.

Nor does Mr. O'Kelly's training and experience qualify him to testify as an expert regarding "the role and function of Federal Firearms Licensees and payers of the Special Occupation Tax" or to "explain to the jury the law surrounding the National Firearms Act, including the process, procedure, and regulations regarding the National Firearms Act and the Gun Control Act." Doc. 165 at 4. Mr. O'Kelly's experience surely gave him some exposure to these topics, but there is nothing about this background that would indicate he possesses expert-level knowledge. Moreover, Mr. O'Kelly's previous advancement of the *Prince* case as dispositive in this case reflects his lack of detailed understanding of firearms laws.[5]

In short, Mr. O'Kelly's CV reflects that while he may have expertise in certain areas not relevant here – such as interstate nexus – there is no basis for concluding that he possesses knowledge and expertise about lightning links, the NFA, and federal regulation of Federal Firearms Licensees and holders of the Special Occupation Tax that would assist the jury. This testimony should, therefore, be

---

[5] A review of Mr. O'Kelly's previous statement during his GunGuyTV interview reflects that Mr. O'Kelly relies principally upon *Prince*, 2009 WL 1875709, as the foundation for his opinion. As this Court has already ruled, "reliance on . . . the *Prince* case . . . is really not persuasive for a myriad of reasons." July 8, 2021, Mot. Hr'g Tr. at 14. As this Court noted in distinguishing *Prince* from the facts of this case, the *Prince* court "was reviewing a statute with a different definition, so that's unavailing." *Id.* The *Prince* case concerned the definition of a firearm under Title 18, United States Code, Section 921(a)(3), not the definition of a machinegun under Title 26, United States Code, Section 5845(a) and (b). Those definitions contain substantial dissimilarities including, critically, that Section 921(a)(3) does not contain the "designed and intended . . . for use in converting a weapon" language that is in Section 5845(b).

excluded on the basis that defendant has failed to meet his burden to demonstrate that Mr. O'Kelly "is qualified to testify competently regarding the matters he intends to address."  *See Stahlman*, 934 F.3d at 1219; *Frazier*, 387 F.3d at 1260.

### III. Defendant Hoover's Expert Disclosure is Inadequate to Establish that Mr. Redwine Possesses Expertise Pertinent to This Case

Defendant Hoover's disclosure of Mr. Redwine sets forth that he has experience with "manufacturing, designing, and reverse engineering machineguns." Doc. 167 at 1.  What that experience consists of is unclear, because it is not contained anywhere in defendant Hoover's disclosure.  *See generally* Doc. 167.  No outside training is referenced aside from Mr. Redwine's undergraduate degree in photography.  *Id.*  Based on this, defendant Hoover proposes that Mr. Redwine be permitted to testify "as to the mechanical necessities to manufacture a machinegun [and] the relative ease with which one could manufacture a 'lightning link' with a variety of means."  *Id.* at 2.  There is no conceivable basis on which this Court could find from this disclosure that Mr. Redwine is qualified to testify at trial in this case as an expert in anything at all, much less in the various degrees of difficulty involved in "a variety of" unspecified means of manufacturing lightning links.

### IV. Defendants Fail to Establish that Mr. O'Kelly Relied on Appropriate Authorities in Forming His Opinion

Defendant Ervin's disclosure of Mr. O'Kelly advances that he is "extraordinarily qualified to testify regarding the basic functioning of firearms in light of his decades of training, experience, and certification with firearms and their function over the course of a long and decorated career."  Doc. 165 at 3.  The

13

government does not dispute that Mr. O'Kelly is qualified to testify as an expert in the mechanistic functioning of firearms.

Defendant Ervin next advances that Mr. O'Kelly is "uniquely capable of testifying regarding the functioning of ATF, the promulgation and review of ATF guidance and regulations, as well as how investigations and determinations regarding firearms and machineguns occur." *Id.* at 3. The basis for this testimony is that Mr. O'Kelly has "kept up to date with current ATF procedures and investigative techniques" through undisclosed means. *Id.* Mr. O'Kelly has been retired from ATF for more than 11 years. Doc. 56-1 at 3. Defendant Ervin utterly fails to support that Mr. O'Kelly has expert knowledge in "current ATF procedures and investigative techniques" or that he has any basis for testifying about Federal Firearms Licensees or payers of the Special Occupation Tax. Mr. O'Kelly's resume discloses that he took one course in 2015 regarding "ATF Firearm Licensee Compliance" and does not list any particular training on holders of the Special Occupation Tax (also known as SOTs). *See* Doc. 56-1 at 9. This proposed testimony is outside of Mr. O'Kelly's realm of expertise and should be excluded.

Finally, Mr. O'Kelly is proposed to provide testimony "that the devices alleged by the Government to be machineguns would not function as such without substantial machining and modification." Doc. 165 at 4. Mr. O'Kelly relies for this testimony on "detailed copies, specifications, photographs, and measurements of" Auto Key Cards that are of undisclosed provenance. Mr. O'Kelly has never examined an Auto Key card himself, nor any of the other physical evidence in this

14

case. The disclosure fails to show that the source of these "detailed copies, specifications, photographs, and measurements" is one that is routinely relied upon by experts in this field. Furthermore, Mr. O'Kelly lacks expertise that would qualify him to render such an opinion based on photographs and measurements. Finally, Mr. O'Kelly's opinion plainly is unreliable in that it is demonstrably incorrect: the lightning links that can be cut from an Auto Key Card in fact *do* function as machinegun conversion devices without "substantial machining and modification."

