```
 1                  UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                    JACKSONVILLE DIVISION

 3   UNITED STATES OF AMERICA          Jacksonville, Florida

 4        -vs-                         3:21-cr-22(S2)-MMH-MCR

 5   KRISTOPHER JUSTINBOYER ERVIN      February 7, 2023
     and MATTHEW RAYMOND HOOVER,
 6                                     10:11 a.m. - 12:15 p.m.
             Defendants.
 7                                     Courtroom 10B

 8   _____

 9
                         MOTION HEARING
10

11          BEFORE THE HONORABLE MARCIA MORALES HOWARD
                   UNITED STATES DISTRICT JUDGE
12

13

14

15

16
     OFFICIAL COURT REPORTER:
17
     Katharine M. Healey, RMR, CRR, FPR-C
18     PO Box 56814
       Jacksonville, FL 32241
19     Telephone: (904) 301-6843
       KatharineHealey@bellsouth.net
20

21

22                        (Proceedings reported by stenography;
                              transcript produced by computer.)
23

24

25
```

 1                      A P P E A R A N C E S:

 2    GOVERNMENT COUNSEL:

 3    **LAURA COFER TAYLOR, ESQUIRE**
      **DAVID B. MESROBIAN, ESQUIRE**
 4      United States Attorney's Office
        300 North Hogan Street, Suite 700
 5      Jacksonville, FL 32202
        laura.c.taylor@usdoj.gov
 6      david.mesrobian@usdoj.gov

 7

      COUNSEL FOR DEFENDANT ERVIN:
 8
      **ALEX KING, ESQUIRE**
 9
        Monroe & King, P.A.
10      1805 Copeland Street
        Jacksonville, FL 32204
11      alex@monroekinglaw.com

12
      COUNSEL FOR DEFENDANT HOOVER:
13
        **ZACHARY Z. ZERMAY, ESQUIRE**
14      Zermay Law
        1762 Windward Way
15      Sanibel, FL 33957
        zach@zermaylaw.com
16
        - A N D -
17
        **MATTHEW M. LAROSIERE, ESQUIRE**
18      6964 Houlton Circle
        Lake Worth, FL 33467
19      larosieremm@gmail.com

20

21

22

23

24

25

1    P R O C E E D I N G S

2    February 7, 2023                                    10:11 a.m.

3                              -  -  -

4          COURT SECURITY OFFICER:  All rise.  The United States

5    District Court in and for the Middle District of Florida is now

6    in session.  The Honorable Marcia Morales Howard presiding.

7          Please be seated.

8          THE COURT:  Give me a moment to connect to my

9    computer, please.

10          Ms. Wiles, may I see you one moment?

11       (The Court and the courtroom deputy confer.)

12          THE COURT:  All right.  This is Case No.

13    3:21-cr-22(S2)-MMH-MCR.  It's the United States vs. Kristopher

14    Justinboyer Ervin and Matthew Raymond Hoover.

15          Ms. Taylor and Mr. Mesrobian are here on behalf of

16    the United States.  And Ms. Taylor, could you introduce the

17    case agent.

18          MS. TAYLOR:  Yes, Your Honor.  With me is Special

19    Agent Jesse Hooker of the Bureau of Alcohol, Firearms, Tobacco

20    and Explosives.

21          Also in the courtroom we have our two proposed

22    experts, Mr. Toy and Mr. Lintner.

23          THE COURT:  And I have Mr. King on behalf of

24    Mr. Ervin and Mr. Ervin is in the courtroom.

25          And Mr. Larosiere and Mr. Zermay are here on behalf

1    of Mr. Hoover, but I don't see Mr. Hoover.  We scheduled this

2    hearing for in-person.  Why didn't Mr. Hoover appear?

3                MR. ZERMAY:  Yes, Your Honor.  May it please the

4    Court.  We apologize to the Court.  That was a result of a

5    confusion on our part as a result of the discussion regarding

6    the stipulated facts bench trial where there was a discussion

7    regarding Mr. Hoover's requirement to be here.  And we

8    obviously realized he would have had to have been here for the

9    stipulated facts bench trial.

10               But we reviewed the docket number 169, the order

11   setting the case for trial, and it didn't specifically outline

12   that Mr. Hoover had to be here.

13               And I understand after discussion with the government

14   that perhaps the assumption in criminal court is that the

15   defendant is required to be at hearings, and not being the --

16   the -- so it's a roundabout way of saying we didn't think that

17   Mr. Hoover was required to be here in person.  However, he is

18   available to telephone in.

19               And again, we deeply apologize to the Court for this

20   confusion.  It's our fault, honestly.

21               THE COURT:  I mean, the presumption is that the

22   defendant is present at all proceedings.  And, in fact, there

23   was a -- I noticed there was a hearing on the docket where

24   you-all filed a motion seeking to waive his in-person

25   appearance.

1          MR. ZERMAY:  Was that -- I don't remember that.

2          THE COURT:  I think it was for the *Garcia* hearing,

3    maybe.  I didn't look at exactly which hearing.

4          But, I mean, certainly you ought to know that your

5    client is required to be present at a hearing where we're going

6    to discuss what testimony may or may not be presented against

7    him at trial.

8          MR. ZERMAY:  We simply did not know, Your Honor.

9          THE COURT:  That's kind of a bad answer.  I'm sorry.

10         On September 14th you-all filed a motion requesting

11   permission for Mr. Hoover to appear telephonically at a hearing

12   before Judge Richardson.  I would have thought that if you

13   wanted him to appear virtually at this hearing you would have

14   filed a similar motion.  I wouldn't have granted it because I

15   think this is a hearing that the defendant should be at in

16   person.

17         MR. ZERMAY:  And Your Honor, if I could briefly

18   explain.  After briefly speaking with Mr. Larosiere --

19         THE REPORTER:  I'm having a hard time hearing him.

20         THE COURT:  Can you come to a microphone?

21         MR. ZERMAY:  Yes, Your Honor.

22         THE COURT:  The court reporter is having difficulty.

23         MR. ZERMAY:  Of course.

24         That order specifically required Mr. Hoover to be in

25   person, so we were on notice as to that.  That's my

1  understanding from briefly conferring with Mr. Larosiere.

2         THE COURT:  No, that's not accurate.  I'm looking at

3  the notice of hearing.  It's just a docket entry, and it

4  doesn't specifically say anything about that.

5         MR. ZERMAY:  I understand, Your Honor.

6         THE COURT:  Ms. Taylor, let me hear your thoughts on

7  that.

8         MS. TAYLOR:  Your Honor, we, I think, were under the

9  same expectation as the Court, that the defendant should be

10  present.

11         I did see on the calendar for this week that it

12  stated defendant's presence is required; although Mr. Larosiere

13  and Mr. Zermay may not have seen that calendar.

14         THE COURT:  No, that would go to the marshal service.

15  And that's to tell them to bring in-custody defendants.  So I

16  will not visit that on counsel because you wouldn't have

17  received it.

18         MS. TAYLOR:  Yes, Your Honor.

19         We've been looking at Rule 43, and it's not clear to

20  me whether this is something that his presence could be waived

21  from.  Rule 43 specifies that the defendant must be present at

22  the initial appearance, the initial arraignment, the plea, and

23  then every trial stage, including jury empanelment and return

24  of the verdict and sentencing.  This could be considered a

25  trial stage since we're, as the Court noted, litigating

1    pretrial issues, including what evidence will be admitted.

2            It also talks about defendant's presence is not

3    required where the hearing -- the proceeding involves only a

4    conference or a hearing on a question of law.  I do not think

5    that that is what's happening here because it's a mixed

6    question of fact and of law.

7            It would concern me to proceed without him given the

8    ambiguity and that I haven't had a chance to research whether

9    this is something where he conceivably could be excused.

10           On the other hand, we obviously have been preparing

11   for this hearing for quite some time.  Mr. Toy has traveled in

12   from out of state for this hearing and we're working toward

13   being prepared for the date certain in April and --

14           THE COURT:  And on Friday I start a month-long patent

15   case, so I don't know when I would be able to reschedule this.

16           And either Mr. Larosiere or Mr. Zermay, I don't know

17   which one it was, but one or the other called chambers maybe

18   last week to inquire if the hearing was in person.  I don't

19   know why because I recall specifically saying it was in person.

20   But that would have been the time, if there was any confusion,

21   to ask about whether the defendant's presence was required.

22           Give me a moment.

23           You said Mr. Hoover is available to participate

24   telephonically?

25           MR. ZERMAY:  Yes, Your Honor.  He is on standby right

1    now.

2           THE COURT:  Well, I think at a minimum we would need

3    to get him on the phone and determine whether he wants to waive

4    his in-person appearance.  I'm not prepared to proceed unless I

5    at least hear that from him.  And I'm not happy about doing it

6    this way.  This is not the way we do things.

7           MR. ZERMAY:  I apologize, Your Honor.

8           THE COURT:  How -- Madam Deputy, can you call him?

9           COURTROOM DEPUTY:  May I get his phone number?

10          MR. LAROSIERE:  Yes, ma'am.

11          THE COURT:  Don't say it aloud, just hand it to her.

12          MR. LAROSIERE:  Thank you, Your Honor.

13          THE COURT:  Does one of you need to step out and call

14   him before we do this?  Is he going to expect the call and is

15   he going to understand that he's going to be asked about

16   waiving any right he might have to attend the hearing?

17          MR. LAROSIERE:  Your Honor, I will go ensure that for

18   just one second.

19          THE COURT:  All right.  We'll take a moment.

20       (Pause in proceedings.)

21          THE COURT:  Yes, sir.

22          MR. ZERMAY:  Yes, Your Honor, he's expecting the call

23   from the Court, so he's ready to proceed.

24          THE COURT:  Okay.

25          Madam Deputy, are you --

```
 1        (Courtroom deputy calls defendant Hoover.)
 2             DEFENDANT HOOVER:  Hello.  This is Matthew Hoover.
 3             COURTROOM DEPUTY:  I'm trying to call.
 4             THE COURT:  Mr. Hoover?
 5             DEFENDANT HOOVER:  What's that?
 6             COURTROOM DEPUTY:  I think that's him.
 7             THE COURT:  Okay.  Can you tell me your full name,
 8   please, sir?
 9             Mr. Hoover, are you there?
10             Hang up and dial back, please.
11        (Pause in proceedings.)
12             THE COURT:  Mr. Hoover, can you hear me?
13             DEFENDANT HOOVER:  Can you hear me?
14             THE COURT:  I can now.  Can you tell me --
15             DEFENDANT HOOVER:  I can barely hear you.  It sounds
16   like whatever mic you're transmitting from is really far away
17   from you.
18             THE COURT:  I don't think I can get it much closer to
19   me, Mr. Hoover.
20             Are you able to hear me now?
21             DEFENDANT HOOVER:  I can, Your Honor, it's just
22   really, really difficult.
23             But, yeah, I'm waiving my right to be there today.
24             THE COURT:  I'm sorry?
25             DEFENDANT HOOVER:  You're calling to see if I want to
```

1    waive my right to be there today for the expert testimony, and

2    that's fine.  I'm okay with that.

