1              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
2                 JACKSONVILLE DIVISION

3   UNITED STATES OF AMERICA        Jacksonville, Florida

4       -vs-                        3:21-cr-22(S4)-MMH-MCR

5   KRISTOPHER JUSTINBOYER ERVIN    April 21, 2023
    and MATTHEW RAYMOND HOOVER,
6                                   Courtroom 10B
           Defendants.
7

8   _____

9              **EXCERPT OF JURY TRIAL PROCEEDINGS**

10

          BEFORE THE HONORABLE MARCIA MORALES HOWARD
11               UNITED STATES DISTRICT JUDGE

12

13

14

15

16  OFFICIAL COURT REPORTER:

17  Katharine M. Healey, RMR, CRR, FPR-C
      PO Box 56814
18    Jacksonville, FL 32241
      Telephone: (904) 301-6843
19    KatharineHealey@bellsouth.net

20

21
                         (Proceedings reported by stenography;
22                        transcript produced by computer.)

23

24

25

1                          A P P E A R A N C E S:

2    GOVERNMENT COUNSEL:

3    **LAURA COFER TAYLOR, ESQUIRE**
     **DAVID B. MESROBIAN, ESQUIRE**
4      United States Attorney's Office
       300 North Hogan Street, Suite 700
5      Jacksonville, FL 32202
       laura.c.taylor@usdoj.gov
6      david.mesrobian@usdoj.gov

7

     COUNSEL FOR DEFENDANT ERVIN:
8
     **ALEX KING, ESQUIRE**
9
       Monroe & King, P.A.
10     1805 Copeland Street
       Jacksonville, FL 32204
11     alex@monroekinglaw.com

12

     COUNSEL FOR DEFENDANT HOOVER:
13
       **ZACHARY Z. ZERMAY, ESQUIRE**
14     Zermay Law
       1762 Windward Way
15     Sanibel, FL 33957
       zach@zermaylaw.com
16
       - A N D -
17
       **MATTHEW M. LAROSIERE, ESQUIRE**
18     6964 Houlton Circle
       Lake Worth, FL 33467
19     larosieremm@gmail.com

20

21

22

23

24

25

I N D E X

PAGE

GOVERNMENT'S REQUEST FOR REMAND
  OF DEFENDANT HOOVER........................ 6, 7, 14, 18, 20

DEFENDANT HOOVER'S ARGUMENTS AGAINST REMAND.. 7, 11, 15, 20, 21

RULE 29 MOTIONS DENIED........................ 11

COURT GRANT'S GOVERNMENT'S REQUEST FOR
  REMAND OF DEFENDANT HOOVER................. 24

E X H I B I T S

ADMITTED                                              PAGE

  GOVERNMENT'S EXHIBIT 1................................ 17

  GOVERNMENT'S EXHIBIT 2................................ 21

1                    *        *        *        *        *

2              THE COURT:  All right.  Ladies and gentlemen, with

3    our thanks, you're free to go.  And as I said, I'll be back in

4    just a few minutes if you can wait.

5              COURT SECURITY OFFICER:  All rise for the jury.

6              THE COURT:  And I do have a gift for you-all as well.

7         (Jury exits, 10:44 a.m.)

8              THE COURT:  Just so there's no confusion on the

9    record, the gift is a Challenge coin with the seal of the

10   Middle District of Florida and the State of Florida.  That's --

11   we give them to jurors to thank them for their service at the

12   completion of trials.  So I didn't want there to be any

13   confusion about what that was.

14             All right.  At this time I have to ask Mr. Hoover and

15   Mr. Ervin to stand so that I can adjudicate them based upon the

16   jury's verdict.

17             All right.  I'm going to start with Mr. Ervin.

18   Kristopher Justinboyer Ervin, based on the jury verdict in

19   Case No. 3:21-cr-22(S4)-MMH-MCR finding you guilty of the

20   charges in Counts One through Twelve of the superseding

21   indictment, the Court hereby adjudicates you guilty of that

22   offense.

23             You will remain in the custody of the marshal pending

24   sentencing.  Ms. Wiles just handed me a sentencing date.

