UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE №: 3:21-cr-00022-MMH-MCR

UNITED STATES OF AMERICA,

v.

MATTHEW RAYMOND HOOVER.

_____/

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Matthew Raymond Hoover ("Defendant") respectfully submits this Post-Verdict Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. In support of this Motion, Defendant hereby states:

## I.    INTRODUCTION

Defendant requests this honorable Court to grant a judgment of acquittal on all charges against him on the grounds that the evidence presented by the prosecution is insufficient to support a conviction. Pursuant to Rule 29, a judgment of acquittal is warranted if the evidence, when viewed in the light most favorable to the prosecution, is insufficient for any rational trier of fact to find guilt beyond a reasonable doubt.

As has been the theme for much of the motion practice in the instant matter, the question of whether the Auto Key Card can be considered a

1

"combination of parts" lies near the core.[1] That question is underlined with concerns about whether an item all evidence demonstrated was a homogenous piece of steel that had to be "materially altered" can be considered a "combination of parts" beyond a reasonable doubt, further whether requisite scienter could have been proven in that instance.

It is further essential that "we are mindful that the Supreme Court recently cautioned against federal criminal statutes being read too expansively." *United States v. David McLean*, No. 14-10061 (11th Cir. Sept. 24, 2015) (citing *Yates v. United States*, 135 S. Ct. 1074 (2015) (concluding the term "tangible object" within the Sarbanes-Oxley Act not to apply to an undersized red grouper thrown overboard by a commercial fishing vessel's captain) in upholding a judgment of acquittal). This case presents a similar issue to the ones discussed in *Yates* and *McLean*: an aggressive, novel application of a federal criminal statute. Even more problematic here, though, is the way the government proceeded with this case. This is not a matter of a broad word like "tangible object," as was the case in *Yates*, but a specific sub-definition of "machinegun" under federal law, referring to a "combination of parts designed and intended" for use in converting a firearm into a machinegun, where the law contained another definition for a singular "part." Like in *Yates*, the

---

[1] Defendant also moved to dismiss the indictment on constitutional grounds, which were never adequately addressed, and the required *Bruen* analysis was not conducted by this Honorable Court. *See* ECF 132 – 133; 141; 246.

government could have proceeded under different parts of the statute, but instead pursued an "aggressive" interpretation. *Yates*, 135 S.Ct. at 1080, 1087 (Rejecting the government's "aggressive interpretation" after employing traditional tools of statutory interpretation to examine markers of congressional intent.). The government, be it for tactical reasons or otherwise, chose to prosecute the Defendant for conspiracy and substantive acts relating to what it proved to be a homogenous piece of steel as a "combination of parts" rather than a "part." Quite simply, no reasonable trier of fact could have found the items here at issue to be a "combination of parts," much less a "combination of parts" beyond a reasonable doubt.

## II.   LEGAL STANDARDS

The standards for a judgment of acquittal are governed by Rule 29 of the Federal Rules of Criminal Procedure and established caselaw. The court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. While this is a stringent standard, it is not *carte blanche* to approve any finding of any jury where any evidence was presented. Rather, it is an essential check on the government's burden to prove all essential elements beyond a reasonable doubt, thereby having provided sufficient evidence to support the jury's verdict.

In evaluating the sufficiency of the evidence, the court should consider the totality of the circumstances. While the jury's inferences are due some deference, that deference is *provided* that the ultimate conclusions are *reasonable* and *supported by the evidence*.

### III.   INSUFFICIENCY OF THE GOVERNMENT'S EVIDENCE

For the reasons detailed *infra*, the government has failed to prove the essential elements against Defendant beyond a reasonable doubt. As against Defendant Hoover, the counts and essential elements are:

a. **COUNT ONE: CONSPIRACY TO TRANSFER UNREGISTERED MACHINEGUN CONVERSION DEVICES**

    i. Two or more persons in some way agreed to try to accomplish a shared and **unlawful plan**;

    ii. the Defendant **knew the unlawful purpose of the plan** and **willfully** joined in it;

    iii. during the **conspiracy**, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

    iv. the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

b. **COUNTS TWO, THREE, FIVE, AND SEVEN: SUBSTANTIVE COUNTS**

   i. The Defendant **knowingly** transferred, or aided and abetted the transfer of, a firearm, specifically a **combination of parts** designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger

   ii. the **firearm** was not registered in the National Firearms Registration and Transfer Record; and

   iii. the Defendant **knew of the specific characteristics or features of the firearm** that made it subject to registration under the National Firearms Registration and Transfer Record.

