UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:21-cr-22(S4)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT ERVIN'S POST-VERDICT MOTION FOR JUDGMENT OF ACQUITTAL**

Trial in this matter commenced on April 10, 2023, and concluded with the return of guilty verdicts as to all charges for Ervin, and most charges as to Hoover, on April 21, 2023. Docs. 246, 263, 264. After the close of the evidence, on April 19, 2023, defendants made their *ore tenus* motions for judgment of acquittal. Doc. 283 at 232-36. The government responded, and this Court took the motions under advisement. *Id.* After the return of the guilty verdicts, the defendants renewed their motions on April 21, 2023. Doc. 285 at 20. This Court denied the motions, stating it was "convinced that the government did present sufficient evidence as to each charge and each defendant to submit each charge to the jury for its consideration." *Id.* Hoover's written motion (Doc. 274), which was adopted by Ervin (Doc. 273), was filed on May 19, 2023. The government has separately responded to that motion, including as to Ervin. Doc. 289. This response concerns the supplemental arguments advanced by Ervin in his separate motion (Doc. 273).

As with the motion filed by Hoover, which Ervin adopted, Ervin in his own motion continues the trend of playing fast and loose with the facts. The jury's

verdicts as to Ervin were fully supported by the evidence at this trial, and this Court should reject his motion.

### MEMORANDUM

**I.     Contrary to Ervin's assertion, there was ample record evidence of the transfer of an Auto Key Card to "J.A."**

In Ervin's Rule 29 motion, he argues that he should be acquitted of Count Six – which charged the transfer of an unregistered machinegun conversion device on or about December 23, 2020, to an individual with the initials J.A. – because "there is no record evidence that an individual with the initials J.A. actually ordered or received an 'Auto Key Card.'"[1]   Doc. 273 at 3.   Ervin further states that "the record does not contain any testimony or documentary evidence that an individual with those initials actually existed or obtained a machine gun conversion device.  . . . Although there is extra record evidence that suggests [James Acs] was the alleged purchaser in Count Six, there was no evidence in the record that the jury had before it to make that determination."   Doc. 273 at 3.

This argument is wholly inaccurate and demonstrates ignorance of the trial record.   Trial Exhibit 89e is an email reflecting that an individual named James Acs ordered an Auto Key Card 2in1 Pen Holder Edition on December 23, 2020.   Trial Exhibit 72 is the log for Ervin's USPS mail meter, which on page 64 reflects that

---

[1]     Although Ervin submits that there was testimony from the purchasers associated with each of the other substantive counts (Doc. 273 at 2-3), this is incorrect.   There also was no testimony from "a person with the initials R.D." as specified in Count Four.   Yet, the jury also convicted Ervin of Count Four based upon the record evidence of R.D.'s purchase.

Ervin mailed a package to "James Acs" on December 23, 2020.  Postal Inspector Hannon testified to that fact as well.  Doc. 279 at 40.  Special Agent Hooker testified that he interviewed Mr. Acs in Michigan regarding the order reflected in Trial Ex. 89e and seized an Auto Key Card from Mr. Acs's residence on June 1, 2021.  Doc. 278 at 164.  The actual Auto Key Card seized from Mr. Acs was admitted into evidence.  Trial Ex. 110.  And at closing, government counsel argued to the jury "Count Six is the transfer to James Acs on December 23 of 2020."  Doc. 284 at 58.

In short, there is ample record evidence to support the jury's verdict as to Count Six.

## II. The evidence supports Ervin's conviction for structuring financial transactions.

Defendant Ervin also argues that a judgment of acquittal should be entered as to Count Nine, which charged him with structuring and attempting to structure financial transactions in violation of 31 U.S.C. § 5324(a) and (d)(1), because "there is no record evidence that Mr. Ervin was attempting to avoid the reporting requirement, but merely to retrieve his money from a bank with which he was having a dispute."  Doc. 273 at 4-5.  Ervin further contends that the testimony at trial did not show that he had knowledge of the bank's reporting requirement, and thus the conviction is unsupported by the record.  Doc. 273 at 5.

