IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                         Case No. 3:21-cr-22(S4)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER

_____

**JOHN CRUMP'S EMERGENCY[1] MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF RESPONDING TO THE UNITED STATES' MOTION FOR ORDER PROHIBITING DISSEMINATION OF PRESENTENCE INVESTIGATION REPORT**

Now comes John Crump, by and through counsel of record, and for his Emergency Motion to Intervene for the Limited Purpose of Responding to the United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report (ECF #296, "Motion"), states as follows:

John Crump is a professional journalist and thus part of the "press," as well as being engaged in press activities protected by the First Amendment. While the government seeks to diminish his status by pejoratively calling him a "YouTube personalit[y]" (Motion at 1), nothing in the government's motion makes the claim

---

[1] Because Mr. Crump is not able to utilize ECF to file this Motion, it will be filed using the Middle District's online portal, which would take "up to 48 hours" to file on the docket. As this Court has already set a hearing on the Government's Motion for August 11, 2023, counsel believes that this warrants treating this as an Emergency Motion.

1

that Mr. Crump is not a journalist, that he is not part of "the press," or that he was not engaged in press activities. And for good reason. Not only does Mr. Crump operate a YouTube channel, "John Crump News," but also (among other things) he writes extensively for AmmoLand Shooting Sports News[2] and is a regular contributor to One America News Network. Several of Mr. Crump's Ammo Land articles have reported on this case, and have been viewed by tens of thousands of readers.[3]

## Argument

Taking a page straight from Orwell's <u>1984</u>, the United States of America has asked this Court to take a blowtorch to the First Amendment, and impose a prior restraint on a non-party's publication and dissemination of information contained in a nonclassified, nonprivileged, nonsensitive criminal Presentence Report ("PSR"). The government seeks this extraordinary type of order based on a representation that disclosure of the PSR violates a Department of Justice ("DOJ") "policy" (but apparently no law or legal precedent) which forbids its dissemination under any

---

[2] *See* https://www.ammoland.com/author/johncrump/.
[3] *See, e.g.*, https://www.ammoland.com/2021/12/motion-to-dismiss-in-lightning-link-case-has-been-denied/#axzz89ooWMZXo; https://www.ammoland.com/2022/08/uncovered-documents-destroy-governments-case-autokeycard/#axzz89orIyLkj; https://www.ammoland.com/2023/04/documents-prove-atfs-flip-flops-on-nfa-definitions/#axzz89ooWMZXo; https://www.ammoland.com/2023/04/wrap-up-of-week-one-in-the-autokey-card-trial/#axzz89ooWMZXo; https://www.ammoland.com/2023/04/justin-ervin-and-matthew-hoover-crs-firearms-found-guilty-in-the-autokey-card-case/#axzz89ooWMZXo.

circumstance. Of course, even if there were some DOJ rule that restricted a *defendant's* dissemination of such a document, it has no application to a non-party *journalist's* use of the document to inform and educate the public.

Making matters worse, the government's only justifications for its outrageous request is that one of its attorneys does not appreciate, and asks this Court to bring to an end, the widespread public criticism received due to the government's unpopular prosecution of this case, along with the assertion that publication of the document "serves no legitimate purpose." Motion at 6. Of course, the latter claim is belied by the broad media attention, across the political spectrum, that has been paid to this case (see below for examples). And as to the government attorney's sensibilities, the comments (or even "vitriol") of fourth parties, who react to videos posted and articles written by third-party journalists about this case, are no justification for the government's possibly unprecedented request to order a journalist to destroy information which was lawfully obtained.

Even worse, the government asks the Court to impose this restraint without providing any notice to the parties to be bound or an opportunity to be heard. To call the government's request untethered to American constitutional law would be putting it mildly. This Court should emphatically reject the government's request to gag the press and contravene the bedrock First Amendment principle that prior restraints are nearly always – if not uniformly – patently unconstitutional.

I. **Intervention Is Appropriate Here to Contest the Government's Motion.**

Mr. Crumps seeks to intervene in this action for the limited purpose of responding to the government's Motion to censor him. Fed. R. Civ. P. 24(a) governs intervention as of right, and requires a court to "permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Further, "[u]nder Rule 24(a)(2), a party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002).[4] Thus, "[t]he proposed intervenor must show [i] that it has an interest in the subject matter of the suit, [ii] that its ability to protect that interest may be impaired by the disposition of the suit, and [iii] that existing parties in the suit cannot adequately protect that interest." *Georgia at* 1250. The interest presented does not have to be "of a legal nature identical to that of the claims asserted in the main action." *DeVault v. Isdale*, 2015

---

[4] In the alternative, Mr. Crump seeks intervention under Rule 24(b) which provides: a court "may permit anyone to intervene who ... (1)(B) has a claim or defense that shares with the main action a common question of law or fact."