Defendants have thus failed to meet their burden to demonstrate the reliability of Mr. O'Kelly's methodology in forming most of his opinions under the second prong of *Stahlman*, 934 F.3d at 1219. Mr. O'Kelly's testimony (other than his testimony about the mechanistic functioning of firearms) should, therefore, be excluded on this ground as well. *See Cook* 402 F.3d at 1111 ("[A] trial court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained." (internal quotations omitted)).

## V. Defendants Fail to Establish That Mr. Redwine Relied on Appropriate Authorities in Forming His Opinion

Defendant Hoover proffers no basis for Mr. Redwine's opinion. *See* Doc. 167 at 1-2. Defendant Hoover does not even attempt to specify what the "variety of means" are that could be used to easily manufacture a lightning link, nor what Mr. Redwine's experience is in implementing these means. Having disclosed *no* authorities on which Mr. Redwine relied in forming his opinion, defendants certainly

15

have not established that those authorities were appropriate. His testimony should be excluded on this ground as well.

### VI. Defendants Have Not Established That Either Mr. O'Kelly's or Mr. Redwine's Opinions Will Assist the Jury

With regard to Mr. O'Kelly's proposed testimony, defendant Ervin proposes that testimony regarding the mechanistic functioning of firearms "will aid the jury in understanding the basic function of firearms, how they work, and the function of the various parts of the firearm." Doc. 165 at 3. While this testimony appears to be duplicative of testimony that the United States intends to present from FEO Toy as part of its case in chief, it otherwise does appear to be relevant and helpful to the jury.

With regard to Mr. O'Kelly's proposed testimony "regarding the functioning of ATF, the promulgation and review of ATF guidance and regulations, as well as how investigations and determinations regarding firearms and machineguns occur," *id.*, defendant Ervin fails to establish that any of that testimony would be relevant and helpful to the jury. Defendant Ervin supposes that this testimony will help the jury understand "the context of the investigation, as well as any and all shortcomings and failures of that investigation." *Id.* at 4. No such "shortcomings and failures" are identified, nor is it clear how, if any were identified, such knowledge would aid the jury in its determination of guilt or innocence in this case. Furthermore, the jury is capable of understanding "the context of the investigation" from the evidence the United States will present in its case-in-chief. Defendant Ervin has identified no

16

particular "context" that Mr. O'Kelly will add that will aid the jury. *Edwards v. Shanley*, 580 Fed. App's 816, 823 (11th Cir. 2014) ("For testimony to satisfy the third requirement – assisting the trier of fact – the testimony must 'concern[] matters that are beyond the understanding of the average lay person.'" (quoting *Frazier*, 387 F.3d at 1262)); *Hibiscus Assocs. Ltd. v. Bd. of Trustees of Policemen and Firemen Retirement Sys. of City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995) ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves.").

With regard to Mr. Redwine's proposed testimony that there are other ways to manufacture a lightning link, defendant Hoover does not establish that this testimony would be relevant and helpful to the jury. It is, in fact, entirely irrelevant. There is nothing about the elements of the charged offenses that would instruct the jury that it could choose to return a not guilty verdict so long as the defense demonstrates that there was some easier way to make a machinegun than the way they defendants did it. This testimony should be excluded.

## CONCLUSION

Defendants have failed to establish any of the three pre-requisites of admissibility of the proposed testimony of either of the purported experts (qualifications, methodology, and assistance to the jury of the testimony). Additionally, their disclosures do not meet the requirements of Fed. R. Crim. P. 16. Furthermore, the United States previously laid out all of these arguments in its previous motions to exclude the experts' testimony, giving notice to the defendants

of the woeful inadequacy of their disclosures. Docs. 118, 136. Yet, neither defendant has rectified these inadequacies to make a disclosure meeting the requirements of Rule 16. This court should, therefore, exclude the testimony with the exception of the proposed testimony of Mr. O'Kelly regarding the mechanistic functioning of firearms.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By:   *s/ Laura Cofer Taylor*
       LAURA COFER TAYLOR
       Assistant United States Attorney
       USA No. 170
       E-mail: Laura.C.Taylor@usdoj.gov

       DAVID B. MESROBIAN
       Assistant United States Attorney
       USA No. 188
       E-mail: David.Mesrobian@usdoj.gov

       300 N. Hogan Street, Suite 700
       Jacksonville, Florida 32202
       Telephone: (904) 301-6300
       Facsimile: (904) 301-6310

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Zachary Zermay
>Matthew Larosiere
>*Counsel for defendant Matthew Raymond Hoover*
>
>Alex King
>*Counsel for defendant Kristopher Justinboyer Ervin*

>*s/ Laura Cofer Taylor*
>LAURA COFER TAYLOR
>Assistant United States Attorney