3              THE COURT:  Okay.  I -- Mr. Hoover, hold on, because

4    we're not hearing you clearly enough to make a record, so give

5    me a moment to see if I can figure out what to do here.

6              DEFENDANT HOOVER:  If you want, you can always just

7    Zoom call me.

8              THE COURT:  It's actually not that simple to do a

9    Zoom call from the courtroom, Mr. Hoover.

10             DEFENDANT HOOVER:  Okay.

11             THE COURT:  Madam Deputy, may I see you.

12        (The Court and the courtroom deputy confer.)

13             THE COURT:  Mr. Hoover, do you have us on a

14   speakerphone?

15             DEFENDANT HOOVER:  Yeah.  I have the speakerphone on

16   right now, turned all the way up.  It really sounds like the

17   microphone that's recording you is on the other side of the

18   room.

19             THE COURT:  No.

20             Can you use a real handset or a headset, whatever;

21   not use speakerphone?

22             DEFENDANT HOOVER:  Yeah, one second.  Let me -- I got

23   one here somewhere.

24             THE COURT:  Mr. Ervin, I apologize to you.

25             DEFENDANT ERVIN:  No apologies necessary, ma'am.

1  It's okay.  We can bear small technical issues like this.

2         DEFENDANT HOOVER:  (Inaudible.)

3         THE COURT:  While he's doing that . . .

4      (The Court and the courtroom deputy confer.)

5         DEFENDANT HOOVER:  Can you hear me when I shut it off

6  the speakerphone?

7         THE COURT:  Well, are you able to hear me?

8         DEFENDANT HOOVER:  Actually, I know what we can do.

9  I'll put it on my card and I can turn the volume all the way

10 up.

11        THE COURT:  Madam Deputy, will you ask Ms. Miller to

12 go in my office and get my iPad.

13        MR. KING:  Your Honor, if I -- if I could, during the

14 course of our preparing and our speaking with our expert --

15        DEFENDANT HOOVER:  Can you hear me now?

16        THE COURT:  Not very well, Mr. Hoover.  Hold on just

17 one minute until I talk to you again, okay?  Let me hear --

18 Mr. King is speaking now and I need to hear from him.

19        Go ahead, Mr. King.

20        MR. KING:  Your Honor, during the course of our

21 preparing we've had a lot of dialogue regarding what testimony

22 is going to come out, and I think we've been very productive

23 between the two sides.

24        With that said, I've discussed it with Mr. Ervin, as

25 well as our expert as well as with the government and counsel

1   for Mr. Hoover.  The remaining objections and issues that we

2   have, in my belief, are not -- certainly not *Daubert*.  They're

3   legal issues that I believe could be resolved by the Court

4   entirely without live witness testimony, and we could

5   potentially handle them with motions in limine.  You know,

6   they're relevancy issues, they're limiting instructions, but it

7   would not be to exclude them without any *Daubert* issues.  I

8   don't know if that would -- and I can only speak as to

9   Mr. Ervin.  But in terms of what we would potentially need, and

10  I've shared this with the government, I don't believe we would

11  have those factual, live-testimony issues.  Since we've

12  discussed the scope of their testimony we've had more

13  information, kind of worked through the issues.

14          I don't know if that presents the Court an

15  alternative or not.

16          THE COURT:  Well, I mean, if you're telling me you're

17  withdrawing the *Daubert* motions, that may.  Although the

18  government -- well, I still have questions about the

19  government's *Daubert* motion.

20          But if what you're saying is you're -- now that

21  you've received the proffer, that the only objections you would

22  be raising at trial would be relevance and not *Daubert*, then if

23  we don't need a *Daubert* hearing, then that's one thing.

24          MR. KING:  Yes, Your Honor.  And I know the Court's

25  prior order referred to all -- you know, to all expert motions.

1   There would be motions that would seek to limit testimony, but

2   I don't think it would, A, require fact testimony; or, B, be a

3   *Daubert* motion.  It would be limiting specific parts of their

4   testimony.  And, you know, I'm comfortable proceeding with

5   that.

6           The things that I had concerns about, the government

7   said they're not intending on eliciting that testimony and

8   provides more clarity as to who would testify to what.  So that

9   has mooted a fair amount of the issues in our motion.  And I

10  think we could proceed if -- given where we are today, I think

11  we can withdraw our motion if the Court would allow us to file

12  legal motions in limine limiting the testimony to the

13  government's witnesses.

14          THE COURT:  Well, first of all, Mr. Hoover, did you

15  hear any of that?

16          DEFENDANT HOOVER:  Kind of.  It's (inaudible).

17          THE COURT:  I have no idea what he just said, do you?

18          MR. ZERMAY:  I believe he said "yes," Your Honor.  Or

19  "yeah."  I heard "yeah" out of it.

20          DEFENDANT HOOVER:  I can hear your mic from where

21  you're standing.

22          THE COURT:  Right, but did you hear what Mr. King

23  said?

24          DEFENDANT HOOVER:  Yeah.

25          THE COURT:  Didn't that -- hasn't the motion in

1  limine deadline passed?

2          MS. TAYLOR:  (Shakes head.)

3          THE COURT:  It hasn't?

4          MS. TAYLOR:  I believe it's the 24th, Your Honor.

5          THE COURT:  Okay.  If the motion in limine is going

6  to repeat arguments that are in the *Daubert* motion, I don't

7  know that I agree that we should just kick it to the motions in

8  limine.

9          We've prepared for the hearing today to address these

10 issues.  It might be convenient for you-all to do it the other

11 way, but I don't think it's -- I don't think that's really

12 appropriate.

13         We're going to try this one other way and see if this

14 works.  Madam Deputy is going to send a Zoom link.  The only

15 problem with the Zoom link is that I will be able to see

16 Mr. Hoover and Mr. Hoover will be able to see me.  And I'm

17 going to give Mr. Zermay and Mr. Larosiere my iPad so that

18 you-all will be able to log in and see Mr. Hoover.  But

19 Mr. Hoover will not be able to see Ms. Taylor.

20         But I think if we did that, if he can hear, then I

21 would still take a waiver just in case.  But I think that would

22 probably be sufficient.

23         What do you think about that?

24         MR. ZERMAY:  I agree, Your Honor.

25         THE COURT:  Okay.  Madam Deputy, may I see you one

1   minute.

2       (The Court and the courtroom deputy confer.)

3           THE COURT:  It's going to take Madam Deputy a moment

4   to send out the -- she's got to put it on the court calendar,

5   the Zoom docket, and then send it.

6           Mr. Hoover, do you understand what I'm proposing?

7           DEFENDANT HOOVER:  Kind of.  I'll have my lawyer

8   explain it in detail.  I don't want to tie you up too long.

9   Sorry about all this.

10          MR. ZERMAY:  And I guess that's a roundabout -- or

11  what he's trying to say, Your Honor, is perhaps Mr. Larosiere

12  will walk outside, pick up the phone, and explain the Zoom link

13  and the Court's plan.

14          THE COURT:  Okay.  Do you want to do that,

15  Mr. Larosiere?

16          MR. LAROSIERE:  Yes, Your Honor.

17          COURTROOM DEPUTY:  I'll need an email for him.

18          THE COURT:  Excuse me?

19          COURTROOM DEPUTY:  I'll need an email address.

20          THE COURT:  Oh, we need an email address for him.

21          COURTROOM DEPUTY:  If you can just write that down.

22          MR. LAROSIERE:  Yes, ma'am.  It sounds like it was

23  connecting to the wrong mic.

24          This is why you were saying you need advanced notice.

25      (Pause in proceedings while Zoom connection is

1    established.)

2           THE COURT:  All right.  I've got Mr. Hoover -- hold

3    on.

4           Mr. -- Mr. Hoover, can you hear me?

5           DEFENDANT HOOVER:  Um, that's a little quiet, but

6    yes.

7           THE COURT:  Okay.  I think you can see I couldn't

8    really get the microphone any closer than -- it's literally

9    right beneath my mouth.

10          I'm trying to get the Zoom link for the iPad.

11          DEFENDANT HOOVER:  I turned up my speakers on my end.

12   Now I can definitely hear you.

13          THE COURT:  Okay.  Great.  Okay.

14       (Pause in proceedings.)

15          THE COURT:  Why don't you go to counsel table.  Okay.

16          So Mr. Hoover, I am going to have you unmute yourself

17   for a moment and I'm going to talk to you in an abundance of

18   caution.  It's not entirely clear to me that this is a trial

19   proceeding that you would have a right to attend in person.  In

20   fact, at least it looks like the First Circuit has said it's

21   not.  But in an abundance of caution, because I expected you to

22   be here, I'm going to inquire of whether it's your own decision

23   to waive any right that you would have to be at this hearing.

24   And to do that I'm going to ask Madam Deputy to hand me the

25   oath and I'm going to place you under oath and ask you a few

1  questions, okay?

2          Did you hear me, Mr. Hoover?

3          DEFENDANT HOOVER:  Yes.  I just didn't want to say

4  anything and interrupt you, so I'm sorry.

5          THE COURT:  Okay.  So please raise your right hand.

6  Do you swear or affirm that the answers you will give during

7  this proceeding will be the truth, the whole truth, and nothing

8  but the truth so help you God?

9          DEFENDANT HOOVER:  I swear.

10         THE COURT:  All right.  So tell me your full name,

11  please, sir.

12         DEFENDANT HOOVER:  Matthew Raymond Hoover.

13         THE COURT:  All right.  And Mr. Hoover, you're

14  represented by Mr. Zermay and Mr. Larosiere?

15         DEFENDANT HOOVER:  That is correct.

16         THE COURT:  All right.  And you are aware that

17  Mr. Zermay and Mr. Larosiere are here in Jacksonville in my

18  courtroom for a hearing where we're going to discuss the extent

19  to which the government can present certain experts at trial

20  and whether or not -- whether and to the extent that you and

21  your codefendant, Mr. Ervin, may present experts at trial.

22         Do you understand that?

23         DEFENDANT HOOVER:  Yes.

24         THE COURT:  And ordinarily I would anticipate that an

25  individual charged with a federal offense would be at a hearing

1    such at this, where we discuss what testimony may or may not be

2    presented in the trial.

3            But I understand that you have spoken to your lawyers

4    and it's your desire to waive any right that you might have to

5    attend this hearing in person?

6            DEFENDANT HOOVER:  Yes.

7            THE COURT:  And have you discussed that matter fully

8    with your attorneys?

9            DEFENDANT HOOVER:  Yes.

10           THE COURT:  And do you understand that if you waive

11   the right to be present at this hearing, you won't be able to

12   complain later if you disagree with the outcome or with the

13   things that your lawyers said and did during this hearing?

14           DEFENDANT HOOVER:  Yes.

15           THE COURT:  Have any promises been made to you to

16   cause you to waive or give up any right that you might have to

17   attend this hearing?

18           DEFENDANT HOOVER:  No, no.

19           THE COURT:  Has anybody threatened you or coerced you

20   in any way to cause you to give up this right?