25   Sentencing will be on July 31st at 9:30 in the morning.

1    In advance of that the probation office will meet

2 with you.  They'll need to talk to you to prepare a presentence

3 report.  If you have any questions about that, Mr. King will

4 answer your questions.  When the presentence report is

5 completed, Mr. King will get a copy of it to you, review it.

6 If you disagree with it in any way, bring it to Mr. King's

7 attention.  He will address it.  And if he's unsuccessful in

8 doing so, then I will resolve it at the sentencing hearing.

9    Do you understand those things, sir?

10    DEFENDANT ERVIN:  Yes, ma'am.

11    THE COURT:  Matthew Raymond Hoover, based upon the

12 jury's verdict in Case No. 3:21-cr-22(S4)-MMH-MCR finding you

13 guilty of the offenses charged in Counts One through Eight of

14 the indictment, the Court hereby adjudicates you --

15    (The courtroom deputy confers with the judge.)

16    THE COURT:  Oh, I'm sorry, you're right.

17    I need the verdict form back.  Thank you, Ms. Wiles.

18    -- finding you guilty of Counts One, Two, Three,

19 Five, and Seven, the Court hereby adjudicates you guilty of the

20 charges in Counts One, Two, Three, Five, and Seven of the

21 fourth superseding indictment.  Ms. Taylor -- well, and

22 adjudicates you not guilty of the charges in Counts Four, Six,

23 and Eight.

24    As I explained to Mr. Ervin, the probation office

25 will prepare a presentence report.  You'll need to talk to them

1  about that.  When they complete the presentence report they'll

2  get it to your attorneys.  Your attorneys will get it to you to

3  review.  If you disagree with anything in the presentence

4  report, bring it up with your attorneys.  They will try to

5  resolve it.  If they're unable to do so, then I will resolve it

6  at the sentencing hearing.

7          Do you understand those things, sir?

8          DEFENDANT HOOVER:  (Nods head.)

9          THE COURT:  I need you to say --

10         DEFENDANT HOOVER:  Yes.

11         THE COURT:  Okay.

12         Ms. Taylor, Mr. Hoover is currently on bond.  What is

13  the government's position as to that matter?

14         MS. TAYLOR:  Your Honor, the United States moves for

15  remand of Mr. Hoover under Section 3143(a)(1).

16         THE COURT:  Is it a mandatory remand, Ms. Taylor?

17         MS. TAYLOR:  I don't believe so, Your Honor.  I was

18  looking through that before, and I don't think that any of the

19  mandatory remand conditions apply to him, which is why it would

20  fall under (a)(1).  And so it would be his burden to show by

21  clear and convincing evidence that Mr. Hoover is not likely to

22  flee or pose a danger to the safety of any other person or the

23  community if released.

24         THE COURT:  Mr. Zermay or Mr. Larosiere, are you

25  prepared to address the matter of bond at this time -- or

1    remand I guess is the better question?

2           Mr. King and Mr. Ervin, you may take your seats.

3           Mr. Hoover, you may take your seat as well.

4           MR. ZERMAY:  Yes, Your Honor.  We respectfully

5    request that he not be remanded into custody.  He's not a

6    flight risk.  He owns a home.  He has children in the

7    community.  He's -- and I have a Pretrial Release Provision

8    Status Report that was prepared by Mr. Daniel Dumpit, who has

9    stated that he submitted previously to four urinalysis tests,

10   each with negative results.  And Officer Herman, who I believe

11   is also with Pretrial Services, has stated that Mr. Hoover has

12   complied with the terms and conditions of release.  And based

13   upon defendant's compliance with the terms and conditions of

14   release, his supervision is satisfactory, and therefore we'd

15   state there's a -- by clear and convincing evidence that he is

16   not a flight risk and not a danger to the community.

17          THE COURT:  Ms. Taylor, given Mr. Hoover's behavior

18   on bond for at least a year and a half, closer to two years,

19   why wouldn't it be appropriate to continue him on bond at this

20   time?

21          MS. TAYLOR:  Your Honor, looking at the factors that

22   the Court is to consider, obviously the weight of the evidence

23   was extremely strong because the jury has convicted Mr. Hoover

24   of most counts, including the conspiracy count, which

25   encompasses all of the transfers of what are thousands of

1  dangerous and unusual firearms: machine gun conversion devices.