c. **DISCUSSION OF THE GOVERNMENT'S INSUFFICIENT EVIDENCE**

As pled in the indictment, if no parts were transferred, then there was no crime. The government proceeded under a theory that each Auto Key Card constituted a combination of parts designed and intended to convert a weapon into a machinegun. At trial, the government and its agents demonstrated that Defendant advertised a homogenous piece of steel called the Auto Key Card on his YouTube channel. But when it came time to prove up its case, the

5

government's physical evidence and testimony demonstrated that, as transferred (and at best) each Auto Key Card was a singular, homogenous piece of stainless steel into which a design was lightly etched *i.e.*, Defendant advertised, and Mr. Ervin sold, a drawing that was on a piece of metal.

The testimony and evidence elicited from the employees of Orange Park Machine & Fab. demonstrated that Mr. Ervin contracted with them to engrave a design that was provided to the shop by way of a Drawing Exchange Format file ("DXF File"). Testimony showed that the DXF File necessarily contained a two-dimensional image, *i.e.*, a drawing (the "Drawing"). Mr. Ervin requested that the Drawing be copied onto single, homogenous pieces of stainless steel by way of a laser *only to the extent that* the image could not be wiped off of it. Much to the consternation of the machine shop, and against its advice, he refused to allow them to manufacture the Auto Key Cards in such a manner as to be cut out into multiple parts. His intent was clear, and the evidence is what it is. The stainless steel was a canvas for the Drawing and the laser was the medium. Agents of the government even admitted that they could construe shoelaces and a paperclip as a machinegun, but that "templates" and "drawings" were not.

The testimony of the government's own witnesses supports the conclusion that, as transferred, the Auto Key Card was not "a combination of

parts." Special Agent Jesse Hooker admitted that the government had to "materially alter" the Auto Key Card to become what it alleges in the indictment is a "combination of parts" that are "designed and intended to convert a weapon into a machinegun." The testimony of Mr. Toy buttressed the conclusion that the Auto Key Cards only became contraband only after he performed about an hour of transformative labor upon the Auto Key Card. Transformative labor that fundamentally changed—materially altered—it from a homogenous piece of steel with a constitutionally protected Drawing on it to contraband, *i.e.*, an unregistered combination of parts designed and intended to convert a weapon into a machinegun.

The government's theory bears emphasis: that each drawing on the piece of steel constituted a "part." This reading is so inconsistent with the statute as charged that the government even attempted to invert the statute at closing arguments by arguing that the law proscribed something "designed and intended" to *become* a "combination of parts," which is just manifestly not the case. Even more, the government never once provided evidence that the Auto Key Card was a combination of parts. It forcefully fought against all attempts to delineate what "parts" were "in" the Auto Key Card, instead simply waxing over the critical statutory distinction between a "part" and "combination of parts" and telling the jury, quite literally, not to "worry" about it.

7

Even if the government's assertion that a drawing on a homogenous piece of steel equates to "parts"—an assertion that is patently absurd—such could only logically extend to the contours of the drawing. However, the government provided no evidence that an Auto Key Card, if cut along the lines, would convert a firearm to fire automatically. One of the government's substantive act witnesses—who claimed to work at a tool and die shop—testified that when cut precisely to the lines, he could not get the resulting parts to function. On the other hand, ATF's Mr. Toy sliced and diced multiple Auto Key Cards apart with a Dremel. He kept at it, and his testimony, and the government's evidence, showed that only after cutting *outside* the Drawing by re-contouring a piece he described as a "flap" did he manufacture a combination of parts from a single piece of stainless steel into a "combination of parts" he re-designed to induce a malfunction in the weapon which resulted in its firing more than one shot. A malfunction, it bears emphasis, Mr. Toy testified that did not reflect how a "lightning link"—the type of machinegun conversion device the government asserted the Auto Key Card to be—would have functioned. Further, Mr. Toy testified that there would be no meaningful distinction in result were the design drawn with laser or marker. So, in fewer words: the government *proved* that each Auto Key Card was a homogenous piece of steel, *proved* that if that homogenous piece of steel was cut precisely to the lines, was not designed and intended to convert a weapon to fire

automatically, and *proved* that the only way its own expert could induce a weapon to fire more than one shot using the Auto Key Card was to *ignore the lines thereupon engraved* to spend substantial time manufacturing a combination of parts which *did not even function as the type of machinegun conversion device the government alleged it to be.*