Ervin's argument as to Count Nine is unavailing.  The evidence proved that Ervin made the withdrawals charged in the Fourth Superseding Indictment:

| DATE | AMOUNT | CREDIT UNION |
|---|---|---|
| December 28, 2020 | $9000 | Community First (Orange Park) |
| December 28, 2020 | $5000 | Community First (Fleming Island) |
| December 29, 2020 | $9000 | Community First (Orange Park) |
| December 30, 2020 | $9000 | Community First (Orange Park) |
| December 31, 2020 | $9000 | Community First (Orange Park) |
| January 2, 2021 | $9000 | Community First (Orange Park) |
| January 5, 2021 | $9000 | Community First (Orange Park) |
| January 6, 2021 | $9000 | Community First (Orange Park) |

Doc. 279 at 148-50; Trial Ex. 95c at 22-26.   Amy Sarkese, who formerly worked at Community First Credit Union, testified that on December 28, 2020, Ervin became upset with the bank after a teller denied his attempt to deposit a money order payable to "Auto Key Card" into his personal account.   Doc. 279 at 170.   The defendant stated he wished to withdraw all his money in cash.   *Id.* at 171.   Ms. Sarkese advised Ervin they did not have that much cash on hand, but they could special order that much cash for him or they could provide him with a cashier's check.   *Id.* at 171-72.   Ervin rejected those options and demanded cash at that time.   *Id*.   Ms. Sarkese offered to provide him with $10,000 in cash, which Ervin initially accepted, but then said he only wanted $9,000 in cash.   *Id.* at 171-73.   Shortly after, the defendant went to another bank branch; as Matthew LeVay testified, Ervin asked to withdraw some amount of cash greater than $5,000, but that amount was all the branch could provide at that time.   Doc. 279 at 207-08.   Ervin's bank records showed that he then continued to go back and withdraw cash in $9,000 increments – repeatedly.   Trial Ex. 95c.

Ervin's argument appears to be that he should be acquitted because he was apparently unaware that (1) $10,000 in cash was the trigger for the reporting requirement, as opposed to $10,000.01, and (2) his withdrawal at one branch on December 28, 2020, would be aggregated with his withdrawal on the same day at another branch to trigger a Currency Transaction Report. This argument is unsupported by fact and law. As an initial matter, Count Nine charges all the transactions from December 28, 2020, through January 6, 2021 (eight cash withdrawals totaling $68,000) as structuring and an attempt to structure financial transactions to avoid reporting requirements – not just those that occurred on December 28, 2020. The testimony proved that Ervin was made aware he could withdraw all the cash at one time through a special order or receive a cashier's check, both of which he rejected. Doc. 279 at 172-73, 186. When offered $10,000, he instead withdrew $9,000 (*id.* at 172-73) – nonsensical behavior for someone who purportedly wanted to withdraw all of his money. He then repeatedly returned on different days to take out cash in $9,000 increments. Trial Ex. 95(c). Simply based on the records and testimony regarding Ervin's behavior alone, these transactions in the aggregate constitute classic structuring, and a "red flag" for a bank as Andrea Useche testified. Doc. 279 at 150-51.

Further, Ervin mischaracterizes the testimony by Ms. Sarkese. Ms. Sarkese testified that Ervin asked her at some point about what the threshold for the bank to report a cash transaction was. Doc. 279 at 162-63, 197-98. Ervin states in his motion that Ms. Sarkese testified that this conversation "must have occurred after the

5

time period the withdrawals alleged to be structuring in Count Nine were to have taken place." Doc. 273 at 5. This is false: Ms. Sarkese clearly testified on re-direct (and re-affirmed on re-cross) that this conversation happened at some unknown time *before* the transactions on December 28, 2020. Doc. 279 at 197. On direct examination, Ms. Sarkese testified as follows:

> Q. Do you recall ever having a discussion with Mr. Ervin about what the threshold was to – that the bank would report cash?
>
> A. Yes.
>
> Q. Could you tell the grand jury – the jury about that.
>
> A. So it was asked to me at one point what that dollar amount is as far as reporting goes. And obviously I didn't give that information because we're not allowed to. But it was asked at one point, "Well, how much can I take out so it's not reported?"
>
> Q. Do you recall specifically when that conversation occurred?
>
> A. No, I don't remember the exact date.
>
> Q. And we're going to talk about – in a few minutes about a series of – or, rather, a cash withdrawal that occurred at your branch, but was it at some point prior to that cash withdrawal occurring?
>
> A. The withdrawal that we're going to talk about?
>
> Q. The $9,000 cash withdrawal.
>
> A. It was after that.

Doc. 279 at 162-63. On redirect, counsel for the government clarified with Ms. Sarkese that the "it" in "it was after that" in her direct testimony was the $9,000 cash, *i.e.*, Ervin structured the withdrawals in question after asking about the reporting threshold.