U.S. Dist. LEXIS 137684, at *10 (M.D. Fla. Oct. 8, 2015). An intervenor must also show [iv] that intervention is timely. Mr. Crump meets each factor.

Addressing timeliness first, courts look at four factors to determine the "timeliness of a motion to intervene: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *DeVault v. Isdale*, 2015 U.S. Dist. LEXIS 137684, at *6-7 (M.D. Fla. Oct. 8, 2015) (*quoting United States v. Jefferson Cnty.*, 720 F.2d 1511, 1516 (11th Cir. 1983)). Each timeliness factor weighs in Mr. Crump's favor here. First, there can be no serious question that this Motion is timely, as the government's motion was filed, on August 7, 2023, and thus Mr. Crump could not have known prior to then that the government would seek to strip him of his First Amendment right to report on this case. Second, because Mr. Crump seeks to intervene the very next day after he "reasonably should have known of his interest," the parties are not prejudiced. Third, if Mr. Crump is denied intervention, then his constitutional rights may be violated, should this Court grant the government its requested relief without hearing

any opposition. That would constitute a massive prejudice to Mr. Crump, given that courts routinely find that "loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury...." *Smith v. Starr*, 2022 U.S. Dist. LEXIS 85760, at *18 (D. Minn. Mar. 7, 2022) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Finally, the government's motion is a highly unusual circumstance (seeking to censor a non-party in a criminal case without notice or an opportunity to be heard) that militates strongly in favor of intervention and a finding of timeliness.

As to the factors for intervention, first, the government has made Mr. Crump's First Amendment rights an issue to be decided in this case by filing a motion seeking to restrain those rights. Second, if the government's motion is granted without allowing Mr. Crump the ability to intervene, Mr. Crump's ability to protect his constitutional rights will be impaired without him being offered a chance to defend his rights. Third, the existing parties cannot adequately protect Mr. Crump's constitutional rights, because one of the parties here (the government) is the party seeking to try to violate his constitutional rights. Lastly, as explained above, the intervention is timely. Clearly meeting all four factors, Mr. Crump should be entitled to defend himself against that assault on his rights.

## II. The United States Seeks Imposition of a Prior Restraint that Would Extinguish Press Freedoms and Violate the First Amendment.

Prior restraints are the most egregious restrictions on expressive rights, and are subject to the strongest presumption of invalidity. *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971); *see also Times-Picayune Publ'g Corp. v. Schulingkamp*, 419 U.S. 1301, 1307 (1974) ("a court's order impos[ing] significant prior restraints on media publication … would come to this Court 'bearing a heavy presumption against its constitutional validity.'"). Rather, a free press capable of commenting on – and indeed even criticizing – governmental actions is a foundational principle the Founders intended to preserve. No doubt, "the First Amendment was, in part, a reaction against the licensing requirements for publication that had existed in England. It was this legacy that prompted Blackstone to declare that 'the liberty of the press is, indeed, essential to the nature of a free state; but this consists in laying no previous restraints upon publication, and not in freedom from censure for criminal matter when published.'" Erwin Chemerinsky, The First Amendment 65 (2d ed. 2021). Accordingly, a gag order preventing reporting by third parties on a matter of public concern would strike at the very heart of the press and speech freedoms guaranteed in our Bill of Rights. *See Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) ("Where … a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment. … To this extent,

7

any First Amendment infringement that occurs with each passing day is irreparable.").

Prior restraints are rarely ever upheld, and virtually never against members of the press. While courts "have shown a special solicitude for preserving fairness in a criminal trial," *Times-Picayune*, 419 U.S. at 1307,[5] no such governmental interest exists here. Where "newsmen might be prohibited from publishing information about trials if such restrictions were necessary to assure a defendant a fair trial," *id.*, the same cannot be said here, where the trial is over, and when a defendant seeks to speak, *whether directly or indirectly through the media*, about the defendant's own case.

In 2012, the Middle District of Alabama considered a request by the government to issue a gag order against the attorneys in a criminal case, prior to trial. *United States v. McGregor*, 838 F. Supp. 2d 1256 (M.D. Al. Mar. 14, 2012). Importantly, the court distinguished the government's request for an order against lawyers from one against the press noting that, "[b]y its terms, the order placed no limits on the defendants themselves. The order would also have not limited the media's reporting on the trial." *Id.* at 1260. Noting that the Supreme Court had

---

[5] *But see Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976); Chemerinsky, *supra*, at 82 ("The Court in *Nebraska Press* said that it was not creating an absolute ban on prior restraints to protect a defendant's right to a fair trial, but from a practical perspective, the Court did just that.… Nor has the Supreme Court approved a prior restraint to protect a defendant's right to a fair trial since *Nebraska Press*.").