21           DEFENDANT HOOVER:  No, Your Honor.

22           THE COURT:  And have you fully discussed with your

23   attorneys the potential testimony of the government's expert

24   witnesses and the potential testimony of yours and Mr. Ervin's

25   experts?

1          DEFENDANT HOOVER:  Yes, Your Honor.

2          THE COURT:  And you're aware of the positions they

3    intend to take at this hearing?

4          DEFENDANT HOOVER:  Yes, Your Honor.

5          THE COURT:  Ms. Taylor, is there anything else we

6    need to ask Mr. -- you think I need to ask Mr. Hoover before I

7    determine that we can go ahead and proceed at this time?

8          MS. TAYLOR:  No, Your Honor.

9          THE COURT:  Mr. Zermay, anything else from you?

10         MR. ZERMAY:  No, Your Honor.

11         THE COURT:  All right.  So we -- I'm going to accept

12   that as a waiver of any right Mr. Hoover may have to attend

13   this particular proceeding in person.  That does not excuse any

14   future appearance in person.

15         And I'm saying out loud to Mr. Hoover, to Mr. Zermay,

16   and Mr. Larosiere that any hearings set by me hereafter, unless

17   I say that the defendant is not required to be present,

18   Mr. Hoover is required to be present in person in Jacksonville,

19   Florida.

20         Is that clear to you, Mr. Hoover?

21         DEFENDANT HOOVER:  Yes, Your Honor.

22         THE COURT:  And to you, Mr. Zermay?

23         MR. ZERMAY:  Yes, Your Honor.

24         THE COURT:  Mr. Larosiere?

25         MR. LAROSIERE:  Yes, Your Honor.

1        THE COURT:  All right.  And Mr. Hoover, because we're

2  broadcasting this, I have to say out loud that any recording of

3  proceedings in federal court is strictly prohibited.  There is

4  a court reporter here, she's making a record, but you can't

5  record it in any way.  Do you understand that?

6        DEFENDANT HOOVER:  Yes, Your Honor.

7        THE COURT:  All right.  Mr. Zermay, I'm going to let

8  you take your seat.

9        MR. ZERMAY:  Yes.  Thank you very much, Your Honor.

10  And apologies again.

11        THE COURT:  Well, we did just waste almost a complete

12  hour.  It's now 10:50 and we're starting a hearing that was

13  supposed to start at 10 o'clock.

14        All right.  I'll start with the low-hanging fruit, do

15  some housekeeping.

16        The government's initial *Daubert* motion, document

17  number 118, is still pending.  It seems to me that that was

18  rendered moot by the defendant's subsequent disclosures and the

19  filing of the instant *Daubert* motion, document number 170.

20        Do you agree with that, Ms. Taylor?

21        MS. TAYLOR:  Yes, Your Honor.

22        THE COURT:  All right.  So I'm going to direct the

23  clerk to terminate docket number 118 as moot on the docket.

24        On February 3rd Mr. Hoover filed a notice advising

25  the Court that he was withdrawing Mr. Redwine as an expert

1    entirely; that Mr. Redwine simply will not be a witness at all

2    in this case.

3            Is that correct, Mr. Zermay?

4            MR. ZERMAY:  Yes, Your Honor.

5            THE COURT:  All right.  And so to the extent in

6    document number 170, the government's *Daubert* motion -- to the

7    extent that the government sought to exclude the testimony of

8    Mr. Redwine, it's denied as moot, but Mr. Redwine will not

9    testify at the trial.

10           And Mr. Hoover, you understand that Mr. Redwine is

11   withdrawn and will not be a witness?

12           DEFENDANT HOOVER:  Yes, Your Honor.

13           THE COURT:  And Mr. Ervin, you understand that as

14   well?

15           DEFENDANT ERVIN:  Yes, Your Honor.

16           THE COURT:  And Mr. King, you're in agreement with

17   that?

18           MR. KING:  Yes, Your Honor.

19           THE COURT:  All right.  Before we turn to the

20   government's motion, I'm struggling a little to understand the

21   notice that was filed in document number 178.  It says it's a

22   Notice of Withdrawal of Notice of Disclosure of Expert

23   Testimony in compliance with Federal Rule of Criminal Procedure

24   16(b)(1)(C) and Request for Relief from this Court's

25   February 1, 2023, order.

1      And in the motion, Mr. Ervin, who listed Mr. O'Kelly

2   as an expert, says that he has determined that there's no

3   testimony Mr. O'Kelly is intending to provide in defendant

4   Ervin's case in chief, but suggests that Mr. O'Kelly is going

5   to provide rebuttal testimony.  And I don't understand what

6   that means, because in my experience, the government has a

7   rebuttal case, but there's no surrebuttal by the defendant.

8      So if he's not presenting Mr. O'Kelly's testimony

9   when he puts on the defense case, then is he presenting

10  Mr. O'Kelly at all?

11      MR. KING:  Your Honor, it's twofold.  One, in terms

12  of --

13      THE COURT:  I'll need you to come up to a microphone

14  so I can make sure Mr. Hoover can hear you.

15      MR. KING:  Your Honor, it's the -- if I could just

16  grab my notes?

17      THE COURT:  Sure.

18      MR. KING:  Your Honor, from discussing with the

19  government and our review of the case law, Rule 16 would

20  require it in the case in chief if we were to present

21  affirmative evidence, such as a report or a thing like that.

22  If it is strictly to rebut something that the government's

23  witnesses would testify to in opinion, then, you know, we could

24  present any witnesses in rebuttal to testimony that the

25  government would provide.

1           But furthermore, based on the filing by the

2   government and additional conversations that we've had since

3   this, it is significantly more likely than not that even as a

4   rebuttal witness we would not be calling Mr. O'Kelly.  But it

5   would not be -- you know, he has not created any reports.  He

6   has not affirmatively done anything that he would be testifying

7   to.  It would be solely to rebut statements by the government

8   witnesses.  But I don't believe the government is intending on

9   eliciting testimony that he would be rebutting, unless

10  something unusual happens at trial.

11          THE COURT:  If you're saying that he's not going to

12  provide opinion testimony, that he's not going to present

13  expert testimony, then what you're saying makes sense.

14          If you're saying that he may be called to rebut

15  opinions that the government experts -- that he's going to

16  express opinions to rebut testimony from the government

17  witnesses, that's not rebuttal that is excused from disclosure.

18  That's specifically the type of evidence that Rule 16 requires

19  the defendant to disclose.  Any testimony that the defendant

20  intends to use under Rule 702, 703, or 705 of the Federal Rules

21  of Evidence as evidence at trial.

22          So I just want to make sure that we're on the same

23  page because I don't want there to be a surprise at trial.

24          Just by saying he's rebutting the testimony of the

25  government doesn't make him a rebuttal witness that doesn't

1    have to be disclosed, because this is testimony on a topic that

2    you are anticipating.  It's not a surprise.  If the government

3    expert got up and gave some unanticipated testimony, then

4    perhaps.  But you now have, because I ordered it, a written

5    proffer of the opinions that these two witnesses expect to

6    testify to.  And so you know that that's going to be the

7    evidence at trial.  I don't think you can call it a rebuttal

8    expert and in that way avoid a disclosure.

9            So let me -- and Ms. Taylor, I'll say to you, you

10   seemed to agree that your *Daubert* motion was moot.  I don't

11   quite understand, but let me hear the government's position.

12           MS. TAYLOR:  Your Honor, Mr. Mesrobian and I did do

13   some case law review and found at least some support for the

14   idea that a defendant could have a rebuttal witness.

15           I told Mr. King that if he were proposing that the

16   rebuttal testimony would be exclusively to rebut testimony at

17   trial of the government's witnesses, that -- and it was limited

18   in such a way in his withdrawal notice, that, as I said, there

19   was at least some case law research that we had done that would

20   support that that was a proper procedure.  It was not from this

21   circuit, but, for example, there was a case recently in

22   Virginia, *Adamiak*, where the --

23           THE COURT:  Can you spell hat?

24           MS. TAYLOR:  A-d-a-m-i-a-k.

25           -- where the Court had allowed defendant to proceed

1  essentially in this way.  There was no order of the proffer or

2  anything like that, but essentially the Court excused a

3  disclosure of the specific opinions of the expert because

4  defendant stated that he was intending only to call the expert

5  in rebuttal.

6          I agree with the Court, it's a little bit difficult

7  to wrap your head around because there's no -- I mean, the

8  case -- the defense case is essentially his case in chief, and

9  so that's why I had the conversation with Mr. King, to clarify

10 that he was talking about the specific rebuttal of individual

11 opinions that might be presented at trial.

12         THE COURT:  Regardless of whether I agree with that

13 authority or not, if the government is prepared to withdraw its

14 *Daubert* motions and isn't going to object on *Daubert* grounds,

15 then that's fine.  I just wanted to make sure I understood,

16 because it's a little inconsistent with what has been my

17 experience.  But --

18         MS. TAYLOR:  Yes, Your Honor.

19         THE COURT:  -- I'm not going to require you to pursue

20 a *Daubert* motion.

21         MS. TAYLOR:  Your Honor, I think what our position

22 was, and I believe that it was stated in the withdrawal, was

23 that it would be subject to us reviving the *Daubert* motion.  If

24 the defendant does, indeed, attempt to elicit opinions, that we

25 would essentially do that on the fly at the trial, because I do

1  still have objections to Mr. O'Kelly as an expert as stated in

2  the *Daubert* motion.

3          So if the rebuttal were to be consistent with the

4  topics of testimony that were previously disclosed, then yes,

5  we would still have an objection to them as an expert.  If

6  it -- for example, one of the things that Mr. Toy is proposed

7  to talk about is sort of the mechanical functioning of the --

8  of the internal components of the firearm, how they actually

9  work and how it differs between automatic and semiautomatic

10  fire.

11          In the motion -- or in their original disclosure

12  Mr. O'Kelly was also disclosed to talk about essentially that

13  same topic.  My expectation is that Mr. O'Kelly and Mr. Toy are

14  going to -- they shouldn't have, really, any difference of

15  opinion as to how a firearm mechanically works, but if

16  Mr. O'Kelly were to say, you know, "I've got an issue with

17  something Mr. Toy said.  I think that this part actually does

18  this in the process of firing a gun," I wouldn't have an

19  objection to Mr. O'Kelly's qualifications to testify on that

20  subject because I don't dispute that Mr. O'Kelly has the

21  requisite knowledge to understand the mechanics of how a

22  firearm functions.  However, certain other areas of testimony,

23  the government opposed Mr. O'Kelly as an expert on

24  qualifications.

25          And so I think it would just depend on what the

1    proposed rebuttal actually was, Your Honor.

2         THE COURT:  So to the extent that you had previously

3    objected based upon the lack of a disclosure, that's resolved.

4    Is that right?

5         MS. TAYLOR:  Yes, Your Honor.

6         THE COURT:  And you've looked at the document number

7    182, what Mr. O'Kelly intends to testify to if called in

8    rebuttal?