2  It's an extremely serious offense.

3      Additionally, Your Honor, obviously Mr. -- Mr. Hoover

4  has, for the most part, shown up when he is supposed to, but

5  his circumstances have changed now.  He has posted on social

6  media throughout this trial that -- his expectation that he

7  would be acquitted.  And obviously things did not go according

8  to how he expected them to and he has now been convicted.  And

9  so his motivations to continue to show up and comply with these

10  proceedings, given that he is now very likely to be going to

11  prison, have obviously shifted.

12      Additionally, Your Honor, I do have concerns about

13  the safety of all of the witnesses in this case, as well as

14  personnel from the U.S. Attorney's Office based upon what I

15  have seen in terms of Mr. Hoover's previous videos.  For

16  example, when he -- after Mr. Ervin was arrested, Mr. Hoover

17  posted a video in which he included the name and phone number

18  of Ms. Call -- or at least the phone number, and encouraged his

19  viewers to call the Public Defender's Office and essentially

20  harass the Public Defender's Office.

21      And on numerous other occasions he has made videos

22  about this case which have resulted in comments -- many

23  comments to the effect of "this prosecutor doesn't deserve to

24  breathe anymore," also comments about the judge not deserving

25  to continue to live.  And given that he has in the past

1    fomented these sorts of comments against myself and this Court,

2    and now he has throughout the trial also started posting on his

3    social media that -- for example, that he -- he's stating that

4    the testing of the firearm was faked, misrepresenting what has

5    happened in this trial to make it appear that he did not

6    receive a fair trial, although he also at the same time was

7    saying that he expected to be acquitted, I think there are

8    serious concerns for the safety of the witnesses; again,

9    concerns for the personal safety of everyone who has been

10   involved in this prosecution.

11          Mr. Hoover has not, to my knowledge, called me out by

12   name in his videos yet, but whether that would continue, given

13   the phase that we are at now, I do not know.

14          THE COURT:   Mr. Zermay, those matters are concerning.

15   Here's what I'm going to do.   I need to go let the jury go.

16   I'm going to give you-all -- it's about five minutes to 11.

17   We'll reconvene here at about 11:20.

18          If you disagree with any of the representations

19   Ms. Taylor has made, you'll need to explain that to me.   And if

20   there's disagreement about the content of those videos,

21   Ms. Taylor may need to show them to me.

22          But I do think it is true that having now been

23   convicted of five serious offenses, Mr. Hoover finds himself in

24   a very different place than he was before, and I question

25   whether continuation of bond is appropriate.

1          But I'm going to give you some time to confer with

2    counsel and to be prepared to address the matters that

3    Ms. Taylor just raised.

4          It is Mr. Hoover's burden to convince the Court by

5    clear and convincing evidence that he's not likely to flee or

6    pose a danger to the safety of any other person or the

7    community.  So the presumption is detention once there's a

8    conviction, and the burden is on Mr. Hoover.

9          So I'll give you an opportunity to prepare to address

10   that.  And we'll come back at about 11 -- about 11:25.  So I'll

11   give you about 25 minutes.

12         Mr. Hoover, please don't leave the courthouse.  And

13   Mr. Ervin is -- we've completed the matters as to Mr. Ervin, so

14   Mr. King and Mr. Ervin are excused.  You don't have to be

15   present for the remaining discussion about whether or not

16   Mr. Hoover will be remanded.

17         MR. KING:  Your Honor, just very briefly.  I know the

18   Court reserved ruling on our Rule 29 motions.  Is it the

19   Court's intention to continue to reserving until we file our

20   post verdict, or to --

21         THE COURT:  Actually, thank you for reminding me.  I

22   had a note to put on the record that both defendants made

23   motions for judgment of acquittal under Rule 29 at the close of

24   the government's case.

25         Although I was inclined to deny the motions, I opted

1  to take them under advisement.  But at this time, having been

2  convinced that the government did present sufficient evidence

3  as to each charge and each defendant to submit each charge to

4  the jury for its consideration, I deny the Rule 29 motions.

5  The denial, of course, is without prejudice to renewal of any

6  and all arguments raised in the Rule 29 motions in your

7  post-trial motions.

8          MR. KING:  Thank you, Your Honor.

9          THE COURT:  Thank you, Mr. King.

10          All right.  We'll be back in 25 minutes.

11          COURT SECURITY OFFICER:  All rise.

12      (Recess, 11 a.m. to 11:25 a.m.)