Indeed, at no point in the trial did the government attempt to remedy that its witnesses and physical evidence exclusively referred to each Auto Key Card as a homogenous piece of steel and the parts the government manufactured from it as being "materially altered." There was not a shred of evidence that the Auto Key Card, as sold, met *even a single element* of the charged definition. This honorable Court even grappled with this issue during debate over jury instructions, when the Court expressed hesitation that it did not want to assert that a single "object" could not be "multiple parts." Turning to traditional tools of statutory interpretation, it is clear that an "object", such as a music box, can consist of multiple parts, as this Court noted, but that a *homogenous piece*, such as an unmodified Auto Key Card, cannot.

### d. ARGUMENT: THE JURY'S VERDICT IS NOT ONLY UNSUPPORTED BY EVIDENCE, BUT SIMPLY UNSUPPORTABLE

We stress these points of statutory interpretation and settled law as essentially related to the insufficiency of the government's evidence. Clearly,

while there could have been a less provocative canvas to copy the Drawing onto, during closing arguments, the government asked the rhetorical question of where we draw the proverbial line while displaying the sliced-up remnants of an Auto Key Card as a table sculpture. And therein lies one of many problems with the government's case: It is not for the jury to decide where the line is drawn—that is Congress's role alone. The jury does not, and cannot serve as a legislative sub-assembly to define terms of law. The jury's role is to decide if an otherwise clear and validly drawn line has been crossed. The essential lines here, which the government provided no evidence of are: was the subject article a combination of parts, did the Defendant **know** the article had features subjecting it to NFA requirements, and did Defendant **know** and **intend** to be part of an unlawful plan. Not only did the government fail to prove the essential elements, the government **proved** their absence.

In *Staples v. United States*, the Supreme Court held that the government **must** prove that a Defendant has actual knowledge that an item is a machinegun in order to sustain a conviction. 511 U.S. 600 (1994). The government played hours of videos from Defendant's YouTube channel where it is manifest that Defendant believed the Auto Key Card to be completely lawful unless cut out and manufactured into a machinegun.

This prosecution reflects concerns addressed by the Eleventh Circuit in other multi-defendant conspiracy prosecutions—"that individuals who are not

actually members of the group will be swept into the conspiratorial net. Because the government is permitted broad prosecutorial discretion to prove the conspiracy, the likelihood exists that those who associate with conspirators will be found guilty of a crime they **have not intended to commit**[.]" *U.S. v. Chandler*, 388 F.3d 796 (11th Cir. 2004); *see also Dennis v. United States*, 384 U.S. 855, 860 (1966). Numerous statements of Mr. Ervin, and a video generated by Mr. Ervin inexplicably involving a fish, were slip-shoddily presented to the jury with no evidence Defendant knew or processed the information at all, substantially prejudicing Defendant.

Like in *Chandler*, this case reflects the compounded danger "when the grand jury indicts on one theory of the illegal conduct, but the government prosecutes the case on an entirely different theory. This roaming theory of the prosecution can produce trial error of constitutional proportions." *Chandler*, 388 F.3d at 798; *see also* Russel v. United States, 369 U.S. 749, 768 (1962) (ill-defined charges leave "the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal"). The government originally indicted Defendant using the "part" definition, but over the course of several superseding indictments, shifted strategy to a "combination of parts."

Even more like *Chandler*, "the defendants focused on whether the allegations of the indictment were sufficient to state a crime. Under federal

11

conspiracy law, the government must allege and prove that the defendants *knowingly* entered into an *agreement* to commit an *unlawful act*., 839 F.2d 1473 (11th Cir. 1988)." 388 F.3d at 799-800. *Chandler* dealt, quite interestingly, with counterfeit McDonalds game pieces, and the *Chandler* indictment "did allege an unlawful act in the embezzlement of the game stamps. Nowhere, however, did the indictment allege that any of these defendants *knew* that the game stamps they redeemed had been stolen. The defendants moved to dismiss the indictment, alleging that it was fatally defective in its failure to allege an essential element of the crime of conspiracy — knowing agreement to commit the illegal act." *Id*. In *Chandler*, the motion to dismiss the indictment was denied, as it was here, and the case proceeded to a multi-week trial, as it did here, where the government put on voluminous evidence of seemingly *everything but* the essential elements of the charged offenses, as it did here, and the jury returned an unsupportable verdict, as it did here.