6

> Q. Finally, to be clear, you testified on direct that Mr. Ervin at one point asked you about what the cash reporting threshold was?
>
> A. Correct.
>
> Q. Do you recall when in relation to this December 28th incident that was?
>
> A. Before.
>
> Q. And to be clear, did you tell him what the threshold was?
>
> A. No.

Doc. 279 at 197. Counsel for Ervin then on re-cross unsuccessfully tried to confuse the witness regarding the testimony.

> Q. Ms. Sarkese, I just wanted to follow up on a couple of questions that I wanted to clarify. My recollection of your testimony on direct as to that last question in terms of if he asked, you know, what the reporting requirement was --
>
> A. Yes.
>
> Q. -- my understanding is that was after all of this took place, but you're saying now it was before?
>
> A. Before -- okay, what? I'm sorry.
>
> Q. The question that he asked regarding the report – you know, "When would you have to report me to the," whatever he said.
>
> A. Before December?
>
> Q. Yeah.
>
> A. I believe it was before December.
>
> Q. Okay. Do you recall saying that it was after on direct testimony or -
>
> A. No.
>
> Q. Okay.

7

Doc. 297 at 197-98.  Counsel for Ervin then asked Ms. Sarkese whether a notation was made in the account records regarding this encounter, which Ms. Sarkese testified it appeared she had not after reviewing Def's Ex. 26.  Doc. 297 at 198-201.  Therefore, the record evidence is that Ervin was interested in what the cash transaction reporting threshold was prior to engaging in these withdrawals.  Whether he knew the threshold was $10,000 versus $10,000.01 does not vitiate his intent to evade the reporting requirements of 31 U.S.C. § 5313.

This evidence – including, among other things, the testimony that Ervin previously asked "how much can I take out so it's not reported" – constitutes ample proof of the purpose behind these transactions.  However, the defendant cites *Ratzlaf v. United States*, 510 U.S. 135, 146-47 (1994), for the proposition that the government must prove the defendant knew both of the reporting requirement and his duty not to avoid triggering it.  Doc. 273 at 5.  There are two problems with his argument.  Firstly, the defendant overlooks the footnote which comes shortly thereafter:  "A jury may, of course, find the requisite knowledge on defendant's part by drawing reasonable inferences from the evidence of defendant's conduct, and the Government has not found it 'impossible' to persuade a jury to make such inferences in prosecutions for willful violations of §§ 5313, 5314, or 5316."  *Ratzlaf*, 510 U.S. at 149 n.19 (citations omitted).  Secondly, and more importantly:

> After the Supreme Court's *Ratzlaf* decision, Congress amended § 5324 by giving it its own criminal penalty provision so that reliance on § 5322 is no longer necessary. This new provision does not include a separate requirement that the defendant act "willfully."  Thus, the only mental

8

>state apparently required under the new penalty provision is a purpose to evade the filing requirement.

*United States v. Vazquez*, 53 F.3d 1216, 1218 n.2 (11th Cir. 1995); *see also United States v. Hernandez*, 490 F. App'x 250, 253 (11th Cir. 2012) ("To convict Hernandez of structuring, the Government did not have to prove that he knew that the way he structured transactions was unlawful. Instead, all it had to prove was that he acted with a purpose to evade the reporting requirement. The Government presented sufficient evidence to establish that Hernandez purposefully acted to evade the reporting requirements." (citing *Vazquez*, 53 F.3d at 1218 n.2)). The language in these cases tracks closely the Court's instructions to the jury in this case with respect to Count Nine. *See* Doc. 284 at 22-23.

In short, the defendant's argument with respect to Count Nine is unsupported by both fact and law and should be rejected.

## **CONCLUSION**

The evidence of Ervin's guilt at trial was overwhelming. This Court should deny his Motion.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:  *s/ Laura Cofer Taylor*
LAURA COFER TAYLOR
Assistant United States Attorney
USA No. 170
E-mail: Laura.C.Taylor@usdoj.gov

DAVID B. MESROBIAN
Assistant United States Attorney
USA No. 188
E-mail: David.Mesrobian@usdoj.gov

300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
Telephone: (904) 301-6300
Facsimile: (904) 301-6310

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Alex King
*Counsel for defendant Kristopher Justinboyer Ervin*

*s/ Laura Cofer Taylor*
LAURA COFER TAYLOR
Assistant United States Attorney