8

vacated the gag order issued against the media in *Nebraska Press Ass'n*, the court explained the rule – *for the press and for defendants* – as being that "there must be a 'clear and present danger' of prejudice before a court may issue a prior restraint against the media."[6] *Id*. at 1261 (citing *United States v. Ford*, 830 F.2d 596 (6th Cir. 1987)).  Clearly, there can be no such showing here.  Rather, the government alleged only that it does not like the critical press that its prosecuting attorney has received, and that it "*appears*" that the purpose of the press attention to the presentence report is "with the *intent* to intimidate and obstruct these proceedings…." Motion at 6 (emphasis added).  Unsurprisingly, there is no specificity or imminence to these broad, vague assertions, and "the First Amendment tolerates absolutely no prior judicial restraints of the press predicated upon surmise or conjecture that untoward consequences may result." *N.Y. Times Co. v. United States*, 403 U.S. 713, 725-26 (1971).

The United States cannot seriously claim that Mr. Hoover's disclosure and any attendant dissemination "serve[] no legitimate purpose" other than "generating vitriol against the undersigned and this Court." Motion at 6.  On the contrary, Mr. Hoover's prosecution is a matter of public concern on which media outlets have reported frequently.[7]   Indeed, negative commentary seems to follow this case

---

[6] The court concluded that a lesser showing applied to attorneys in the case.
[7] *See, e.g.*, Kaelan Deese, *Celebrity YouTuber Cites Supreme Court Gun Ruling in Bid to Dismiss Machine Gun Charges*, Wash. Exam'r (July 19, 2022, 7:00 AM),

regardless of Mr. Crump's involvement—likely because this prosecution is simply unpopular.[8] The government appears to have forgotten what James Madison explained so clearly, that "the censorial power is in the people over the government, and not the government over the people." 4 Annals of Cong. 934 (1794).

### III. None of the United States' Authorities Forecloses a Defendant's Disclosure of His Own PSR.

Tellingly, the United States has failed to cite a single authority for the proposition that Mr. Hoover cannot comment on his own criminal case, or disclose information contained in his own PSR to others. *See* Motion. On the contrary, each and every one of the United States' authorities proscribes disclosure by entities *other* than the defendant himself. *See id.* at 5 (emphasis added) (quoting *United States v. Huckaby*, 43 F.3d 135, 138 (5th Cir. 1995)) ("There is a 'general presumption that **courts** will not grant third parties access....'"); *id.* (emphasis added) ("the local rules of the Middle District of Florida state that **a lawyer**, 'directly or through a surrogate must not extrajudicially and publicly disclose' information...."); *id.* (emphases added) ("it is against the **policy** of the **federal judiciary** and the **Department of**

---

https://tinyurl.com/3d6z23e5; Steve Patterson, *Jurors in Jacksonville Machine-Gun Trial Convict Orange Park Businessman, YouTube Figure*, Jacksonville.com, https://tinyurl.com/yem946bn (Apr. 21, 2023, 4:55 PM); Erik Avanier, *Orange Park Man Found Guilty of Selling Machine Gun Conversion Devices, Faces 110 Years in Prison*, News4JAX (Apr. 21, 2023, 9:16 PM), https://tinyurl.com/356b83zk.

[8] *See* Avanier, *supra* note 2 ("'Ell he should have murdered someone then he would have be [sic] out in 10.'").

**Justice** to disseminate the PSR...."). These policies in fact impliedly admit that a *defendant* is free to discuss the contents of a document to which he has a right of access. *See also* 18 U.S.C. § 3552(d) ("The court shall assure that a report filed pursuant to this section is disclosed to the defendant...."). What a defendant does with this information—and certainly what third party journalists do with any information the defendant voluntarily discloses—fall squarely within the First Amendment's protective ambit.

Moreover, the Federal Rules of Criminal Procedure are utterly silent as to a defendant's disclosure of his own PSR, containing no such prohibition for a defendant himself, or for anyone with whom he communicates. *See* Fed. R. Crim. P. 32(e); *see also United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1173 (2d Cir. 1983) ("Most courts, however, have concluded, as do we, that [former] Rule 32(c) simply does not reach the question of disclosure to third persons, and have sought to balance the desirability of confidentiality against the need of the moving party for disclosure of the document."); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012) ("Nothing is to be added to what the text states or reasonably implies (*casus omissus pro omisso habendus est*). … The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it."). Instead, Rule 32(e) seems rather *defendant-protective*, mandating pre-conviction PSR nondisclosure "[u]nless the defendant has consented in writing,"

11

mandating PSR disclosure to the defendant, and mandating sentence-recommendation nondisclosure if the court so orders. Fed. R. Crim. P. 32(e) (emphasis added). Simply put, the text does not support the gag order the United States seeks.