9         MS. TAYLOR:  Yes, Your Honor.  And I think we need

10   clarification from Mr. King, because my understanding from him

11   based upon our conversation this morning is that he was filing

12   that in an abundance of caution in order to not be found to be

13   not in compliance with the Court's order.

14        I would object to everything that was in that

15   document that was filed yesterday.  I do not think that that's

16   appropriate testimony at all, nor do I believe Mr. O'Kelly is

17   qualified to provide that testimony.

18        But I did not understand that to be a summary of what

19   the expected rebuttal testimony would be.  But I may be

20   incorrect, Your Honor.  Perhaps Mr. King can clarify that.

21        THE COURT:  All right.

22        Mr. King, can you please clarify that?

23        MR. KING:  Yes, Your Honor.  I think Ms. Taylor put

24   that very well.  It was filed in an abundance of caution as

25   we've not been relieved from the Court's February 1st order.

1    Based on what the government has told me their

2   anticipated testimony of Mr. Toy would be, I would actually not

3   anticipate Mr. O'Kelly providing this testimony.  If the

4   testimony goes as I now anticipate based on what the government

5   has told me, I -- I don't think this testimony -- and if the

6   government proceeds, then he would not be able to say this

7   because we would not be able to rebut anything the government

8   said.

9    I feel like I made that a little bit more convoluted,

10   but . . .

11    THE COURT:  All right.  So Mr. -- your anticipation

12   is that Mr. O'Kelly would not be called to testify to any of

13   the opinions that are set forth in 182 unless the government

14   changes -- goes beyond what is set forth in the government's

15   written proffer; is that right?

16    MR. KING:  That's correct, Your Honor.

17    THE COURT:  All right.  Then I think with that I'm

18   going to deny document number 170 -- well, I'm going to allow

19   the government to withdraw document number 170 as they state

20   they wish to do in the notice 178, and in doing so, find that

21   the government has withdrawn its challenge to the lack of a

22   disclosure and withdraws the current *Daubert* challenge but

23   reserves the right to raise a specific *Daubert* challenge if

24   Mr. O'Kelly is called to testify and provides opinions such as

25   those set forth in his written proffer, document number 182.

1          Did I state that correctly, Ms. Taylor?

2          MS. TAYLOR:  Yes, Your Honor.

3          THE COURT:  Mr. King, you agree?

4          MR. KING:  Yes, Your Honor.

5          THE COURT:  All right.  So then that takes us to the

6   *Daubert* motion.  And I think, Mr. King, I'm going to start with

7   you, because you said that the issues in the *Daubert* motion

8   have been considerably narrowed.  So I need you to tell me what

9   issues you're still pursuing in the *Daubert* motions so that I

10  can -- for example, let me start with this:  To the extent that

11  you-all claim there was an insufficient disclosure, I think

12  that's moot now because you have the written disclosures as to

13  both Mr. Toy and Mr. Lintner, correct?

14         MR. KING:  Yes, Your Honor.  We've had tremendous

15  conversation about that, and we were notified as to their

16  expected testimony.

17         THE COURT:  All right.  And so Mr. Zermay, do you-all

18  agree that to the extent there was a challenge to the

19  sufficiency of the disclosure, the opinions, that challenge is

20  now moot?

21         MR. LAROSIERE:  Yes, Your Honor, with regard to

22  sufficiency.

23         THE COURT:  Okay.  Thank you, Mr. Larosiere.

24         All right.  So what's left, Mr. King?

25         MR. KING:  Your Honor, if we could turn to the

1   witnesses one at a time, I think it will make things a little

2   easier.

3           As far as AS Lintner -- and I apologize if that's not

4   the correct title -- the primary issue we still have with his

5   testimony would be relevance.  If the Court will recall, he was

6   listed, I believe it was doc 55, as a witness when Mr. Ervin

7   was the only defendant.  Mr. Ervin is neither a Special

8   Occupational Taxpayer or a Federal Firearms -- Federal Firearms

9   Licensee.  I apologize, the acronyms tie me up sometimes.

10          The primary issue in his testimony, I think turning

11  to paragraph 4 of the government's response in opposition,

12  which is doc 149 -- and I apologize, I may be -- yes, Your

13  Honor, I'm sorry, turning to page 4, the beginning of the

14  second paragraph, where it begins at the -- and I quote, "It

15  will therefore be important for the jury to understand the

16  complex regulatory background that exists concerning

17  machineguns in order to properly understand and evaluate the --

18          THE COURT:  I need you to slow down when you read.

19  Everybody does it, but it's mean to the court reporter.

20          MR. KING:  I was told when I was first doing trial

21  work that the court reporters used mine to train for speed

22  because I fly.  So I apologize.  It's a bad habit of mine.

23  I'll start again.

24          THE COURT:  Tell me where you're reading from.

25          MR. KING:  It is page 4 of doc 149, second full --

1    second full paragraph.

2         THE COURT:  You can go ahead.  I'll find it.

3         MR. KING:  Your Honor, it states, "It will therefore

4    be important for the jury to understand the complex regulatory

5    background that exists concerning machineguns in order to

6    properly understand and evaluate the evidence in the case.

7    This, largely, is what his" -- that is, AS Lintner's --

8    "testimony is designed to provide."

9         Essentially it boils down to two issues.  One is

10   relevancy and two is the confusing nature this could have on

11   the jury.  Mr. Ervin is not regulated by the -- and understand

12   that there is a very complicated regulatory system that does

13   apply to machineguns and -- you know, taxes and stamps and

14   those sorts of things.  But the statute in question that he's

15   been charged with doesn't necessarily provide for that.  It's

16   potentially a defense.  But to have the government present

17   extensive evidence in its case in chief, it provides nothing --

18   there's no probative value to the jury as, you know, Mr. Ervin

19   does not qualify as a Special Occupational Taxpayer or a

20   Federal Firearms Licensee.

21        THE COURT:  Is there not a representation in one of

22   the videos that either Mr. Ervin or Mr. Hoover do qualify as an

23   SOT?

24        MR. KING:  Your Honor, I believe Mr. Hoover does

25   qualify as an SOT.  And, you know, to the extent that it was

1   limited to that, I think probably a better issue for

2   Mr. Hoover, however, in terms of the government presenting its

3   case in chief, you know, the complex regulatory environment, it

4   does -- not only is there relevancy issues, but it confuses the

5   jury as to what is required of Mr. Ervin, who is not regulated

6   by any of that, and doesn't necessarily provide any issue as to

7   whether the devices he was selling or distributing qualify as

8   firearms under the NFA.  And so for that reason we don't

9   believe his testimony would be appropriate unless and until

10  Mr. Ervin, and frankly probably Mr. Hoover, would provide

11  evidence that he was subjected to that and that that would form

12  the basis of some sort of defense.

13          But for the government to present extensive evidence

14  of a complex regulatory scheme unrelated to Mr. Ervin in its

15  case in chief has the strong possibility of prejudicing,

16  confusing the jury as to -- and add extra legal obligations to

17  Mr. Ervin without providing any probative information that

18  would be relevant to whether or not he committed the crime

19  charged.

20          THE COURT:  So the sole objection by Mr. Ervin at

21  this point to Mr. Lintner's testimony is to the relevance of

22  the specific testimony about the National Firearms Act

23  regulatory scheme; is that correct?

24          MR. KING:  Yes, Your Honor, and the threat of the

25  jury confusion that would result from it.

1      THE COURT:  And any other arguments raised in the

2  *Daubert* motion as to Mr. Lintner are now abandoned; is that

3  right?

4      MR. KING:  That's correct, Your Honor.

5      THE COURT:  All right.  What about -- well, let me

6  hear from you as to Mr. Toy.

7      MR. KING:  Your Honor, some of the issues as to

8  Mr. Toy had to do with we were unclear, and -- and I think that

9  comes with who was going to be testifying about the mechanics

10  of firearms.  I think that's been cleared.  That will be

11  Mr. Toy.

12      The -- one of the other issues we had concerns about

13  was if Mr. Toy was going to be providing an ultimate opinion

14  that the auto key card device in and of itself was a

15  machinegun.  My understanding is the government is not

16  intending to solicit that specific testimony.  So there was, I

17  think, a great deal of time devoted to that that would not

18  be -- that would be moot at this point.

19      In terms of any concerns about factually what he did,

20  there's not been objection to that.  And I think my

21  understanding now is that the bulk of his testimony will be the

22  physical actions he undertook and the reportings that he made.

23      The -- one of the areas -- and I'm turning to doc

24  181, which is the government's written proffer of opinions.

25      THE COURT:  Yes, sir.

```
 1          MR. KING:  The issue we would have with the FEO Toy's

 2   testimony would be turning to -- it's about ten sentences down.

 3          THE COURT:  Ten sentences down on what page?

 4          MR. KING:  I apologize.  Page 2, Your Honor.  The

 5   testimony that ATF has classified lightning links as a

 6   machinegun.

 7          THE COURT:  Okay.

 8          MR. KING:  Your Honor, the objections --

 9          THE COURT:  And what is the objection to that

10   statement?

11          MR. KING:  Your Honor, it goes back to jury confusion

12   issues and bolstering issues.  It's the -- you know, at the end

13   of it the jury is going to be asked to evaluate under the

14   statute whether or not Mr. Ervin committed the offense.  There

15   is a concern that allowing ATF agents to say ATF has determined

16   that this is a violation of the law runs into issues of rule of

17   lenity; it runs into issues with certainly their administrative

18   ability to determine whether or not any individual device is a

19   criminal violation as opposed to under the regulatory scheme.

20          Additionally, by testifying that way, it is using all

21   of ATF to bolster the witness's testimony that the device

22   itself, which from every written opinion I've seen that

23   addressed it -- I think Judge Merryday did an excellent order a

24   few years back discussing that -- a witness can testify that a

25   lightning link -- why they have an opinion that a lightning
```

1  link itself would be considered a machinegun because of how it

2  acts, but to suggest that ATF classified it --

3          THE COURT:  Do you have the cite to Judge Merryday's

4  opinion?

5          MR. KING:  I do not, Your Honor.

6          THE COURT:  Did you cite it in your memo?

7          MR. KING:  I did not.  I read it last night as I was

8  going through things.  But I can provide that to chambers.

9          THE COURT:  Yeah, I'll direct you to file it before

10 the end of the day today.

11         MR. KING:  Yes, Your Honor.

12         And then the -- so in terms of the -- you know,

13 whether or not ATF has classified it, I believe it would be

14 confusing to the jury and imply to the jury somehow that ATF

15 has the authority to legislate what constitutes a machinegun,

16 what does not constitute a machinegun.  We don't believe they

17 do have that.

18         Understanding there's been a ton of litigation with

19 bump stocks and those sorts of things, but in terms of the

20 criminal penalties, to alter the statute to allow ATF to

21 determine what falls where in the statute, we have not found

22 any authority that would allow them to do that for purposes of

23 the criminal statute.