13      (Mr. King and Defendant Ervin not present.)

14          COURT SECURITY OFFICER:  All rise.  This Honorable

15  Court is back in session.

16          Please be seated.

17          THE COURT:  Mr. Zermay.

18          MR. ZERMAY:  Yes, Your Honor.  May it please the

19  Court.

20          Respectfully, the concerns that Ms. Taylor raised

21  regarding statements -- or statements of third parties that are

22  unrelated to the case and the followers that would be

23  commenting online, Mr. Hoover has expressed to me that he'll

24  commit to not posting about the trial at all on social media.

25          And, really, his factors that led to the pretrial

1    release haven't changed.  He has no criminal history.  He has a

2    highly established presence in his community.  He owns

3    property.

4           The record's replete with Mr. Hoover's desire to

5    follow the law.  When he was arrested he was very cordial to

6    the marshals.  And he has no post-arrest bad behavior, as his

7    Pretrial Supervision Report states, that he had no evidence of

8    drug use in his urinalysis test.  And the pretrial services

9    stated that he complied with all conditions in terms of

10   probation -- or of pretrial release.  He has no arrests or

11   warrants out while on pretrial release.

12          And with respect to his expectations at trial, we

13   were prepared to go to a bench trial earlier, in part to

14   accelerate the appellate process, which tends to show that he

15   was prepared for this to go on appeal to the Eleventh Circuit.

16   And that was the case since we filed the motion to dismiss and

17   engaged in discussion with the government to facilitate a bench

18   trial.

19          While he was on pretrial release he listened to the

20   pretrial services about the content of what he was posting.  He

21   was discussing President Joe Biden in one of his videos, and

22   the pretrial service officer expressed that it was the pretrial

23   officer's opinion that that was approaching the line, and then

24   he scaled back what he was discussing.  So he does have respect

25   for authority and rules during the course of the supervisory

1    process.

2          And he has also complied with not having firearms for

3    almost two years now.

4          And regarding comments during the trial, Your Honor,

5    on the screen is an example of what Mr. Hoover posted.  He's

6    expressing to his followers requests that they follow basic

7    courtroom decorum.  For example --

8          THE COURT:  I need a -- do you have a paper copy of

9    this?  There's nothing -- that's not in the record, and,

10   frankly, I can't read it.

11         MR. ZERMAY:  I don't have a paper copy of it with me

12   at the moment, Your Honor, but it's available at Mr. Hoover's

13   YouTube channel under the Community tab.  And if Your Honor

14   would like, I could read it into the record.

15         THE COURT:  Okay.  I mean, we need it in the record

16   somehow, but go ahead.

17         MR. ZERMAY:  And I quote, "So I was told I have

18   viewers that have been at my trial every day.  However, because

19   not even the U.S. Marshals wear a uniform and people come in

20   and out all day long, I cannot tell who is who.  I have an

21   [verbatim] approached anyone unless they made it clear they

22   were here to see me.  So, if you come there, make sure I know

23   you're there to see me and I have no problems talking to you or

24   shaking your hand or even getting lunch.  I actually enjoy

25   meeting people that watch my channel, so it's not a problem or

1  inconvenient at all.  Just let me know who you are.  Just a

2  quick rule recap in case you come:  One, nobody has had a

3  problem with this yet, but just for preventive maintenance, I

4  guess you should call it" -- all capital letters -- "do not,

5  under any circumstance, talk with any member of the jury or

6  members of the prosecution.  The absolute last thing I need is

7  some sort of mistrial or having to do this whole thing over

8  again.  The financial burden is intense.  And while I'm at

9  trial, my kids are stuck in a hotel and my oldest is out of

10  school.  Two, wear nice clothes as if it was your court date.

11  And three, make sure to remain quiet while court is in session.

12  Four, the trial is incredibly dry, so if you want to have a

13  quick meet-up and greet," it discusses that he could say hello

14  during the lunch hour.

15       And this is the type of comments that the government

16  was generally complaining about earlier.