To prove an illegal attempt, the government must show that the defendant had the specific intent to engage in criminal conduct and that he took a substantial step toward commission of the offense. *United States v. Collins*, 779 F.2d 1520, 1527 (11th Cir. 1986); *U.S. v. Baptista-Rodriguez*, 17 F.3d 1354, 1369 (11th Cir. 1994). Here, not only was no evidence of knowledge offered, but the government put up hours of exculpatory evidence in the form

of Defendant's YouTube videos where he very manifestly—and reasonably—processes that the Auto Key Card is "just a drawing" unless manufactured into something else.

The government, at trial, referred to the provocative and tongue-in-cheek nature of Defendant's videos *ad nauseum*. That Defendant is a political provocateur with a more than a healthy distrust of the government is not evidence of criminal intent, nor is the fact that Defendant may be a conspiracy *theorist* evidence that he is a criminal conspirator.

The vagueness doctrine requires that a criminal statute "clearly define the conduct it proscribes." *Skilling v. United States*, 561 U.S. 358, 415 (2010) (Scalia, J., concurring in part and concurring in the judgment); *accord Johnson v. United States*, 576 U.S. 591, 596 (2015) (Fifth Amendment guarantees that every criminal law provides "ordinary people fair notice of the conduct it punishes" and is not "so standardless that it invites arbitrary enforcement"). In *United States v. Lanier*, 520 U.S. 259 (1997), the Supreme Court described three aspects of the requirement that criminal statutes give "fair warning" of what is outlawed. First, "the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* at 266. Second, any ambiguity in a criminal statute must be resolved in favor of applying the statute only to conduct which is **clearly**

**covered**. *Id.* Third, although clarity may be applied by judicial gloss, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.; see also United States v. Denmark*, 779 F.2d 1559 (11th Cir. 1986). Central to each inquiry is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. It should not be controversial to state that a statute proscribing a "combination of parts" gives no notice that a drawing, or even a drawing that could *become* a combination of parts through transformative labor, be covered.

"A penal statute maybe void for vagueness 'for either of two independent reasons.'" *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999). First, a statute may be unconstitutionally vague if it "fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A statute may also be unconstitutionally vague if it "fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute." *Lim*, 444 F.3d at 915 (citing *Karlin v. Foust*, 188 F.3d 446, 458-59 (7th Cir. 1999)). As observed by the United States Supreme Court, the requirement that a penal statute provide minimal guidelines to discourage arbitrary enforcement is "perhaps the most meaningful aspect of the vagueness

doctrine." *Smith v. Goguen*, 415 U.S. 566, 574 (1974). Without these minimal enforcement guidelines, "policemen, prosecutors, and juries are allowed to pursue their personal predilections." *Kolender*, 461 U.S. at 358.

"Before courts may send people to prison, we owe them an independent determination that the law actually forbids their conduct." *Geudes v. ATF*, 140 S. Ct. 789, 790 (2020) (Gorsuch, J., statement respecting denial of writ of certiorari). The rules of statutory construction require that all words be given effect. "[T]he purpose of Firearms Act, of which § 5861 is a part, is to go after crime weapons," not tchotchkes or cards into which were allegedly etched a design. *See U.S. v. Vest*, 448 F. Supp. 2d 1002, 1014 (S.D. Ill. 2006).

A regulation may "provide such inadequate notice of potential liability so as to offend the rule of lenity." *Gun Owners of Am., Inc.*, 19 F.4th at 901. "The Attorney General has directed the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to administer, enforce, and exercise the functions and powers of the Attorney General with respect to Chapter 44 of Title 18 and Chapter 53 of Title 26. 28 C.F.R. § 0.130(a)." *Gun Owners of Am., Inc.*, 19 F.4th at 897. Unlike the widely publicized situation of bump stocks, suppressors, and other items, ATF has issued no guidance—and has no congressional authority—relating to drawings. In fact, ATF recently rescinded *all* guidance in the context of what is and is not a "firearm" when it comes to incomplete or "partially finished" articles. *See Definition of "Frame or Receiver"*

*and Identification of Firearms*, 87 F.R. 24652 at 24672 ("Any such classifications, to include weapon or frame or receiver parts kits, would need to be resubmitted for evaluation.").