IV. **Even If Hoover's Dissemination of the PSR Had Been Improper, there Is No Authority to Enjoin the Media from Using It.**

*Even if* this Court were to conclude that Mr. Hoover's dissemination of *his* sealed PSR to the press was somehow improper, this Court still may not enjoin members of the media from reporting on that document. To do so would be to "[p]rohibit[] the publication of a news story or an editorial," which "is the essence of censorship." *In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986). As the Sixth Circuit has explained, *even documents placed under seal*, but later obtained by the press, are not magically outside of First Amendment protections. Reversing a district court's entry of a "patently invalid" injunction, the circuit court chastised the lower court for not even having "appear[ed] to realize that it was engaging in a practice that, under all but the most exceptional circumstances, violates the Constitution: preventing a news organization from publishing information in its possession on a matter of public concern." *P&G v. Bankers Tr. Co.*, 78 F.3d 219, 225 (6th Cir. 1996); *see also* at *id*. (noting that *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 22, 104 S. Ct. 2199, 2202 (1984), which dealt with "parties," and "in

advance of trial," "does not govern the situation where an independent news agency, having gained access to sealed documents, decides to publish them.").

Rather, as the Supreme Court has noted, its cases "suggest strongly that if a newspaper lawfully obtains truthful information about a matter of public significance, then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103-04, 99 S. Ct. 2667, 2671 (1979). There is no question that the PSR here was "lawfully obtain[ed]" by Mr. Crump. Indeed, Mr. Crump relied on the most basic of "routine newspaper reporting techniques" (*id*. at 103) – a phone call interview with Hoover on a line monitored and recorded by the government. *See Seminole Tribe v. Times Publ'g Co.*, 780 So. 2d 310, 317 (Fla. Dist. Ct. App. 2001) ("Although a 'routine' news gathering technique is poorly defined, certainly it includes the practice alleged in this case of asking potential witnesses for information" or, in this case, speaking with the defendant himself). The government's own Motion confirms this, noting repeatedly that it was Hoover who suggested turning the PSR over to Crump and others for publication. Motion at 2 ("Hoover said Crump should obtain a copy of the PSR, or Hoover's 'girl' had a copy and could send it to Crump"); at 3 ("Hoover again discussed that he did not want to discuss the PSR on his own channel, and he wanted Crump and Huges to do it," and "Hoover indicated he wanted Crump and Hughes to have this story," and "Hoover

13

called his wife and told her to 'get them the PSI right away"). Either way, though, "asking persons questions, including those with confidential or restricted information" is entirely protected press conduct and, "[w]hile the government may desire to keep some proceedings confidential and may impose the duty upon participants to maintain confidentiality, it may not impose criminal or civil liability upon the press for obtaining and publishing newsworthy information through routine reporting techniques." *Seminole Tribe* at 317-18.

## CONCLUSION

This Court should reject the government's constitutionally untethered invitation to censor the media in order to save the government from the widespread public criticism it has brought onto itself by prosecution of this case. This Court should deny the government's motion[9].

Respectfully submitted this 9th day of August 2023

/s/ James D. Phillips
James D. Phillips, Jr. (FL # 22846)
Katz & Phillips, P.A.
144 W. Crystal Lake Ave., Suite 1000
Lake Mary, FL  32746
321-332-6864 (T/F)
jphillips@kplegalteam.com

---

[9] Local Rule 3.01(g) requires the movant to confer with the opposing party "[b]efore filing a motion in a civil action..." Given that this is a criminal matter, this requirement does not apply. However, if it does apply, due to the time sensitive nature of this filing, the undersigned counsel did not have an opportunity to consult with the parties to seek their position on this motion.

Robert J. Olson (VA # 82488)
William J. Olson, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (T)
703-356-5085 (F)
wjo@mindspring.com
(Application for special admittance forthcoming)

Stephen D. Stamboulieh (MS # 102784)
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
(Application for special admittance forthcoming)

**CERTIFICATE OF SERVICE**

I, James D. Phillips, hereby certify that I have on this day, caused the foregoing document or pleading to be submitted to the Middle District of Florida's online portal for filing, which, once filed, will appear on this Court's CM/ECF system which will send a notice and copy of the document to all counsel of record. Given the emergent nature of the relief requested, undersigned caused this Motion to be sent to the following counsel of record by email:

Laura Cofer Taylor: Laura.C.Taylor@usdoj.gov

Alex King: Admin@MonroeKingLaw.com

Zachary Zermay: ach@zermaylaw.com

Matthew Larosier: larosieremm@gmail.com

Dated: August 9, 2023.

/s/ James D. Phillips
James D. Phillips, Jr.