24         THE COURT:  Yeah, I'm not sure I understood the

25 import of that last statement.  Does the opinion you're seeking

1    to exclude -- and I'm not sure it's an opinion rather than a

2    fact as to whether --

3            MR. KING:  It would be fact, not opinion, Your Honor,

4    yes.

5            THE COURT:  So the evidence that you're trying to

6    exclude is that ATF has classified lightning links as a

7    machinegun since the 1980s, and your position is that it

8    improperly bolsters the witness's testimony and it will confuse

9    the jury.  Is that --

10            MR. KING:  Yes, Your Honor.

11            THE COURT:  All right.  What else do you seek to

12    exclude as to Mr. Toy?

13            MR. KING:  Your Honor, the various -- beginning on

14    page 6, and it's the last, I guess, dashed-off paragraph

15    discussing the markings of machineguns, serial numbers, those

16    sorts of issues.  It would be the same as the objection that we

17    had to Agent Lintner's testimony.  It's similar testimony, but

18    it appears that Agent Toy would be providing that testimony

19    regarding the regulatory scheme of things like that, which

20    would not apply to Mr. Ervin and would present the same

21    confusion issues and lacking of probative value.

22            The rest of it as to Agent Toy I believe was either

23    resolved with the government or we would abandon.

24            THE COURT:  Okay.  So any arguments raised in the

25    *Daubert* motion as to Mr. Toy other than specific challenges to

1   the testimony about how long ATF has classified lightning links

2   as a machinegun and the testimony regarding the requirements

3   for markings of machinegun, anything else is withdrawn; is that

4   correct?

5           MR. KING:  Your Honor, with one clarification.  Not

6   how long ATF has --

7           THE COURT:  The fact that --

8           MR. KING:  The fact that they have, yes, Your Honor.

9           THE COURT:  Okay.  So everything else is withdrawn

10  other than those two things?

11          MR. KING:  Yes, Your Honor.

12          THE COURT:  All right.

13          Mr. Larosiere, it seems like you were taking the

14  merits of these *Daubert* issues; is that right?

15          MR. LAROSIERE:  Yes.

16          THE COURT:  So just starting with Mr. Lintner, are

17  you limiting your challenge to his testimony to the same

18  matters that Mr. King described?

19          MR. LAROSIERE:  No, Your Honor.  We largely stand on

20  our motion.

21          For the most part we question the extent that any of

22  this testimony could be considered expert testimony to the

23  extent that it's not -- it's based on data that's not provable.

24  We do wonder whether any of the experts presented here could

25  provide expert opinion aside from how a firearm functions.

1       So large -- and we do have mostly the same concerns

2  that were raised by Mr. King.

3       So I guess to bifurcate it, Mr. Lintner is expected

4  to testify as to the National Firearms Act itself and the

5  transfer record, the taxpayer process, and that does create a

6  substantial likelihood of confusion, especially when the

7  government is wanting to hone in on existing registered

8  machinegun conversion devices when the question here is whether

9  or not the item at issue is a machinegun.

10       And there are no charges here brought relevant to the

11  revocation of a federal firearms license.  They are accused of,

12  much more simply, right -- without getting into the Code of

13  Federal Regulations as it applies to firearm dealers, they are

14  accused of dealing in a machinegun, which is several layers

15  above the need to address any of those.

16       And to the same extent, to the extent that

17  Mr. Lintner is expected to testify who can import or make NFA

18  firearms, we're of the position that this just drives down this

19  road of dealing in firearms, when the core question is:  Is

20  this item a firearm?

21       Largely we'll incorporate what Mr. King said as to

22  SOT classes, because even to the extent that Mr. Hoover was a

23  responsible person on an SOT -- I'll clarify that he was not

24  the SOT possessor himself, he was the responsible person on an

25  SOT -- the question is whether we're inside the statute which

then leads to those regulations.  And the jury doesn't need to understand the regulations to know that -- whether or not the statute was violated.

And further, that the auction price of the previous SWD lightning link, that doesn't require expert testimony.

And that's what I have here with regard to Mr. Lintner.

THE COURT:  And are you actually challenging his qualifications?

MR. LAROSIERE:  To everything except the ability to testify as to how the gun works.

THE COURT:  Okay.  So when Mr. King got up and said, "This isn't a *Daubert* motion anymore," that wasn't accurate?

MR. LAROSIERE:  Your Honor, can I confer one second?

THE COURT:  Sure.

(Mr. Larosiere and Mr. Zermay confer.)

MR. LAROSIERE:  Yes, I think it is still a very pertinent *Daubert* question here, at least with respect to our involvement in the motion, as to whether he can testify about these elements.  You know, whether that can be sufficiently dispensed of outside the context of the *Daubert* motion, I'm not sure.  But simply the government's --

THE COURT:  No, no, no.  I mean, it's either *Daubert* -- qualification to express an opinion, that's a *Daubert* issue.

1          MR. LAROSIERE:  Exactly.  And so our main argument is

2    that, even without regard to qualification, that this isn't

3    expert testimony.

4          THE COURT:  Okay.  Let me hear from you as to

5    Mr. Toy.

6          MR. LAROSIERE:  Mr. Toy, largely the same thing.

7    There's no scientific -- you know, there's no test, right.

8    There's no chemical reagent that you can put on a machinegun or

9    otherwise.

10         So to the extent that he wants to say -- you know,

11   talk about NFA requirements, serial numbers, all the stuff that

12   applies to licensees, again, similar to how Mr. King said, it's

13   confusing and it also doesn't get to the core of the issue.

14         And on top of that, the core of the issue is whether

15   or not the item in question is a machinegun and, thus, five

16   steps down the line, subject to all of this stuff.  There is no

17   scientific test therefore.  It is --

18         THE COURT:  Doesn't he explain the test that --

19   doesn't he explain that he looked at it, he thought it looked

20   like a lightning link, so then he cuts it out and he puts it

21   into the firearm and he tests it?  So he's testing his

22   hypothesis.  And it fires more than one bullet with a single

23   pull of the trigger.  Isn't that a test?

24         MR. LAROSIERE:  So the question there, Your Honor,

25   and again, why this is important, is:  Was the item itself that

1    he received a machinegun?

2           He doesn't need to be an expert to testify that he

3    manufactured a machinegun, right.  He can say that, "I cut out

4    this piece of steel and I put it in a gun and it fired more

5    than one shot."

6           The question is:  Was the item a machinegun?  And if

7    we allow Mr. Toy to testify to that effect, it's certainly

8    going to confuse the jury.

9           There's two things here in this conversation.

10   There's the auto key card that he actually received, and then

11   there's a lightning link.

12          And so we can agree -- I think we can agree with the

13   government that a lightning link is a machinegun.  I think we

14   can agree that somewhere over here a drawing is not a

15   machinegun.

16          The worry is that Mr. Toy will testify where in the

17   between the line is drawn.  And he doesn't have -- one, it

18   would be inappropriate for him to testify as to that conclusion

19   of law.

20          THE COURT:  Well, she said he's not going to testify

21   to the conclusion of law.

22          MR. LAROSIERE:  Right, but that is a thing.  I

23   question what the probative value would be, what the necessary

24   conclusion would be, aside from that; aside from saying, "I

25   have this thing," right, "and it's a machinegun."

1    THE COURT:  Although the question that the jury has
2  to decide in this case is whether the auto key cards sold fall
3  within the definition --
4    MR. LAROSIERE:  Right.
5    THE COURT:  -- of a firearm, which includes a part or
6  a combination of parts that will allow it to fire more than one
7  bullet.
8    Isn't his testimony showing how he took the auto key
9  card and tested, isn't that relevant to the jury's
10  determination of whether the government has proven beyond a
11  reasonable doubt that the auto key card is a machinegun?
12    MR. LAROSIERE:  Your Honor, I respectfully disagree.
13  I think what the government is trying to do is have someone say
14  that they manufactured a machinegun, and thus the defendants
15  are guilty of dealing in machineguns.
16    Like I said, we can agree that a machinegun was
17  manufactured there.  The question is:  Was the card, as it came
18  into his hands, a machinegun?
19    This case could be about any number of things.  You
20  can do transformative labor upon them and make --
21    THE COURT:  Right.
22    MR. LAROSIERE:  -- a number of other things, right?
23    THE COURT:  And that's your jury argument.  But
24  evidence that an individual was able to take the object and
25  trans- -- and use it to make a firearm project more than one

1  bullet with a single action, that's relevant to whether or not

2  it falls within the definition.

3      MR. LAROSIERE:  So I understand what you're saying

4  now, Your Honor.  The question is, is "I manufactured a

5  machinegun from this part" expert testimony.

6      THE COURT:  Well, I'm not sure that's what his

7  testimony is going to be.  His testimony is going to be his

8  receipt of the auto key card and what he -- and how he tested

9  it.  I'm failing to see how that's subject to a *Daubert*

10  challenge.  I don't see -- go ahead.

11      MR. LAROSIERE:  So it starts with -- and, you know,

12  it proceeds for several pages about how he received it, how he

13  thought it looked like a lightning link, and then proceeds to

14  explain in fairly substantial detail how he manufactured a

15  lightning link from the component.  I don't see how in an

16  expert capacity that relates to the item that he acquired.

17  Does that make sense?

18      He can testify that you can cut a thing and if it's

19  this shape, right, these dimensions, it will function in this

20  way.  We're not going to contest that.  The question is, is

21  there anything that he could say here that wouldn't be unduly

22  prejudicial and not incredibly relevant to the question of is

23  this thing, right, which is a piece of stainless steel onto

24  which lines are engraved -- and again, I remind the Court that

25  the government has narrowed its indictment to specifically say

1    a combination of parts, right, designed and intended for use in

2    converting a Title I firearm into a machinegun.

3              THE COURT:  Right.

4              MR. LAROSIERE:  So again, largely we rest on our

5    motion with regards to that.

6              THE COURT:  Okay.  Well, to the extent that their

7    argument is that it's prejudicial, any potentially inculpatory

8    evidence is prejudicial at a trial.  I mean, that -- I don't

9    think that that --

10             MR. LAROSIERE:  It's unduly prejudicial.

11             THE COURT:  All right.  Let me -- all right.  So

12   that's the extent of your arguments with regard to Mr. Lintner

13   and Mr. Toy?

14             MR. LAROSIERE:  And again, the only things we didn't

15   mention, he talks about marking variances and other things that

16   are related to Federal Firearms Licensees.  Again, they don't

17   seem relevant and they're not expert testimony.

18             And yes, everything else has been thoroughly

19   discussed, Your Honor.

20             THE COURT:  All right.  Let me hear from Ms. Taylor.

21             MR. LAROSIERE:  Thank you, Your Honor.

22             THE COURT:  Ms. Taylor, I'll ask you to start with

23   Mr. Ervin's arguments that were presented by Mr. King and then

24   we'll move on to the broader arguments raised by -- although I

25   guess there will be some overlap, I'm sure.