17       THE COURT:  All right.

18       Ms. Taylor.

19       MS. TAYLOR:  Your Honor, I was not complaining about

20  this particular comment, but, for example, I have -- I do have

21  screenshots of comments posted on one of Mr. Hoover's videos

22  that was from March of this year where he was complaining about

23  the amount of discovery in this case.  And one of the replies

24  to that video was, "This is absolutely malicious prosecution at

25  this point.  That prosecutor should never be allowed to

1  practice again."

2  And then a reply that read, "Let alone exist."

3  And then after some further replies, "Same goes for

4  the judge."

5  And then, "What you call malicious prosecution, they

6  call a job well done.  The only thing missing from this

7  equation is Matt having a public defender."

8  And then, "Most prosecutors are guilty of this level

9  of evil," period.

10  And then, "That lawyer should never be allowed to

11  breathe again."

12  There's more along these lines, Your Honor.  And this

13  was just one video that I observed where Mr. Hoover was

14  fomenting distrust of the judicial system and clearly fomenting

15  these feelings and comments among multiple of his followers.

16  And this is only from a month ago, while he was on pretrial

17  release.

18  And I have those two screenshots that I can tender to

19  the courtroom deputy, Your Honor.

20  MR. ZERMAY:  And, Your Honor --

21  THE COURT:  Go ahead.  I'm sorry.

22  MR. ZERMAY:  Yes, if I may be briefly heard on that.

23  Those are not Mr. Hoover's comments, they're random

24  people on the internet that are making those comments.  To

25  attribute them to Mr. Hoover would be unfair.

1    THE COURT:  Is the video that prompted those

2  responses, is that still -- is that still up?

3    MS. TAYLOR:  It is, Your Honor.  It's -- if -- if

4  Mr. Zermay would be so kind as to go to the Videos tab up here,

5  it's the one called "I think I Don't Have a Trial Anymore,"

6  something like that.  Or "I don't Have a Trial Anymore," I

7  think.

8    THE COURT:  Can you play that video, Mr. Zermay?

9    MR. ZERMAY:  Of course, Your Honor.

10    (Video played.)

11    THE COURT:  All right.  I don't know that I need to

12  watch more, but I'll watch the end of it if you'd like me to.

13    I told the court reporter that she didn't need to

14  transcribe it, but I'll need -- I'll direct the government to

15  get a copy of the video.  And we stopped watching at --

16    MR. ZERMAY:  11 minutes and 21 seconds, Your Honor.

17    THE COURT:  Thank you.  We stopped watching at

18  11 minutes and 21 seconds.  But it does need to be on the

19  record because I've considered it.  So Ms. --

20    MS. TAYLOR:  Taylor.

21    THE COURT:  -- Taylor, I'll direct you to file it as

22  the government's exhibit to the motion hearing with respect to

23  remand.

24    MS. TAYLOR:  Yes, Your Honor.  And --

25    THE COURT:  Oh, and --

1        MS. TAYLOR:  If I may, I'm not a hundred percent sure

2  if we have a copy of this video yet, but I will request it be

3  made as soon as possible.  But, of course, our ability to copy

4  it is going to depend on it not being deleted.

5        THE COURT:  Yeah, I will order that the video not be

6  deleted.

7     (Government's Exhibit 1 was admitted.)

8        MR. ZERMAY:  Understand, Your Honor.

9        And if I may be heard regarding the contents of the

10  video --

11        THE COURT:  Sure.

12        MR. ZERMAY:  -- as it applies to the standards.

13        THE COURT:  Mr. Zermay, do you want to come to the

14  podium so you don't have to keep bending down?  I know that

15  feels awkward.

16        MR. ZERMAY:  Of course.  Thank you very much, Your

17  Honor.

18        If I may be heard regarding the standards.  The video

19  doesn't show that he is a danger to the community.  It doesn't

20  show that he's a flight risk.  It shows that he's an individual

21  that's frustrated about the litigation process and that he's

22  anticipating an appeal.  I heard verbiage regarding him --

23  regarding the potentiality for the appeal.

24        And to ascribe the comments that the government has

25  put forward to show that it -- he does pose a risk to the

1    community, it isn't fair.  It's the statements of third parties

2    that are posting on a social media website like YouTube.

3            And Mr. Hoover has stated that he's more than willing

4    to refrain from posting about the trial going forward if the

5    Court were to permit him to be released presentencing.

6            And I believe I could represent that he'd be willing

7    to go completely silent on social media as well.