As the Supreme Court wrote in *Babbitt*:

> We have applied the rule of lenity in a case raising a narrow question concerning the application of a statute that contains criminal sanctions to a specific factual dispute . . . where no regulation was present.

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 n.18 (1995).

Where there is ambiguity in a criminal statute—or regulation interpreting that statute—doubts are resolved in favor of the defendant. *See Yates v. United States*, 574 U.S. 528 (2015); *Skilling v. United States*, 561 U.S. 358 (2010); *United States v. Santos*, 553 U.S. 507 (2008); *Jones v. United States*, 529 U.S. 848 (2000); *United States v. Izurieta*, 710 F.3d 1176 (11th Cir. 2013); *United States v. Trout*, 68 F.3d 1276 (11th Cir. 1995). In addition to these circuit decisions, the Navy-Marine Corps Court of Criminal Appeals considered the bump stock Final Rule in the context of a criminal prosecution for possession of a machinegun. *See United States v. Alkazahg*, 81 M.J. 764, 780–81 (N–M. Ct. Crim. App. 2021). That court determined that, under the best reading of the statutory language, a bump stock is not a machinegun. But it ultimately found that the statute is ambiguous and applied the rule of lenity to construe the statute against imposing criminal liability. It dismissed the

charge for possession of a machinegun. Here, similarly, there is no regulation on point.

The Supreme Court in *Yates* explained that if the statute "leaves any doubt" about the application of the statute to the facts to which the government seeks to have the statute apply, the rule of lenity precludes such application. *I.e.*, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 547-48 (quoting *Cleveland v. United States*, 531 U. S. 12, 25 (2000); *see also Liparota v. United States*, 471 U. S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability."). In determining the meaning of "machinegun" under the National Firearms Act, "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Yates*, 574 U.S. at 548, (quoting *Cleveland*, 531 U.S. at 25, and *United States v. Universal C. I. T. Credit Corp.*, 344 U. S. 218, 222 (1952)); *see also Jones v. United States*, 529 U. S. 848, 858–859 (2000). *Santos* explained that the rule of lenity "not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best

induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *Santos*, 553 U.S. at 514.

As pled in the Indictment, the Government defined Auto Key Cards as "cards machined from stainless steel, into which were etched the design for machinegun conversion devices." As was proven by the government, the Auto Key Card would require significant transformative labor and machining of the card to cause it to fit into the rear internal area of the receiver, where the machinegun automatic sear would be installed. Further torturing the language of the Indictment to the Government's benefit for the purposes of argument, the Auto Key Card could, at most, constitute a trinket from which the parts of a DIAS could possibly be made. Such tchotchkes are not regulated under the Gun Control Act or the National Firearms Act. *See also United States v. Prince*, No. 09-10008-JTM, 2009 WL 1875709, at *3 (D. Kan. June 26, 2009), rev'd on other grounds, 593 F.3d 1178 (10th Cir. 2010) ("However, the court simply does not believe that a flat piece of metal with laser perforations and holes constitutes a 'receiver,' *i.e.*, a 'firearm.' Rather, the flat piece of metal is somewhat akin to a piece of paper with lines drawn on it as a guide to make a paper airplane. Although making the paper airplane might be the intended use, it is not an airplane until it is properly folded. Until that time, it is a patterned piece of paper.").

The rule of lenity "is premised on two ideas: First, 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed'; second, 'legislatures and not courts should define criminal activity." *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 n.18, 115 S. Ct. 2407, 2416 (1995). If the DXF File of the Drawing and instructions how to break the law, like the Anarchist Cookbook, are constitutionally protected speech, is the Drawing with oil-based paint on piece of stainless steel, okay? What about military grade plastic with the etching— is that Kosher? While the government pawned off on the jury the question of where to draw the line, that is not—and cannot—be their job, and the government cannot be allowed to unload its failure to prove its case on the jury. For penal statutes, Congress must decide where the line is, and then looking at all the evidence, the jury decides whether the government has shown beyond a reasonable doubt that the line has been crossed.