1          MS. TAYLOR:  Yes, Your Honor.

2          First, I would start -- starting with Mr. Ervin's

3   arguments as to Mr. Lintner, there was an objection that all of

4   the testimony about what FFLs and SOTs can do is irrelevant to

5   Mr. Ervin because he's not an SOT or an FFL and these

6   regulations don't apply to him.  I mean, of course they do

7   apply to him.  Just because he did not bother with becoming a

8   licensed FFL or SOT before he began engaging in the conduct

9   that he's charged with does not mean that these regulations are

10  just irrelevant to him.

11         But it also ignores the fact that Mr. Ervin and

12  Mr. Hoover are joined for trial here.  And Mr. Hoover is an

13  SOT.  And in his videos he makes various claims, including

14  stating that he can legally manufacture machineguns.  And so

15  the jury is going to hear certain representations made by

16  Mr. Hoover about what he legally can and cannot do.

17         And in large part, what Mr. Lintner's testimony is

18  intended to accomplish is just to lay the groundwork for the

19  jury to understand:  Okay, what actually do you need to do to

20  be able to legally manufacture a machinegun?  What needs to be

21  done to legally transfer a machinegun?

22         Mr. Ervin and Mr. Hoover are both charged with a

23  conspiracy to transfer unregistered machineguns, so of course

24  it's relevant to the jury to hear what the requirements are to

25  do so in a legal way so that they can make a determination as

1    to whether those requirements were complied with or not.

2            With regard to the argument -- and I think that

3    generally addresses what Mr. King's arguments were on behalf of

4    Mr. Ervin, so I'm going to stay, I think, on Mr. Lintner and

5    move to Mr. Larosiere's arguments.

6            THE COURT:  That's fine.

7            MS. TAYLOR:  There seems to be a sort of general

8    argument by Mr. Larosiere that this isn't expert testimony.  I

9    mean, we disagree, but to the extent that it's on the line,

10   whether or not it's expert testimony doesn't make it

11   inadmissible.  If the argument is that this is lay testimony,

12   that does not make it inadmissible.

13           In this case I do think that Mr. Lintner's testimony

14   is expert testimony.  Mr. Larosiere submits that there's some

15   requirement in the law that there has to be a scientific test

16   or data that's analyzed in order for testimony to be expert

17   testimony, and that's simply not the case.  The advisory

18   committee -- 1972 advisory committee notes for Rule 702 state:

19           Most of the literature assumes that experts testify

20   only in the form of opinions.  That assumption is logically

21   unfounded.  The rule, accordingly, recognizes that an expert on

22   the stand may give a dissertation or exposition of scientific

23   or other principles relevant to the case, leaving the trier of

24   facts to apply them to the facts.

25           And that's what, in large part, Mr. Lintner is

1    expected to do.

2            I cited a number of cases in document 149 supporting

3    that this is an appropriate use of an expert witness.  Most of

4    these cases that I found were from securities regulation.  And

5    of course, that's a highly regulated environment as well.  It's

6    an area that is specialized in that the average juror is not

7    just going to walk into this courtroom and understand how this

8    works.  An average juror is not going to understand what a

9    Federal Firearms Licensee can and can't do, what steps need to

10   be able to be taken to deal and manufacture machineguns

11   legally, what steps need to be taken to transfer an NFA item to

12   another person.  They aren't going to understand that

13   machineguns manufactured before a specific date in 1986 can be

14   transferred but machineguns after that date cannot be

15   transferred.

16           This is the sort of background information that the

17   jury needs to understand in order to be able to put this case

18   in context and understand the evidence that's going to be

19   presented.  And it is appropriate -- an appropriate subject of

20   expert testimony.

21           To the extent that there are concerns about

22   bolstering, I think that those could be addressed simply by us,

23   you know, not actually having a finding on the record by the

24   Court that, you know, Mr. Lintner or Mr. Toy is an expert.  We

25   could simply present to the jury their testimony about their

1    training and experience.  Any remaining objections to that can

2    be dealt with at sidebar -- although I think they'll be

3    resolved here -- and then we can just proceed with their

4    testimony without having the Court sort of endorse them as

5    experts in any particular area if bolstering is the concern.

6            THE COURT:  Well, if that's the case, would the Court

7    then not read the expert jury instruction?

8            MS. TAYLOR:  Your Honor, that was a question that I

9    have not looked at yet, and I think I would probably want to

10   take a look at it more closely.

11           THE COURT:  Because I think it's an important

12   instruction, because one of the things the Court says in that

13   instruction is just because an expert is stating an opinion,

14   that doesn't mean the jury has to accept that opinion.  They're

15   free to -- just as with any other witness, they're free to

16   disregard or disbelieve it.  And I think that's an important

17   instruction.

18           MS. TAYLOR:  Yes, Your Honor.  And I think it also

19   addresses the bolstering concern, for the Court to instruct

20   that they are to be treated the same as any other witness.

21           The -- well, Mr. Larosiere also challenged

22   Mr. Lintner's qualifications it sounds like generally to

23   provide any of this testimony.  And on that point we would be

24   prepared to call Mr. Lintner to testify about his

25   qualifications and his basis of knowledge and then also provide

1  an abbreviated version of what we would have him testify to at

2  the trial.

3      I'm just looking at my notes to see if there's any --

4  oh, to the -- and I also would say to the extent that

5  Mr. Hoover's objections are that the real question here is

6  whether it is or is not, legally speaking, a firearm, that the

7  jury doesn't need to understand all of these other things.  And

8  I think that one assumes that neither side is going to make any

9  other argument as to guilt or innocence except based on that.

10 But it just -- it unfairly limits what the government is

11 allowed to prove in its case to demonstrate all of the elements

12 of the offense that we are -- that it is our burden to prove at

13 trial.

14      I'm not sure if I missed any of the points that the

15 Court wanted me to address or if we should move on to Mr. Toy

16 or if we should go forward now with having Mr. Lintner take the

17 stand.

18      THE COURT:  Well, let me hear from Mr. Larosiere for

19 a minute.

20      I'd like to know, Mr. Larosiere -- well, it sounds

21 like you're not objecting specifically to Mr. Lintner's

22 qualifications.  You're saying that nobody should provide this

23 type of testimony; is that right?

24      MR. LAROSIERE:  As an expert, yes.

25      THE COURT:  Okay.  So then we don't need a proffer of

1   his specific background, you just think that the area of

2   testimony is improper for expert testimony entirely?

3            MR. LAROSIERE:  Yes, Your Honor.

4            THE COURT:  Okay.  So then, Ms. Taylor, I don't think

5   we need to hear from --

6            MR. LAROSIERE:  And I just have a couple minor points

7   to address that.

8            To the extent that my friend Ms. Taylor brings up

9   experts that have testified in SEC cases, the important

10  distinction there is that those are related to financing

11  economics, and there are a lot of mathematical and other

12  scientific issues present.

13           This case involves legal principles.  Legal

14  principles are not scientific principles as the advisory

15  committee's note contemplate.  It is not the place of a witness

16  to advise on the law.  I think there is another entity in this

17  room much better suited to do that; that being the Court.

18           THE COURT:  I don't think that regulatory framework

19  of securities cases is scientific.  I mean, I'm not even sure

20  that the regulatory framework involves math.  I mean, some

21  calculations it might, but the regulatory framework is similar

22  to the National Firearms regulatory framework.

23           MR. LAROSIERE:  I would respectfully disagree.  To

24  the extent we're in comparison with the SEC, I'm sure there

25  could be other counter examples, right, that would make that

1  argument better.

2          But -- and that's something that's important here.

3  We keep wanting to get down into the weeds.  None of the

4  challenged statutes require anything other than the simple

5  checking of boxes that are listed in the statute.  We're

6  dealing with -- the charges largely relate to distribution,

7  possession, manufacture of a machinegun.  Those are very

8  simple.  Was the item a machinegun?  Was it produced after this

9  date and possessed not being on the National Firearms Transfer

10  Record?  It's not a terribly complicated inquiry.  The fact

11  that it's not on the record is a simple element that the

12  government doesn't need a witness to -- an expert to prove.

13          THE COURT:  All right.  Thank you.

14          MR. LAROSIERE:  Thank you, Your Honor.

15          THE COURT:  So it appears that Mr. Hoover has

16  withdrawn his specific challenge to Mr. Lintner's specific

17  qualifications, and I think rightly so because his experience,

18  at least that set forth in his CV, certainly supports a

19  conclusion that he is, in fact, qualified to present expert

20  testimony in this area.  But since that challenge has been

21  withdrawn, I don't need to belabor it.

22          But the remaining challenge is that the testimony he

23  intends to present regarding the regulatory framework of the

24  National Firearms Act is not an appropriate area for expert

25  testimony.  And I'm not convinced of that.  I do think that the

1    testimony that the government is seeking to present is similar

2    to that which is discussed in the Eleventh Circuit cases and

3    others with respect to a complicated regulatory framework.  And

4    I think understanding that framework is necessary for the jury

5    to understand the evidence that is going to be presented.

6            Some of the testimony, I would say I'm not really

7    sure it even strays across the line into truly expert testimony

8    as opposed to simply factual statements, but to the extent that

9    it does, it seems to be similar to the type of evidence that

10   the Eleventh Circuit permits.

11           And as persuasive authority I would cite to *United*

12   *States vs. Caro*, C-a-r-o, 454 Fed.Appx. 817 at 843.  One of my

13   district court colleagues in *United States vs. Schultz*, 2005

14   Westlaw 8162669.  That might actually have been the

15   Judge Mer- -- no, that's Judge Fawsett.  In other circuits,

16   *United States vs. Offill*, 666 F.3d 168 at 175.  In the Second

17   Circuit, *United States vs. Bilzerian*, 926 F.2d 1285 at 1294.

18           All of these cases in one way or another stand for

19   the proposition that it's appropriate to allow testimony that

20   provides the framework of a complicated regulatory landscape in

21   order to assist the jury in understanding the facts that are

22   being presented to them and help them understand unfamiliar

23   terms and concepts that are going to be discussed.

24           And in a fairly similar case that I'll probably talk

25   about a good bit -- I'm trying to find the cite to it -- is

1    *Bishop.*   Precisely this type of testimony was permitted.   I'll

2    give you-all the cite to it in a moment.

3          But I'm not at all convinced that the testimony about

4    the regulatory framework is impossible -- I'm sorry, is

5    irrelevant or improper.   I think that the regulatory framework

6    is, in fact, complex, which is a circumstance in which the

7    Eleventh Circuit authority allows the presentation of either

8    lay expert or expert testimony.

9          Mr. Lintner will be testifying based upon the

10   experience that he drew and obtained in the course of doing his

11   job.   So he's a non lawyer who's testifying within his area of

12   expertise who is required, in order to perform the functions of

13   his job, to know and understand the regulatory requirements of

14   this field.

15         That was discussed in *United States vs. Hogg*, 652

16   F.2d 551, pages 556 and 57.   It's an old Fifth Circuit case.

17         He's not stating -- he does not appear to be stating

18   opinions that are outside his area of expertise.   Although if

19   he does, of course the defendant would be able to -- defendants

20   would be able to raise objections to those specific opinions at

21   trial.