8            THE COURT:  All right.  Thank you, Mr. Zermay.

9            MS. TAYLOR:  Your Honor, may I note one more thing

10   for the record?

11           THE COURT:  Yes.

12           MS. TAYLOR:  Mr. Hoover's bond conditions that were

13   imposed back in January of 2022 I believe specifically prohibit

14   him from posting antisocial videos.  And in my view, this

15   video, amongst others, is clearly in violation of that bond

16   condition.  So it shouldn't be news to him that he shouldn't

17   have been posting this.

18           I would also note, Your Honor, that he also has other

19   individuals who are working on his behalf.  There's an

20   individual who has been in this courtroom throughout the trial

21   who we know to be feeding information to another YouTuber who

22   is making daily videos about the trial who has described

23   himself as a close friend of Mr. Hoover and who I believe

24   yesterday posted an entire video exclusively about how I am the

25   most evil --

1          THE COURT:  Okay.  I'm going to stop you there,

2    Ms. Taylor, only because my remanding Mr. Hoover isn't going to

3    do anything about what this other individual is doing.

4          MS. TAYLOR:  Yes, Your Honor.

5          THE COURT:  I mean, I just -- that is beyond my

6    jurisdiction at this point in time.

7               Give me a moment.

8       (Pause in proceedings.)

9          THE COURT:  I'm trying to find the bond on the court

10   docket.  Ms. Wiles, can you see if you can . . .

11         COURTROOM DEPUTY:  It's 68-5.

12      (Pause in proceedings.)

13         THE COURT:  Oh, Ms. Taylor, do you have the

14   screenshots that you were talking about?

15         MS. TAYLOR:  Yes, Your Honor, if you could give me a

16   moment.  I have the two pages that I read.  There's more,

17   but -- and we also have a screen capture of the video in

18   which -- that I referenced before we took the break where

19   Mr. Hoover tells his followers to call the Public Defender's

20   Office, and the screenshot shows he has the name "Lisa" and

21   then the phone number for the Public Defender's Office in the

22   video.  And then we have the transcript of that video attached

23   to it as well if the Court would like to review that.

24         THE COURT:  All right.

25              Yes, Mr. Zermay.

1          MR. ZERMAY:  Yes, Your Honor.  If I may be heard

2    about the Public Defender remarks.  It's my understanding that

3    my client wasn't attempting to intimidate the Federal Public

4    Defender's Office in any way, shape, or form.  He was merely

5    trying to get other attorneys to contact her to facilitate the

6    motion to dismiss that was filed by Ms. Call.

7          Again, to ascribe any sort of malfeasance or

8    malevolence on my client's part by facilitating communications

9    of people that had Mr. Ervin's best interest in mind with his

10   advocate would also be unfounded and, respectfully,

11   inappropriate.

12         THE COURT:  All right.  Go ahead, Ms. Taylor.

13         MS. TAYLOR:  I would just read a portion of the

14   transcript of this video.  Mr. Hoover is talking about his

15   desire to help Mr. Ervin in the court case and he states, "And

16   I haven't got a phone call, an email or a letter yet, so I

17   don't know if he's restricted from those privileges, which

18   means the only person who can talk to him is his lawyer, which

19   is really bad, because if you don't find out about these

20   resources he's got, he may not win.  As soon as he gets ahold

21   of me, and as soon as we get those resources on him and I get a

22   fundraiser going, there's no reason whatsoever he should lose

23   this case.  Uh, so yeah, this is the lawyer's number.  Uh,

24   that's her name.  I'll post that right here.  Again, don't go

25   hard on her yet.  But the evidence I'm seeing leads me to

1   believe she's bull guarding him.  I don't know if like the

2   ATF's like, hey, don't let him talk to the outside world

3   because otherwise we're going to lose this case, or what the

4   deal is.  But again, if you -- if one of you guys have a family

5   member in there, get a message to him to get ahold of me.  He

6   really, really needs to get ahold of me so I can let him know,

7   go ahead and fire your Public Defender.  She is no longer

8   needed.  And I have a hell of a lot of resources for you to

9   use, but you've got to get ahold of me so I can funnel those

10  resources to you."