For reasons stated *supra*, the Government has failed to plead, much less prove sufficient facts which demonstrate the Auto Key Card is a combination of parts designed and intended as a machinegun conversion device. However, it has conclusively demonstrated that the Auto Key Cards are not machinegun conversions devices as a matter of law because as pled in the Indictment, the

Auto Key Card cannot possibly even be a "part," much less "parts" beyond a reasonable doubt.

The Government pled that the Auto Key Cards are "cards . . . into which were etched the design for machinegun conversion devices known as lightning links[.]" It then, in a conclusory manner, declares that such cards are "machineguns as defined in 26 U.S.C. §[§] 5845(a) and 5845(b)." To embrace the Government's position that a card with design on it is a "combination of parts" under § 5845(b) would be to ignore the plain and ordinary language of the word. The term "part" is undefined in the statute, but "[i]f possible, every word and every provision is to be given effect." *Geico Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1141 (11th Cir. 2019) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 26, at 174 (2012); The ordinary meaning of a "part" in the context of machinery like a firearm is "a constituent member of a machine or other apparatus." *See* Webster's Dictionary, Part, https://www.merriam-webster.com/dictionary/part#:~:text=1%20%3A%20one%20of%20the%20secti ons,My%20dog%20is%20part%20husky. (last retrieved on June 7, 2022); *See also Johnson v. United States*, 559 U.S. 133, 134 (2010) (where a word is undefined, the court must give it its ordinary meaning.). The statute does not refer to something that may one day become a part, nor does it refer to

drawings or schematics for parts. It refers, quite simply, to something that *is* a *combination of parts*.

In no event would a reasonably intelligent person foresee that the conduct charged in this case—talking about a card with a drawing on it—would be deemed criminal, much less that a homogenous piece of steel with a drawing on it would be deemed a combination of parts. As applied against Mr. Hoover, 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 are unconstitutionally vague under the Fifth Amendment as applied. Mr. Hoover had no reason to believe, at any point, that he would be engaging in criminal conduct if—as alleged—he entered into an agreement with a tchotchke salesman to discuss stainless steel cards with a design on them on his YouTube channel. The government provided no evidence, and no evidence could likely even exist, to prove the requisite knowledge and intent here beyond a reasonable doubt.

It is worth emphasizing that no court has ever applied the National Firearms Act to a fact pattern like this one. The conduct at issue certainly isn't in the heartland of machinegun cases. Despite ample opportunity to do so, the Government did not allege that a consumer was able to convert a firearm into a machinegun using the alleged design scratched into a stainless-steel card.

### e. COUNTS 2 – 8: THE SAME ANALYSIS *SUPRA* APPLIES TO 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2

While aiding and abetting might commonly be thought of as an offense in and of itself, it is not an independent crime under 18 U.S.C. § 2. That statute provides no penalty, and only collapses common law notions of "principal" and "accessory." *United States v. Kegler*, 724 F.2d 190, 200 (D.C. Cir. 1983). Under it, the acts of the perpetrator become the acts of the aider and abettor and the latter can be charged with having done the acts himself. *Id.* at 200-01. An individual may be indicted as a principal for commission of a substantive crime and convicted by proof showing him to be an aider and abettor. *Id.* Accordingly, the indictment need not specifically charge a violation of 18 U.S.C. § 2.

The Government has charged Mr. Hoover with violating 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 in Counts 2 – 8 of the Indictment. And for reasons thoroughly stated *supra*, the Government has failed to state, much less prove, sufficient ultimate facts to support a conviction.

### IV.   CONCLUSION

In light of the insufficiency of evidence presented by the prosecution, the Defendant respectfully requests this Honorable Court to enter a judgment of acquittal on all charges. The evidence presented is legally insufficient to sustain a conviction, and no reasonable trier of fact could find the Defendant

guilty beyond a reasonable doubt. Granting the motion is necessary to preserve Defendant's constitutional rights to due process and a fair trial.

**WHEREFORE** Defendant Matthew Raymond Hoover respectfully moves this Honorable Court to enter a judgment of acquittal on all counts in which he was convicted, and for any further relief that this Court deems just and proper.

DATED:  May 19, 2023

Zachary Z. Zermay, Esq.
1762 Windward Way
Sanibel, FL 33957
Email: zach@zermaylaw.com
Telephone: 239-699-3107
*Lead Counsel for Defendant*

/s/ *Matthew Larosiere*
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Defendant*


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on  May 19, 2023 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Zachary Z. Zermay, Esq.