22         And Mr. Lintner isn't going to tell the jury what

23   decision to make, nor is he going to testify in terms of the

24   statutory definition -- a conclusion about whether the object

25   falls within the statutory definition.

1    And so unless defendants suggest that something that

2    Mr. Lintner is going to testify to is an incorrect statement of

3    the law, I think he's permitted to provide that testimony to

4    the law -- testimony about the law.  And to the extent it is,

5    in fact, expert testimony, I think it will assist the jury in

6    understanding the legal framework, the terms, and in addressing

7    some of the statements that apparently are made in the videos,

8    such as saying that one of the defendants can legally

9    manufacture a machinegun.  And it will also address Mr. -- some

10   of that testimony would also address Mr. Ervin's statements

11   that the cards were his original artwork.  And so I think it

12   will assist the jury.

13   And the case law cited in defendant's memorandum to

14   the contrary, *United States vs. Kahn,* simply not persuasive.

15   And so to the extent -- to the extent that either Mr. Hoover or

16   Mr. Ervin challenge Mr. Lintner's testimony on the basis of

17   relevance, I found it appears to be relevant.

18   Now, again, that doesn't foreclose a specific

19   objection to a specific question, but in the broad -- in terms

20   of looking at the government's proffer, it appears to be

21   relevant.  I don't -- to the extent it's prejudicial, it's

22   prejudicial only in that it addresses arguments that may be

23   made by the defendants, but that does not require its

24   exclusion.

25   And I don't think it would be confusing to the jury.

1    Now, to the extent that the defendants believe it might be

2    confusing to the jury, I will suggest that you-all have the

3    opportunity to provide me with an appropriate limiting

4    instruction, and I will confer with all of you-all and decide

5    that I can give an appropriate limiting instruction.  But since

6    you're the one that thinks it's going to be confusing, I'm

7    going to need for you to propose that jury instruction.

8          And I find that Mr. Lintner's qualifications,

9    although not challenged, if they were, I think they're

10   sufficient.  I think that there's been no suggestion that his

11   testimony is unreliable or inaccurate.  And I think it would be

12   of assistance to the jury.  And so to the extent either

13   defendant has moved to exclude Mr. Lintner's testimony on that

14   basis, the motions are denied.  As I said, they are denied

15   without prejudice to raising an objection to a specific

16   question, but with the understanding that the Court anticipates

17   that testimony about the regulatory framework is permissible.

18   If it goes too far afield, then you can object.  But I

19   anticipate that he will be able to talk about who can import or

20   make firearms and about who can be an SOT and what is required

21   to be an SOT and those types of matters.

22         Did I fail to address any arguments with regard to

23   Mr. Lintner, Mr. King?

24         MR. KING:  No, Your Honor.  I would -- the only thing

25   I would like to clarify for the Court, and it doesn't change

1    the Court's ruling I understand, the only concern is the

2    factual -- you know, whether it's a video or a statement by

3    Mr. Ervin.  Certainly if that's invited by.

4           The defense, I agree with the Court it would open the

5    door to all of that testimony coming in.  But, you know, our

6    concern would be the government putting potentially

7    self-serving hearsay type statements from one of these

8    defendants and then creating -- going through all the

9    regulatory requirements about something that's not invited or

10   raised by the defense in terms of whether it's Mr. Hoover's

11   videos or a statement Mr. Ervin made.

12          THE COURT:  Why would a statement by the defendant be

13   hearsay in a case against the defendant?

14          MR. KING:  If it's self-serving, saying "I'm not

15   guilty because of XYZ," that would not be in the defendant's

16   interest, and likely, I would think, inadmissible.

17          THE COURT:  Well, it would inadmissible if presented

18   by you.

19          MR. KING:  Correct.

20          THE COURT:  But if presented by the United States,

21   would it not be a statement by a party defendant?

22          Ms. Taylor?

23          MS. TAYLOR:  Your Honor, I'm -- I guess -- to start

24   with, we're not talking about just a video clip where

25   Mr. Hoover just makes that statement.  These are videos that

1    are approximately typically 15 to 20 minutes long in which he

2    makes many inculpatory statements and then also may make an

3    exculpatory statement, and it can't be excised readily from the

4    video.

5         And certainly when we get closer to trial we can talk

6    to defense counsel about whether certain parts of the video

7    should be excised, but they have a right to have us play the

8    whole video and enter the whole video in evidence.  So I'm

9    anticipating that we're not going to be able to just, you know,

10   clip out the exculpatory things that Mr. Hoover says in these

11   videos.

12        But the video, overall, is certainly a statement

13   against interest as to Mr. Hoover.  And they're also statements

14   in furtherance of the conspiracy between Mr. Ervin and

15   Mr. Hoover, so we believe that they are admissible.

16        THE COURT:  All right.  You can take your seat,

17   Ms. Taylor.

18        801(d)(2), what is not hearsay.  Statements offered

19   against an opposing party at trial.  And if it's made by the

20   party or it was made by the party's co-conspirator during

21   furtherance of the conspiracy.

22        I'm not understanding the hearsay argument, but you

23   can raise that at trial, I suppose.

24        But for the reasons that the -- I'm sorry, so the

25   question to you was whether I had addressed all of your

1    arguments.  And have I now addressed all of your arguments,

2    Mr. King?

3         MR. KING:  Yes, Your Honor.

4         THE COURT:  Mr. Larosiere, have I addressed all of

5    your arguments with respect to Mr. Lintner?

6         MR. LAROSIERE:  Yes, Your Honor.

7         THE COURT:  All right.  So to the extent that

8    defendants sought to exclude Mr. Lintner's testimony, it's

9    denied without prejudice to raising particularized objections

10   at trial.  And to the extent that the Court authorizes or

11   directs the defendants that if they wish for the Court to

12   provide a limiting instruction to the jury, they must provide a

13   proposed limiting instruction in advance of trial.  And I'll

14   give you a deadline for that at the end of the hearing.

15        MS. TAYLOR:  Your Honor, may Mr. Lintner be excused?

16        THE COURT:  Yes.

17        Turning to Mr. Toy, I think his testimony is largely

18   admissible, but Ms. Taylor, I question one area of testimony

19   that Mr. King raised that Mr. Toy intends to present, and I had

20   flagged it as well as questionable.

21        And let me -- it's the last bullet point in your

22   description of Mr. Toy's trial testimony that has to do with

23   the point at which markings have to be placed on the firearm.

24   It's on page, I want to say, 6.  The requirements for marking

25   machineguns, including the stage of manufacture at which such

1  markings are required.

2        And I'm just questioning the relevance of that and

3  how it would assist the jury, given the charges in this case.

4        MS. TAYLOR:  Yes, Your Honor.  I think with regard to

5  the markings, I felt that this was pertinent because none of

6  the auto key cards were marked.

7        I do realize it's a little bit trying to thread the

8  needle to testify about when the markings are required to be

9  placed and at the same time not eliciting the testimony that

10  the thing, as is, is a machinegun, because that's the question

11  that the jury is set to answer.

12        The relevance is that under some of Mr. Hoover's

13  statements, he claims to be an SOT, that he can legally

14  manufacture a machinegun; however, he still was not -- he

15  neither marked any of the auto key cards that were being sold

16  nor ones that he gave away, nor were they ever submitted for

17  registration.

18        I think, Your Honor -- well, and I understand the

19  objection not to be to Mr. Toy's qualifications to present that

20  testimony, but rather to admissibility.

21        THE COURT:  Yeah, I think it's a relevance objection.

22        MS. TAYLOR:  Yes.

23        Your Honor, and if it would be permissible, I think

24  what I would ask is just for an opportunity to think some more

25  about how that testimony would be presented since we're really

1    not talk- -- since it really, truly, does seem to be an

2    admissibility objection and an objection to whether it crosses

3    the line into sort of implicitly saying these things are

4    machineguns as is; which, of course, is going to be our

5    argument.  But I would just ask the Court if we could postpone

6    just the decision on that particular area while I think of

7    whether -- what the best way would be to present that testimony

8    in a way that doesn't cross this line that we're agreeing not

9    to cross.

10          THE COURT:  All right.  Well, as I have said many

11   times before in pretrial hearings, relevance is not something

12   that the Court can determine in a vacuum.  We have to hear what

13   the testimony is at trial.  So to the extent that it's an

14   objection to the relevance, at least as of right now, I admit

15   that I question the relevance, but I'm not prepared to exclude

16   it.  But we'll have to see what the testimony is at trial.

17          To the extent that there's an objection to Mr. Toy as

18   not being qualified, I didn't actually really hear any

19   challenge to his qualifications.  I think the challenge is that

20   the testimony he's presenting isn't expert testimony, as it was

21   with Mr. Lintner.

22          Is that right, Mr. Larosiere?

23          MS. TAYLOR:  Should I stay here, Your Honor?

24          THE COURT:  Yes.

25          MR. LAROSIERE:  Your Honor, I believe we do question

1  the qualifications.

2         THE COURT:  Well, okay.  So tell me what is

3  inadequate about his qualifications, because you generally

4  question it, but you don't tell me -- you make a very

5  generalized statement, but you don't tell me what's inadequate

6  about his qualifications.

7      (Mr. Larosiere and Mr. Zermay confer.)

8         MR. LAROSIERE:  Your Honor, we'll withdraw that

9  component and simply challenge the adequacy as expert witness

10  testimony.

11         THE COURT:  Okay.  All right.  So then with respect

12  to Mr. Toy's testimony regarding his receipt of the auto key

13  card, what he did and how it functioned, I don't even think

14  that's expert testimony.  I think that's just fact testimony.

15  But to the extent it is expert testimony, it's testimony that

16  he's qualified to present.

17         To the extent that there's a suggestion that it's not

18  reliable, I would disagree with that.  As I stated in talking

19  to Mr. Larosiere, Mr. Toy will testify that he saw the item, he

20  believed in his mind or formed a hypothesis that it was a

21  lightning link, and so he then tested that hypothesis.  And to

22  test the hypothesis, he cut out the pieces and put them in a

23  firearm, and it resulted in the firearm firing more than one

24  bullet with the action of a single trigger pull.  Although in

25  some instance it was -- instances it was less successful than

1   others, that is a testing of the hypothesis, which is

2   ordinarily the way that an expert tests a hypothesis.  So I

3   think it's entirely appropriate.

4           And I told you-all that there was a case called the

5   *United States vs. Bishop* that was instructive, and the Tenth

6   Circuit has a fairly long discussion in that case where it

7   admitted precisely this type of testimony.  It's at 926 F.3d

8   621 at 633, is the part of the discussion.

9           And I need to go back to say that to the extent that

10  there's a challenge on what these individuals are testifying

11  about, that it's not scientific, expert testimony is not

12  limited to scientific testimony.  And the Eleventh Circuit has

13  readily recognized that individuals, including case agents, DEA

14  officers, can provide testimony that comes from their training

15  and experience even if it isn't a mechanical or scientific

16  proposition.

17          And certainly Mr. Toy's testimony will assist the

18  jury in determining whether the item in question falls within

19  the definition that they are going to have to apply because, in

20  part, he's going to talk about, as I understand it, what it is

21  that the pieces that get cut out of the card do once they

22  interact with the firearm.  And that's information that an

23  ordinary juror would not understand and would need guidance and

24  testimony in order to address that.