11          THE COURT:  All right.  Just put those together as

12  the government's Composite Exhibit 2 to the motion hearing and

13  if you'll hand those up.

14          MS. TAYLOR:  Yes, Your Honor.

15      (Government's 2 was admitted.)

16          COURTROOM DEPUTY:  What was the first one?

17          THE COURT:  I think the first one will be the video,

18  when we get it.

19          COURTROOM DEPUTY:  Okay.

20          THE COURT:  I'm sorry, Ms. Wiles, I need to look at

21  those.

22          COURTROOM DEPUTY:  I'm sorry.

23      (Pause in proceedings.)

24          THE COURT:  All right.  Anything else, Mr. Zermay?

25          MR. ZERMAY:  Yes, Your Honor.

1    Respectfully, Madam Government, Madam State, said

2 that Mr. Hoover's videos were antisocial in some respect.

3 Respectfully, the few videos that were provided, and even this

4 transcript, demonstrates the videos are not antisocial within

5 the means -- or within the meaning of what the pretrial service

6 release was.  He's merely expressing his frustration with the

7 case, which is understandable given the tumultuous situation

8 Mr. Hoover is currently in.  He is human, and to be human is

9 not necessarily to be antisocial.

10    The video with respect to Ms. Call was before he was

11 involved in this case, before he was indicted.  So to ascribe

12 that he would behave or engage in any antisocial conduct as a

13 result of this video or this transcript would be unfair.  The

14 record has reflected that he's been a model pretrial releasee.

15 That's reflected in his Pretrial Service Status Report.  And

16 his situation certainly has not -- in his mind it hasn't

17 changed, because we respectfully have looked at this case --

18 and by "we" I mean Mr. Hoover -- have envisioned this case

19 going forward on appeal for a while.  And all the issues that

20 Ms. Taylor has identified are cured by merely an order that he

21 not post on social media.

22    And all the comments that the government has pointed

23 to are the comments of third parties with whom Mr. Hoover has

24 no control over, and to ascribe them to him would be wildly

25 unfair.

1          THE COURT:  So here's the concern I have about that,

2     Mr. Zermay.  The comments come and are a result of Mr. Hoover's

3     description of the proceedings.  And to be frank, a good bit of

4     what Mr. Hoover said in that video either reflects a

5     fundamental lack of understanding of what was happening in the

6     case, or it's misleading.

7          And what concerns me is that the offense conduct of

8     which the jury has convicted Mr. Hoover, boiled down to its

9     essence, is his ability to go on YouTube and convince people

10    that it's okay to do things that are illegal.  And that video

11    about the trial falls right in that type of conduct.

12         And I don't -- Mr. -- and when you say the comments

13    can't be ascribed to Mr. Hoover, the problem is that

14    Mr. Hoover's videos are what are causing those comments.  I

15    don't see Mr. Hoover responding to these people and

16    disagreeing.  And it is of significant concern.

17         And I don't see how posting a video about your auto

18    key card prosecution isn't posting a video focusing on the auto

19    key cards.  I guess you're focusing on your trial, not -- I

20    don't know, but I can't imagine that Mr. -- that it would have

21    seemed that this video didn't run afoul of the conditions of

22    pretrial release.

23         The statute says that a person who's been found

24    guilty of an offense -- well, that the judicial officer shall

25    order the person who has been found guilty of an offense be

1    detained, unless the judicial officer finds by clear and

2    convincing evidence that the person is not likely to flee or

3    pose a danger to the safety of any other person or the

4    community.  So the burden is on Mr. Hoover to show those

5    things.

6            The fact that he appeared for court before he had

7    been convicted and before he had been -- well, sorry, before he

8    had been convicted of five felony offenses is not necessarily

9    indicative of whether he will continue.

10           The fact that you were willing to go to a bench

11   trial, I'm not sure the point of that.  At the bench trial you

12   intended to argue the same things that you argued to the jury,

13   whether the auto key card was a combination of parts or not.

14           So I'm not -- I don't know that I'm convinced that

15   Mr. Hoover has shown by clear and convincing evidence that he

16   might not be a flight risk.

17           My bigger concern, though, is that Mr. --

18   Mr. Hoover's conduct, as I said, in encouraging and persuading

19   individuals to engage in conduct that is illegal conduct is a

20   danger to the safety of persons and of the community.  And I'm

21   not convinced that ordering him to stay off social media would

22   be effective, particularly after having watched this latest

23   video that was posted only a month before the trial.