25          And that requires specialized knowledge.  And I think

1    it's appropriate testimony to be presented.  And as I said, I

2    found the *Bishop* opinion to be persuasive in that regard.

3           Like Mr. Lintner, the issues in this case are

4    complex.  Mr. Toy is a non lawyer who will be testifying about

5    areas within his expertise.  To the extent that the defendant

6    thinks that anything he says is incorrect, they'll have the

7    opportunity to object to it.  But nothing in the motion has

8    suggested that he's given any inaccurate testimony.  And so I

9    think it's appropriate testimony and I'm going to deny the

10   motion to exclude it.

11          I do question the relevance of that last area, but

12   relevance is something that, as I said, I can't determine in a

13   vacuum.  My denial of the motion is without prejudice to the

14   defendants objecting to specific statements at trial,

15   understanding the Court's ruling.

16          And I will also -- as I said earlier, if there's a

17   limiting instruction that you-all want me to provide, I'll be

18   happy to consider a limiting instruction, but it needs to come

19   from you so that I can be sure it addresses the concerns that

20   you have.

21          I'm just trying to . . .

22          Did I address all of your arguments with regard to

23   Mr. Toy, Mr. King?

24          MR. KING:  No, Your Honor.  The historical fact that

25   ATF classified the lightning link as a machinegun was not

1    addressed.

2           THE COURT:  I think the problem with that is exactly

3    what you just said, is that it's a historical fact.  I don't

4    know that that's opinion testimony.  So you're seeking to

5    exclude it as more prejudicial than probative, is that --

6           MR. KING:  Your Honor, I had planned on addressing

7    that with a motion in limine because, you know -- because it is

8    a historical fact, I don't think it is opinion testimony.  I

9    think it can be raised by almost any witness.  But that is

10   something we plan to deal with in the motion in limine.  If I

11   could separately brief that, that would be my preference.

12          THE COURT:  That's fine.  That makes sense.  All

13   right.  So then I've addressed all of your arguments other than

14   the one that you're going to raise with regard to that fact?

15          MR. KING:  Correct, Your Honor.

16          THE COURT:  All right.

17          Mr. Larosiere, have I addressed all of your -- all of

18   Mr. Hoover's arguments?

19          MR. LAROSIERE:  Yeah, so just -- and if I could be

20   taking the same position as Mr. King here, there are several

21   historical facts that come up, and we were generally of the

22   opinion that they aren't competent to testify about them.  But

23   aside from that, yes, Your Honor.

24          THE COURT:  How would they not be competent to

25   testify about them if it's within their personal knowledge?

1    MR. ZERMAY:  Yes, Your Honor, if I could just briefly

2    jump in.

3        THE COURT:  I will let you today, but you-all need to

4    understand that at trial it will be one lawyer per matter.  So

5    if one lawyer has the witness, then that lawyer argues and we

6    don't -- and it's -- I'll put the same burden on the

7    government.  It's a one-at-a-time thing.  This isn't wrestling;

8    we're not tag-teaming in and out.  But for today I'll allow it.

9    Go ahead.

10        MR. ZERMAY:  Thank you very much, Your Honor.  I

11   deeply appreciate it.

12        As to competence to testify --

13        THE COURT:  Can you pull that microphone down.

14        MR. ZERMAY:  As to competence to testify to

15   historical facts, there are many historical facts that people

16   have knowledge of but they're not necessarily competent to

17   state.  For example, with the -- the example of like the

18   Federalist Papers, for example.  They give evidence of, you

19   know, why the Constitution, for example, was put into place,

20   but they weren't there.  They weren't present when they were

21   drafted.

22        Similarly as to the National Firearms Act, to the

23   extent that the agents are going to attempt to testify as to

24   why the National Firearms Act was put into place, they're just

25   not competent to testify to that.

1     THE COURT:  I don't think that's the testimony that's

2  been proffered.  I think the testimony that's been proffered is

3  the date on which the -- well, the fact that ATF characterizes

4  lightning links as machineguns, and the date, wouldn't that be

5  information that the agents were required to know in order to

6  do their job such that it would be within their knowledge?

7     MR. ZERMAY:  I understand it's within their

8  knowledge, Your Honor, I just don't think it's appropriate

9  whether -- for an expert witness to testify as to that, or a

10  lightning expert witness.

11     THE COURT:  I'm going to overrule that objection.

12     MR. ZERMAY:  Understood, Your Honor.  Thank you.

13     THE COURT:  All right.  Are there any outstanding

14  motions that I haven't addressed, Ms. Taylor?

15     MS. TAYLOR:  I do not believe so, Your Honor.

16     THE COURT:  Okay.

17     Mr. King?

18     MR. KING:  Not on behalf of Mr. Ervin, Your Honor.

19     THE COURT:  Mr. Zermay?

20     MR. ZERMAY:  No, Your Honor.

21     THE COURT:  All right.  Since I have Mr. Hoover, sort

22  of, and I have Mr. Ervin, I do want to talk to you-all about

23  your right to testify at trial.  That's something that I always

24  do in advance of the trial.  I want to make sure that both of

25  you fully understand that right.  I know the magistrate judge

 1   has advised you of that right at your arraignments, but I'm

 2   going to repeat it.

 3        Each of you has the right the testify at this trial

 4   if you wish to testify.  You also have the right not to

 5   testify.  And no one can force you to testify in any way.  You

 6   should talk to your attorney.  You should seek advice and

 7   guidance about whether or not it's in your best interest to

 8   testify.  But ultimately, each of you has to make that decision

 9   for yourself.  It's not your attorney's decision, it's your

10   decision.

11        Mr. Ervin, do you understand that?

12        DEFENDANT ERVIN:  Yes, ma'am, I understand.

13        THE COURT:  And Mr. Hoover, can you unmute yourself?

14   Mr. Hoover --

15        DEFENDANT HOOVER:  Yes, I understand.

16        THE COURT:  -- you understand that it's your right to

17   decide whether you testify or not, sir?

18        DEFENDANT HOOVER:  Yes, sir, Your Honor -- yes, Your

19   Honor.  Sorry.

20        THE COURT:  It happens a lot.  It's okay.

21        And I want you-all -- I want us to be on the same

22   page, that when the trial comes, if at the end of the defense

23   case, if Mr. King stands up and says the defense rests without

24   you having testified, Mr. Ervin, then I'm going to understand

25   that it was your decision not to testify.

1           Is that fair?

2           DEFENDANT ERVIN:  Yes, Your Honor, I understand.

3           THE COURT:  And Mr. Hoover, in the same way, if

4    Mr. Zermay or Mr. Larosiere stand up and say the defense rests

5    and you have not testified, then I'm going to understand that

6    you personally made the decision not to testify.

7           DEFENDANT HOOVER:  Yes, Your Honor.

8           THE COURT:  All right.

9           I don't think I have anything further.  Just a

10   moment.

11          What's the date for -- when did you say the deadline

12   was for motions in limine?

13          MS. TAYLOR:  Your Honor, I believe the deadline is

14   February 24th and then responses on March 10th.

15          THE COURT:  All right.  Then I'll ask that any

16   proposed limiting instruction be filed by the same date that

17   the motions in limine are due so that I can consider them in

18   the context of the motion in limine.  So that's February 24th.

19          Mr. King, I'll ask you to file that Judge Merryday

20   decision that you mentioned.

21          And Ms. Taylor, do you have the citation for that

22   *Adamiak* case that you mentioned?

23          MS. TAYLOR:  If you can give us a minute.

24          MR. MESROBIAN:  Your Honor, if I may, that was

25   addressed at prior -- in pretrial proceeding by the Court where

1  the defense similarly withdrew -- it was the same expert

2  witness -- Mr. O'Kelly.  They withdrew Mr. O'Kelly unless it

3  was in the rebuttal of a government witness.  And the judge in

4  that case accepted that and said we'll deal with any challenge

5  to Mr. O'Kelly's testimony during trial if necessary.

6          And I'm happy to provide -- I think it's a docket

7  entry.  It's a transcript of that hearing.  But I'm happy to

8  provide a PDF of that to the Court.

9          THE COURT:  Okay.  I'll ask you to file that just

10 because I'm not -- as I said, I don't think that's consistent

11 with my understanding, but since you-all are all in agreement,

12 I'm going to let it go.

13          Yes, Mr. King.

14          MR. KING:  Your Honor, I apologize.  When you started

15 discussing the *Bishop* case, I realized in my head I had merged

16 that with the opinion of Judge Merryday that came flooding back

17 to me.  Judge Merryday's opinion was on a motion to withdraw a

18 plea where he talked about the lightning link being a statutory

19 firearm and went in depth on that.

20          And I can still provide that, but I wanted to clarify

21 the case.  I had kind of merged those in my head.  And the

22 minute you mentioned the second case, I realized my error.  So

23 I just wanted to clarify that.

24          THE COURT:  Okay.  Well, why don't you just file it

25 just in case.

1           MR. KING:  Yes, Your Honor.

2           THE COURT:  It's always better to be informed.

3           All right.  If there's nothing further, then we'll be

4    in recess.

5           And I'm going to repeat what I said earlier.

6    Mr. Hoover and Mr. Ervin are expected to be at all the hearings

7    going forward in person unless my notice says otherwise.

8           Wait.  I have to make a record.

9           Mr. Hoover, have you been able to hear everything

10   that we've talked about here today after we got you on Zoom?

11          DEFENDANT HOOVER:  Yes, I have, Your Honor.

12          THE COURT:  All right.  And you were -- and you're

13   satisfied with what we did today even though you may disagree

14   with my decisions?

15       (Pause in proceedings.)

16          THE COURT:  In other words --

17          DEFENDANT HOOVER:  Yes, Your Honor.

18          It took me a second.

19          THE COURT:  So what I'm wanting to confirm is that

20   the attorneys -- your attorneys took the positions that you

21   expected them to take and you're satisfied with how they

22   handled this hearing?

23          DEFENDANT HOOVER:  Yes, Your Honor.

24          THE COURT:  All right.

25          Mr. Ervin has a question.

1          DEFENDANT ERVIN:  No, I just asked him if I needed to

2    stand up, ma'am, that's it.  I was just trying to have good

3    etiquette.

4          THE COURT:  All right.  We're in recess.

5          COURT SECURITY OFFICER:  All rise.

6       (The proceedings concluded at 12:15 p.m.)

7                          -     -     -

1              CERTIFICATE OF OFFICIAL COURT REPORTER

2

3    UNITED STATES DISTRICT COURT)

4    MIDDLE DISTRICT OF FLORIDA )

5

6         I hereby certify that the foregoing transcript is a true

7    and correct computer-aided transcription of my stenotype notes

8    taken at the time and place indicated herein.

9

10        DATED this 20th day of March 2023.

11

12                        /s/ Katharine M. Healey
                          Katharine M. Healey, RMR, CRR, FPR-C
13                        Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25