24           It's Mr. Hoover's burden, and I just don't think he's

25   met his burden, and so he's -- I'm going to have to remand him

1    to the custody of the marshals to await sentencing.

2           MR. ZERMAY:  And Your Honor, if I may be briefly

3    heard with respect to one more thing.

4           THE COURT:  Sure.

5           MR. ZERMAY:  Would the Court allow Mr. Hoover to

6    surrender in Wisconsin as opposed to being remanded here in

7    Florida?  He does have a family he has to drive back up to

8    Wisconsin.  He would be willing to surrender in the Eastern

9    District of Wisconsin within a time period that the Court would

10   ascribe.  That would be our final request with respect to that.

11          THE COURT:  I don't think I even have the ability to

12   do that.  I don't even think I can detain somebody in another

13   jurisdiction.  They have to be brought here to be in the

14   marshal's custody here.  So if he had been detained in

15   Wisconsin he would have had to be brought here to Florida to

16   await trial.

17          MR. ZERMAY:  It was my understanding that he was

18   originally taken into custody in Wisconsin.

19          THE COURT:  Right.

20          MR. ZERMAY:  And so that would be the jurisdictional

21   hook with respect to that.

22          THE COURT:  I don't think that works.

23          Marshal Fraley, may I see you a moment?

24          U.S. MARSHAL:  Sure.

25          THE COURT:  You always make the mistake of being in

1   my courtroom.

2        (The judge and the marshal confer.)

3        THE COURT:  Mr. Zermay, I'm just -- so when someone

4   is arrested on an outstanding warrant from Middle Florida,

5   they're requested and they're required to be brought here.  I

6   have never seen the Court -- I know of no authority that I have

7   to require a facility in Wisconsin to hold him in custody

8   there.  And it doesn't -- it won't address the issues that I've

9   raised.

10        I'm sorry, I think it's unfortunate.  I worry about

11  Mrs. Hoover having to drive back, but the statute says what it

12  says.  It says "clear and convincing evidence."  Mr. Hoover,

13  under the circumstances, simply does not have clear and

14  convincing evidence to satisfy the statute, and he's remanded

15  to the marshals at this time.

16        MR. ZERMAY:  And one more thing, Your Honor.

17  Mr. Hoover has requested I convey to him that -- or convey the

18  following request: that he drive his family back to Wisconsin,

19  then he could overcome his fear of flying and then fly back

20  down to the Middle District of Florida to surrender to the

21  custody of the marshal.

22        DEFENDANT HOOVER:  I'd do it all on my own dime.

23        THE COURT:  No, I understand, Mr. Hoover, but the

24  problem is once somebody has been remanded, the risk of flight

25  becomes exceedingly greater and --

1          DEFENDANT HOOVER:  Could I put a cash bond down?

2          THE COURT:  I understand that this is a very

3   difficult circumstance, and please know that I have not made

4   this decision lightly --

5          DEFENDANT HOOVER:  I understand.

6          THE COURT:  -- but I think it just has to be what it

7   is.

8          And Mr. Zermay, if you can make a better record that

9   you want me to reconsider it, we can do that, but --

10          MR. ZERMAY:  And just for purposes of the record, if

11   I could submit the pretrial sentence report, if I may approach.

12          THE COURT:  Oh, it's in the record.

13          MR. ZERMAY:  In the record already?

14          THE COURT:  Yeah.

15          MR. ZERMAY:  Okay.

16          THE COURT:  All right.  The marshals will have to

17   take Mr. Hoover.  And we're in recess.

18          COURT SECURITY OFFICER:  All rise.

19       (Proceedings concluded at 12:15 p.m.)

20                       -     -     -

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3    UNITED STATES DISTRICT COURT)

4    MIDDLE DISTRICT OF FLORIDA )

5

6          I hereby certify that the foregoing transcript is a true

7    and correct computer-aided transcription of my stenotype notes

8    taken at the time and place indicated herein.

9

10         DATED this 5th day of May 2023.

11

12                         /s/ Katharine M. Healey
                           Katharine M. Healey, RMR, CRR, FPR-C
13                         Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25