# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

George C. Young Courthouse and Federal Building
401 West Central Boulevard
Orlando, FL 32801

Elizabeth M. Warren                                                                    Richard Banke
Clerk of Court                                                          Orlando Division Manager

**DATE:** September 25, 2023

**TO:**    Clerk, U.S. Court of Appeals for the Eleventh Circuit

## UNITED STATES OF AMERICA

## VS.                                        CASE NO: 3:21-cr-22-MMH-MCR

## MATTHEW RAYMOND HOOVER

---

**U.S.C.A. Case No.:**         **TBD**


- Honorable Marcia Morales Howard, United States District Judge appealed from.

- Appeal filing fee was paid.

- Copy of Notice of Appeal, docket entries, judgment and orders appealed from.


ELIZABETH M. WARREN, CLERK

By:      s/BCB, Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE №: 3:21-cr22(S2)-MMH-MCR

UNITED STATES OF AMERICA,

v.

MATTHEW RAYMOND HOOVER,

_____/

## NOTICE OF APPEAL

Pursuant to Rules 3 and Rule 4(b) of the Federal Rules of Appellate Procedure, Defendant Matthew Raymond Hoover hereby appeals to the United States Court of Appeals for the Eleventh Circuit (1) the Order Denying Hoover's Motion to Transfer Venue and Sever (Doc. 125), (2) the Order denying Defendant's Motion to Dismiss (Doc. 141), (3) the Order Denying Defendant's Motions in Limine (Doc. 223), (4) the Order Denying Defendant's Motion for Bill of Particulars (Doc. 237), (5) the Order Denying Defendant's Motion for judgment of Acquittal (Doc. 310), and the Court's denial of Defendant's motion to declare a mistrial, and the judgment, and any other such orders that were merged into the Court's September 14, 2023 Judgment (Doc. 327) issued by United States District Court Judge Marcia Morales Howard.

Respectfully submitted,

1

DATED:  September 20, 2023

*/s/Zachary Z. Zermay*

Zachary Z. Zermay, Esq.
1762 Windward Way
Sanibel, FL 33957
Email: zach@zermaylaw.com
Telephone: 239-699-3107
*Lead Counsel for Defendant*

*/s/Matthew Larosiere*

Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on  September 20, 2023 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/Matthew Larosiere*

Matthew Larosiere, Esq.

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

MATTHEW RAYMOND HOOVER

_____

Case Number: 3:21-cr-22(S4)-MMH-MCR

USM Number: 83631-509

Matthew Larosiere, Retained
6964 Houlton Circle
Lake Worth, FL 33467

Zachary Zermay, Retained
1762 Windward Way
Sanibel, FL 33957

### JUDGMENT IN A CRIMINAL CASE

The defendant was found guilty of Counts One, Two, Three, Five, and Seven of the Fourth Superseding Indictment. The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 371 | Conspiracy to Transfer Unregistered Machinegun Conversion Devices | July 2021 | One |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials D.S. | November 2020 | Two |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials J.M. | November 2020 | Three |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials S.D. | December 2020 | Five |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials R.W. | January 2021 | Seven |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

AO245B (Rev. 09/19) Judgment in a Criminal Case

Matthew Raymond Hoover
3:21-cr-22(S4)-MMH-MCR

The Second Superseding Indictment and Third Superseding Indictment are dismissed on the motion of the United States.

**IT IS ORDERED** that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Date of Imposition of Sentence:
September 7, 2023

**MARCIA MORALES HOWARD**
**UNITED STATES DISTRICT JUDGE**

September 14, 2023

AO245B (Rev. 09/19) Judgment in a Criminal Case

Matthew Raymond Hoover
3:21-cr-22(S4)-MMH-MCR

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of **SIXTY (60) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One through Three, Five, and Seven, all such terms to run concurrently.**

The Court makes the following recommendations to the Bureau of Prisons:
- Incarceration at a facility located as close as possible to Coloma, Wisconsin.
- Defendant receive mental health treatment.
- Defendant enroll in any educational and vocational programs available.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.


_____
UNITED STATES MARSHAL


By: _____
Deputy United States Marshal

AO245B (Rev. 09/19) Judgment in a Criminal Case

Matthew Raymond Hoover
3:21-cr-22(S4)-MMH-MCR

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of **THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Three, Five, and Seven, all such terms to run concurrently**.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
4. You must cooperate in the collection of DNA as directed by the probation officer.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO245B (Rev. 09/19) Judgment in a Criminal Case

Matthew Raymond Hoover
3:21-cr-22(S4)-MMH-MCR

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchucks or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

AO245B (Rev. 09/19) Judgment in a Criminal Case

Matthew Raymond Hoover
3:21-cr-22(S4)-MMH-MCR

12.   If the probation officer determines that you pose a risk to another person (including an
      organization), the probation officer may require you to notify the person about the risk and
      you must comply with that instruction.  The probation officer may contact the person and
      confirm that you have notified the person about the risk.
13.   You must follow the instructions of the probation officer related to the conditions of
      supervision.


## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has
provided me with a written copy of this judgment containing these conditions. For further
information regarding these conditions, see *Overview of Probation and Supervised Release
Conditions*, available at: www.uscourts.gov.



Defendant's Signature:_____          Date:_____

Matthew Raymond Hoover
3:21-cr-22(S4)-MMH-MCR

## ADDITIONAL CONDITIONS OF SUPERVISED RELEASE

1.    You shall participate in a mental health treatment program (outpatient and/or inpatient) and follow the probation officer's instructions regarding the implementation of this court directive. Further, you shall contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office's Sliding Scale for Mental Health Treatment Services.

2.    You shall provide the probation officer access to any requested financial information.

3.    You shall submit to a search of your person, residence, place of business, any storage units under your control, or vehicle, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. You shall inform any other residents that the premises may be subject to a search pursuant to this condition. Failure to submit to a search may be grounds for revocation.

## CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments set forth in the Schedule of Payments.

|  | Assessment | AVAA Assessment[1] | JVTA Assessment[2] | Fine | Restitution |
|---|---|---|---|---|---|
| TOTALS | $500.00 | $0.00 | $0.00 | $0.00 | $0.00 |

[1] Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
[2] Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.

AO245B (Rev. 09/19) Judgment in a Criminal Case

Matthew Raymond Hoover
3:21-cr-22(S4)-MMH-MCR

# SCHEDULE OF PAYMENTS

The Special Assessment in the amount of **$500.00** is due in full and immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

AO245B (Rev. 09/19) Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                             Case No.  3:21-cr-22(S4)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant Kristopher Justinboyer
Ervin's Post-Verdict Motion for Judgment of Acquittal (Doc. 273; Ervin's
Motion), filed May 19, 2023, and Defendant Matthew Raymond Hoover's Motion
for Judgment of Acquittal (Doc. 274; Hoover's Motion), filed May 19, 2023.
Following a nine-day jury trial, on April 21, 2023, the jury returned a verdict
finding Ervin guilty as to all twelve counts of the Fourth Superseding
Indictment (Doc. 204; Indictment) and a verdict finding Hoover guilty of five of
the eight counts charged against him.  See Verdict (Doc. 263; Ervin Verdict);
Verdict (Doc. 264; Hoover Verdict).  Specifically, the jury found Ervin guilty of
conspiring to transfer unregistered machinegun conversion devices in violation
of 18 U.S.C. § 371 (Count One); transferring unregistered machinegun
conversion devices in violation of the National Firearms Act (NFA), 26 U.S.C.
§§ 5861(e) and 5871 and 18 U.S.C. § 2 (Counts Two–Eight); structuring currency

transactions in violation of <u>31 U.S.C. § 5324(a)(3)</u> and <u>(d)(1)</u> (Count Nine); and possessing unregistered machinegun conversion devices in violation of the NFA, <u>26 U.S.C. §§ 5861(d)</u> and <u>5871</u> (Counts Ten–Twelve).  Ervin Verdict at 1–5; <u>see also</u> Indictment at 1–16.  As to Hoover, the jury returned guilty verdicts on the charges of conspiring to transfer unregistered machinegun conversion devices (Count One) and four counts of transferring unregistered machinegun conversion devices (Counts Two, Three, Five, and Seven).  Hoover Verdict at 1–3; <u>see also</u> Indictment at 1–14.  But the jury found Hoover not guilty of three counts of transferring unregistered machinegun conversion devices (Counts Four, Six, and Eight).  Hoover Verdict at 2–4.

In their motions, Defendants request that the Court enter judgments of acquittal as to all counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure (Rule(s)) because "the evidence presented by the prosecution is insufficient to support a conviction."  Hoover's Motion at 1; <u>see</u> Ervin's Motion at 1–2.  The Government filed responses to both motions on June 16, 2023.  <u>See</u> Government's Response in Opposition to Defendants' Motion for Judgment of Acquittal (<u>Doc. 289</u>); Government's Response in Opposition to Defendant Ervin's Post-Verdict Motion for Judgment of Acquittal (<u>Doc. 290</u>).  Accordingly, this matter is ripe for review.

## I.    Legal Standard

Rule 29 provides the Court with authority, where appropriate, to enter a judgment of acquittal following a guilty verdict.  See Rule 29(c)(2).  A motion for judgment of acquittal under Rule 29 "is a direct challenge to the sufficiency of the evidence presented against the defendant."  United States v. Aibejeris, 28 F.3d 97, 98 (11th Cir. 1994); see also United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999) ("In considering a motion for the entry of judgment of acquittal under [Rule 29(c)], a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction.").  In ruling on such a motion, "a district court must 'determine whether, viewing all the evidence in the light most favorable to the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'"  United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997) (quoting United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987)).

## II.    Discussion

Having carefully reviewed the record, the applicable law, and the parties' arguments, the Court finds that Ervin's Motion and Hoover's Motion are both due to be denied.

### A.    Firearms Charges (Counts One–Eight and Ten–Twelve)

The conspiracy charge in Count One and the firearms charges in Counts Two through Eight and Ten through Twelve arise from Ervin's "Auto Key Card"

business.  See generally Indictment.  The evidence at trial showed that Ervin's

Auto Key Cards are stainless steel cards into which the designs of "lightning

links," a type of machinegun conversion device, were etched.  See Jury Trial

(Volume 1 of 9) (Doc. 277; Tr. Vol. 1) at 244–45; Gov't Ex. 64 (Doc. 259-171).

Hoover partnered with Ervin to create several videos advertising the sale of the

Auto Key Cards.  See, e.g., Gov't Ex. 2 (Doc. 259-3; Gov't Ex. 2); Gov't Ex. 2A

(Doc. 259-4; Gov't Ex. 2A) at 3; Gov't Ex. 3 (Doc. 259-5); Gov't Ex. 3A (Doc. 259-

6) at 2–3.  In its closing argument, the Government urged the jury to find that

the Auto Key Card is "a combination of parts designed and intended for use in

converting an AR-15 [rifle] into a machine gun."  Jury Trial (Volume 8 of 9)

(Doc. 284; Tr. Vol. 8) at 35.  The Government contended that the Auto Key Card

is "an NFA item disguised as something innocuous."  Id. at 36.  In contrast,

Ervin and Hoover argued that the Auto Key Card is merely artwork and a

novelty, not a machinegun conversion device.  See id. at 73 ("It's not a machine

gun.  It's lines on a piece of steel."); id. at 155 (asserting that the Auto Key Card

is a "conversation piece").  Apparently rejecting Defendants' theory of the case,

the jury found Ervin guilty of each of the machinegun conversion device charges

and Hoover guilty of Counts One, Two, Three, Five, and Seven.  See Ervin

Verdict at 1–5; Hoover Verdict at 1–3.

    In Hoover's Motion, Hoover presents several arguments as to why the

Court should acquit him of the firearms-related charges.  See Hoover's Motion

at 5–23.  Ervin adopts Hoover's arguments to the extent that they are applicable

to Ervin's convictions.  <u>See</u> Ervin's Motion at 2.  Ervin also raises a challenge

specific to his conviction for Count Six.  <u>See id.</u> at 2–3.  The Court will address

each argument in turn.

### 1. Sufficiency of the Evidence

Ervin and Hoover argue that there was insufficient evidence to support

each element of the firearms-related offenses.  <u>See</u> Hoover's Motion at 1; Ervin's

Motion at 2–3.   To find a Defendant guilty of a conspiracy to transfer

unregistered machinegun conversion devices as charged in Count One, the jury

had to find that the Government proved all of the following facts beyond a

reasonable doubt:

> (1) two or more persons in some way agreed to try to accomplish a
> shared and unlawful plan;
>
> (2) the Defendant knew the unlawful purpose of the plan and
> willfully joined in it;
>
> (3) during the conspiracy, one of the conspirators knowingly
> engaged in at least one overt act as described in the indictment;
> and
>
> (4) the overt act was committed at or about the time alleged and
> with the purpose of carrying out or accomplishing some object of
> the conspiracy.

Court's Final Jury Instructions (<u>Doc. 254</u>; Jury Instructions) at 16.  To find

Ervin and Hoover guilty of the substantive counts of transferring unregistered

machinegun conversion devices, the jury had to find the following facts to be

true beyond a reasonable doubt:

> (1) the Defendant knowingly transferred, or aided and abetted the
> transfer of, a firearm, specifically, a combination of parts designed
> and intended for use in converting a weapon to shoot automatically
> more than one shot, without manual reloading, by a single function
> of the trigger;
>
> (2) the firearm was not registered in the National Firearms
> Registration and Transfer Record; and
>
> (3) the Defendant knew of the specific characteristics or features
> of the firearm that made it subject to registration under the
> National Firearms Registration and Transfer Record.

Id. at 18–19.  The jury had to find nearly identical elements to convict Ervin of

possessing unregistered machinegun conversion devices as charged in Counts

Ten through Twelve.  See id. at 25–26.

### a. Evidence that the Auto Key Card Is a "Combination of Parts Designed and Intended" for Use in Converting a Weapon into a Machinegun

Hoover argues that no evidence at trial proved that Ervin and Hoover

transferred a "combination of parts."  Hoover's Motion at 5–6.  According to

Hoover, the Government's evidence demonstrated that "each Auto Key Card

was a singular, homogenous piece of stainless steel into which a design was

lightly etched."  Id. at 6.  Hoover also maintains that no evidence showed that

the alleged parts would be functional if cut along the lines of the drawing.  Id.

at 8.  In support of this argument, Hoover contends that the Government's

- 6 -

expert witness, Firearms Enforcement Officer Cody Toy, had to materially alter the Auto Key Card to create parts that caused a malfunction leading to multiple rounds being fired.  Id. at 7–8.

The Court finds that the Government presented sufficient evidence from which a reasonable jury could conclude that Ervin and Hoover transferred, and Ervin possessed, a combination of parts designed and intended for use in converting a weapon into a machinegun.  First, the evidence at trial showed that the etchings on the Auto Key Card demarcate metal pieces that are the correct shape and size to be the parts of a machinegun conversion device. Special Agent Jesse Hooker testified that the etchings on the Auto Key Card are recognizable as the two parts of a lightning link, a machinegun conversion device consisting of a longer piece with a slot and a smaller piece that fits in the slot.  Tr. Vol. 1, at 244–45.  Toy explained that the longer piece is called the "body," and the smaller piece is the "paddle" or "connector."  Jury Trial (Volume 7 of 9) (Doc. 283; Tr. Vol. 7) at 144.

Next, the Government introduced evidence that the pieces identified by the etchings on the Auto Key Card are the correct material to function as machinegun conversion devices.  Hooker testified that lightning links had to be made of metal to work in a rifle.  Tr. Vol. 1, at 245.  Indeed, Ervin advertised the Auto Key Card as "High strength stainless steel.  Durable" and "Full Auto

laser engraved to scale graphic design." Jury Trial (Volume 2 of 9) (Doc. 278; Tr. Vol. 2) at 119–120, 124 (emphasis added).

In addition, the jury heard evidence suggesting that the metal pieces demarcated by the etchings were meant to be removed from the surrounding metal. Two employees at the company that Ervin contracted to manufacture the Auto Key Cards thought that the etchings identified pieces of a tool to be cut out of the card because Ervin said the card was a tool. Transcript of Jury Trial (Volume 4 of 9) (Doc. 280; Tr. Vol. 4) at 27, 111–12. One employee testified that Ervin was concerned about the narrow spacing between two etchings on some of the Auto Key Cards. Id. at 85–87. The jury could reasonably infer that the spacing between the etchings mattered because a customer needed to be able to cut out both parts without damaging them. Moreover, Carolanne Wolfe testified that Ervin decided to include "1 in 1," "2 in 1," or "3 in 1" in the name of each Auto Key Card, even though those names did not describe the number of etchings on each card. Id. at 195. For example, the "3 in 1" Auto Key Card actually contained six separate etchings. Tr. Vol. 2, at 34. A reasonable jury could conclude that Ervin called the cards "3 in 1" because each card contained the parts for three lightning links.

Notably, the jury heard Hoover say that the Auto Key Cards contain firearm parts that can be removed from the surrounding metal. In his first video about the Auto Key Card, Hoover pointed to the different etchings on the

card and noted that a person could cut out "this piece right here" and fit the piece in the "slot right here." Gov't Ex. 1 (Doc. 259-1; Gov't Ex. 1); Gov't Ex. 1A (Doc. 259-2; Gov't Ex. 1A) at 7–8. Hoover explained how these pieces can interact with the other parts of an AR-15 rifle to produce automatic fire. Gov't Ex. 1; Gov't Ex. 1A, at 7–8. In another video, Hoover said that the Auto Key Card "was a great [Special Occupational Taxpayer] resource where you could get machine gun parts." Gov't Ex. 14 (Doc. 259-25; Gov't Ex. 14); Gov't Ex. 14A (Doc. 259-26; Gov't Ex. 14A) at 2–3 (emphasis added).

Finally, the Government presented evidence from which the jury could reasonably conclude that the parts identified by the etchings in the Auto Key Card are reasonably accessible to an end user and actually function as a machinegun conversion device. Using a commonly available Dremel tool and a hand file, Toy was able to cut out the parts of the lightning link from the first Auto Key Card that he received. Tr. Vol. 7, at 148–50. The whole process took him approximately 37 minutes. See id. at 150. Toy cut to the line on the Auto Key Card except that he removed "some of the material" off the paddle because it was "a little bit too tall." Id. at 151–53. Toy explained that "hand fitting" a part is not uncommon because firearms from different manufacturers have different tolerances. Id. at 151–52. Counsel for the Government placed the cut-out piece over the uncut etching on an Auto Key Card. See id. at 153. Toy agreed that it appeared to be a millimeter or less of a difference between the

dimensions of the piece he cut out and the etching on the card.  Id.  The jury could see for itself whether the pieces that Toy cut out conformed to the etchings on the Auto Key Card.  See id.; Gov't Ex. 20A (Doc. 259-40); Gov't Ex. 25A (Doc. 259-46); Tr. Vol. 1, at 256–57, 272–73.  Once Toy installed the pieces from that Auto Key Card, a formerly semiautomatic rifle fired more than one shot with a single function of the trigger.  Tr. Vol. 7, at 155–156.  Toy conducted an additional test fire in Jacksonville, Florida.  Id. at 167–168.  At that test, with the parts from this Auto Key Card installed, the weapon fired automatically with both a machine gun bolt carrier and with an SP1 bolt carrier.  Id. at 168.

With the second Auto Key Card that Toy received, he used a Dremel tool and a drill press.  Id. at 159–61.  It took him 53 minutes to successfully cut out the parts of a lightning link from that card.  Id. at 162.  Once Toy installed these parts into his rifle, the rifle fired automatically.  Id. at 163.  Based on Toy's testimony, a reasonable jury could find that, while Toy had to "materially alter" the Auto Key Card to access the parts of a lightning link, he did not have to materially alter the parts themselves.  Toy merely had to remove the parts from the surrounding metal in order to use them to convert a semiautomatic rifle into a machinegun.

Given all of this evidence, the jury could reasonably conclude that Ervin and Hoover transferred and possessed a combination of parts designed and intended for use in converting a weapon into a machinegun.

- 10 -

**b. Evidence that Defendants Knew the Specific Characteristics of the Firearm that Made It Subject to Registration**

Hoover argues that the Government did not prove that he had the <u>mens rea</u> required to be convicted of transferring unregistered machineguns. <u>See</u> Hoover's Motion at 10 (citing <u>Staples v. United States</u>, <u>511 U.S. 600</u> (1994)). In <u>Staples</u>, the Supreme Court expressed concern that a gun "may give no externally visible indication that it is fully automatic," leaving the gun's possessor with "absolute ignorance of the gun's firing capabilities." <u>511 U.S. at 615</u>. The Court concluded that Congress did not intend "to subject such law-abiding, well-intentioned citizens" to a lengthy prison sentence if "what they genuinely and reasonably believed was a conventional semi-automatic [weapon] turns out to have worn down into or been secretly modified to be a fully automatic weapon.'" <u>Id.</u> (alteration in original) (quoting <u>United States v. Anderson</u>, <u>885 F.2d 1248, 1254</u> (5th Cir. 1989) (en banc)). Thus, the Court concluded that, to obtain a conviction, the Government must prove that a defendant "knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." <u>Id.</u> at 602, 619.[1]

---

[1] The Court did not hold that the Government must prove that the defendant knew his possession was <u>unlawful</u>. In her concurrence, Justice Ginsburg noted that "[t]he <u>mens rea</u> presumption requires knowledge only of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption, 'deeply rooted in the American legal system,' that, ordinarily, 'ignorance of the law or a mistake of law is no defense to criminal prosecution.'" <u>Id.</u> at 622 n.3 (Ginsburg, J., concurring) (quoting <u>Cheek v. United States</u>, <u>498 U.S. 192, 199</u> (1991)).

Here, the jury could reasonably conclude that Ervin and Hoover knew of the characteristics or features that brought the Auto Key Card within the statutory definition of a machinegun. Jonathan Monger testified that Ervin told him that the Auto Key Card is a "gray market item" that resembles the lightning link. Tr. Vol. 4, at 266–67. According to Monger, Ervin told him that, if the pieces of the Auto Key Card "were cut out correctly and formed in a certain way, it could make a certain model AR-15 fully auto." Id. at 267–68. In addition, in an advertisement video, Ervin interspersed videos and sounds suggesting automatic fire with images of the Auto Key Card. Gov't Ex. 49A (Doc. 259-121). Moreover, when a customer asked Ervin about the "proper use of the card," Ervin provided directions on how to find instructions for using the Auto Key Card as a machinegun conversion device. Gov't Ex. 67E (Doc. 259-179; Gov't Ex. 67E); Tr. Vol. 2, at 115–16. Ervin also told the customer,

> The auto key card is a conversation piece as sold and as with many legal products, illegal use can occur. Think of brass knuckles sold as paperweights. Please be smart and careful you don't get into trouble. It is intended to stay in the sold as form. Individuals may make the choice to use it in a different way under certain dire circumstances in the future. Please share our product with others and friends that may need it someday.

Gov't Ex. 67E. From this evidence, the jury could reasonably conclude that Ervin knew of the characteristics or features of the Auto Key Card that brought it within the scope of the NFA.

Similarly, the Government presented evidence from which a reasonable jury could find that Hoover knew that the Auto Key Card is a combination of parts designed and intended for use in converting a weapon to shoot automatically. In one of his videos, Hoover instructed viewers how to get a functioning lightning link out of an Auto Key Card. See Gov't Ex. 1; Gov't Ex. 1A, at 7–8. Hoover explained that the Auto Key Card is "awesome" because it is "stupid cheap. You could drop it in your rifle – or, you know, if you're actually gonna do this legally, this is just the bottle opener." Gov't Ex. 1; Gov't Ex. 1A, at 8–9. And Hoover called the Auto Key Card a great resource "where you could get machine gun parts." Gov't Ex. 14; Gov't Ex. 14A, at 2–3. This evidence sufficiently supports the jury's finding that Hoover knew of the characteristics or features of the Auto Key Card that brought it within the scope of the NFA.

The jury also could reasonably conclude that Ervin and Hoover knew that parts could fall within the definition of "machinegun" even when the parts could not immediately be used. Ervin told Wolfe that a lightning link that she found online was a "no-no" because it was "like 95 percent." Tr. Vol. 4, at 227–29. Similarly, Hoover stated that the "old Lightning Links" caused problems because there were "just a couple of small pieces of metal holding them in the original piece. All's you had to do was take your finger, pop it out. Boom. You have a machine gun." Gov't Ex. 2; Gov't Ex. 2A, at 3. Hoover described another conversion device called the "swift link" and mentioned how they were

"disguised as a little stick-on coat rack. You just snapped off the back of it."
Gov't Ex. 1; Gov't Ex. 1A, at 6.  In the video "This Makes an Illegal Machine
Gun," Hoover argued that the "portable wall hanger" is not a machinegun
conversion device because "modification needs to happen."  Gov't Ex. 7 (Doc.
259-13; Gov't Ex. 7); Gov't Ex. 7A (Doc. 259-14; Gov't Ex. 7A) at 3.  He then
admitted that the ATF "considered it" a machinegun conversion device "for
whatever reason."  Gov't Ex. 7; Gov't Ex. 7A, at 3.  Finally, Hoover discussed
drilling a third hole in a receiver and noted how "dimpling," or merely marking
in the metal where the third hole would go, would mean that the ATF classified
the receiver as a machinegun.  Gov't Ex. 1; Gov't Ex. 1A, at 7.  Based on this
evidence, the jury could reasonably find that Ervin and Hoover knew that they
were transferring and possessing a combination of parts designed and intended
for use in converting a weapon into a machinegun, notwithstanding the extra
material surrounding the parts in the Auto Key Card.

### c. Evidence that Ervin Transferred Machinegun Conversion Devices to J.A.

With regard to Count Six of the Indictment, the jury found Ervin guilty
of transferring unregistered machinegun conversion devices to a person with
the initials "J.A." See Ervin Verdict at 3.  Ervin argues that no evidence showed
that an individual with the initials J.A. existed or ordered and received an Auto
Key Card.  Ervin's Motion at 3.  However, the Court finds that the jury heard

sufficient evidence to conclude that Ervin transferred an Auto Key Card 2 in 1 Pen Holder Edition (containing two conversion devices) to a real individual named James Acs. See Gov't Ex. 89E (Doc. 259-256); Jury Trial (Volume 3 of 9) (Doc. 279; Tr. Vol. 3) at 40; Tr. Vol. 2, at 164–65; Gov't Ex. 110 (Doc. 259-336). Therefore, Ervin's Motion is due to be denied as to Count Six.

### d. Evidence that Defendants Knew of the Conspiracy's Unlawful Purpose

As to Count One, Hoover argues that there was no evidence that he knew the unlawful purpose of the conspiracy. See Hoover's Motion at 10–11. Hoover's argument is unavailing because the Government presented sufficient evidence of each Defendant's knowledge and intent. As discussed above, a reasonable jury could conclude that Ervin and Hoover knew that they were transferring parts subject to the NFA. In addition, the evidence showed that Ervin set up, and Hoover advertised, discrete mail-in ordering for the Auto Key Card because they knew that customers would worry about their names being connected with the product. Gov't Ex. 1; Gov't Ex. 1A, at 5; Gov't Ex. 2; Gov't Ex. 2A, at 3. The evidence also revealed that Ervin explicitly discussed the possibility of prosecution and professed his belief that law enforcement could not prove his intent unless they got into his head. Tr. Vol. 4, at 221. Moreover, in a video, Hoover says that he told Ervin that "it's kind of an edgy product." Gov't Ex. 14; Gov't Ex. 14A, at 1. According to Hoover, the gist of what Ervin said in reply

is, "Look, if a drawing on a piece of metal that I have scribed in there is gonna be illegal, that's my line in the sand.  That's where I want to fight."  Gov't Ex. 14; Gov't Ex. 14A, at 1–2.  Hoover responded, "I got your back, man." Gov't Ex. 14; Gov't Ex. 14A, at 2.  In another video, Hoover said that it would be ridiculous for an ATF agent to argue in a courtroom that the Auto Key Card is a machinegun, but he acknowledged that "they probably will do that at some point in time. . . . But these are so incredibly affordable, it doesn't really matter." Gov't Ex. 1; Gov't Ex. 1A, at 4–5 (emphasis added).  In the video "The Parts the ATF Wishes Never Existed," Hoover discusses several products, including the Auto Key Card, and refers to them as "these parts that are currently legal – well, kind of legal."  Gov't Ex. 2; Gov't Ex. 2A, at 2 (emphasis added).  After speaking about cutting out the parts contained in the Auto Key Card, Hoover told his viewers, "Definitely don't go on the internet and upload videos with you using this."  Gov't Ex. 2; Gov't Ex. 2A, at 3.  Based on this evidence, the jury could reasonably conclude that each Defendant knew the unlawful purpose of their plan and willfully joined it.

In sum, the Court concludes that sufficient evidence supported each of the jury's guilty verdicts as to the conspiracy charge in Count One and the related firearms offenses in Counts Two through Eight and Ten through

- 16 -

Twelve.[2]  Therefore, Defendants' requests for judgments of acquittal are due to
be denied.

### 2. Vagueness

Hoover argues that "[a]s applied against Mr. Hoover, 26 U.S.C. §§ 5861(e)
and 5871, and 18 U.S.C § 2 are unconstitutionally vague under the Fifth
Amendment."  Hoover's Motion at 21; see also id. at 13–15 (citing several cases
that applied the vagueness doctrine).  He asserts, "In no event would a
reasonably intelligent person foresee that the conduct charged in this case—
talking about a card with a drawing on it—would be deemed criminal, much
less that a homogenous piece of steel with a drawing on it would be deemed a
combination of parts."  Id. at 21.

Challenging a statute for vagueness is an assertion that "criminal
responsibility should not attach [because] one could not reasonably understand
that his contemplated conduct is proscribed."  United States v. Nat'l Dairy
Prods. Corp., 372 U.S. 29, 32–33 (1963).  A statute must "define the criminal

---

[2] Defendants raise several additional arguments based on evidence that they contend
shows their innocence.  See Hoover's Motion at 6 (Ervin's instructions to Orange Park Machine
& Fab.); id. (testimony that drawings and templates are not machineguns); id. at 8 (witness
who failed to convert his rifle to fire automatically); id. at 10 (Hoover's statements about the
legality of the Auto Key Card); id. at 21 (no evidence showing that a purchaser of the Auto Key
Card successfully converted a weapon to shoot automatically).  However, to succeed on a
motion for judgment of acquittal, "[t]he defendant must do more than 'put forth a reasonable
hypothesis of innocence, because the issue is not whether a jury reasonably could have
acquitted but whether it reasonably could have found guilt beyond a reasonable doubt.'"
United States v. Toll, 804 F.3d 1344, 1354 (11th Cir. 2015) (quoting United States v.
Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006)).

offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." United States v. Awan, 966 F.2d 1415, 1424 (11th Cir. 1992) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)). If a vagueness challenge to a statute does not involve the First Amendment, then the analysis must be applied to the facts of the case.[3] United States v. Duran, 596 F.3d 1283, 1290 (11th Cir. 2010). Notably, the Supreme Court has instructed that there is a "strong presumption supporting the constitutionality of legislation." Nat'l Dairy Prods. Corp., 372 U.S. at 32. The Eleventh Circuit has instructed that "[i]n analyzing a vagueness claim, the first step in determining whether a statute provides fair warning is to begin with the language of the statute itself. Where the language alone sets forth plainly perceived boundaries, no further inquiry is necessary." Duran, 596 F.3d at 1291 (citation omitted).

Here, the language of the relevant statutory provisions sets forth plainly perceived boundaries. The NFA prohibits possessing or transferring unregistered machineguns. See 26 U.S.C. § 5861(d)–(e). The statute defines the term "machinegun" as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function

---

[3] Defendants do not argue that their vagueness challenge involves the First Amendment, and they specifically state that they are challenging the statutes "as applied." Hoover's Motion at 21.

- 18 -

> of the trigger.  The term shall also include . . . any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun . . . .

26 U.S.C. § 5845(b).  This language is clear and definite.  In the context of a prosecution for possessing and transferring machinegun conversion devices, the former Fifth Circuit rejected a defendant's argument that the statute is unconstitutionally vague.  See United States v. Campbell, 427 F.2d 892, 893 (5th Cir. 1970) (per curiam).[4]  Notably, Hoover does not identify which portion of this definition is supposedly vague.  He does not explain how the statute fails to define the crime "with sufficient definiteness that ordinary people can understand what conduct is prohibited."  Awan, 966 F.2d at 1424.  Nor does he explain how the statute encourages "arbitrary and discriminatory enforcement."  Id.

Instead, Hoover emphasizes that the NFA does not give notice that drawings and tchotchkes are illegal.  For example, Hoover asserts, "[i]t should not be controversial to state that a statute proscribing a 'combination of parts' gives no notice that a drawing, or even a drawing that could become a

---

[4]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.  However, because vagueness challenges are "as applied" and the court in Campbell faced somewhat different facts, the holding in Campbell likely is not controlling in this case.  It is nevertheless persuasive authority that the statutory language generally is sufficiently clear to put a person of reasonable intelligence on notice as to what is forbidden.

combination of parts through transformative labor, [is] covered." Hoover's
Motion at 14; see also id. at 18 ("Such tchotchkes are not regulated under the
Gun Control Act or the [NFA]."); id. at 20–21 ("The statute does not refer to
something that may one day become a part, nor does it refer to drawings or
schematics for parts. It refers, quite simply, to something that is a combination
of parts."). However, the Government has never suggested that the NFA
applies to mere drawings or novelties. And, the Court did not instruct the jury
that it could convict based on the transfer of a mere tchotchke, drawing, or
drawing that could become a combination of parts. Rather, the Court instructed
the jury that it could only find Defendants guilty if the Government proved
beyond a reasonable doubt that Defendants had possessed and transferred a
"combination of parts designed and intended" for use in converting a weapon
into a machinegun. Jury Instructions at 18, 25. Thus, Hoover's arguments
about drawings and trinkets are unavailing.

Hoover also lists hypotheticals and asks whether they are prohibited by
the statute. See Hoover's Motion at 19 ("If the DXF File of the Drawing and
instructions how to break the law, like the Anarchist Cookbook, are
constitutionally protected speech, is the Drawing with oil-based paint on [a]
piece of stainless steel, okay? What about military grade plastic with the
etching—is that Kosher?"). While those hypotheticals may identify difficult or

close cases, they do not explain what is vague about the statutory language itself. The Eleventh Circuit has instructed,

> [Void for vagueness] does not mean that the statute must define every factual situation that may arise. The existence of "marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." Moreover, ignorance of the fact that one's conduct is a violation of the law is no defense to criminal prosecution.

United States v. Nelson, 712 F.3d 498, 508 (11th Cir. 2013) (citations omitted) (quoting United States v. Biro, 143 F.3d 1421, 1430 (11th Cir. 1998)); see also Johnson v. United States, 576 U.S. 591, 601 (2015) ("[E]ven clear laws produce close cases . . . ."). The Supreme Court also has noted, "As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" Johnson, 576 U.S. at 603–04 (alteration in original) (quoting Nash v. United States, 229 U.S. 373, 377 (1913)). Whether Defendants transferred a "combination of parts" may not have been obvious in this particular case. But the law itself provides a meaningful standard. Applying that standard to Defendants' real-world conduct, the jury found that Defendants went too far and, rather than transferring mere art, they were, in

fact, transferring a combination of machinegun parts.  Resolving that factual question was well-within the province of the jury.[5]

In addition, "[b]ecause 'objections to vagueness under the Due Process Clause rest on the lack of notice,' an as-applied vagueness challenge 'may be overcome in any specific case where reasonable persons would know that their conduct is at risk.'"  United States v. Edgar, 304 F.3d 1320, 1327 (11th Cir. 2002) (quoting Maynard v. Cartwright, 486 U.S. 356, 361 (1988)).  Here, the Court concludes that a reasonable person would know that selling an Auto Key Card would place him at risk.  In fact, as discussed above, the evidence showed that Ervin and Hoover knew their conduct was at risk.  See id. at 1328 (rejecting a vagueness challenge in light of the defendant's "knowledge and experience," which showed that he "[s]urely" knew his conduct was unlawful).  The Supreme Court has found that it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."  Boyce Motor Lines v. United States, 342 U.S. 337, 340 (1952).  Ervin and Hoover acted deliberately to sell a product that they knew was

---

[5] For the same reasons, Defendants' argument fails to the extent they rely on the rule of lenity.  See Hoover's Motion at 16–18.  The rule of lenity applies "where there is a 'grievous ambiguity or uncertainty' in the statute."  United States v. Izurieta, 710 F.3d 1176, 1182 (11th Cir. 2013) (quoting Chapman v. United States, 500 U.S. 453, 456 (1991)).  Defendants do not identify any ambiguity in 26 U.S.C. §§ 5845, 5861, and 5871.  Defendants wrongly equate uncertainty about a factual question (whether the items Defendants transferred were mere drawings or a combination of parts) with doubt about a legal question (the meaning of the statute itself).

"edgy," Gov't Ex. 14; Gov't Ex. 14A, at 1, and a "gray-market item," Tr. Vol. 4, at 266–67. Having knowingly taken that risk, Defendants may not now complain that the statute provided them insufficient notice. For all of these reasons, Defendants' vagueness challenge is unavailing.

### 3. Constructive Amendment of the Indictment

Hoover argues that the Government impermissibly shifted from prosecuting a "part" theory to prosecuting a "combination of parts" theory. Hoover's Motion at 11. In support of this argument, Hoover cites United States v. Chandler for the proposition that it is error for the grand jury to indict on one theory of illegal conduct and the Government to prosecute the case on another, entirely different theory. See 388 F.3d 796, 798 (11th Cir. 2004). But no impermissible shift in the Government's theory occurred here. In the operative Indictment, the Government charged that Defendants had transferred and possessed a "combination of parts designed and intended for use in converting a weapon into a machinegun." Indictment at 2, 10–16. At trial, the Government presented proof and argued that the Auto Key Card is a combination of parts. See Tr. Vol. 8, at 35. And, consistent with the language of the Indictment, the Court instructed the jury on the "combination of parts" portion of the definition of a machinegun. Jury Instructions at 18, 25. Because the Government did not impermissibly shift its theory of the case, Defendants' argument is unavailing.

### B.    Structuring Currency Transactions (Count Nine)

With regard to Count Nine of the Indictment, the jury found Ervin guilty of structuring, and attempting to structure, currency transactions for the purpose of evading currency transaction reporting requirements.  See Ervin Verdict at 4.  Ervin argues that "there is no record evidence that [he] was attempting to avoid the reporting requirement."[6]  Ervin's Motion at 5.

The Court finds that the record contains sufficient evidence from which the jury could reasonably conclude that Ervin acted with the purpose to evade the transaction-reporting requirements.  An employee of Ervin's bank Amy Sarkese testified that Ervin asked her what the threshold to trigger the reporting requirement was.  See Tr. Vol. 3, at 162 ("Well, how much can I take out so it's not reported?").  Sarkese stated that Ervin asked this question sometime before he started repeatedly withdrawing $9,000 in cash from his account.  See id. at 197.  On the day of the first structured transaction,

---

[6] Ervin also argues that the law requires the Government to prove that he knew of the "actual reporting requirement" and of his duty not to avoid triggering a transaction report. Ervin's Motion at 5 (citing Ratzlaf v. United States, 510 U.S. 135, 146–47 (1994)).  This argument misstates the law because Congress amended 31 U.S.C. § 5324 after the Supreme Court's decision in Ratzlaf.  See United States v. Vazquez, 53 F.3d 1216, 1218 n.2 (11th Cir. 1995).  "[T]he only mental state apparently required under the new penalty provision is a purpose to evade the filing requirement."  Id.; see United States v. Hernandez, 490 F. App'x 250, 253 (11th Cir. 2012) (per curiam).

In citing Hernandez, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

December 28, 2020, Ervin initially asked to withdraw all of the money in his
account in cash.  See id. at 170–71.  According to Sarkese, she informed him
that he could not withdraw all of the money in cash that day.  See id. at 171.
Sarkese instead offered to allow him to withdraw $10,000.  See id.  Although
Ervin at first agreed to withdraw this amount, he changed his mind and asked
to withdraw $9,000.  See id. at 171–73.  Based on this testimony, the jury could
reasonably infer that Ervin heard "$10,000," became concerned about the
reporting threshold, and requested a lower amount to avoid triggering the
reporting requirement.  In addition, Sarkese testified that Ervin had the option
of withdrawing all of his money in cash at once through a special order that
could have been available by the end of the following week.  See id. at 171.
Instead of requesting a special order and waiting less than two weeks to receive
all of his money, Ervin returned to a branch of his bank on seven separate days
over the course of a week and a half and withdrew $9,000 in cash each time.
See Gov't Ex. 95C (Doc. 259-302) at 22–23, 26.  This course of conduct readily
supports an inference that Ervin was acting with the intent to evade the
reporting requirement.  See United States v. Vigil-Montanel, 753 F.2d 996, 999
(11th Cir. 1985) ("A defendant's intent can be inferred from his conduct and all
the surrounding circumstances.").  Therefore, the Court will deny Ervin's
Motion as to Count Nine.

## III.    Conclusion

Viewing all of the evidence in the light most favorable to the jury's verdict, the Court finds that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt as to each conviction.    And Defendants' legal challenges are unavailing.    Accordingly, it is

**ORDERED:**

Defendant Kristopher Justinboyer Ervin's Post-Verdict Motion for Judgment of Acquittal (Doc. 273) and Defendant Matthew Raymond Hoover's Motion for Judgment of Acquittal (Doc. 274) are **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, on August 23, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:21-cr-22-MMH-MCR

MATTHEW RAYMOND HOOVER
_____/

### ORDER

**THIS CAUSE** is before the Court on Defendant's Motion for Bill of Particulars ("Motion") (Doc. 220) and United States' Response in Opposition thereto ("Response") (Doc. 236). For the reasons stated herein, the Motion is due to be **DENIED**.

### I.    The Parties' Positions

Defendant moves for an order, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, requiring the Government to provide "a list of all the 'parts' that the Government contends that Defendants combined that were designed and intended for use in converting a weapon into a machinegun." (Doc. 220 at 1.) Defendant explains:

> As indicted, the crux of the Government's case is that Defendant allegedly ran afoul [of] 26 U.S. Code § 5845(b) by way of transferring a "combination of parts designed and intended, for use in converting a weapon into a machinegun[.]"
> . . .
> Despite dumping several terabytes of data on Defendant on the eve of trial—along with another Indictment—the Government has yet to identify the parts at issue, as opposed to what can—at

> best—be a single part (the AutoKeyCard a piece of stainless steel into which was etched the alleged "design for machinegun conversion devices").

(*Id.* at 2.)

The Government responds that Defendant's Motion should be denied. (Doc. 236 at 2.)  The Government argues that the Motion is due to be denied because it is an attempt by the Defendant to rehash an argument already asserted in a previous unsuccessful Motion to Dismiss. (*Id.*) The Government further argues that the "Fourth Superseding Indictment itself is abundantly clear, and if it were not, [D]efendant also has the benefit of all of the discovery in this case as well as the [G]overnment's briefings as part of the extensive pre-trial litigation concerning these matters." (*Id.*)

## II.    Standard

Pursuant to Rule 7(f) of the Federal Rules of Criminal procedure, a district "court may direct the government to file a bill of particulars." Fed.R.Crim.P. 7(f).  A "defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits."  *Id.* The district court has "very broad discretion in ruling upon [such] requests." *Will v. United States*, 389 U.S. 90, 99 (1967); *see also United States v. Burgin*, 621 F.2d 1352, 1358 (5th Cir. 1980)[1] ("A defendant possesses no right to a bill

---

[1] All Fifth Circuit decisions entered before October 1, 1981 were adopted by the Eleventh Circuit as binding precedent.  *Bonner v. Prichard*, 661 F.2d 1206, 1209

of particulars and the decision on the motion lies within the discretion of the
court.").

"The purpose of a true bill of particulars is threefold: 'to inform the
defendant of the charge against him with sufficient precision to allow him to
prepare his defense, to minimize surprise at trial, and to enable him to plead
double jeopardy in the event of a later prosecution for the same offense.'"
*United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (citations
omitted).  A bill of particulars "supplements an indictment by providing the
defendant with information *necessary* for trial preparation."  *Id.* (emphasis in
original).  "It is not designed to compel the government to detailed exposition
of its evidence or to explain the legal theories upon which it intends to rely at
trial."  *Burgin*, 621 F.2d at 1359.  Thus, generalized discovery is not a proper
purpose for seeking a bill of particulars.  *Anderson*, 799 F.2d at 1441.

## III.    Analysis

The undersigned agrees with the Government that the present Motion
is due to be denied. The information provided in the Indictment sufficiently
apprises Defendant of the charge against him to allow him to prepare his
defense.  *See United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990) (per
curiam) ("An indictment . . . is sufficient for constitutional purposes if it

---

(11th Cir. 1981) (en banc).

3

articulates in statutory language the elements of the [alleged] violation.");

*United States v. Cole*, <u>755 F.2d 748, 760-61</u> (11th Cir. 1985) (affirming the

district court's refusal to grant a bill of particulars where the superseding

indictment "tracked the language of the statutes involved and adequately

informed [defendants] of the charges pending against them"; as such,

defendants did not show that the government's failure to provide a bill of

particulars resulted in surprise or prejudice at trial).

    As Defendant has been informed of the charge brought against him

with sufficient precision to allow him to prepare his defense, he has not

shown that the information sought is necessary for trial preparation, to avoid

surprise, or for the purpose of asserting the defense of double jeopardy should

the Government endeavor to prosecute him again for the same conduct.  *See*

*United States v. Marcus*, <u>193 F. Supp. 2d 552, 561-62</u> (E.D.N.Y. 2001) ("It is

not enough that the information would be useful to the defendant; if the

defendant has been given adequate notice of the charges against him, the

government is not required to disclose additional details about its case.")

(internal citations and quotation marks omitted).

    Based on the foregoing, the Court will exercise its discretion to deny

Defendant's Motion.

    Accordingly, it is **ORDERED**:

    The Motion (**<u>Doc. 220</u>**) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, on April 6, 2023.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                           Case No.  3:21-cr-22(S4)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER

_____

## **O R D E R**

**THIS CAUSE** is before the Court on several motions in limine.  The
Government filed two motions in limine on February 24, 2023.  See Motion in
Limine for Jury Instruction (Doc. 189; Government's First Motion); Motion in
Limine to Exclude Argument and Evidence at Trial That Is Contrary to the Law
(Doc. 190; Government's Second Motion).  Defendants filed responses on March
10, 2023.  See Defendant Ervin's Response to Government's Motion in Limine
for Jury Instruction (Doc. 213; Ervin's Response to Government's First Motion);
Defendant Ervin's Response to Government's Motion in Limine to Exclude
Argument and Evidence at Trial That Is Contrary to the Law (Doc. 214; Ervin's
Response to Government's Second Motion); Defendant Matthew Raymond
Hoover's Opposition to Government's Motions in Limine (Doc. 215; Hoover's
Response).  Defendants filed five joint motions in limine on February 27, 2023.
See Defendants' First Motion in Limine (Doc. 193; Defendants' First Motion);

Defendants' Second Motion in Limine (Doc. 194; Defendants' Second Motion); Defendants' Third Motion in Limine (Doc. 195; Defendants' Third Motion); Defendants' Fourth Motion in Limine (Doc. 196; Defendants' Fourth Motion); Defendants' Fifth Motion in Limine (Doc. 197; Defendants' Fifth Motion).[1] Hoover filed an additional sixth motion in limine. See Defendant Hoover's Sixth Motion in Limine Regarding Mrs. Hoover (Doc. 203; Hoover's Sixth Motion), filed February 27, 2023. The Government filed responses in opposition to Defendants' motions on March 10, 2023. See Government's Response in Opposition to Defendants' First Motion in Limine (Doc. 207; Response to Defendants' First Motion); Government's Response in Opposition to Defendants' Second Motion in Limine (Doc. 208; Response to Defendants' Second Motion); Government's Response in Opposition to Defendants' Third Motion in Limine (Doc. 209; Response to Defendants' Third Motion); Government's Response in Opposition to Defendants' Fourth Motion in Limine (Doc. 210; Response to Defendants' Fourth Motion); Government's Response in Opposition to Defendants' Fifth Motion in Limine (Doc. 211; Response to Defendants' Fifth Motion); United States' Response in Opposition to Defendant Hoover's Motion in Limine to Exclude Trial Testimony of Erica Ibe Hoover (Doc.

---

[1] Defendants filed duplicate versions of their first five motions in limine. See Defendants' First Motion in Limine (Doc. 198); Defendants' Second Motion in Limine (Doc. 199); Defendants' Third Motion in Limine (Doc. 200); Defendants' Fourth Motion in Limine (Doc. 201); Defendants' Fifth Motion in Limine (Doc. 202). In this Order, the Court will cite the first-filed document when addressing each set of duplicate motions.

212; Response to Hoover's Sixth Motion).  Accordingly, this matter is ripe for review.

## I.   Background

On March 6, 2023, a grand jury returned a Fourth Superseding Indictment, which alleges twelve separate crimes.  See generally Indictment (Doc. 204; Fourth Superseding Indictment).  In Count One, Hoover and Ervin are charged with conspiring to transfer unregistered machinegun conversion devices in violation of 18 U.S.C. § 371.  Id. at 1–10.  In Counts Two through Eight, Hoover and Ervin are charged with substantive counts of transferring, and aiding and abetting the transferring of, unregistered machinegun conversion devices via the U.S. mail to various individuals, in violation of 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2.  Id. at 10–14.  In the remaining counts of the Fourth Superseding Indictment, the Government charges Ervin with structuring and attempting to structure transactions at a federally-insured financial institution to evade reporting requirements (Count Nine) and possessing unregistered machinegun conversion devices (Counts Ten to Twelve).  Id. at 14–16.

The Court summarizes the factual basis for the charges against Defendants in the Fourth Superseding Indictment here.  The Government alleges that beginning in or about October 2020, and continuing through around July 2021, Defendants Ervin and Hoover conspired to transport unregistered

Case 3:21-cr-00022-MMH-MCR    Document 334    Filed 09/25/23    Page 46 of 146 PageID
7049

machinegun conversion devices through Ervin's Auto Key Card business.  <u>See</u>

<u>id.</u> at 2–3.  The Auto Key Cards, which Ervin allegedly designed and sold,

> consisted of cards machined from stainless steel, into which were
> etched the design for machinegun conversion devices known as
> lightning links, which constituted machineguns as defined in <u>26
> U.S.C. § 5845(a)</u> and <u>5845(b)</u> in that they are a combination of parts
> designed and intended for use in converting a weapon into a
> machinegun.

<u>Id.</u> at 2.  The Government explains "[a] lightning link was a particular design

of auto sear," which is "a category of machinegun conversion devices that may

be installed into an otherwise semi-automatic AR-15 type rifle and function to

convert the AR-15 type rifle to fire more than one shot by a single function of

the trigger."  <u>Id.</u>  As part of the conspiracy, Hoover created and posted various

videos to his YouTube Channel, CRS Firearms, in which he "promoted the sale

of [Ervin's] Auto Key Cards."  <u>Id.</u> at 3.  Shortly after Hoover would post videos

identifying autokeycard.com as a sponsor and promoting the sale of Auto Key

Cards, Ervin would mail Hoover cash or items of value such as a Louis Vuitton

bag or video production equipment.  <u>See</u> <u>id.</u> at 4–10.  In anticipation of trial set

to begin on April 10, 2023, the parties have filed their motions <u>in</u> <u>limine</u>.

## II.    Legal Standard

A motion <u>in</u> <u>limine</u> asks the Court "to exclude anticipated prejudicial

evidence before the evidence is actually offered."  <u>Luce v. United States</u>, <u>469

U.S. 38, 40</u> n.2 (1984).  During trial, "the district judge is free, in the exercise of

sound judicial discretion, to alter a previous in limine ruling." Id. at 41–42.

While irrelevant evidence is never admissible, "[r]elevant evidence is admissible" unless the Constitution, a federal statute, the Federal Rules of Evidence (Rule(s)), or another rule made by the Supreme Court provides otherwise. Rule 402. According to Rule 401, evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Rule 401. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403. The Eleventh Circuit Court of Appeals has "long said that Rule 403 'is an extraordinary remedy which should be used sparingly, and, indeed, the trial court's discretion to exclude evidence as unduly prejudicial is narrowly circumscribed.'" United States v. McGregor, 960 F.3d 1319, 1324 (11th Cir. 2020) (quoting United States v. Cross, 928 F.2d 1030, 1051 (11th Cir. 1991)). When resolving a challenge based on Rule 403, the district court "must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Id. (quoting Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1069 (11th Cir. 2014)).

## III.    Discussion

### A.    Government's First Motion

In the Government's First Motion, the Government asks the Court to prohibit Defendants from "arguing that the United States is required to demonstrate that Auto Key Cards were designed and intended 'solely and exclusively' to be used as machinegun conversion devices or otherwise is required to demonstrate a 'plus factor.'"  Government's First Motion at 1.  The Government contends that both arguments are irrelevant to the offenses charged in the Indictment and would confuse the jury.  See id. at 3.  The Government also asks that the Court instruct the jury that "a machinegun is defined as 'a combination of parts designed and intended for use in converting a weapon into a machinegun.'"  Id.

Ervin argues that, in the relevant statutory definition of "machinegun," the phrase "designed and intended solely and exclusively" applies to a "combination of parts" as well as "any part."  Ervin's Response to Government's First Motion at 1–2 (quoting 26 U.S.C. § 5845(b)).  Ervin maintains that the Government's reading would violate the principle of construing statutes in pari materia.  See id. at 3.  Last, Ervin contends that the Court should construe any ambiguity in the statute in Defendants' favor because of the rule of lenity.[2]  Id.

_____

[2] Ervin also asserts, "The definition advocated for in the Eleventh Circuit Pattern Jury Instructions is inclusive as to all three clauses and definitions provided for in 26 U.S.C. §

Unlike Ervin, Hoover agrees with the Government that the Court should instruct the jury that a machinegun is a "combination of parts designed and intended[ ] for use in converting a weapon into a machinegun." Hoover's Response at 2. However, with regard to the term "plus factor," Hoover asserts that the term "simply served to connect the design and intent of an item to its status as a 'weapon,' as opposed to a tchotchke or trinket, which the statutes plainly do not target." Id. According to Hoover, granting the Government's First Motion would "impermissibly eliminate the need for the government to logically connect the design and intent of an item, to a machinegun, and to a weapon." Id.

The Court finds that the Government's First Motion is due to be granted with regard to the definition of "machinegun." The statute defines "machinegun" as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, <u>any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun</u>, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

---

5845(b)." Id. at 4. The Court has found no support for Ervin's interpretation of the statute in the Eleventh Circuit Pattern Jury Instructions, Criminal Cases (2022), https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatternJuryInstructionsRevisedMAR2022.pdf.

26 U.S.C. § 5845(b) (emphasis added).  The statutory text distinguishes between a single "part" and a "combination of parts."  The commas around the phrase "combination of parts designed and intended" exclude the phrase "solely and exclusively."  In the phrase set off by commas, Congress repeated "designed and intended"—showing that those words apply to "combination of parts"—but omitted "solely and exclusively."  Ervin's interpretation would insert the phrase "solely and exclusively" where Congress omitted it.  Thus, the Court concludes that the phrase "solely and exclusively" only applies to the phrase "any part designed and intended."  Because the meaning of the statute is clear, the canon of construing statutes in pari materia and the rule of lenity do not apply.  See United States v. Warren, 820 F.3d 406, 408 (11th Cir. 2016) (per curiam) (in pari materia); United States v. Rivera, 884 F.2d 544, 546 (11th Cir. 1989) (rule of lenity).  Therefore, the Court will grant the Government's First Motion, in part, and prohibit Defendants from arguing that the Government must prove that the Auto Key Cards were designed and intended "solely and exclusively" for use in converting a weapon into a machinegun.  The Court will instruct the jury that a machinegun is "a combination of parts designed and intended for use in converting a weapon into a machinegun."

As the Court previously held, the Government does not need to prove the existence of a "plus factor," as that term is used in United States v. Hammond, 371 F.3d 776 (11th Cir. 2004).  See Order (Doc. 141) at 16–19.  Therefore, the

Court will prohibit any suggestion that the Government must prove more than the elements of the offenses charged.  Of course, Defendants may argue that the Government has not met its burden to prove the statutory elements.  Although the Court doubts that the term "plus factor" will be helpful to the jury, the Court will not prohibit use of the term at this stage.  The Court will reconsider its ruling if Defendants attempt to use "plus factor" to insinuate that the Government must prove something outside the elements of the charged offenses.  In sum, the Court will grant the Government's First Motion, in part, and deny it, in part.

### B.    Government's Second Motion

In the Government's Second Motion, the Government asks the Court to exclude "any testimony or argument at trial that Auto Key Cards constitute 'artwork' protected by the First Amendment, or that statements made in furtherance of advertising and distributing the Auto Key Cards were protected speech."  Government's Second Motion at 3.  The Government also requests an order precluding "any argument that the [National Firearms Act (NFA)] and federal firearms laws are otherwise unconstitutional or that the Second Amendment ensures the right to possess machineguns."  Id.  According to the Government, arguments about the First and Second Amendments are irrelevant, would confuse the jury, and invite jury nullification.  Id. at 8.

Ervin states that he does "not intend to advocate or argue that it is the role of the jury to determine which statutes the jury believes are constitutional." Ervin's Response to Government's Second Motion at 2. Ervin agrees with the Government that it would be improper for him to argue that, "even if the 'Auto Key Card' is a 'firearm' under 26 U.S.C. § 5845(a), he has a First Amendment right" or "a Second Amendment right to possess and distribute said firearm." Id. at 4–5. However, Ervin asserts that the Court should allow arguments and evidence about Ervin's intentions "regarding the purpose and nature of the 'Auto Key Card'" and about whether the Auto Key Card is an illegal machinegun conversion device or artwork. Id. at 3–4. Similarly, Hoover argues that he "must not be foreclosed from arguing that the drawings—or 'etchings' as the government calls them—are in fact just that." Hoover's Response at 3. In addition, Hoover contends that the Court should not forbid as-applied constitutional challenges at trial or bar the mention of the First and Second Amendments. Id. at 3–4.

The Court finds that the Government's Second Motion is due to be granted to the extent that the Court will prohibit Defendants from arguing that they have a defense under the First and Second Amendments or suggesting that the NFA is unconstitutional. If the jury finds that Defendants conspired to transfer machinegun conversion devices, the First Amendment would provide them no defense. See Order (Doc. 141) at 30–32; United States v. Williams, 553

- 10 -

U.S. 285, 297–98 (2008).  Similarly, the Second Amendment would not protect
their conduct.  See Order (Doc. 141) at 33–34.  While Defendants may dispute
the elements of the charged offenses, they may not present a defense that is
unsupported by law.  See United States v. Funches, 135 F.3d 1405, 1408 (11th
Cir. 1998).  Thus, the Court will prohibit any argument that the jury may find
both that the Government has proved all the elements of a charged offense and
that the First or Second Amendment excused Defendants' conduct.  However,
Defendants may present evidence and argument about the purpose and nature
of the Auto Key Card and whether the Auto Key Card is merely a drawing.
Such evidence would properly address an element of the charged offenses—
whether the Auto Key Card is designed and intended for use in converting a
weapon into a machinegun.

The Court notes that mentioning the First or Second Amendment may be
necessary as background information to explain Defendants' actions in this
case.  As such, the Court will not prospectively prohibit any mention of the
Constitution.  But the Court will not allow counsel to suggest to the jury an
improper basis for a verdict.  See United States v. Kelly, No. 2:18-CR-22, 2019
WL 5328722, at *4 (S.D. Ga. Oct. 18, 2019) ("While there is some probative
value to such background information, the probative value is low.").[3]  Therefore,

---

[3] The Court notes that although decisions of other district courts are not binding, they
may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310

the Court will grant the Government's Second Motion to the extent that the Court will prohibit Defendants from arguing that they have a defense under the First and Second Amendments or suggesting that the NFA is unconstitutional. In all other respects, the Court will deny the Government's Second Motion.

## C.     Defendants' First Motion

In Defendants' First Motion, Defendants ask the Court to exclude "expert testimony from lay witnesses regarding the operation of firearms and other expert opinions with regard to the 'Auto Key Card.'" Defendants' First Motion at 1. Defendants assert that the Government will call to the stand purchasers of the Auto Key Card and elicit testimony about the Auto Key Card's function, legality, and technical aspects. Id. Defendants contend that the Government has not disclosed any of these witnesses as experts and that any expert testimony on firearms would be needlessly cumulative. Id. at 2.

The Government represents that it will not elicit opinions from the purchasers. See Response to Defendants' First Motion at 3. The Government argues that the purchasers will testify about their purchases of the Auto Key Cards, their states of mind and motives for purchasing the cards, their attempts to use the cards, and statements that Defendants made. Id. at 2–4.

---

(11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

The Court finds that Defendants' First Motion is due to be denied because the testimony proffered by the Government is not expert opinion testimony. Unlike the witnesses in the cases cited by Defendants, the witnesses here will not be asked to express opinions about legal issues for the truth of those opinions. See United States v. Ness, 665 F.2d 248, 250 (8th Cir. 1981); United States v. Baskes, 649 F.2d 471, 478 (7th Cir. 1980); United States v. Southers, 583 F.2d 1302, 1306 (5th Cir. 1978).[4] According to the Government, it intends to elicit testimony about the witnesses' personal observations, states of mind, and actions. That kind of evidence is not expert opinion testimony. Compare United States v. Oriedo, 498 F.3d 593, 602 (7th Cir. 2007) (finding that the expert disclosure rules did not apply to a witness who testified about "his own state of mind while observing this particular drug deal"), with id. at 603 (finding that testimony "ostensibly couched" as direct observation was expert testimony because the witness did not limit his testimony "to what he observed in the search" but instead used the "wealth of his experience" to make "connections for the jury based on that specialized knowledge"). Thus, the Court will deny Defendants' First Motion.

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

### D.    Defendants' Second Motion

In Defendants' Second Motion, Defendants ask the Court to exclude testimony "regarding the belief of lay witnesses . . . that the 'Auto Key Card,' or similar items, are Machineguns." Defendants' Second Motion at 1. Defendants anticipate that the Government will call purchasers of Auto Key Cards to the stand and elicit testimony that the purchasers believed the Auto Key Cards to be machinegun conversion devices and destroyed their Auto Key Cards. See id. at 1–2. Defendants argue that the jury does not need to know the purchasers' intentions or reasons for buying the Auto Key Card. Id. at 4. Defendants assert that the witnesses may not give lay opinions about the legality of Auto Key Cards because those opinions would not be based on the witnesses' perceptions, would not assist the jury, and would be based on specialized knowledge. Id. Defendants contend that such testimony would not be helpful to the jury because it would merely tell the jury what result to reach or would simply repeat what law enforcement officers told the witnesses. Id. at 2–3.

The Government asserts that the purchasers will give factual testimony about "why they bought an Auto Key Card, what they believed the Auto Key Card could do, and what they intended to do or actually did with it." Response to Defendants' Second Motion at 3. The Government maintains that it will not ask the purchasers to state opinions about whether Auto Key Cards actually are machineguns. Id. at 4.

The Court finds that Defendants' Second Motion is due to be denied. Based on the Government's representations, the Court concludes that the expected testimony will be fact testimony about the witnesses' own actions and states of mind, not opinion testimony. See United States v. Toll, 804 F.3d 1344, 1354–55 (11th Cir. 2015) ("What Carness believed when he prepared the statements is a question of fact, so the district court did not err by permitting this testimony."). The purchasers' intentions and understanding of the Auto Key Cards will be relevant evidence making a fact of consequence—Defendants' knowledge and intent—more or less probable. Therefore, most, if not all, of the proffered testimony is likely admissible. However, the Court questions the relevance of some of the proffered testimony. For example, the Court is unsure how the fact that some purchasers later destroyed their Auto Key Cards in fear of prosecution is relevant to any issue. In addition, testimony that a law enforcement officer told a witness that the Auto Key Card is illegal may be inadmissible. Nonetheless, the Court is of the view that objections to issues such as these are more appropriately addressed at trial with the full context of the question and the potential response. As such, the Court will deny Defendants' Second Motion.

## E.    Defendants' Third Motion

In Defendants' Third Motion, Defendants ask the Court to exclude evidence of "hearsay statements made in electronic communications and

platforms, including Youtube comments and electronic mail." Defendants'
Third Motion at 1. According to Defendants, the anticipated statements will
mostly be hearsay without exception and will be irrelevant. Id. Defendants
also contend that many of the comments would be expert testimony or improper
lay opinion testimony. Id. at 3. In addition, Defendants maintain that the
Government cannot prove that Defendants knew of the comments or agreed to
or adopted the comments. Id. Finally, Defendants argue that the comments
would create a substantial danger of unfair prejudice, confusing the issues, and
misleading the jury. Id.

The Government asserts that many of the electronic communications it
intends to introduce are Defendants' own statements with the statements of
others provided only for context. Response to Defendants' Third Motion at 3.
The Government maintains that it will not offer other communications for the
truth of the matters asserted, but rather to show Defendants' knowledge and
notice of their conduct's illegality. Id. at 3–4. According to the Government,
this evidence will be relevant to Defendants' "states of mind, knowledge, and
intent in manufacturing, selling, and transferring Auto Key Cards." Id. at 4.
In addition, the Government argues that comments and emails on the internet
are not expert testimony. Id. at 5. Next, the Government contends that, while
Defendants may argue that they were not aware of these comments and emails,
those arguments are about the weight of the evidence, not its admissibility. Id.

Finally, the Government asserts that Defendants have not shown any way in which the evidence will be unfairly prejudicial or misleading. Id. at 5–6.

The Court finds that Defendants' Third Motion is due to be denied. Statements made by Defendants are not hearsay. See Rule 801(d)(2). Statements made to Defendants are not hearsay if the Government offers the statements for a non-truth purpose, such as context for Defendants' statements or the effect of the statements on Defendants. See Rule 801(c)(2); United States v. Valdes, 214 F. App'x 948, 950 (11th Cir. 2007) (per curiam).[5] The comments and emails proffered by the Government appear to be relevant to Defendants' knowledge and notice about the legality of their conduct. The Court also finds that the statements are not opinion testimony because the Government will not offer them for the truth of the opinions expressed. As Defendants have not identified how these statements would lead to unfair prejudice or confuse the issues, the Court does not find that the evidence is due to be excluded under Rule 403. Therefore, the Court will deny Defendants' Third Motion.[6]

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see also Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[6] Of course, Defendants may raise a hearsay or other objection to a particular item of evidence at trial if warranted.

### F.    Defendants' Fourth Motion

In Defendants' Fourth Motion, Defendants ask the Court to exclude evidence that the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) "has determined that drop-in auto [sears], lightning links, or devices similar to the 'Auto Key Card' are Machineguns."  Defendants' Fourth Motion at 1. Defendants argue that the ATF's regulatory determinations about what items are subject to be taxed as machineguns have no bearing on what items are machineguns for the purpose of determining criminal penalties.  Id. at 2–3. According to Defendants, evidence of the ATF's determination would mislead the jury and improperly bolster the Government's case.  Id. at 4.  Defendants express particular concern about evidence "that ATF has already 'settled the issue' or otherwise implying that Mr. Ervin and Mr. Hoover had an obligation to affirmatively clear their conduct with ATF."  Id.

The Government asserts that historical information about lightning links will be relevant to Ervin's contention that the Auto Key Cards were an original design idea or artwork.  Response to Defendants' Fourth Motion at 1.  The Government maintains that it will not elicit testimony that the ATF determined that Auto Key Cards are machineguns.  Id.  The Government argues that evidence about the ATF's process for issuing determination letters will "counter defendants' claims that they had no way to know whether their conduct was illegal."  Id. at 2.

The Court finds that Defendants' Fourth Motion is due to be denied. That lightning links exist and that the ATF classifies them as machineguns are relevant to whether an etching of a lightning link on a metal card is designed and intended for use in converting a weapon into a machinegun. This evidence also is relevant to the jury's consideration of Ervin's contention that the Auto Key Card was an original design and merely artwork. Moreover, this evidence is relevant to the Government's theory that Defendants were trying to skirt the requirements of the law by creating not-quite-completed lightning links. In addition, if Defendants suggest at trial that they had no way to know how the ATF would classify the Auto Key Card, the fact that the ATF has a process for issuing determination letters would be relevant.

Defendants' arguments about the separation of powers and the role of the jury are unavailing because the Government is not charging Defendants with violating a regulation. It appears the Government plans to introduce the regulation to explain <u>why</u> Defendants allegedly violated the NFA in a particular manner. <u>See</u> <u>United States v. Moss</u>, <u>34 F.4th 1176, 1189</u> (11th Cir. 2022) ("[M]otive . . . is always relevant in a criminal case."). The question for the jury is not whether a lightning link is a machinegun. The question is whether the Auto Key Card is a machinegun. Evidence of the ATF's determination about lightning links would not improperly settle that question.

In addition, the Court does not find that evidence of the ATF's determination about lightning links will create a danger of unfair prejudice that substantially outweighs the probative value of that evidence. The Court will instruct the jury that it must decide for itself whether the Government has proven beyond a reasonable doubt that the Auto Key Card meets the statutory definition of a machinegun. See United States v. Almanzar, 634 F.3d 1214, 1222 (11th Cir. 2011) ("We presume that jurors follow the instructions given by the district court."). Consequently, the Court will deny Defendants' Fourth Motion.

### G.    Defendants' Fifth Motion

In Defendants' Fifth Motion, Defendants ask the Court to exclude evidence about the "auction price of taxable items under the National Firearms Act." Defendants' Fifth Motion at 1. Defendants argue that the price of registered machinegun conversion devices is irrelevant to the facts at issue here. Id. at 2. Defendants contend that such evidence could lead the jury "to believe that the 'Auto Key Card' should have been registered with ATF, which would be impossible." Id.

The Government maintains that evidence of the price of transferable lightning links is relevant to rebut the contention that the Auto Key Card is Ervin's original design and to prove Defendants' state of mind and motive to create a low-cost machinegun conversion device. Response to Defendants' Fifth

Motion at 2. The Government asserts that Defendants have not explained how this evidence would inflame the jury against Defendants or cause the jury to make impermissible inferences. Id. at 1–2.

The Court concludes that evidence of the auction price of legally transferable machinegun conversion devices is relevant to Defendants' motive. See Moss, 34 F.4th at 1189. Moreover, Defendants have not explained how this evidence would lead the jury to impermissible inferences or otherwise cause unfair prejudice. The Government may appropriately try to prove that the Auto Key Card is a machinegun conversion device and, thus, should have been registered under the NFA. As such, the Court finds that Defendants' Fifth Motion is due to be denied.

## H.    Hoover's Sixth Motion

In Hoover's Sixth Motion, Hoover asks the Court to prohibit the Government from calling Hoover's wife Erica Ibe Hoover (Mrs. Hoover) to testify and from soliciting testimony from Mrs. Hoover about her communications with Hoover. Hoover's Sixth Motion at 1. Hoover asserts that the marital communications privilege applies to bar testimony about Mrs. Hoover's communications with Hoover. Id. at 2. Hoover argues that any non-privileged testimony would be needlessly cumulative of other evidence about Ervin's payments to Hoover. Id. at 2–3.

The Government maintains that the marital communications privilege does not apply because the Government plans to elicit evidence of communications that occurred prior to the marriage and much of the testimony would not concern communications with Hoover.  Response to Hoover's Sixth Motion at 3.  The Government also asserts that the information would not be needlessly cumulative because Mrs. Hoover's testimony would add context and other information to the documentary evidence.  Id. at 5.

The Court finds that Hoover's Sixth Motion is due to be denied.  The marital communications privilege does not extend to testimony about acts, communications made prior to the marriage, or to communications transmitted to, or in the presence of, third parties.  See Pereira v. United States, 347 U.S. 1, 6–7 (1954); United States v. Pensinger, 549 F.2d 1150, 1151 (8th Cir. 1977).  Because the Government does not intend to introduce any testimony about communications between Hoover and Mrs. Hoover during their marriage, the marital communications privilege does not apply.  In addition, Hoover has not shown that Mrs. Hoover's testimony would be needlessly cumulative or waste time.  See United States v. Brown, 441 F.3d 1330, 1363 (11th Cir. 2006).  Therefore, the Court will deny Hoover's Sixth Motion.

Accordingly, it is

**ORDERED:**

1.  The Government's Motion <u>in</u> <u>Limine</u> for Jury Instruction (<u>Doc. 189</u>)
    is **GRANTED, in part**, and **DENIED, in part**.

    A.  The Government's First Motion is **GRANTED** to the extent
        that the Court will prohibit Defendants from arguing that the
        Government must prove that the Auto Key Cards were
        designed and intended "solely and exclusively" for use in
        converting a weapon into a machinegun and the Court will
        instruct the jury that a machinegun is "a combination of parts
        designed and intended for use in converting a weapon into a
        machinegun."

    B.  In all other respects, the Government's First Motion is
        **DENIED**.

2.  The Government's Motion <u>in</u> <u>Limine</u> to Exclude Argument and
    Evidence at Trial That Is Contrary to the Law (<u>Doc. 190</u>) is
    **GRANTED, in part**, and **DENIED, in part**.

    A.  The Government's Second Motion is **GRANTED** to the extent
        that the Court will prohibit Defendants from arguing that
        they have a defense under the First or Second Amendment or
        suggesting that the National Firearms Act is
        unconstitutional.

B.    In all other respects, the Government's Second Motion is
**DENIED**.

3.    Defendants' First Motion in Limine (Doc. 193) and Defendants'
First Motion in Limine (Doc. 198) are **DENIED**.

4.    Defendants' Second Motion in Limine (Doc. 194) and Defendants'
Second Motion in Limine (Doc. 199) are **DENIED**.

5.    Defendants' Third Motion in Limine (Doc. 195) and Defendants'
Third Motion in Limine (Doc. 200) are **DENIED**.

6.    Defendants' Fourth Motion in Limine (Doc. 196) and Defendants'
Fourth Motion in Limine (Doc. 201) are **DENIED**.

7.    Defendants' Fifth Motion in Limine (Doc. 197) and Defendants'
Fifth Motion in Limine (Doc. 202) are **DENIED**.

8.    Defendant Hoover's Sixth Motion in Limine Regarding Mrs. Hoover
(Doc. 203) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, on March 30, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record
Pro Se Parties

- 24 -

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:21-cr-22(S3)-MMH-MCR

MATTHEW RAYMOND HOOVER

_____

# **O R D E R**

**THIS CAUSE** is before the Court on two motions to dismiss filed by

Defendant Matthew Raymond Hoover:[1] (1) the Motion to Dismiss (Doc. 132;

First Motion)[2] and (2) the Motion to Dismiss for First and Second Amendment

Violations and to Declare Unconstitutional the National Firearms Act of 1934

---

[1]      Notably, rather than ask the Court for permission to exceed the page limit for filing a
motion to dismiss under Rule 3.01(a), Local Rules, United States District Court, Middle
District of Florida (Local Rule(s)), counsel for Hoover filed two motions to dismiss.  This is
improper.  Counsel for Hoover similarly evaded requesting the Court for the appropriate relief
in filing Hoover's Notice Regarding Expert Disclosure (Doc. 107), which the Court construed,
in that instance, as a motion for extension of time, see Endorsed Order (Doc. 109).  Here, the
Court will permit Hoover to exceed the page limits, but cautions counsel for Hoover that going
forward, the Court will strike filings that do not comply with the Federal Rules of Criminal
Procedure or the Local Rules of this Court.

[2]      Attached to the First Motion, citing Rule 201 of the Federal Rules of Evidence, Hoover
includes a request that the Court take judicial notice of the Federal Register as well as a letter
from the Bureau of Alcohol, Tobacco, Firearms, and Explosives in which the agency opines that
a device, different than that at issue in the instant case, is not regulated under the National
Firearms Act.  See Request for Judicial Notice in Support of Defendant's Motion to Dismiss
(Doc. 132-1).  With regard to his reference to the Federal Register, "[Federal Courts] take
judicial notice of documents published in the Federal Register."  Longo v. Seminole Indian
Casino-Immokalee, 813 F.3d 1348, 1350 n. 2 (11th Cir. 2016) (citing 44 U.S.C. § 1507).  As to
the letter, however, the Court finds it is not relevant to whether the device at issue in the
instant action is regulated by the National Firearms Act. As such, it is not an adjudicative fact
of which this Court need take judicial notice.  See Dippin' Dots, Inc. v. Frosty Bites
Distribution, LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) ("Adjudicative facts are facts that are
relevant to a determination of the claims presented in a case.").

(Doc. 133; Second Motion), both of which were filed on September 22, 2022

(collectively, the "Motions").[3]   The Government filed a response to Hoover's

Motions on October 7, 2022.   See United States' Omnibus Response in

Opposition to Defendant's Motions to Dismiss (Doc. 138; Response).

Accordingly, the Motions are ripe for resolution.

## I.    Relevant Background

The government initiated the instant criminal proceeding on March 3,

2021, by filing a Criminal Complaint (Doc. 1) against Defendant Kristopher

Justinboyer Ervin charging that, on or around February 22, 2021, Ervin

> did knowingly possess a firearm as defined under Title 26,
> United States Code, Section 5845(a) and (b), that is, a
> machine gun conversion device, that was not then registered
> to the defendant in the National Firearms Registration and
> Transfer Record,

in violation of Title 26, United States Code, Sections 5861(d) and
5871.

See Criminal Complaint at 1.  Eight days later, on March 11, 2021, a grand jury

returned a one-count indictment charging Ervin with the same offense.  See

Indictment (Doc. 17).  On April 1, 2021, the grand jury returned a superseding

indictment charging Ervin with causing a financial institution to fail to file a

Currency Transaction Report (CTR) in violation of 31 U.S.C. § 5324(a)(1) (Count

---

[3]      Hoover first filed a Motion to Dismiss on June 21, 2022.  See Motion to Dismiss (Doc.
95).  However, the grand jury returned a Third Superseding Indictment (Doc. 120) on August
31, 2022, and the Court denied the motion to dismiss as moot.  See Minute Entry (Doc. 126).

One), structuring a transaction at a federally-insured financial institution while violating another law of the United States in violation of 31 U.S.C. § 5324(a)(3) (Counts Two through Seven), transporting or causing to be transported unregistered firearms in interstate commerce in violation of 26 U.S.C. §§ 5861(j) & 5871 (Count Eight), and possessing unregistered machinegun conversion devices in violation of 26 U.S.C. §§ 5861(d) & 5871 (Counts Nine through Fourteen). See Indictment (Doc. 25; First Superseding Indictment).

Ervin filed a motion to dismiss the First Superseding Indictment, see Motion to Dismiss Superseding Indictment and Memorandum of Law (Doc. 30), which the Court denied on July 8, 2021. See Transcript (Doc. 48). On January 22, 2022, the grand jury returned a Second Superseding Indictment which in addition to charging Ervin, charged Defendant Matthew Raymond Hoover with committing federal crimes. See Indictment (Doc. 57; Second Superseding Indictment). On August 31, 2022, the grand jury returned a Third Superseding Indictment in which it modified several of the allegations in the Second Superseding Indictment and included an additional count of transferring, and aiding and abetting the transferring, of unregistered machinegun conversion devices via the U.S. mail as to both defendants. See Indictment (Doc. 120; Third Superseding Indictment). In all, the Third Superseding Indictment now alleges eighteen separate crimes. In Count One, Hoover and Ervin are charged with conspiring to transfer unregistered machinegun conversion devices in violation

3

of 18 U.S.C. § 371. Id. at 1-10. In Counts Two through Eight, Hoover and Ervin are charged with substantive counts of transferring, and aiding and abetting the transferring, of unregistered machinegun conversion devices via the U.S. mail to various individuals, in violation of 26 U.S.C. §§ 5861(e) & 5871. Id. at 10-14. The remaining counts of the Third Superseding Indictment pertain only to Ervin and again charge him with causing a financial institution to fail to file a CTR (Count Nine), structuring transactions at a federally-insured financial institution to evade reporting requirements (Counts Ten through Fifteen), and possessing unregistered machinegun conversion devices (Counts Sixteen to Eighteen). Id. at 14-17. The Third Superseding Indictment also contains various forfeiture allegations which relate to each count. See id. at 16-19.

The Court summarizes the factual basis for the charges against Hoover in the Third Superseding Indictment here. The Government alleges that beginning in or about October 2020, and continuing through around July 2021, Defendants Ervin and Hoover conspired to transport unregistered machinegun conversion devices through Ervin's Auto Key Card business. See Third Superseding Indictment at 2-3. The Auto Key Cards, which Ervin allegedly designed and sold,

> consisted of cards machined from stainless steel, into which were
> etched the design for machinegun conversion devices known as
> lightning links, which constituted machineguns as defined in 26
> U.S.C. § 5845(a) and 5845(b) in that they are a combination of parts

4

designed and intended for use in converting a weapon into a machinegun.

Id. at 2.  The Government explains "[a] lightning link was a particular design of auto sear," which is

> a category of machinegun conversion devices that may be installed into an otherwise semi-automatic AR-15 type rifle and function to convert the AR-15 type rifle to fire more than one shot by a single function of the trigger.

Id.  As part of the conspiracy, Hoover created and posted various videos to his YouTube Channel, CRS Firearms, in which he "promoted the sale of [Ervin's] Auto Key Cards."  Id. at 3.  For example:

> b.    On or about November 4, 2020, a video created by Hoover was posted on the YouTube channel CRS Firearms.  In the video, titled "Is this An ATF Trap And How Does It Work," Hoover described how to order an Auto Key Card and further described how to cut the lightning link from the Auto Key Card and install it into an AR-15 style rifle, thus converting the AR-15 style rifle into a machinegun.
>
> . . .
>
> l.    On or about January 8, 2021, a video created by Hoover was posted to the YouTube channel CRS Firearms.  In the video, titled "This Makes an illegal Machine gun," Hoover described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

Id. at 4, 7.  Shortly after Hoover would post videos identifying autokeycard.com as a sponsor and promoting the sale of Auto Key Cards, Ervin would mail Hoover cash or items of value such as a Louis Vuitton bag or video production equipment.  See generally id. at 4-10.

5

As further part of the conspiracy, less than three weeks after the grand jury returned the First Superseding Indictment in this case, Ervin, Hoover, and another individual "participated in a phone call in which they discussed plans to continue selling Auto Key Cards and create additional videos promoting Ervin and his Auto Key Card business." Id. at 10.  Around this same time in March 2021, and up until July 2021, Hoover and the other individual raised funds to use, in part, to obtain Ervin's release so he and Hoover "could continue to pursue their conspiratorial goals." Id. at 10.  Hoover now seeks dismissal of Counts One through Eight of the Third Superseding Indictment.

## II.    Summary of the Arguments

In the First Motion, Hoover asserts that the Government has "failed to state a crime" against him.  First Motion at 9.  Hoover contends that in order for a device to qualify as a machinegun under 26 U.S.C. § 5845(b), "it must (1) be a part or combination of parts; (2) which is designed and intended – and in the case of a single 'part' – solely and exclusively for use in converting a weapon into a machine gun." Id. at 10.  Hoover argues that the Government has failed to sufficiently allege that the Auto Key Card was designed for use in converting a weapon into a machinegun.  Id.  In addition, Hoover argues that

> the Indictment is facially defective because there is no "plus" factor alleged to sustain the legal conclusion that these cards are designed and intended solely for use as a weapon, as required by the statute. They are mere stainless-steel cards, into which a design was lightly etched.

6

Id. at 11.  Similarly, Hoover asserts that as pled, the Auto Key Card is not a "combination of parts" or a "part" under the statute, it is merely a drawing on a single card.  Id. at 12-14.  For the same reasons, Hoover maintains that the Government has "failed to state sufficient ultimate facts to sustain [the aiding and abetting] allegations."  Id. at 15.

Hoover next raises various constitutional challenges to several of the charges in the Third Superseding Indictment.  First, Hoover contends

> [a]s applied against Mr. Hoover 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 are unconstitutionally vague under the Fifth Amendment. Mr. Hoover had no reason to believe, at any point, that he would be engaging in criminal conduct if—as alleged—he entered into an agreement with a tchotchke salesman to discuss stainless steel cards with a design on them on his YouTube channel.

Id. at 15-16.  Hoover also contends that "the government is acting outside the limits of the taxing and spending clause" because it "will not accept the payment of the tax required by the charged statute, and yet nonpayment presents serious criminal consequences and permanent deprivations of liberty."  Id. at 21-22.

In the Second Motion, Hoover argues that "[f]acially and as applied, 26 § U.S.C. 5845(b) is a content-based restriction that is simultaneously overbroad and under inclusive."  Second Motion at 3.  According to Hoover, it is overbroad to the extent that

> the broad sweep of the § 5845(b), as wielded here, violates "the requirement that a legislature establish minimal guidelines to

7

> govern law enforcement." <u>Kolender</u>, <u>461 U.S. at 358</u>.[4] There are no
> such guidelines in the law or regulations. Any item, including
> shoelaces, may constitute a "machinegun."

<u>Id.</u> at 4.  As it applies here, Hoover also maintains the statute is under inclusive:

> To wit, if it applied here and not, for example, to an electronic
> massage gun with the same schematic drawn on it that could help
> relax muscles (or rapidly engage a semiautomatic rifle's trigger).
> Given this result, it "necessarily [and impermissibly] entrusts
> lawmaking [regarding this content-based restriction or otherwise]
> to the moment-to-moment judgment of the policeman on his beat."
> <u>See</u> <u>City of Chi. v. Morales</u>, <u>527 U.S. 41, 60</u> (1999).

<u>Id.</u> at 4-5.  In addition, Hoover contends that under the United States Supreme

Court's recent decision in <u>Bruen</u>,[5]

> the only way a court may conclude Defendant's conduct falls outside
> the scope of the Second Amendment's unqualified command
> remains clear: the Government must prove the particular regime in
> question is consistent with the history and tradition of the United
> States.

Second Motion at 7-8.  Hoover further asserts that "the Government has the

burden to prove the regime in question is consistent with the history and

tradition of firearms regulations in this country <u>around the founding era</u>." <u>Id.</u>

at 8 (emphasis added).   Hoover concludes that the history and tradition of the

United States does not support a categorical ban of machineguns and that it

certainly does not support banning Auto Key Cards,

> a tchotchke the Government alleges might possibly, with
> transformative labor, one day become a machinegun.  Further,

---

4    <u>Kolender v. Lawson</u>, <u>461 U.S. 352, 358</u> (1983).
5    <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, <u>142 S. Ct. 2111</u> (2022).

> ATF's decision that the tchotchke at issue – a stainless steel card
> with some lines lightly thereupon engraved – was a machinegun
> came completely by administrative fiat, absent even notice and
> comment.

Id. at 9.  In the alternative, Hoover contends that the application of § 5861 and

§ 5871 is unconstitutional as applied to him because there is no historical

justification for

> an administrative agency's unilateral declaration that an alleged
> drawing of a component – a component the possession of which
> subjects the holder to lengthy prison terms – is the component itself.

Id. at 11-12.

In its Response, the Government largely relies on the Court's rulings on

Ervin's previous motion to dismiss and its arguments in response to that motion.

See Response at 2-5.  As to Hoover's argument that the Government was

required to allege a "plus factor," the Government contends that Hoover

improperly relies on authority addressing "a separate and differently worded

subsection of the statute."  Id. at 7-8.  To the extent Hoover relies on the

language, "any part designed and intended solely and exclusively [to convert a

weapon into a machinegun]," to support his argument that proof of a "plus

factor" is required, the Government notes that Hoover ignores that a

machinegun also encompasses any "combination of parts designed and

intended[ ] for use in converting a weapon into a machinegun."  Id. at 8 (citing

26 § U.S.C. 5845(b)) (emphasis added).  According to the Government, "the Third

9

Superseding Indictment makes clear that the government is proceeding on a theory that Auto Key Cards are a combination of parts, and thus the 'solely and exclusively' language has no role in this case." Id. The Government further maintains that the Third Superseding Indictment lays out the charged offenses in the language of the relevant statutes and provides sufficient facts regarding each Defendant's role in the alleged conspiracy. See id. at 9-10.

As to Hoover's arguments under Bruen, the Government asserts that Hoover "misconstrues ATF's role in determining whether an item meets the statutory definition of a machinegun in Section 5845(b)." Id. at 11. In addition, the Government contends that the Supreme Court's decision in Bruen does not overrule binding precedent that holds the National Firearms Act, 26 U.S.C. §§ 1132—1132q (NFA) constitutional under the Second Amendment. Id. The Government notes that the definition set forth in § 5845(b) was promulgated by Congress, and although it "intends to present evidence at trial in the form of testimony from an ATF expert regarding his opinion as to the classification of Auto Key Cards as machineguns under Section 5845(b)," the ultimate determination is for the trier of fact. Id. at 11-12. Finally, the Government asserts that the NFA's restrictions on machineguns are supported by the Supreme Court's decision in District of Columbia v. Heller, which recognized the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" Id. at 12-13 (quoting 554 U.S. 570, 627 (2008)).

## III.    Legal Standard

Under Rule 7(c)(1), Federal Rules of Criminal Procedure (Rule(s)), an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"  The Eleventh Circuit Court of Appeals has articulated a three part test to determine the sufficiency of an indictment:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

United States v. Steele, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal citation and quotation omitted).  An indictment is generally sufficient "if it sets forth the offense in the words of the statute."  Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Adkinson, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment need do little more than track the language of the statute).  Indeed, the Eleventh Circuit has explained that an indictment that tracks the language of the statute is sufficient "as long as the language sets forth the essential elements of the crime."  United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983).  However, an indictment that follows the statute is nevertheless insufficient if it fails to adequately apprise the defendant of the charged offense.  United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006).  Thus, if an indictment tracks the language of the criminal statute, it

must include enough facts and circumstances to inform the defendant of the specific offense being charged. United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). This is necessary "not only to give the defendant notice as guaranteed by the [S]ixth [A]mendment, but also to inform the court of the facts alleged to enable it to determine whether the facts are sufficient in law to support a conviction." See Belt v. United States, 868 F.2d 1208, 1211 (11th Cir. 1989). An indictment does not, however, have to "allege in detail the factual proof that will be relied upon to support the charges." United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978).[6] Additionally,

> [i]n ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes. It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.

Sharpe, 438 F.3d at 1263 (internal citation and quotation omitted). Notably, "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992). However, "[i]t is perfectly proper, and in fact mandated, that [a] district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983).

---

[6]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

## IV.  Discussion

### a.  Failure to State an Offense

As his argument that the Government has "failed to state sufficient ultimate facts to allege a crime," Hoover recites allegations from the Third Superseding Indictment and the language of relevant statutes and then concludes, "[a]s pled, the Government has failed to state a crime against Mr. Hoover with its scattershot allegations." See First Motion at 8-9.[7]  It is unclear what Hoover means by the Government's "scattershot allegations" or on what legal basis he contends the Third Superseding Indictment fails "to state a crime."  Hoover cites Ocasio v. United States, 578 U.S. 282, 292 (2016), and contends that the case supports the proposition that "the Government is required to plead sufficient facts to allege that each conspirator must have 'specifically intended that some conspirator commit each element of the substantive offense.'"  First Motion at 8 (emphasis added).  But he provides no

---

[7]     Throughout the First Motion Hoover repeatedly objects that the Third Superseding Indictment fails to present "sufficient ultimate facts," is conclusory, and "fail[s] to state a crime."  See generally First Motion.  These arguments suggest that Hoover is attempting to invoke the civil pleading standards adopted in Bell Atlantic v. Twombly, 550 U.S. 554 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) to this criminal case.  Civil pleading standards simply are not applicable to assess the sufficiency of an indictment returned by a grand jury. United States v. Vaughn, 722 F.3d 918, 926, 928-29 (7th Cir. 2013); United States v. Coley, No. CR415-187, 2016 WL 743432, at *1 (S.D. Ga. Feb. 23, 2016), report and recommendation adopted by 2016 WL 1032876 (S.D. Ga. Mar. 14, 2016).  Also Hoover's discussion in footnote 2 of the First Motion arguing that the Court may take judicial notice of certain facts in ruling on a motion to dismiss without converting the motion to one for summary judgment similarly appears to confuse the applicability of the Federal Rules of Civil Procedure with the rules that apply here, the Federal Rules of Criminal Procedure.

discussion of this proposition or its application to the specific circumstances here. Id. In Ocasio, the Supreme Court addressed a defendant's challenge to his conspiracy conviction, and in doing so described what the Government must prove at trial, not what it must plead in an indictment. Ocasio, 578 U.S. at 292. The Court determined that "[a] defendant may be convicted of conspiring to violate the Hobbs Act based on proof that he reached an agreement with the owner of the property in question to obtain that property under color of official right," id. at 300, a proposition with no apparent applicability here. Indeed, it appears that Ocasio involves not only a different procedural posture than that of this case, but also addresses circumstances and charges not presented here. Because Hoover does not articulate the basis or import of his contention that the Third Superseding Indictment contains "scattershot allegations," present legal authority supporting dismissal on those grounds, or cite factually or procedurally similar case law, the Court finds his argument to be entirely without merit.

Next, Hoover contends that the Government only alleges that the Auto Key Card was designed for use in converting a weapon into a machinegun once and merely recites the statute. First Motion at 9-10. According to Hoover, this is "insufficient as a matter of law." Id. at 10. However, Hoover's suggestion that the Government was required to plead the specific facts supporting its contention that the Auto Key Cards at issue fall within the definition of a

14

machinegun is inaccurate. Here, Hoover is charged with violating 26 U.S.C. §
5861(e) which makes it a federal offense to transfer a firearm that is not
registered in the National Firearms Registration and Transfer Record. The
relevant inquiry on a motion to dismiss an indictment is whether the indictment
"presents the elements of the charged offense." See Steele, 178 F.3d at 1233-34.
Thus, the question is whether the Government has alleged the elements of a
violation of 26 U.S.C. § 5861(e). While § 5845(b) provides the definition of what
constitutes a machinegun, which in turn, falls within the definition of a firearm
for purposes of § 5861, that does not transform factual allegations of how the
object at issue falls within the definition of a machinegun into an additional
element necessary to charge a violation of § 5861. Indeed, Hoover cites no
authority supporting his argument that factual allegations satisfying this
definitional section are required to be included in an indictment. Notably,
another district judge in this circuit has rejected such a contention. See United
States v. Hassoun, 477 F. Supp. 2d 1210, 1227 n. 9 (S.D. Fla. 2007)[8] ("Failure to
specifically cite to, or include the text of a definitional provision in an
Indictment's count does not render it insufficient.") (citing United States v.
Pennington, 168 F.3d 1060, 1065 (8th Cir. 1999)). The Third Superseding

---

[8]    The Court notes that although decisions of other district courts are not binding, they
may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310
(11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any
other district court's determination, the decision would have significant persuasive effects.").

Indictment in this case alleges the elements of the offense in the language of the

statute and alleges that the Auto Key Cards

> into which were etched the design for machinegun conversion
> devices . . . constituted machineguns as defined in 26 U.S.C. §
> 5845(a) and § 5845(b) in that they are a combination of parts
> designed and intended for use in converting a weapon into a
> machinegun.

See Third Superseding Indictment at 2. This is sufficient.

Hoover's "plus factor" argument is equally unavailing. The Eleventh

Circuit's decision in United States v. Hammond, 371 F.3d 776, 780 (11th Cir.

2004), on which Hoover relies in support of this argument, is inapplicable here

for two reasons.

First, the procedural posture of Hammond makes its holding inapposite.

In Hammond, the Eleventh Circuit reviewed a trial court's post-trial decision to

grant a defendant's motion for judgment of acquittal after the jury convicted

him of both making and possessing a firearm in violation of 26 U.S.C. §§ 5845,

5822, 5861(f). Id. at 777. In affirming the trial court's decision, the Eleventh

Circuit determined that "[t]he evidence was insufficient to permit the jury to

find beyond a reasonable doubt that Hammond's device was designed as a

weapon" such that it fell within the definition of a firearm. Id. at 782. This

determination that the evidence produced at trial was insufficient to support

the defendant's conviction, lends no support for Hoover's request to dismiss the

Third Superseding Indictment at this pre-trial stage of the proceedings. See

United States v. Baxter, 579 F. App'x 703, 705 (11th Cir. 2014)[9] ("[There is] no summary judgment procedure in criminal case. Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence." (quoting Critzer, 951 F. 2d at 307)).

Second, the Eleventh Circuit's determination that to sustain a conviction in Hammond the government was required to present proof that the device made and possessed by Hammond was an "explosive plus proof that it was designed as a weapon," id. at 780, simply has no application here. Hammond was charged with "making and possessing of a 'firearm' without first registering, paying tax on, and obtaining approval to make and possess the firearm" in violation of 26 U.S.C. § 5822, 5861(f). Id. at 779-80. The "firearm in question" was an explosive device, specifically

> a cardboard tube, approximately thirteen inches long and one-and-one half inches in diameter. The circular wall of this tube was made of ten layers of industrial grade cardboard and was approximately three-eighths of an inch thick. The inside of the tube was filled with a mixture of approximately nine ounces of pyrodex, an explosive powder, ground pyrodex, and smokeless gunpowder. The ends of the cardboard tube were crimped and dipped in liquid candle wax. The whole device was re-enforced with three layers of different types of tape. A green fuse, wrapped in aluminum foil, was placed through one of the ends and ran to the center of the device.

---

[9]    The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Id. at 778.  As relevant to the charges against Hammond, the term "firearm" includes a destructive device, which in turn is defined as, among other things, any explosive device.  Id. at 780.  However, the definition of a "destructive device" specifically excludes any explosive device "which is neither designed nor redesigned for use as a weapon."  See id.; see also 26 U.S.C. § 5845(f).  The Government's theory in Hammond was that the cardboard tube was a destructive device that constituted a firearm.  371 F.3d at 780.  Although the government presented evidence that the object was an explosive device, it failed to present evidence that it was designed for use as a weapon.  Id.  The Eleventh Circuit explained that because the definition of a destructive device excluded from coverage "any explosive device not designed for use as a weapon," a device would not fall under the statutory framework regulating firearms merely because it explodes.  Id.  Instead, "[s]tatutory coverage depends upon proof that a device is an explosive plus proof that it was designed as a weapon."  Id.  As such, the Eleventh Circuit concluded that "[n]o explosive can constitute a destructive device within the meaning of the statute unless it has this 'plus' factor."  Id. (emphasis added).

The Government's theory here is not that Hoover transferred an unregistered "destructive device" as defined in 26 U.S.C § 5845(f) but instead an unregistered "machinegun" as defined in 26 U.S.C. § 5845(b).  See Third Superseding Indictment at 2.  Thus, Hammond's "plus factor" analysis has no

applicability.  Moreover, to be a machinegun under the statute, an object must be a "weapon."  26 U.S.C. § 5845(b) ("The term 'machinegun' means any weapon . . . ") (emphasis added).  Proof that a device is a "machinegun" – i.e. a "weapon" renders additional proof that it would be unnecessary and entirely redundant. Hoover's attempt to extend the Eleventh Circuit's holding in Hammond to apply to devices which constitute a firearm because they fall within the definition of a machinegun is unavailing.  The Government is not required to allege or prove a "plus factor" to support a conviction here.

The Court next turns to Hoover's contention that the Government has "conclusively demonstrated that the Auto Key Cards are not machinegun conversion devices as a matter of law because as pled in the Indictment, the Auto Key Card is not a 'part' or 'combination of parts.'"  First Motion at 12-13. Hoover maintains that "[t]o embrace the Government's position that a card with a design on it is a 'part' – or even more absurdly, that a single card is a 'combination of parts' – under § 5845 (b) would be to ignore the plain and ordinary language of the word."  Id. at 14.  This argument, of course, is really a challenge to the sufficiency of the evidence in support of the charge which is improper at this stage of the proceeding.  This is so because the Rules provide no such summary judgment type remedy.  See United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("There is no summary judgment procedure in criminal cases.") (quoting Critzer, 951 F.2d at 307).

Notably, in <u>Salman</u>, the Eleventh Circuit reversed a district court's decision to dismiss an indictment based on a similar challenge to merits of the charges. <u>See</u> <u>378 F.3d at 1267</u>. In that case, the defendant was charged under a statute that required proof he was "illegally or unlawfully in the United States." <u>Id.</u> The defendant "filed a motion to dismiss the indictment, maintaining that he was not 'illegally or unlawfully' in the United States, as a matter of law, at the time of his arrest." <u>Id.</u> Based on the undisputed facts, the district court agreed and dismissed the indictment. <u>Id.</u> On appeal, the Eleventh Circuit reversed the district court's decision and instructed that "[b]y looking beyond the face of the indictment and ruling on the merits of the charges against [the defendant], the district court in effect granted summary judgment in favor of the defendant." <u>Id.</u> (citations omitted). The court explained that

> the government is entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to <u>Federal Rule of Criminal Procedure 29</u>. A motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure.

<u>Id.</u>; <u>see also</u> <u>United States v. Ershova</u>, <u>791 F. App'x 158, 162</u> (11th Cir. 2019). ("Although [the defendant] argues her conduct did not constitute a violation of § 1542 in that her notarization was not a 'statement,' that argument is outside the scope of a motion to dismiss.").

Here, Hoover argues that his conduct did not constitute a violation of §
5861 because his product was not a machinegun "part" or "combination of parts"
as a matter of law.  See First Motion at 12-14.  This argument does not go to the
sufficiency of the allegations of the Third Superseding Indictment but rather the
sufficiency of the charge.  See Ershova, 791 F. App'x at 162.  The Court declines,
on a motion to dismiss, to determine whether the facts as presented meet the
definition of a machinegun part under 26 U.S.C. § 5845(b) as a matter of law.
As Salman instructs, the "sufficiency of a criminal indictment is determined
from its face.  The indictment is sufficient if it charges in the language of the
statute."  Id.  Here, as discussed above, the Third Superseding Indictment does
just that.  It is sufficient on its face and Hoover's contention otherwise is
unavailing.

To the extent Hoover argues that the aiding and abetting charges
pursuant to 18 U.S.C. § 2 should be dismissed because the substantive charges
are insufficient, his argument fails because the Court finds that the Third
Superseding Indictment is sufficient as to the substantive charges.

**b. Vagueness**

The Court turns next to Hoover's constitutional challenges.  Hoover
contends that as applied to him, 26 U.S.C. §§ 5861(e) and 5871, and 18 U.S.C. §
2, are unconstitutionally vague.  First Motion at 15.  In support, Hoover seems

to focus his challenge on the definition of "machinegun" found in 26 U.S.C. §
5845(b) as applied to the facts of his case.  See id. at 15-21.

"As generally stated, the void-for-vagueness doctrine requires that a penal
statute define the criminal offense with sufficient definiteness that ordinary
people can understand what conduct is prohibited and in a manner that does
not encourage arbitrary and discriminatory enforcement."  United States v.
Fisher, 289 F.3d 1329, 1333 (11th Cir. 2002) (quoting Kolender v. Lawson, 461
U.S. 352, 357 (1983)).  "The first step in a vagueness inquiry is to examine the
plain language of the statute.  The touchstone of the inquiry is the meaning of
the statute in light of common understanding and practice."  United States v.
Wayerski, 624 F.3d 1342, 1347 (11th Cir. 2010) (internal quotations omitted and
citation omitted).  However, Hoover does not address any particular language
in the statute. Instead, he simply asserts that "[i]n no event would a reasonably
intelligent person foresee that the conduct charged in this case – talking about
a card with a drawing on it – would be deemed criminal."  First Motion at 15.[10]

---

[10]    Notably, Hoover fails to cite or apply authority regarding the void for vagueness
doctrine and instead cites to cases addressing ambiguity.  "[V]agueness and ambiguity are
different legal concepts."  See Rafferty v. Denny's, Inc., 13 F.4th 1166, 1199 (11th Cir. 2021)
(Luck, C. J., concurring). It is also worth noting that many circuit courts that have addressed
vagueness challenges to the language in § 5845(b) have found the statute to be constitutional.
See Akins v. United States, 312 F. App'x 197, 200 (11th Cir. 2009) ("Section 5845(b) also is not
unconstitutionally vague . . . [u]se of the word 'function' instead of 'pull' to reference the action
taken by a gunman to commence the firing process is not so confusing that a man of common
intelligence would have to guess at its meaning."); see also United States v. Campbell, 427
F.2d 892, 893 (5th Cir. 1970) (finding the language "any combination of parts designed and
intended for use in converting a weapon into a machine gun" is not unconstitutionally vague);
see also United States v. Carter, 465 F.3d 658, 664 (6th Cir. 2006) (holding § 5845(b) does not

22

Absent explanation regarding how the ordinary meaning of the language in the statute failed to put Hoover on notice that his conduct was prohibited, Hoover's statutory vagueness argument fails.

This argument also fails for a second reason. Hoover's challenge to whether the conduct he engaged in constitutes a crime more accurately raises an issue of fact for resolution by the jury – whether the device at issue constitutes a machinegun under § 5845(b). See United States v. Jimenez, 191 F. Supp. 3d 1038, 1040 (N.D. Cal. 2016). In Jimenez, the defendant was similarly charged under statutes that incorporate the definition of machinegun found in § 5845(b). See id. at 1040. As relevant here, the defendant moved to dismiss the charges arguing, amongst other things, that the laws were unconstitutionally vague as applied to him specifically with regard to the meaning of the term "machinegun." Id. at 1045. The court rejected his argument finding that while the defendant framed his attack as a vagueness challenge, what he really raised was a question of fact. Id. at 1045-46. The court found that such issues of fact were not suitable for resolution on a motion to dismiss the indictment. Id. In doing so, the court first noted that it could not

---

present risk that "ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement."); United States v. Olofson, 563 F.3d 652, 660 (7th Cir. 2009) ("To the extent Olofson contends that the statutes are fatally vague due to the way "automatically" is used in the incorporated definition of "machinegun" from § 5845(b), we disagree."); see also United States v. McCauley, 601 F.2d 336, 340 (8th Cir. 1979).

conclude on the record before it that the term "machinegun" was vague as applied to the defendant where if he had read § 5845(b) prior to purchasing the receiver he would have been "on notice that his conduct could be proscribed because what he was about to purchase could be a 'part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun.'" Id. at 1046.  Next, the court concluded that "[w]hether the evidence ultimately shows that the lower receiver he bought fits that definition is a question that the Court cannot answer on a motion to dismiss.  That is for the trier of fact to decide."  Id. (internal citation omitted); see also United States v. Was, 684 F. Supp. 350, 354 (D. Conn. 1988), aff'd, 869 F.2d 34 (2d Cir. 1989) ("Whether the auto sears allegedly sold by defendants are in fact 'designed and intended for use in converting a weapon into a machinegun' is, therefore, a question for proof at trial and cannot be decided as a matter of law.").

Like the Jimenez defendant, Hoover also improperly characterizes his argument as a vagueness challenge.  He contends that

> [a]s pled in the Indictment, the Government defined Auto Key
> Cards as "cards machined from stainless steel, into which were
> etched the design for machinegun conversion devices."  Even
> looking at the Government's vague and conclusory pleading
> liberally, the Auto Key Card would require significant
> transformative labor and machining of the card to cause it to fit into
> the rear internal area of the receiver, where the machinegun
> automatic sear would be installed.

24

First Motion at 20-21. His argument is not that the statute is vague but that his object does not fall within the statutory definition. In so arguing, however, he ignores that the Government alleges that Hoover knew that a lightning link was capable of being cut from the design on the Auto Key Cards and placed into an AR-15 style rifle to convert it into a machinegun. <u>See</u> Third Superseding Indictment at 4-5 ("In the video, titled 'Is this An ATF Trap And How Does It Work,' Hoover described how to order an Auto Key Card and further described how to cut the lightning link from the Auto Key Card and install it into an AR-15 style rifle, thus converting the AR-15 style rifle into a machinegun."). As with the receiver in <u>Jimenez</u>, whether the Auto Key Cards sold by Ervin constitute a "part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun," is a question of fact for the jury, not a question to be resolved by the Court on a motion to dismiss.

Perplexingly, in the First Motion, Hoover discusses <u>Chevron</u> deference at some length, suggesting a fundamental misunderstanding of either the charges at issue here or the applicability of <u>Chevron</u> deference. <u>See</u> First Motion at 15-20. As the Eleventh Circuit Court of Appeals has explained, "<u>Chevron</u> deference applies only when 'Congress delegated authority to the agency generally to make rules carrying the force of law, <u>and</u> the agency interpretation claiming deference was promulgated in the exercise of that authority.'" <u>CSX Corp. v.</u>

United States, 18 F. 4th 672, 685 (11th Cir. 2021).  Here, the Government does not charge or allege that the Auto Key Cards at issue fall within the definition of the term firearm – such that they must be registered – based on a regulation promulgated by the ATF or any other government agency.  Rather, the government charges that the Auto Key Cards at issue fall within the definition of the term "machinegun" under § 5845(b) and for that reason are firearms that must be registered.  Third Superseding Indictment at 2.  Section 5845 is a federal statute enacted by Congress, not a regulation promulgated by an agency.[11]  Hoover's reliance on the Supreme Court's recent decision in W. Virginia v. Env't Prot. Agency, 142 S. Ct. 2587 (2022), which addressed whether the Environmental Protection Agency's issuance of a new rule that required existing coal fired power plants to "reduce their own production of electricity, or subsidize increased generation by natural gas, wind, or solar sources," was within the power granted to it by the Clean Air Act, see 142 S. Ct. at 2599, is similarly misplaced.  Because the definition at issue here was not based on a regulation promulgated by a government agency, authority addressing an

---

[11]   Equally concerning is Hoover's argument about Chevron deference in which he cites Gun Owners of America, Inc. v. Garland, 19 F. 4th 890, 901 (6th Cir. 2021) for the proposition that "Chevron does not displace the rule of lenity."  First Motion at 18.  What the court actually said in Gun Owners was "the rule of lenity does not displace Chevron simply because an agency has interpreted a statute carrying criminal penalties."  Counsel is reminded of the duty of candor to the Court and the importance of accurately reciting the holdings of a case in court filings.

26

agency's promulgation of rules is not relevant to the charges brought against Hoover or the resolution of his Motions to Dismiss.

Even if Hoover raised a true vagueness challenge to § 5845, the Eleventh Circuit has suggested that a vagueness challenge presented in a motion to dismiss is premature.  See United States v. Ferguson, 142 F. Supp. 2d 1350, 1355 (S.D. Fla. 2000) (citing United States v. Baker, 19 F.3d 605 (11th Cir. 1994)) ("The Eleventh Circuit looked to the particular evidence adduced at trial in assessing whether or not § 1957 was constitutionally void due to vagueness as applied.  Thus, Defendant's vagueness challenge should properly be raised through a Rule 29 motion for judgment of acquittal, when the Court can assess whether a reasonable person would have understood that the conduct adduced to prove the offenses was prohibited by § 1957.").  As such the Court declines to address it here.  For all these reasons, the Court finds that Hoover's purported vagueness challenge provides no basis for the dismissal he seeks.

### c. Taxing and Spending Clause

Hoover next argues that § 5845, enacted pursuant to Congress' authority under the Taxing and Spending Clause, "is unconstitutional as applied" to him. First Motion at 22 (emphasis added).   "An as-applied challenge addresses whether a statute is unconstitutional on the facts of a particular case." United States v. Madison, 337 F. Supp. 3d 1186, 1194–95 (M.D. Fla. 2018) (citing United States v. Vickers, 578 F.2d 1057, 1058 (5th Cir. 1978)).  However,

27

Hoover's argument that "the government is acting outside the limits of the taxing and spending clause" is not tied to any fact-specific discussion. <u>See</u> First Motion at 21-22.  Moreover,

> [a]n as-applied challenge to the constitutionality of a statute generally cannot be raised in a pretrial motion to dismiss, since it necessary [sic] involves an examination of the facts of the case. <u>See</u> <u>United States v. Pope</u>, <u>613 F.3d 1255, 1260-61</u> (10th Ci<u>r. 2010</u>) (ruling that district court was unable to properly resolve defendant's pretrial motion to dismiss indictment where defendant claimed that his charge under <u>18 U.S.C. § 922(g)(9)</u> was unconstitutional under Second Amendment because he possessed guns only for defense of self, family, and property).

<u>United States v. Thomas</u>, No. 1:18-CR-141-MLB-AJB, <u>2021 WL 3674123</u>, at *18 (N.D. Ga. May 17, 2021), <u>report and recommendation adopted</u>, No. 1:18-CR-141-MLB, <u>2021 WL 2886015</u> (N.D. Ga. July 9, 2021).

To the extent Hoover appears to argue that the statute is unconstitutional as applied because the machineguns are unlawful and cannot be taxed, <u>see</u> First Motion at 22, this argument is precluded by Eleventh Circuit precedent.  <u>See</u> <u>United States v. Spoerke</u>, <u>568 F.3d 1236, 1245-46</u> (11th Ci<u>r. 2009</u>) ("A statute does not cease to be a valid tax measure because it deters the activity taxed, because the revenue obtained is negligible, or because the activity is otherwise illegal.").    In <u>Spoerke</u>, the Eleventh Circuit determined that the constitutionality of the NFA as applied to the defendant did not depend on whether he could legally possess the pipe bombs at issue.  <u>Id.</u>  Thus, Hoover's as-applied challenge under the Taxing and Spending Clause is due to be denied.

28

Insofar as Hoover's argument is actually a facial challenge to the "charged statute," this too fails. "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." See United States v. Frandsen, 212 F.3d 1231, 1235 (11th Cir. 2000) (citing Jacobs v. Florida Bar, 50 F.3d 901, 905–06 (11th Cir. 1995)). The Eleventh Circuit has determined that "[t]he National Firearms Act is facially constitutional," pursuant to Congress' taxing power. Spoerke, 568 F.3d at 1245 ("Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons.") (quoting United States v. Ross, 458 F.2d 1144, 1145 (5th Cir. 1972)); see also United States v. Bolatete, 977 F.3d 1022, 1030 (11th Cir. 2020). Accordingly, the First Motion is due to be denied to the extent Hoover argues the NFA exceeds Congress' Taxing and Spending power.[12]

---

[12] Hoover's argument that "the government will not accept the payment of the tax required by the charged statute, and yet nonpayment presents serious criminal consequences and permanent deprivations of liberty," see First Motion at 22, appears to present a due process challenge similar to that presented in United States v. Dalton, 960 F.2d 121, 123 (10th Cir. 1992). In Dalton,

> John Dalton, an attorney, accepted a firearm as a fee from a client, who was a licensed firearms dealer and who had converted the weapon into a machinegun in 1989. Dalton was found guilty of possessing and transferring an unregistered firearm in violation of the National Firearms Act, I.R.C. §§ 5861(d), (e) (NFA). A separate criminal statute prohibits the possession of any machinegun made after that statute's effective date in 1986. 18 U.S.C. § 922(o) (1988). It is undisputed that the government will not permit the registration of machineguns covered by section 922(o), and will not accept the tax which would otherwise be required by the registration requirements of the National Firearms Act. Dalton contends that due process bars his conviction under a statute which punishes his failure to register when that registration is precluded by law.

### d. Overbroad and Underinclusive

In the Second Motion, Hoover additionally argues that "[f]acially and as applied, 26 U.S.C.[ ] § 5845(b) is a content-based restriction that is simultaneously over broad and underinclusive." Second Motion at 3. Under the "First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." United States v. Williams, 553 U.S. 285, 292 (2008). On the other hand, "[u]nderinclusivity creates a First Amendment concern when the State regulates one aspect of a problem while declining to regulate a different aspect of the problem that affects its stated interest in a comparable way." Williams-Yulee v. Fla. Bar, 575 U.S. 433, 451 (2015). Both doctrines address statutes that regulate protected speech, implicating the First Amendment. The Court finds that the statute at issue here does not implicate the First Amendment and these doctrines are inapplicable.

The statute which Hoover is charged with violating, conspiring to violate, and aiding and abetting the violation of, 26 U.S.C. § 5861(e), prohibits the

---

Id. at 122. The Tenth Circuit agreed and vacated Dalton's conviction and remanded the case with instruction to dismiss the indictment. However, the Eleventh Circuit has declined to follow the Tenth Circuit's holding in Dalton and recognized that other circuits have rejected the court's reasoning in Dalton as well. See United States v. Rivera, 58 F.3d 600, 602 (11th Cir. 1995) ("Moreover, the Fourth, Fifth, and Seventh Circuits have rejected the reasoning of Dalton, even in cases involving machine guns. All three circuits have upheld convictions under § 5861(d) for possession of machine guns, notwithstanding that 18 U.S.C. § 922(o) makes registration of machine guns impossible.").

transfer of unregistered machineguns. This statute contains no speaker-focused or content-based restrictions on speech. See Otto v. City of Boca Raton, Fla., 981 F.3d 854, 861 (11th Cir. 2020) (regulation of non-expressive conduct rather than speech does "not implicate the First Amendment at all."). Section 5861 prohibits the act of transferring an unregistered firearm and § 5845 defines the term firearm. Included amongst the items which falls within the definition of the term "firearm" is a machinegun which is defined in § 5845(b). The terms of § 5861 stand in stark contrast to Florida's Firearm Owners' Privacy Act, Chapter 2011–112, Laws of Florida (codified at Fla. Stat. §§ 790.338, 456.072, 395.1055, & 381.026) (FOPA) which was found to implicate the First Amendment. See Wollschlaeger v. Governor, Fla., 848 F.3d 1293, 1302–03 (11th Cir. 2017). The FOPA contained the following provisions:

> The record-keeping provision, § 790.338(1), states that a doctor or medical professional "may not intentionally enter any disclosed information concerning firearm ownership into [a] patient's medical record" if he or she "knows that such information is not relevant to the patient's medical care or safety, or the safety of others." The inquiry provision, § 790.338(2), states that a doctor or medical professional "should refrain from making a written inquiry or asking questions concerning the ownership of a firearm or ammunition by the patient or by a family member of the patient, or the presence of a firearm in a private home" unless he or she in "good faith believes that this information is relevant to the patient's medical care or safety, or the safety of others[.]" The anti-discrimination provision, § 790.338(5), states that a doctor or medical professional "may not discriminate against a patient based solely" on the patient's ownership and possession of a firearm. The anti-harassment provision, § 790.338(6), states that a doctor or medical professional "should refrain from unnecessarily harassing

31

a patient about firearm ownership during an examination."

Id. at 1302–03. In evaluating that statute, the Eleventh Circuit held "that the record-keeping, inquiry, and anti-harassment provisions of FOPA constitute speaker-focused and content-based restrictions on speech." Id. at 1307. Specifically, "[t]he record-keeping and inquiry provisions expressly limit the ability of certain speakers—doctors and medical professionals—to write and speak about a certain topic—the ownership of firearms—and thereby restrict their ability to communicate and/or convey a message." Id. The court found,

> [t]he anti-harassment provision also limits speech on the basis of its content. Although it is certainly possible to harass through conduct, see, e.g., Black's Law Dictionary 831 (10th ed. 2014), we think the limiting text of the anti-harassment provision ("during an examination") is more normally read in this medical setting to refer to questions or advice to patients concerning the subject of firearm ownership.

Id. The relevant statutes here are not "content-based restrictions" as Hoover suggests, and as such, Hoover's arguments that they are overbroad and under inclusive are without merit.

### e. New York State Rifle & Pistol Ass'n, Inc. v. Bruen

According to Hoover, in light of the Supreme Court's recent decision in Bruen, "the Government has the burden to prove that the regime in question is consistent with the history and tradition of firearms regulation in this country around the founding era." Second Motion at 8. In New York State Rifle & Pistol Ass'n, Inc. v. Bruen, the Supreme Court held that "the Second and Fourteenth

Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. 2111, 2122 (2022).  Because the State of New York only issued public-carry licenses when an applicant demonstrated a special need for self-defense, the Supreme Court found "the State's licensing regime violates the Constitution." Id.  In doing so, the Supreme Court reiterated the standard for applying the Second Amendment stating:

> [w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 2129-30.  As the Government points out, the Supreme Court's holding in Bruen did not overturn D.C. v. Heller, in which the Court recognized the importance of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. 570, 627 (2008) (citations omitted).  The Heller Court struck down a law prohibiting handgun possession, but in doing so noted that the Second Amendment "only protects the right to own certain weapons, and it 'does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes.'" United States v. Henry, 688 F. 3d 637, 639-40 (9th Cir. 2012) (quoting Heller, 554 U.S. at 625).  The Court "did not specify the types of weapons that qualify as 'dangerous and unusual,' but the Court suggested that it would be 'startling' for the Second Amendment to protect

machineguns." Id. at 640 (citing Heller, 554 U.S. at 624).  Notably, "[s]ince Heller was decided, every circuit court to address the issue has held that there is no Second Amendment right to possess a machine gun." Id. (citing United States v. Allen, 630 F.3d 762, 766 (8th Cir. 2011); United States v. Marzzarella, 614 F.3d 85, 94–95 (3d Cir. 2010); Hamblen v. United States, 591 F.3d 471, 472, 474 (6th Cir. 2009); United States v. Fincher, 538 F.3d 868, 874 (8th Cir. 2008), cert. denied, 555 U.S. 1174, 129 S.Ct. 1369, 173 L.Ed.2d 591 (2009)); see also United States v. Zaleski, 489 F. App'x 474, 475 (2d Cir. 2012) (relying on Heller to find that "the Second Amendment does not protect [the defendant's personal possession of machine guns."); see also Hollis v. Lynch, 827 F.3d 436, 448-41 (5th Cir. 2016) ("Machine guns are dangerous and unusual and therefore not in common use.  They do not receive Second Amendment protection . . ."). Hoover provides no basis for concluding that the Supreme Court's decision in Bruen would undermine this line of authority.  Thus, to the extent Hoover contends "nothing in the applicable history and tradition of the United States supports the categorical ban of machineguns," see Second Motion at 9, his argument is unavailing.

In sum, the Court finds that the Government's allegations in the Third Superseding Indictment present the essential elements of the charged offenses, notify Hoover of the charges to be defended against, and enable him to rely upon a judgment under the Third Superseding Indictment as a bar against double

jeopardy.  See Steele, 178 F.3d at 1233-34.  To the extent Hoover presents a vagueness challenge, his argument raises factual issues to be resolved by the jury.  The Court further finds Hoover's Taxing and Spending Clause argument to be foreclosed by Eleventh Circuit precedent and his First Amendment challenges to be misplaced.  Finally, Hoover's contention that the Supreme Court's holding in Bruen suggests that the statutes at issue violate the Second Amendment is unsupported by the relevant authority.  Accordingly, the Motions are due to be denied.

In light of the foregoing, it is

**ORDERED:**

Defendant Matthew Raymond Hoover's Motion to Dismiss (Doc. 132) and Motion to Dismiss for First and Second Amendment Violations & To Declare Unconstitutional the National Firearms Act of 1934 (Doc. 133) are **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida, this 18th day of October, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc28


Copies to:
Counsel of Record

35

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:21-cr-22(S3)-MMH-MCR

MATTHEW RAYMOND HOOVER

_____

# **O R D E R**

**THIS CAUSE** is before the Court on two motions filed by Defendant Matthew Raymond Hoover: the Motion to Transfer Venue (Doc. 96; Motion to Transfer)[1] and the Motion to Sever Trial (Doc. 97; Motion to Sever), both of which were filed on June 21, 2022 (collectively, the "Motions").[2] In support of the Motion to Transfer, Hoover attaches a declaration from his lawyer, Zachary Z. Zermay (Doc. 96-2; Zermay Decl.). The Government filed responses to Hoover's Motions on July 20, 2022. See United States' Response in Opposition

---

[1]    Attached to the Motion to Transfer, citing Rule 201 of the Federal Rules of Evidence, Hoover includes a request that the Court take judicial notice of two opinions from other district judges sitting in the Middle District of Florida in unrelated criminal cases. See Request for Judicial Notice in Support of Defendant's Motion to Transfer Venue (Doc. 96-1). There is no need to ask the Court to take judicial notice of legal authority, the Court is authorized to and will consider any legal authority asserted by the parties in their briefing. See Nat'l Min. Ass'n v. Sec'y, U.S. Dep't of Labor, 812 F. 3d 843, 875 n. 33 (11th Cir. 2016) (courts "can and [do] take account of all relevant authorities in determining the content of the law.").

[2]    Hoover attached requests for oral argument to the Motions and requested an evidentiary hearing on the Motion to Transfer. See Request for Oral Argument on Motion to Sever (Doc. 97-1); see Request for an Evidentiary Hearing and Oral Argument on Motion to Transfer Venue (Doc. 96-3). The Government did not address these requests in its filings. Upon review of the Motions, Responses, and the relevant authority, the Court finds that oral argument on the Motions and an evidentiary hearing on the Motion to Transfer are not necessary or warranted. Accordingly, the requests are denied.

to Defendant's Motion to Transfer Venue (Doc. 104; Response to Motion to

Transfer); see United States' Response in Opposition to Defendant's Motion to

Sever Trial (Doc. 105; Response to Motion to Sever).[3]  Accordingly, the Motions

are ripe for resolution.

## I.      Relevant Background

The government initiated the instant criminal proceeding on March 3,

2021, by filing a Criminal Complaint (Doc. 1) against Defendant Kristopher

Justinboyer Ervin charging that, on or around February 22, 2021, Ervin

> did knowingly possess a firearm as defined under Title 26,
> United States Code, Section 5845(a) and (b), that is, a
> machine gun conversion device, that was not then registered
> to the defendant in the National Firearms Registration and
> Transfer Record,

in violation of Title 26, United States Code, Sections 5861(d) and
5871.

See Criminal Complaint at 1.  Eight days later, on March 11, 2021, a grand jury

returned a one-count indictment charging Ervin with the same offense.  See

Indictment (Doc. 17).  On April 1, 2021, the grand jury returned a superseding

indictment charging Ervin with causing a financial institution to fail to file a

Currency Transaction Report (CTR) in violation of 31 U.S.C. § 5324(a)(1) (Count

---

[3]      On August 4, 2022, Hoover also filed motions for leave to file replies to the
Government's responses.  See Motion to for [sic] Leave to File Reply to Opposition to Motion
to Sever Trial (Doc. 111); see Motion to for [sic] Leave to File Reply to Opposition to Motion
Transfer Venue (Doc. 112).  On August 5, 2022, the Court entered orders denying the motions.
See Orders (Doc. 116 &117).

One), structuring a transaction at a federally-insured financial institution while violating another law of the United States in violation of <u>31 U.S.C. § 5324(a)(3)</u> (Counts Two through Seven), transporting or causing to be transported unregistered firearms in interstate commerce in violation of <u>26 U.S.C. §§ 5861(j)</u> & <u>5871</u> (Count Eight), and possessing unregistered machinegun conversion devices in violation of <u>26 U.S.C. §§ 5861(d)</u> & <u>5871</u> (Counts Nine through Fourteen). <u>See</u> Indictment (<u>Doc. 25</u>; First Superseding Indictment).

Ervin filed a motion to dismiss the First Superseding Indictment, <u>see</u> Motion to Dismiss Superseding Indictment and Memorandum of Law (<u>Doc. 30</u>), which the Court denied on July 8, 2021. <u>See</u> Transcript (<u>Doc. 48</u>). On January 22, 2022, the grand jury returned a Second Superseding Indictment which in addition to charging Ervin, charged Defendant Matthew Raymond Hoover with committing federal crimes. <u>See</u> Indictment (<u>Doc. 57</u>; Second Superseding Indictment). Specifically, in Count One of the Second Superseding Indictment, Hoover and Ervin were charged with conspiring to transfer unregistered machinegun conversion devices in violation of <u>18 U.S.C. § 371</u>. <u>Id.</u> at 2. In Counts Two through Seven, Hoover and Ervin were charged with substantive counts of transferring, and aiding and abetting the transferring, of unregistered machinegun conversion devices via the U.S. mail to various individuals, in violation of <u>26 U.S.C. §§ 5861(e)</u> & <u>5871</u>. <u>Id.</u> at 10-13. The remaining counts of the Second Superseding Indictment pertained only to Ervin and again charged

him with causing a financial institution to fail to file a CTR (Count Eight), structuring a transaction at a federally-insured financial institution while violating another law of the United States (Counts Nine through Fourteen), and possessing unregistered machinegun conversion devices (Counts Fifteen to Seventeen). Id. at 13-16. The Second Superseding Indictment also contained various forfeiture allegations which relate to each count. See id. at 16-19.

Hoover sought severance of the charges against him and a transfer of his case to the Green Bay Division of the Eastern District of Wisconsin. See generally Motions. On August 31, 2022, the grand jury returned a Third Superseding Indictment that modified several of the allegations and included an additional count of transferring, and aiding and abetting the transferring, of unregistered machinegun conversion devices via the U.S. mail as to both defendants. See Indictment (Doc. 120; Third Superseding Indictment). Because these changes do not impact the Court's analysis of whether the charges against Hoover should be severed or his case should be transferred, the Court proceeds to resolve the instant Motions.

## II. Motion to Sever

### a. Summary of the Arguments

In the Motion to Sever, Hoover argues that because Ervin, his co-defendant and alleged co-conspirator, is individually charged with illegally structuring financial transactions, evidence of these crimes "will be non-

probative, yet highly prejudicial" to Hoover.  <u>See generally</u> <u>id.</u>  In Hoover's view, "the Government's claim that Mr. Ervin allegedly structured transactions will necessarily taint the jury's perception of Mr. Hoover and his state of mind with respect to the Gun Charges." <u>Id.</u> at 7.  With regard to whether instructions from the Court could alleviate any of the purported confusion, Hoover maintains that "[a]ny limiting instructions advising the jury for which purposes it can consider various pieces of evidence that relate to Messrs. Hoover and Ervin will be lost on the jury when it ultimately retires to deliberate after a multi-week trial." <u>Id.</u> at 9.  He speculates that evidence of Ervin's banking transactions will cause the jury to question "whether Mr. Ervin was allegedly hiding the movement of money because the Auto Key Card is an illegal machinegun and both defendants perceived it as such – which would wildly prejudice Mr. Hoover in his defense given that scienter is an element of the offenses that Mr. Hoover is charged with." <u>Id.</u>  Finally, Hoover contends that severing his charges for trial "will significantly reduce the overall length of the trial, result in substantial cost savings, and preserve judicial resources." <u>Id.</u>

The Government responds first by arguing that Hoover's burden is "exceedingly high," especially in light of the fact that he requests severance from an alleged co-conspirator.  <u>See</u> Response to Motion to Sever at 4-5.  The Government notes that limiting instructions can "generally cure any potential prejudice from a joint trial." <u>Id.</u> at 6.  The Government also contends that the

evidence related to Ervin's structured financial transactions is relevant to the charged conspiracy because Ervin allegedly shared the proceeds involved in the structured transactions with Hoover.  Id. at 6-7.  According to the Government, Hoover's acceptance of cash payments and items of value "through the mail is evidence of his awareness of the illegality of his actions in furtherance of the conspiracy – and his desire to conceal them." Id. at 7.  Even if evidence of Ervin's structuring charges was irrelevant to Hoover, the Government maintains that he has not shown that such evidence would prejudice him, Hoover's arguments are entirely speculative, and Hoover has made no showing that the appropriate instructions would not be sufficient.  See id. at 8-11.  To the extent Hoover asserts that severing the trials would be more efficient, the Government contends his argument "runs counter to both simple logic and binding case law." Id. at 11.

### b.   Legal Standard

Pursuant to Rule 8(a), the government may charge a defendant with multiple offenses in the same indictment "if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  The Eleventh Circuit instructs that Rule 8 is to be broadly construed in favor of joinder.  See United States v. Dominguez, 226 F.3d 1235, 1238 (11th Cir. 2000).

6

Rule 14, in turn, "recognizes that joinder, even when proper under Rule 8(a), may prejudice either a defendant or the Government." <u>Zafiro v. United States</u>, <u>506 U.S. 534, 538-39</u> (1993).  Rule 14 provides, in relevant part, that "[i]f the joinder of offenses or defendants in an indictment appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." <u>Fed. R. Crim. P. 14(a)</u>.  When presented with a motion pursuant to Rule 14, the Court must "balance the defendant's right to a fair trial against the public's interest in efficient and economic administration of justice."  <u>United States v. Berkman</u>, <u>433 F. App'x 859, 862</u> (11th Cir. 2011).  "In conducting this analysis, the district court must grant a motion for severance only where denial would 'result[] in compelling prejudice against which the district court [can] offer[] no protection." <u>United States v. Whitfield</u>, No. 08-60229-CR, <u>2009 WL 3042394</u>, at *3 (S.D. Fla. Sept. 18, 2009) (quoting <u>United States v. Dowd</u>, <u>451 F.3d 1244, 1249</u> (11th Cir. 2006)) (alterations in original).  In <u>United States v. Walser</u>, the Eleventh Circuit reaffirmed that "some prejudice" is not sufficient to mandate severance; instead, the defendant carries a heavy burden to go beyond mere conclusory allegations and show that he would receive an unfair trial and suffer compelling prejudice.  <u>3 F.3d 380, 386</u> (11th Cir. 1993).  The court further explained:

> The test for assessing compelling prejudice is whether
> under all the circumstances of a particular case it is
> within the capacity of jurors to follow a court's limiting
> instructions and appraise the independent evidence
> against a defendant solely on that defendant's own acts,
> statements and conduct in relation to the allegations
> contained in the indictment and render a fair and
> impartial verdict.  If so, "though the task be difficult,"
> there is no compelling prejudice.  Moreover, if the
> possible prejudice may be cured by a cautionary
> instruction severance is not required.

Id. at 386-87 (internal citations omitted).

### c.    Analysis

The Court finds that Hoover has failed to demonstrate that he will suffer

prejudice from having his case tried with Ervin let alone, "compelling prejudice

against which the district court [can] offer[] no protection."  Whitfield, No. 08-

60229-CR, 2009 WL 3042394, at *3.  Notably,

> [t]he possibility that evidence against codefendants may 'spill over'
> on the defendant is insufficient to demonstrate compelling
> prejudice.  See, e.g., United States v. Adams, 1 F.3d 1566, 1578
> (11th Cir. 1993) (upholding denial of severance, despite disparity of
> evidence, because no compelling prejudice from joinder where
> evidence against defendant intertwined with criminal actions of
> codefendants, and jury instructed to separate evidence and that it
> could convict some defendants and acquit others).

United States v. Souffrant, 517 F. App'x 803, 812 (11th Cir. 2013).  Moreover, in

conspiracy cases such as this, "the general principle is well-settled that "persons

who are charged together should also be tried together."  Adams, 1 F.3d at 1578

(quoting United States v. Saget, 991 F.2d 702, 707 (11th Cir. 1993)).  Indeed,

8

the Eleventh Circuit has found that a district court did not abuse its discretion by denying motions for severance where evidence was introduced in a joint trial that some coconspirators, but not others, committed a murder, evidence far more prejudicial than evidence of a potentially illegal monetary transaction. See United States v. Lopez, 649 F.3d 1222, 1238 (11th Cir. 2011).

Hoover and Ervin are charged as co-conspirators and as such the general rule that they also should be tried together applies. In support of severance, Hoover speculates that evidence of Ervin's financial transactions "will necessarily taint the jury's perception of Mr. Hoover and his state of mind with respect to the Gun Charges." Motion to Sever at 7. He further contends,

> [w]ith respect to the Structuring Charges, the jury will likely believe that Mr. Hoover knew (or must have known) about the alleged financial transactions, but did nothing to prevent it. And a jury will simply not be able to keep track of which evidence is being offered with respect to the Gun Charges and Structuring Charges— particularly given the mountain of evidence that will be presented during a complex multi-week trial.

Id. at 8. This argument amounts to nothing more than "the possibility that evidence against [Ervin] may 'spill over'" on Hoover, see Adams, 1 F.3d at 1578. However, he has failed to show that any such "spillover" cannot be remedied by limiting instructions to the jury. This is plainly insufficient to warrant severance.

To the extent Hoover argues that severance here would actually serve the interests of judicial economy, the Court is somewhat baffled.  Motion to Sever at 9-10.  Hoover asserts that,

> [s]evering Mr. Hoover from this joint trial will significantly reduce the overall length of the trial, result in substantial costs savings, and preserve judicial resources. One less defendant in a joint trial where the Government's case-in-chief will last several weeks will mean one less attorney objecting to evidence and conducting cross-examination of various witnesses, which otherwise would consume time. Moreover, Mr. Hoover intends to put on a significant defense case-in-chief. Accordingly, severing Mr. Hoover from this joint trial, and trying him in a separate trial will be more efficient.

Id.  This argument inexplicably focuses solely on the impact severing his trial will have on the trial of the charges that would remain against Ervin.  That is not the relevant inquiry.  It is well-settled that

> [j]oint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources. Zafiro v. United States, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993); Puiatti v. McNeil, 626 F.3d 1283, 1309 (11th Cir.2010); United States v. Day, 405 F.3d 1293, 1297 (11th Cir.2005); see also Richardson v. Marsh, 481 U.S. 200, 210, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987) ("It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.").

Lopez, 649 F.3d at 1233.  Hoover's argument regarding the effect of severance on the trial of Ervin's charges completely ignores the fact that the Court, the

witnesses, and another jury still will have to separately try the case against Hoover, a significant duplication and unnecessary drain on resources. Because Hoover has not shown that he will suffer compelling prejudice and the interests of judicial economy favor a joint trial, the Motion to Sever is due to be denied.

## IV.    Motion to Transfer

### a.    Legal Standard

The Court next turns to Hoover's Motion to Transfer venue to the Eastern District of Wisconsin pursuant to Rule 21(b). <u>See generally</u> Motion to Transfer.[4] Rule 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." <u>Fed. R. Crim. P. 21(b)</u>. Notably, "[a] criminal defendant does not have a constitutional right to be tried in the district encompassing his residence." <u>United States v. Kopituk</u>, <u>690 F.2d 1289, 1322</u> (11th Cir. 1982). Moreover, "[a] transfer of venue is completely within the discretion of the trial court and the decision to deny a change of venue request will be reversed only for abuse of discretion." <u>United States v. Smith</u>, <u>918 F.2d 1551, 1556</u> (11th Cir. 1990) (citations omitted).

---

[4]     Although Hoover is now charged in the Third Superseding Indictment, the Government added a charge, but did not delete any charges. <u>Compare</u> Second Superseding Indictment <u>with</u> Third Superseding Indictment. Thus, the arguments raised by the Government regarding venue remain applicable to the Third Superseding Indictment, particularly those regarding the location of events, evidence, witnesses, and expenses.

This Court has explained, "[t]he Rule 21(b) determination answers to 'convenience' and the 'interests of justice,' which are informed in turn by the factors enumerated in <u>Platt v. Minnesota Mining and Manufacturing Company</u>, <u>376 U.S. 240, 243</u>–44, <u>84 S.Ct. 769</u>, <u>11 L.Ed.2d 674</u> (1964)." <u>See</u> <u>United States v. Gotti</u>, <u>593 F. Supp. 2d 1260, 1269</u> (M.D. Fla. 2008). These factors, which "are neither exhaustive nor exclusive," include:

> (1) location of corporate defendant;[5] (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

<u>Id.</u>

**b.    Summary of the Arguments**

Hoover argues that the <u>Platt</u> factors weigh in favor of transferring this action to the district encompassing his residence, the Eastern District of Wisconsin. <u>See</u> Motion to Transfer at 8. He contends that the Eastern District of Wisconsin is more convenient for him and his family especially because he "is facing significant health issues, treatment related to those issues, and has a fear of flying." <u>Id.</u> Of the potentially thousands of witnesses that purchased auto

---

5    "Although Platt referenced 'corporate defendant,' other courts have expanded this factor to include the location of individual defendants as well." <u>United States v. Marks</u>, No. CRIM. 12-0240-WS, <u>2013 WL 203409</u>, at *1 (S.D. Ala. Jan. 17, 2013) (citing <u>United States v. Jordan</u>, <u>223 F.3d 676, 685</u> (7th Cir. 2000); <u>United States v. Heaps</u>, <u>39 F.3d 479, 483</u> (4th Cir. 1994); <u>United States v. Maldonado–Rivera</u>, <u>922 F.2d 934, 966</u> (2nd Cir. 1990)).

key cards or watched Hoover's relevant YouTube videos, Hoover contends that "it is likely that many . . . are citizens of the Eastern District of Wisconsin or reside in federal districts surrounding it." Id. at 10. Additionally, any witnesses Hoover offers would reside in Wisconsin. Id. As to the location of the events at issue, Hoover argues that all of his acts occurred in Coloma, Wisconsin and the only apparent reason he was indicted in the Jacksonville Division is because Defendant Ervin was indicted here first. Id. Hoover contends most of the relevant records are in electronic format and can be easily transported to either district. Id. at 11. With regard to the disruption of his business, Hoover maintains he would be unable to work during trial because all of his equipment for recording for his YouTube channel is located at his home in Wisconsin. Id.

Hoover further argues that the expense of a four-week trial in Jacksonville will be "astronomical," and that he will have to pay for airfare, lodging, meals, and other costs for himself and his witnesses. Id. at 12. And any witnesses who do not reside in Wisconsin will have to travel regardless of the location. Id. at 13. He also maintains that he "has been unable to avail himself of his primary source of income – that being his firearms YouTube channel and federal firearms license – because of the nature of these proceedings." Id. Hoover contends that both of his attorneys are several hours away from the Jacksonville Division in Lee County and Palm Beach County, Florida and although he would still have to pay for them to stay in Wisconsin,

13

he could explore the possibility of hiring local counsel.  Id.  Nevertheless, it would not be significantly more expensive for counsel to stay in Green Bay as compared to Jacksonville.  Id. at 13-14.  Hoover argues that the Green Bay Division is more accessible to him, especially due to his fear of flying and states that the docket conditions of the courts are "difficult to discern, with any degree of precision." Id. at 14 (quoting United States v. Motz, 652 F. Supp. 2d 284, 292 (E.D.N.Y. 2009).  Finally, Hoover contends that his medical condition and fear of flying present special circumstances that favor transfer of his case.  Id. at 15-16.

In response, the Government concedes that Hoover's residence weighs in favor of transferring the case but maintains that this factor should be afforded little weight.  See Response to Motion to Transfer at 3-4.  As to the location of potential witnesses, the Government argues that this factor strongly weighs against transfer.  Id. at 4.  The Government identifies specific categories of witnesses that it expects to testify at trial, most of whom reside in the Jacksonville, Florida area.  See id. at 4-8.  The Government additionally contends that the location of events likely to be in issue primarily occurred in and around Jacksonville.  Id. at 9.  Specifically, Ervin

> resided in Jacksonville throughout the conspiracy, operated his Auto Key Cards business from his residence in Orange Park, obtained the assistance of multiple friends and family members who reside in the Jacksonville area to help with the Auto Key Cards business, contracted with Jacksonville-area machine shops to

14

> manufacture the Auto Key Cards for him, utilized his bank account
> at a Jacksonville-area credit union to carry out the financial aspects
> of the conspiracy, and distributed Auto Key Cards to customers and
> compensation to defendant via common carriers in the Jacksonville
> area.

Id.  The Government notes that while the videos Hoover produced were made in

Wisconsin, they were viewed by individuals across the country and led to

purchases of the Auto Key Cards from Ervin in the Middle District of Florida.

Id.  Further, the Government argues that Hoover knew Ervin was operating his

Auto Key Card business in the Jacksonville area when he "entered into a

conspiratorial agreement" with him and urged his viewers to send their

payment to Ervin at his Jacksonville, Florida post office box.  Id. at 10.

In response to Hoover's arguments regarding the location of the evidence,

the Government disputes that the documents and records to be used in trial are

primarily in electronic format.  Id.  According to the Government, while there is

substantial electronically stored evidence, there is also physical evidence stored

in Jacksonville that would be difficult to transport including:

> computer equipment, manufacturing equipment, more than 1500
> Auto Key Cards, firearms, and other evidence seized from
> codefendant Ervin's residence; large boxes of cut up Auto Key Cards
> surrendered by one of the machine shops that had manufactured
> the cards at Ervin's direction; and dozens of mailings seized from
> the postal stream in the Jacksonville area.

Id. at 10-11.

With regard to whether the Jacksonville location disrupts Hoover's business because he is unable to record his videos while traveling, the Government points to various videos on Hoover's YouTube Channel in which he appears to be filming on the road or at locations other than his residence. <u>See id.</u> at 11-13. As to the location of witnesses, the Government asserts that Hoover has not identified any witnesses that would have to travel to Florida for trial or that Jacksonville would be a particularly costly destination. <u>Id.</u> at 13. Additionally, the Government contends that while Hoover has submitted medical records indicating that he had polyps removed from his colon, he has not indicated any specific treatment he will be required to undergo during the trial or that would otherwise make traveling for trial more difficult. <u>Id.</u> at 14. As to Hoover's claim that he is "unable to avail himself of his primary source of income" due to the pending charges, <u>see</u> Motion to Transfer at 13, the Government notes that Hoover and his attorneys are currently posting videos to Hoover's channel and raising money for his legal expenses through various crowdfunding sources, like GoFundMe. Response to Motion to Transfer at 15.

The Government further maintains that the location of counsel disfavors transfer because counsel for the Government is in Jacksonville and all of Defendants' counsel are in Florida. <u>Id.</u> at 16. As to accessibility of the place of trial, the Government maintains that the majority of its witnesses are in Jacksonville, the defense attorneys can access the courthouse within a short

drive, and both the Jacksonville and Green Bay divisions have international airports that are approximately a 15-minute drive from their respective courthouses.  Id. at 16-17.  The Government states that it is unaware of the docket conditions in Green Bay, but notes that this Court is ready to conduct this trial during the November trial term.  Id. at 17.  Finally, the Government contends that Hoover's alleged co-conspirator has not requested a transfer to Green Bay and "[a] severance of the defendants so that this Court could transfer defendant's trial to Green Bay would result in substantial inefficiencies and waste of judicial and government resources."  Id. at 18.  The Government concludes that Hoover's purported special circumstances are unavailing where he has not described any treatment that would be disrupted by a trial in Jacksonville nor has he demonstrated why his fear of flying is a strong enough reason to transfer this case when he has driven to Jacksonville for proceedings related to his case before.  Id.

c.  **Discussion**

It is undisputed that Hoover and his family reside in Coloma, Wisconsin.  However, "[a] criminal defendant has no right to be tried in the place of his domicile, and the defendant's concerns about the expense and inconvenience of being tried away from home are ordinarily of little relevance to a motion for a change of venue."  United States v. Bagnell, 679 F.2d 826, 832 (11th Cir. 1982) (internal citations omitted).  Moreover, Hoover's codefendant and alleged

coconspirator resides in the Middle District of Florida.  Thus, to the extent this factor weighs in favor of Hoover, the Court affords it little weight.

Although Hoover contends that "it is likely that many of the alleged witnesses to Mr. Hoover's actions are citizens of the Eastern District of Wisconsin or reside in the federal districts surrounding it," he fails to identify any of these witnesses or the subject of their testimony with particularity and merely speculates that they will be located near the district to which he seeks transfer.  See Motion to Transfer at 10.  Hoover also does not present any evidence that any of his anticipated witnesses would be unable to travel to the Middle District of Florida.

In the Response to the Motion to Transfer, the Government identifies specific categories of witnesses that are located in the Middle District of Florida including: approximately five friends and family members of Ervin who assisted him with the Auto Key Card business, three to five employees from Jacksonville machine shops that manufactured the Auto Key Cards, three purchasers of the Auto Key Cards, two or three credit union employees who interacted with Ervin when he made structured withdrawals,  post office employees from locations in Jacksonville from which Ervin distributed Auto Key Cards and received orders for Auto Key Cards, an employee from the Louis Vuitton store in Jacksonville from which Ervin purchased a bag and sent it to Hoover, the government agents who conducted the investigation, and an expert witness who resides in

Jacksonville.  <u>See</u> Response to Motion to Transfer at 4-8.  Rule 21 accords weight not just to the convenience of the defendant, but also to the convenience of all "'parties and witnesses.'"  <u>Kopituk</u>, <u>690 F.2d at 1322</u>.  For these reasons, the Court finds this factor weighs against transfer.

As to the location of events likely to be at issue, Hoover contends all of his actions occurred in Coloma, Wisconsin and that the only reason he was indicted in the Middle District of Florida is because Ervin was indicted first.  <u>See</u> Motion to Transfer at 10.  However, Hoover does not dispute that venue is proper here. <u>Id.</u> at 7, n. 5.  The relevant inquiry is the location of the events likely to be at issue, and here Hoover is charged with transferring, and conspiring to transfer unregistered, machinegun conversion devices.  <u>See generally</u> Third Superseding Indictment.  The production and distribution of these devices occurred in the Middle District of Florida, his alleged conspirator received payments for the devices and arranged to send payment to Hoover from the Middle District of Florida, and several of the individuals alleged to have made the purchases of the devices are located in the Middle District of Florida.  Although Hoover is alleged to have promoted the sale of the Auto Key Cards as part of the alleged conspiracy via an online platform, and most of the filming occurred in Coloma, the material events at issue in the case occurred in the Jacksonville area.  As such, this factor weighs against transfer.

19

In light of the existence of various pieces of physical evidence seized in the Jacksonville area, the Court finds the location of documents and records likely to be involved weighs against transfer. Specifically, as noted above, the Government identifies

> computer equipment, manufacturing equipment, more than 1500 Auto Key Cards, firearms, and other evidence seized from co-defendant Ervin's residence; large boxes of cut up Auto Key Cards surrendered by one of the machine shops that had manufactured the cards at Ervin's direction; and dozens of mailings seized from the postal stream in the Jacksonville area.

Response to Motion to Transfer at 10-11. Although much of the other evidence in the case is capable of being electronically stored and transferred, what physical evidence exists is located in the Middle District of Florida and supports keeping the case here.

Hoover reports that "he has been unable to avail himself of his primary source of income – that being his firearms YouTube channel and federal firearms license – because of the nature of these proceedings." Motion to Transfer at 13. Yet, he also attempts to obtain a transfer of venue by asserting that if he has to attend a multi-week trial in Jacksonville, Florida, he will be unable produce YouTube videos to generate income. See id. at 11. It is unclear how spending several weeks in Jacksonville could further disrupt Hoover's business if he cannot operate his YouTube channel. Notwithstanding Hoover's inconsistent representations to the Court, it appears that he can operate his

20

business on nights and weekends and from different locations, as evidenced by published videos in a car, in hotel rooms, and in other locations throughout the country. Hoover does not contend that he cannot transport his equipment to Jacksonville. The Court finds the disruption to Hoover's business does not warrant transfer.

Turning to the expense to the parties, Hoover contends, on behalf of himself and his witnesses, that they will incur significantly greater lodging and travel expenses for a trial in Jacksonville, Florida, than if the trial were in Green Bay, Wisconsin. In support, Hoover relies on <u>United States v. Ohran</u>, in which the defendant sought transfer from New York to Florida and

> identified a number of Florida residents who w[ould] testify as character witnesses for him and argue[d] persuasively that the impact of their testimony on a jury would be greater in Florida where they live and work than it would be on a jury in New York.

No. 99 CR, 142 (JSM), <u>2000 WL 620217</u>, at *3 (S.D.N.Y. May 12, 2000). Because the government identified some witnesses in New York, but others some distance from New York and Florida, the court found the location of the witnesses factor neutral. <u>Id.</u> The court further concluded, "[w]hile a trial in Florida might cause greater expense to the Government than it would to [the defendant], the Government is clearly in a better position to bear that expense." <u>Id.</u> at *4. Here, unlike the defendant in <u>Ohran</u>, Hoover does not identify any witness by name or description and does not state the number of witnesses he

expects to call.  It is unclear if his purported witnesses are character witnesses, expert witnesses, or witnesses expected to present evidence related to the charges against him.  See <u>United States v. Snipes</u>, No. 5:06-CR-22-OC-10GRJ, <u>2007 WL 2572198</u>, at *8 n. 25 (M.D. Fla. Sept. 5, 2007) (finding <u>Ohran</u> distinguishable because in <u>Ohran</u>, a majority of the witnesses, not just a majority of character witnesses, resided in other districts).  Thus, on the record before the Court, although it will undoubtedly be more expensive for Hoover to go to trial in Jacksonville compared with Green Bay, the Court has not been given relevant data to assess the relative travel costs for Hoover and his witnesses such that the Court can meaningfully consider this factor in its analysis.[6]  In light of the foregoing, the Court finds this factor neither weighs in favor or against transfer.

As to the location of counsel, both of Hoover's attorneys are located in Florida.  The prosecuting attorneys are located in or around Jacksonville, Florida.  Hoover's contention that he could "explore the possibility of working with local counsel for trial" if it were transferred to Wisconsin, is too speculative to support transfer.  Because all of the attorneys working on this case are located in Florida, the Court finds this factor weighs against transfer.

---

[6]      Of arguable relevance, is the Government's argument regarding the significant fundraising efforts that Hoover and his attorneys have undertaken on his YouTube channel. Response to Motion to Transfer at 15.  According to the Government, a GoFundMe account naming counsel for Hoover as a beneficiary has raised over $115,000 to fund Hoover's legal expenses in this case.

Hoover does not suggest that the federal courthouse in Jacksonville, Florida, is less accessible than the federal courthouse in Green Bay, Wisconsin. As to docket conditions, despite reports on judicial caseloads published by the Administrative Office of the United States Court being readily available to the public, Hoover does not attempt to present evidence or argument that the docket conditions in the Eastern District of Wisconsin favor transfer. Hoover makes no suggestion that he would obtain a trial earlier in Green Bay, and most recently filed a motion to continue the trial. See Joint and Unopposed Motion to Continue Trial (Doc. 119) filed on August 30, 2022. The Court affords this factor no weight.

Finally, Hoover contends there are two special circumstances that warrant transfer of this case to the Eastern District of Wisconsin. First, Hoover submits a declaration from his lawyer with various medical records attached reflecting medical office visits and procedures he had to remove polyps from his colon. Hoover points to a CT scan from November 16, 2021, that states: "CLINICAL INDICATION: Colon polyp, cancerous" and suggests a follow up in six months. See Zermay Decl. ¶¶ 4-5. Hoover does not explain why these medical records, the most recent of which is from eight months ago, demonstrate a need for his case to be transferred to the Eastern District of Wisconsin. Hoover also does not identify any scheduled treatments, appointments, surgeries, or other future medical care that would make his being in Jacksonville for several

23

weeks for trial problematic.  Although Hoover seeks to subpoena the testimony of his health care providers to provide additional testimony, the Court does not find this necessary.  If Hoover were receiving care that impeded his ability to attend trial, he would be able to attest to such circumstances himself.

Second, Hoover submits a letter from a nurse practitioner that describes his fear of flying:

> Matthew R Hoover was evaluated in my office on April 29, 2022 to discuss his fear of flying.  He does report that he gets extreme anxiety from flying and will have nightmares several days beforehand.  He expresses that he needed to drive to Florida for a court case which has been taxing on him and his family because he prefers to drive which requires him to be gone most of the week.  We did discuss potential medications that he could take beforehand for flying to help his anxiety but this would do very little to help his anxiety and nightmares several days before he would fly.

See Zermay Decl., Ex. A.  Although his fear of flying makes it more difficult to travel to Florida for trial, he does not offer any evidence regarding why driving is not a feasible alternative.

In sum, only one of the Platt factors weighs in favor of transfer and it is entitled to little weight.  Hoover's fear of flying is not sufficient to overcome the weight of the remaining factors and the existence of an alleged conspirator in this district.  In light of the foregoing, the Court finds the Motion to Transfer is due to be denied.

24

Accordingly, it is

**ORDERED:**

1. Defendant Matthew Raymond Hoover's Motion to Sever (Doc. 97) is

   **DENIED.**

2. Defendant Matthew Raymond Hoover's Motion to Transfer Venue

   (Doc. 96) is **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida, this 2nd day of

September, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc28

Copies to:
Counsel of Record

FILED IN OPEN COURT

1·26·2022

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:21-cr-22(S2)-MMH-MCR

MATTHEW RAYMOND HOOVER

## ORDER

The Motion for Capias filed herein by the United States of America is hereby

GRANTED, and a capias shall issue for the Defendant. The conditions for the

Defendant's release or detention shall be set by the proper judicial officer upon arrest.

DONE AND ORDERED at Jacksonville, Florida, this 26th day of January,

2022.

_____
United States Magistrate Judge

Copies to:

United States Attorney Laura Cofer Taylor
United States Marshal

APPEAL, BOND, CLOSED, SL DOC, TRLSET

## U.S. District Court
## Middle District of Florida (Jacksonville)
## CRIMINAL DOCKET FOR CASE #: 3:21-cr-00022-MMH-MCR-2

Case title: USA v. Ervin                                  Date Filed: 03/11/2021

                                                          Date Terminated: 09/14/2023

Assigned to: Judge Marcia Morales Howard
Referred to: Magistrate Judge Monte C. Richardson

**Defendant (2)**

**Matthew Raymond Hoover**                represented by    **Matthew Raymond Hoover**
*BOND*                                                     401 Chilewski Drive
*TERMINATED: 09/14/2023*                                   Coloma, WI 54930
                                                           PRO SE

                                                           **Zachary Z. Zermay**
                                                           Zermay Law
                                                           1762 Windward Way
                                                           Sanibel, FL 33957
                                                           239-699-3107
                                                           Email: zach@zermaylaw.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Designation: Retained*

                                                           **Alex King**
                                                           Monroe & King, P.A.
                                                           1805 Copeland Street
                                                           Jacksonville, FL 32204
                                                           904-353-5800
                                                           Email: Alex@MonroeKingLaw.com

                                                           **Matthew Larosiere**
                                                           6964 Houlton Circle
                                                           Lake Worth, FL 33467
                                                           561-452-7575
                                                           Email: larosieremm@gmail.com
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Designation: Retained*

**Pending Counts**                                         **Disposition**

CONSPIRACY TO DEFRAUD THE UNITED            Imprisonment: SIXTY (60) MONTHS, consisting of
STATES                                      SIXTY (60) MONTHS as to each Count One through
(1ss)                                       Three, Five, and Seven, all such terms to run
                                            concurrently ; Supervised Release: THREE (3)
                                            YEARS, consisting of THREE (3) YEARS as to each
                                            Count One through Three, Five, and Seven, all such
                                            terms to run concurrently; Special Assessment:
                                            $500.00

UNLAWFUL TO TRANSFER A FIREARM IN           Imprisonment: SIXTY (60) MONTHS, consisting of
VIOLATION                                   SIXTY (60) MONTHS as to each Count One through
(2ss)                                       Three, Five, and Seven, all such terms to run
                                            concurrently ; Supervised Release: THREE (3)
                                            YEARS, consisting of THREE (3) YEARS as to each

| | |
|---|---|
| | Count One through Three, Five, and Seven, all such terms to run concurrently; Special Assessment: $500.00 |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (3ss) | Imprisonment: SIXTY (60) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One through Three, Five, and Seven, all such terms to run concurrently ; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Three, Five, and Seven, all such terms to run concurrently; Special Assessment: $500.00 |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (5ss) | Imprisonment: SIXTY (60) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One through Three, Five, and Seven, all such terms to run concurrently ; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Three, Five, and Seven, all such terms to run concurrently; Special Assessment: $500.00 |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (7ss) | Imprisonment: SIXTY (60) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One through Three, Five, and Seven, all such terms to run concurrently ; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Three, Five, and Seven, all such terms to run concurrently; Special Assessment: $500.00 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1) | Dismissed on Government's Motion |
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1s) | Dismissed on Government's Motion |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (2-7) | Dismissed on Government's Motion |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (2s-8s) | Dismissed on Government's Motion |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (4ss) | |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (6ss) | |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (8ss) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**<u>Movant</u>**

**John Crump**  
<span style="float:right">represented by</span> **Eric J. Friday**
Kingry & Friday, Esq.
1919 Atlantic Blvd.
Jacksonville, FL 32207
(904) 722-3333
Email: efriday@kingryfriday.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**James D Phillips , Jr**
Katz & Phillips, PA
509 W Colonial Dr
Orlando, FL 32804
321/332-6864
Fax: 407/657-1526
Email: jphillips@kplegalteam.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Robert J Olson**
William J. Olson, P.C.
370 Maple Ave W
Suite 4
Vienna, VA 22180
703-356-5070
Fax: 703-356-5085
Email: rob@wjopc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Ronald J. Shook , II**
The Law Offices of Ronald J. Shook
121 E. Main Ave.
Gastonia, NC 28052
(704) 671-2390
Fax: (704) 671-4431
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Stephen D Stamboulieh**
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440
Email: stephen@sdslaw.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**<u>Plaintiff</u>**

**USA**  
<span style="float:right">represented by</span> **David B. Mesrobian**
US Attorney's Office - FLM
Suite 700
300 N Hogan St
Jacksonville, FL 32202
904/301-6300
Fax: 904/301-6310
Email: david.mesrobian@usdoj.gov

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Laura Cofer Taylor**
US Attorney's Office - FLM*
Suite 700
300 N Hogan St
Jacksonville, FL 32202
904-301-6249
Email: Laura.C.Taylor@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Mai Tran**
United States Attorney's Office
Suite 700
300 N. Hogan Street
Jacksonville, FL 32202
904-301-6300
Fax: 904-301-6310
Email: mai.tran2@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/20/2023 | 333 | NOTICE OF APPEAL by Matthew Raymond Hoover re 310 Order on Motion for Judgment of Acquittal, 237 Order on Motion for Bill of Particulars, 141 Order on Motion to Dismiss, 327 Judgment 223 Order on Motion in Limine, 125 Order on Motion to Change Venue / Transfer Case, Order on Motion to Sever Defendant, 59 Order on Motion for Warrant. Filing fee paid $ 505, receipt number AFLMDC-21273895. (Larosiere, Matthew) (Entered: 09/20/2023) |
| 09/14/2023 | 330 | TRANSCRIPT of Sentencing (Volume 2 of 2) as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover held on 09/07/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843. |
| | | NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/5/2023. Redacted Transcript Deadline set for 10/16/2023. Release of Transcript Restriction set for 12/13/2023. (KMH) (Entered: 09/14/2023) |
| 09/14/2023 | 329 | TRANSCRIPT of Sentencing (Volume 1 of 2) as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover held on 09/06/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843. |
| | | NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/5/2023. Redacted Transcript Deadline set for 10/16/2023. Release of Transcript Restriction set for 12/13/2023. (KMH) (Entered: 09/14/2023) |
| 09/14/2023 | 327 | **JUDGMENT as to Matthew Raymond Hoover (2), Counts 1, 1s, 2-7, 2s-8s, Dismissed on Government's Motion; Counts 1ss, 2ss, 3ss, 5ss, 7ss, Imprisonment: SIXTY (60) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One through Three, Five, and Seven, all such terms to run concurrently ; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Three, Five, and Seven, all such terms to run concurrently; Special Assessment: $500.00 Signed by Judge Marcia Morales Howard on 9/14/2023. (JW)** (Entered: 09/14/2023) |

| 09/07/2023 | 326 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: SENTENCING held on 9/7/2023 for Matthew Raymond Hoover (2), Counts 1, 1s, 2-7, 2s-8s, Dismissed on Government's Motion; Counts 1ss, 2ss, 3ss, 5ss, 7ss, Imprisonment: SIXTY (60) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One through Three, Five, and Seven, all such terms to run concurrently ; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Three, Five, and Seven, all such terms to run concurrently; Special Assessment: $500.00. Court Reporter: Katharine Healey (JW) (Entered: 09/14/2023) |
|---|---|---|
| 09/06/2023 | 322 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: SENTENCING held on 9/6/2023. Defendant's Motion for Leave to File Letters in Support of Defendant Hoover Under Seal (Dkt. No. 317) is STRICKEN, and the Clerk of the Court is directed to remove this document from the Court record. The Court will consider the letters attached to the motion. The Court heard argument from counsel regarding the objections to the Presentence Investigation Report, resolved the objections, and announced the guidelines on the record. The parties made their presentations, and the Court heard from Defendants and their mitigation witnesses. The Court will pronounce sentence on September 7, 2023, at 11:30 a.m. Court Reporter: Katharine Healey (JW) (Entered: 09/08/2023) |
| 09/02/2023 | 320 | SENTENCING MEMORANDUM by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 09/02/2023) |
| 09/01/2023 | 319 | SENTENCING MEMORANDUM by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Attachments: # 1 Exhibit A, # 2 Exhibit B)(King, Alex) (Entered: 09/01/2023) |
| 09/01/2023 | 318 | SENTENCING MEMORANDUM by Matthew Raymond Hoover (Zermay, Zachary) (Entered: 09/01/2023) |
| 08/30/2023 | 313 | SENTENCING MEMORANDUM by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 08/30/2023) |
| 08/23/2023 | 310 | **ORDER denying 273 Ervin's Motion for Judgment of Acquittal; denying 274 Hoover's Motion for Judgment of Acquittal. Signed by Judge Marcia Morales Howard on 8/23/2023. (JCM)** (Entered: 08/23/2023) |
| 08/14/2023 | 309 | TRANSCRIPT of Motion as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 08/11/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843. NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/5/2023. Redacted Transcript Deadline set for 9/14/2023. Release of Transcript Restriction set for 11/13/2023. (KMH) (Entered: 08/14/2023) |
| 08/11/2023 | 308 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 8/11/2023; denying as moot 299 John Crump's Emergency Motion to Intervene; denying as moot 306 Motion for Leave to File Amicus Curiae Brief; withdrawing, in part, and denying, in part, 296 United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report. Court Reporter: Katharine Healey (JW) (Entered: 08/14/2023) |
| 08/11/2023 | 307 | **ORDER permitting members of the press to enter the courthouse with laptop computers, tablets, and/or cell phones to attend the hearing set for today, August 11, 2023, at 1:30 p.m. Signed by Judge Marcia Morales Howard on 8/11/2023. (JW)** (Entered: 08/11/2023) |
| 08/10/2023 | 306 | MOTION for Leave to File Amicus Curiae Brief and Brief Amicus Curiae of Eric Blandford, et al. in Support of 299 Emergency Motion by Eric J. Friday as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (BGR) (Entered: 08/11/2023) |
| 08/10/2023 | 305 | **ENDORSED ORDER taking under advisement 299 John Crump's Emergency Motion to Intervene. The Court intends to resolve the Motion at the August 11, 2023 Hearing. Signed by Judge Marcia Morales Howard on 8/10/2023. (MHM)** (Entered: 08/10/2023) |
| 08/10/2023 | 304 | **ENDORSED ORDER granting 301 Motion for Special Admission by Robert J. Olson, Esq. If Mr. Olson has not already done so, he shall immediately register for a login and password for electronic filing at the Court's website at www.flmd.uscourts.gov. Signed by Magistrate Judge Monte C. Richardson on 8/9/2023. (SHS)** (Entered: 08/10/2023) |
| 08/10/2023 | 303 | **ENDORSED ORDER granting 300 Motion for Special Admission by Stephen D. Stamboulieh, Esq. If Mr. Stamboulieh has not already done so, he shall immediately register for a login and password for** |

| | | electronic filing at the Court's website at www.flmd.uscourts.gov. Signed by Magistrate Judge Monte C. Richardson on 8/9/2023. (SHS) Modified on 8/10/2023 (SHS). (Entered: 08/10/2023) |
|---|---|---|
| 08/09/2023 | 302 | SUPPLEMENT to 296 Motion for Order Prohibiting Dissemination of Presentence Investigation Report by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Exhibits not scanned, filed separately)(MDC) (Entered: 08/09/2023) |
| 08/09/2023 | 301 | First MOTION for Robert J. Olson to appear pro hac vice, Special Admission fee paid, Receipt No. FLMDC-21130715 for $150 by John Crump as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Phillips, James) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 08/09/2023) |
| 08/09/2023 | 300 | First MOTION for Stephen D. Stamboulieh to appear pro hac vice, Special Admission fee paid, Receipt No. FLMDC-21130611 for $150 by John Crump as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Phillips, James) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 08/09/2023) |
| 08/09/2023 | 299 | JOHN CRUMP'S EMERGENCY MOTION to Intervene for the Limited Purpose of Responding to the United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (MDC) (Entered: 08/09/2023) |
| 08/09/2023 | 298 | NOTICE of RESCHEDULING HEARING (AS TO TIME ONLY): The Motion Hearing previously scheduled for August 11, 2023, at 2:00 p.m. is rescheduled as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. New hearing time: Motion Hearing set for August 11, 2023, at 1:30 p.m. in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. (JW) (Entered: 08/09/2023) |
| 08/08/2023 | 297 | **ORDER taking under advisement 296 United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report. An IN PERSON hearing on the motion is set for Friday, August 11, 2023, at 2:00 p.m. in Courtroom 10B. Defendants and all counsel of record are required to be present. Signed by Judge Marcia Morales Howard on 8/8/2023. (JW)** (Entered: 08/08/2023) |
| 08/07/2023 | 296 | MOTION for Miscellaneous Relief, specifically Order Prohibiting Dissemination of Presentence Investigation Report by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 08/07/2023) |
| 06/21/2023 | 293 | **ORDER granting 286 Motion to Continue as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover (2). Sentencing hearing continued to September 6, 2023, at 9:30 a.m. Signed by Judge Marcia Morales Howard on 6/21/2023. (JW)** (Entered: 06/21/2023) |
| 06/20/2023 | 292 | NOTICE of Adoption by Matthew Raymond Hoover re 291 Response (Zermay, Zachary) (Modified on 6/21/2023, to edit text) (BGR). (Entered: 06/20/2023) |
| 06/20/2023 | 291 | RESPONSE 286 MOTION to Continue Sentencing Hearing by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (King, Alex) (Entered: 06/20/2023) |
| 06/16/2023 | 290 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin re 273 MOTION for Judgment of Acquittal (Taylor, Laura) (Modified on 6/20/2023, to edit text) (BGR). (Entered: 06/16/2023) |
| 06/16/2023 | 289 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 274 MOTION for Judgment of Acquittal (Taylor, Laura) (Entered: 06/16/2023) |
| 06/13/2023 | 288 | **ENDORSED ORDER as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover regarding 286 United States' Motion to Continue Sentencing Hearing. Defendants shall have up to and including June 20, 2023, to file responses to this motion. Signed by Judge Marcia Morales Howard on 6/13/2023. (JW)** (Entered: 06/13/2023) |
| 06/12/2023 | 286 | MOTION to Continue Sentencing Hearing by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 06/12/2023) |
| 06/07/2023 | 285 | TRANSCRIPT of Jury Trial (Volume 9 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/21/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | 284 | TRANSCRIPT of Jury Trial (Volume 8 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/20/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843. |

| | | NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
|---|---|---|
| 06/07/2023 | <u>283</u> | TRANSCRIPT of Jury Trial (Volume 7 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/19/23 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: 9043016843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | <u>282</u> | TRANSCRIPT of Jury Trial (Volume 6 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/17/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | <u>281</u> | TRANSCRIPT of Jury Trial (Volume 5 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/14/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/06/2023 | <u>280</u> | TRANSCRIPT of Jury Trial (Volume 4 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/13/23 before Judge Howard. Court Reporter/Transcriber: Shelli Kozachenko. Email address: shellikoz@gmail.com. Telephone number: 904.301.6842.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (SMK) (Entered: 06/06/2023) |
| 06/06/2023 | <u>279</u> | TRANSCRIPT of Jury Trial (Volume 3 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/12/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. |

| | | |
|---|---|---|
| | | Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Modified on 6/6/2023, to edit text) (BGR). (Entered: 06/06/2023) |
| 06/06/2023 | 278 | TRANSCRIPT of Jury Trial (Volume 2 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 04/11/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.

NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Modified on 6/6/2023, to edit text) (BGR). (Entered: 06/06/2023) |
| 06/06/2023 | 277 | TRANSCRIPT of Jury Selection and Trial (Volume 1 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 04/10/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.

NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/06/2023) |
| 05/26/2023 | 276 | **ENDORSED ORDER granting 275 Motion to Extend Time to Respond to Defendants' Motions for Judgment of Acquittal. The United States shall have up to and including June 16, 2023, to file its responses to Defendants' Motions for Judgment of Acquittal. Signed by Judge Marcia Morales Howard on 5/26/2023. (JW)** (Entered: 05/26/2023) |
| 05/25/2023 | 275 | MOTION to Extend Time to Respond to Defendants' Motions for Judgment of Acquittal by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 05/25/2023) |
| 05/19/2023 | 274 | MOTION for Judgment of Acquittal by Matthew Raymond Hoover. (Zermay, Zachary) (Modified on 5/22/2023, to edit text) (BGR). (Entered: 05/19/2023) |
| 05/05/2023 | 272 | TRANSCRIPT of Excerpt of Jury Trial Proceedings (remand arguments as to Hoover) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 04/21/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.

NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 5/26/2023. Redacted Transcript Deadline set for 6/5/2023. Release of Transcript Restriction set for 8/3/2023. (KMH) (Entered: 05/05/2023) |
| 05/01/2023 | 269 | **ORDER granting 268 Unopposed Motion to Continue Deadline to File Motion for Judgment of Acquittal, and for Leave of Court to File a Motion in Excess of Twenty-Five Pages. Motion due May 19, 2023, and may not exceed 35 pages. Signed by Judge Marcia Morales Howard on 5/1/2023. (JW)** (Entered: 05/01/2023) |
| 04/28/2023 | 268 | Unopposed MOTION to Continue Deadline to File Motion for Judgment of Acquittal, and for Leave of Court to File a Motion in Excess of Twenty-Five Pages by Matthew Raymond Hoover. (Zermay, Zachary) (Modified on 4/28/2023, to edit text) (BGR). (Entered: 04/28/2023) |
| 04/27/2023 | | Remark: The flash drives containing the closing argument PowerPoint presentations by all counsel are stored with the exhibits in the trial exhibit storage room in the Clerk's Office. (JW) (Entered: 04/27/2023) |
| 04/24/2023 | 267 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: Sentencing set for July 31, 2023, at 9:30 a.m. in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 266 | Court Exhibits as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (JW) (Entered: 04/24/2023) |

| 04/21/2023 | 264 | JURY VERDICT as to Matthew Raymond Hoover (2) (FILED IN OPEN COURT). (Attachments: # 1 Restricted Unredacted Jury Verdict)(JW) (Entered: 04/24/2023) |
| 04/21/2023 | 262 | Court's Revised Proposed Jury Instructions as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (FILED IN OPEN COURT). (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 261 | Court's Proposed Jury Instructions as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (FILED IN OPEN COURT). (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 259 | EXHIBIT LIST by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (FILED IN OPEN COURT). (JW) (Additional attachment(s) added on 4/26/2023: # 1 Exhibit 1, # 2 Exhibit 1A, # 3 Exhibit 2, # 4 Exhibit 2A, # 5 Exhibit 3, # 6 Exhibit 3A, # 7 Exhibit 4, # 8 Exhibit 4A, # 9 Exhibit 5, # 10 Exhibit 5A, # 11 Exhibit 6, # 12 Exhibit 6A, # 13 Exhibit 7, # 14 Exhibit 7A, # 15 Exhibit 8, # 16 Exhibit 8A, # 17 Exhibit 9, # 18 Exhibit 9A, # 19 Exhibit 10, # 20 Exhibit 10A, # 21 Exhibit 11, # 22 Exhibit 11A, # 23 Exhibit 12, # 24 Exhibit 12A, # 25 Exhibit 14, # 26 Exhibit 14A, # 27 Exhibit 15, # 28 Exhibit 15A, # 29 Exhibit 16, # 30 Exhibit 16A, # 31 Exhibit 17.1, # 32 Exhibit 17.1A, # 33 Exhibit 17.2, # 34 Exhibit 17.2A, # 35 Exhibit 17.3, # 36 Exhibit 17.3A, # 37 Exhibit 18, # 38 Exhibit 19, # 39 Exhibit 20, # 40 Exhibit 20A, # 41 Exhibit 21, # 42 Exhibit 22, # 43 Exhibit 23, # 44 Exhibit 24, # 45 Exhibit 25, # 46 Exhibit 25A, # 47 Exhibit 25B, # 48 Exhibit 26) (JW). (Additional attachment(s) added on 4/26/2023: # 49 Exhibit 27A, # 50 Exhibit 27B, # 51 Exhibit 28, # 52 Exhibit 29, # 53 Exhibit 30, # 54 Exhibit 30A, # 55 Exhibit 30B, # 56 Exhibit 30C, # 57 Exhibit 30D, # 58 Exhibit 30E, # 59 Exhibit 30F, # 60 Exhibit 30G, # 61 Exhibit 30H, # 62 Exhibit 30I, # 63 Exhibit 30J, # 64 Exhibit 30K, # 65 Exhibit 30L, # 66 Exhibit 30M, # 67 Exhibit 30N, # 68 Exhibit 30O, # 69 Exhibit 30P, # 70 Exhibit 30Q, # 71 Exhibit 30R, # 72 Exhibit 30S, # 73 Exhibit 30T, # 74 Exhibit 30U, # 75 Exhibit 30V, # 76 Exhibit 31, # 77 Exhibit 32) (JW). (Additional attachment(s) added on 4/26/2023: # 78 Exhibit 33, # 79 Exhibit 33A, # 80 Exhibit 33B, # 81 Exhibit 33C, # 82 Exhibit 33D, # 83 Exhibit 33E, # 84 Exhibit 33F, # 85 Exhibit 33G, # 86 Exhibit 33H, # 87 Exhibit 33I, # 88 Exhibit 33J, # 89 Exhibit 33K, # 90 Exhibit 33L, # 91 Exhibit 33M, # 92 Exhibit 33N, # 93 Exhibit 33O, # 94 Exhibit 33P, # 95 Exhibit 33Q, # 96 Exhibit 33R, # 97 Exhibit 33S, # 98 Exhibit 33T, # 99 Exhibit 33U, # 100 Exhibit 33V, # 101 Exhibit 33W, # 102 Exhibit 33X, # 103 Exhibit 33Y, # 104 Exhibit 33Z, # 105 Exhibit 34, # 106 Exhibit 35, # 107 Exhibit 36, # 108 Exhibit 37, # 109 Exhibit 38, # 110 Exhibit 39, # 111 Exhibit 40, # 112 Exhibit 41, # 113 Exhibit 42, # 114 Exhibit 43, # 115 Exhibit 44, # 116 Exhibit 45, # 117 Exhibit 46, # 118 Exhibit 47, # 119 Exhibit 48, # 120 Exhibit 49) (JW). (Additional attachment(s) added on 4/26/2023: # 121 Exhibit 49A, # 122 Exhibit 49B, # 123 Exhibit 49C, # 124 Exhibit 49D, # 125 Exhibit 49E, # 126 Exhibit 49F, # 127 Exhibit 49G, # 128 Exhibit 49H, # 129 Exhibit 49I, # 130 Exhibit 49J, # 131 Exhibit 49K, # 132 Exhibit 49L, # 133 Exhibit 49M, # 134 Exhibit 49N, # 135 Exhibit 49O, # 136 Exhibit 49P, # 137 Exhibit 49Q, # 138 Exhibit 50A, # 139 Exhibit 50B, # 140 Exhibit 50C, # 141 Exhibit 50D, # 142 Exhibit 50E, # 143 Exhibit 50F, # 144 Exhibit 50G, # 145 Exhibit 50H, # 146 Exhibit 50I, # 147 Exhibit 50J, # 148 Exhibit 50K, # 149 Exhibit 50L, # 150 Exhibit 50M, # 151 Exhibit 50N, # 152 Exhibit 50O, # 153 Exhibit 50P, # 154 Exhibit 51, # 155 Exhibit 52, # 156 Exhibit 53, # 157 Exhibit 54, # 158 Exhibit 55, # 159 Exhibit 56) (JW). (Additional attachment(s) added on 4/26/2023: # 160 Exhibit 57A, # 161 Exhibit 57B, # 162 Exhibit 57C, # 163 Exhibit 58A, # 164 Exhibit 58B, # 165 Exhibit 58C, # 166 Exhibit 58D, # 167 Exhibit 59, # 168 Exhibit 60, # 169 Exhibit 61, # 170 Exhibit 63, # 171 Exhibit 64, # 172 Exhibit 65, # 173 Exhibit 66, # 174 Exhibit 67, # 175 Exhibit 67A, # 176 Exhibit 67B, # 177 Exhibit 67C, # 178 Exhibit 67D, # 179 Exhibit 67E, # 180 Exhibit 67F, # 181 Exhibit 67G, # 182 Exhibit 67H, # 183 Exhibit 67I, # 184 Exhibit 67J, # 185 Exhibit 67K, # 186 Exhibit 67L, # 187 Exhibit 67M, # 188 Exhibit 67N, # 189 Exhibit 67O, # 190 Exhibit 67P, # 191 Exhibit 67Q, # 192 Exhibit 67R, # 193 Exhibit 67S, # 194 Exhibit 67T, # 195 Exhibit 67U, # 196 Exhibit 67V, # 197 Exhibit 67W, # 198 Exhibit 67X, # 199 Exhibit 67Y, # 200 Exhibit 67Z) (JW). (Additional attachment(s) added on 4/26/2023: # 201 Exhibit 67AAA, # 202 Exhibit 67BBB, # 203 Exhibit 67CCC, # 204 Exhibit 67DDD, # 205 Exhibit 67EEE, # 206 Exhibit 67FFF, # 207 Exhibit 67GGG, # 208 Exhibit 67HHH, # 209 Exhibit 67III, # 210 Exhibit 67JJJ, # 211 Exhibit 67KKK, # 212 Exhibit 67LLL, # 213 Exhibit 67MMM, # 214 Exhibit 67NNN, # 215 Exhibit 67OOO, # 216 Exhibit 67PPP, # 217 Exhibit 67QQQ, # 218 Exhibit 67RRR, # 219 Exhibit 67SSS, # 220 Exhibit 67TTT, # 221 Exhibit 67UUU, # 222 Exhibit 67VVV, # 223 Exhibit 67WWW, # 224 Exhibit 67XXX, # 225 Exhibit 67YYY, # 226 Exhibit 67ZZZ, # 227 Exhibit 67AAAA, # 228 Exhibit 67BBBB, # 229 Exhibit 67CCCC, # 230 Exhibit 68, # 231 Exhibit 69, # 232 Exhibit 70, # 233 Exhibit 71, # 234 Exhibit 72, # 235 Exhibit 73, # 236 Exhibit 74, # 237 Exhibit 75, # 238 Exhibit 76, # 239 Exhibit 77, # 240 Exhibit 78, # 241 Exhibit 79, # 242 Exhibit 80, # 243 Exhibit 81, # 244 Exhibit 82, # 245 Exhibit 83, # 246 Exhibit 84, # 247 Exhibit 85, # 248 Exhibit 86, # 249 Exhibit 87, # 250 Exhibit 88, # 251 Exhibit 89) (JW). (Additional attachment(s) added on 4/26/2023: # 252 Exhibit 89A, # 253 Exhibit 89B, # 254 Exhibit 89C, # 255 Exhibit 89D, # 256 Exhibit 89E, # 257 Exhibit 89F, # 258 Exhibit 89G, # 259 Exhibit 89H, # 260 Exhibit 89I, # 261 Exhibit 90, # 262 Exhibit 90A, # 263 Exhibit 90B, # 264 Exhibit 90C, # 265 Exhibit 90D, # 266 Exhibit 90E, # 267 Exhibit 90F, # 268 Exhibit 90G, # 269 Exhibit 90H, # 270 Exhibit 91) (JW). (Additional attachment(s) added on 4/26/2023: # 271 Exhibit 91A, # 272 Exhibit 91B, # 273 Exhibit 91C, # 274 Exhibit 91D, # 275 Exhibit 91E, # 276 Exhibit 91F, # 277 Exhibit 91G, # 278 Exhibit 91H, # 279 Exhibit 91I, # 280 Exhibit 91J, # 281 Exhibit 91K, # 282 Exhibit 91L, # 283 Exhibit 91M, # 284 Exhibit 91N, # 285 Exhibit 92, # 286 Exhibit 92A, # 287 Exhibit 92B, # 288 Exhibit 92C, # 289 Exhibit 92D, # 290 Exhibit 92E, # 291 Exhibit 92F, # 292 Exhibit 92G, # 293 Exhibit 92H, # 294 Exhibit 92I, # 295 Exhibit 92J, # 296 Exhibit 92K, # 297 Exhibit 93, # 298 Exhibit 94, # 299 Exhibit 95, # 300 Exhibit 95A, # 301 Exhibit 95B, # 302 Exhibit 95C, # 303 Exhibit 95D, # 304 Exhibit 95E) (JW). (Additional attachment(s) added on 4/26/2023: # 305 Exhibit 96, # 306 Exhibit |

97, # 307 Exhibit 97A, # 308 Exhibit 97B, # 309 Exhibit 97C, # 310 Exhibit 97D, # 311 Exhibit 98, # 312 Exhibit 98A, # 313 Exhibit 98B, # 314 Exhibit 98C, # 315 Exhibit 98D, # 316 Exhibit 98E, # 317 Exhibit 99, # 318 Exhibit 99A, # 319 Exhibit 99B, # 320 Exhibit 99C, # 321 Exhibit 99D, # 322 Exhibit 100, # 323 Exhibit 101, # 324 Exhibit 101A) (JW). (Additional attachment(s) added on 4/26/2023: # 325 Exhibit 102, # 326 Exhibit 103, # 327 Exhibit 103A, # 328 Exhibit 104, # 329 Exhibit 105, # 330 Exhibit 105A, # 331 Exhibit 108, # 332 Exhibit 109A, # 333 Exhibit 109B, # 334 Exhibit 109C, # 335 Exhibit 109D, # 336 Exhibit 110) (JW). (Additional attachment(s) added on 4/27/2023: # 337 Exhibit 111, # 338 Exhibit 112, # 339 Exhibit 114, # 340 Exhibit 115, # 341 Exhibit 116A, # 342 Exhibit 116B, # 343 Exhibit 116C, # 344 Exhibit 116D, # 345 Exhibit 117, # 346 Exhibit 118, # 347 Exhibit 119, # 348 Exhibit 120, # 349 Exhibit 120A, # 350 Exhibit 120B, # 351 Exhibit 120C, # 352 Exhibit 120D, # 353 Exhibit 123, # 354 Exhibit 124, # 355 Exhibit 124.1, # 356 Exhibit 124.1A, # 357 Exhibit 124.2, # 358 Exhibit 124.3, # 359 Exhibit 124.3A, # 360 Exhibit 125, # 361 Exhibit 125A, # 362 Exhibit 126) (JW). (Entered: 04/24/2023)

| 04/21/2023 | 258 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/21/2023. Court Reporter: Katharine Healey (Attachments: # 1 Government's Exhibit 1 Regarding Remand, # 2 Government's Exhibit 2 Regarding Remand) (JW) (Entered: 04/24/2023) |
|---|---|---|
| 04/20/2023 | 257 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/20/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/24/2023) |
| 04/20/2023 | **255** | **PARTIAL SEQUESTRATION ORDER. Signed by Judge Marcia Morales Howard on 4/20/2023. (JW)** (Entered: 04/20/2023) |
| 04/19/2023 | 256 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/19/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/21/2023) |
| 04/19/2023 | 254 | COURT'S FINAL JURY INSTRUCTIONS as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (JW) (Entered: 04/19/2023) |
| 04/18/2023 | 253 | SUPPLEMENT re 225 Proposed Jury Instructions by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/18/2023) |
| 04/17/2023 | 252 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/17/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/18/2023) |
| 04/14/2023 | 251 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/14/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/17/2023) |
| 04/13/2023 | 249 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/13/2023. Court Reporter: Shelli Kozachenko (JW) (Entered: 04/14/2023) |
| 04/12/2023 | 248 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/12/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/13/2023) |
| 04/11/2023 | 247 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/11/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/12/2023) |
| 04/10/2023 | 246 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY SELECTION AND TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/10/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/11/2023) |
| 04/10/2023 | 244 | EXHIBIT LIST by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Zermay, Zachary) (Entered: 04/10/2023) |
| 04/10/2023 | 243 | EXHIBIT LIST by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/10/2023) |
| 04/10/2023 | 242 | WITNESS LIST by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/10/2023) |
| 04/08/2023 | 240 | WITNESS LIST by Kristopher Justinboyer Ervin. (King, Alex) Modified on 4/10/2023 to edit text (AET). (Entered: 04/08/2023) |

| 04/07/2023 | 239 | **ORDER granting 238 Unopposed Motion for Assistant to Attend Trial With Electronic Equipment. Signed by Judge Marcia Morales Howard on 4/7/2023. (JW)** (Entered: 04/07/2023) |
| 04/06/2023 | 238 | Unopposed MOTION to Allow Electronic Equipment, specifically by Matthew Raymond Hoover. (Zermay, Zachary) (Entered: 04/06/2023) |
| 04/06/2023 | 237 | **ORDER denying 220 Motion for Bill of Particulars as to Matthew Raymond Hoover (2). Signed by Magistrate Judge Monte C. Richardson on 4/6/2023. (SHS)** (Entered: 04/06/2023) |
| 04/05/2023 | 236 | RESPONSE in Opposition by USA as to Matthew Raymond Hoover re 220 MOTION for Bill of Particulars (Taylor, Laura) (Entered: 04/05/2023) |
| 04/03/2023 | 235 | NOTICE of Adoption of 230 Statement of the Case for Trial and 231 Proposed Verdict Form by Matthew Raymond Hoover (Zermay, Zachary) Modified on 4/4/2023 to edit text (AET). (Entered: 04/03/2023) |
| 04/03/2023 | 234 | Proposed Jury Instructions by Matthew Raymond Hoover (Zermay, Zachary) (Entered: 04/03/2023) |
| 04/03/2023 | 233 | PROPOSED Voir Dire by Matthew Raymond Hoover (Zermay, Zachary) (Entered: 04/03/2023) |
| 04/03/2023 | 228 | PROPOSED Voir Dire by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 227 | PROPOSED verdict form filed by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 226 | STATEMENT of the case for trial by USA. (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 225 | Proposed Jury Instructions by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/03/2023) |
| 03/30/2023 | 223 | **ORDER granting in part and denying in part 189 Government's Motion in Limine for Jury Instruction; granting in part and denying in part 190 Government's Motion in Limine to Exclude Argument and Evidence; denying 193 Defendants' First Motion in Limine; denying 194 Defendants' Second Motion in Limine; denying 195 Defendants' Third Motion in Limine; denying 196 Defendants' Fourth Motion in Limine; denying 197 Defendants' Fifth Motion in Limine; denying 198 Defendants' First Motion in Limine; denying 199 Defendants' Second Motion in Limine; denying 200 Defendants' Third Motion in Limine; denying 201 Defendants' Fourth Motion in Limine; denying 202 Defendants' Fifth Motion in Limine; denying 203 Defendant Hoover's Sixth Motion in Limine. Signed by Judge Marcia Morales Howard on 3/30/2023. (JCM)** (Entered: 03/30/2023) |
| 03/29/2023 | 221 | **ENDORSED ORDER directing USA to respond to 220 MOTION for Bill of Particulars as to Matthew Raymond Hoover. Responses due by 4/5/2023 Signed by Magistrate Judge Monte C. Richardson on 3/29/2023. (SHS)** (Entered: 03/29/2023) |
| 03/28/2023 | 220 | MOTION for Bill of Particulars by Matthew Raymond Hoover. (Zermay, Zachary) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 03/28/2023) |
| 03/20/2023 | 218 | TRANSCRIPT of Motion Hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 02/07/2023 before Judge Marcia Morales Howard. Court Reporter: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2023. Redacted Transcript Deadline set for 4/20/2023. Release of Transcript Restriction set for 6/20/2023. (KMH) (Entered: 03/20/2023) |
| 03/14/2023 | 217 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: ARRAIGNMENT on the Fourth Superseding Indictment as to Kristopher Justinboyer Ervin (1) Counts 1ssss through 12ssss and Matthew Raymond Hoover (2) Counts 1ss through 8ss, held on 3/14/2023 Defendant(s) pled not guilty. (Digital) (SHS) Modified on 3/16/2023 to edit text (AET). (Entered: 03/15/2023) |
| 03/13/2023 | 216 | **ENDORSED ORDER granting 206 Unopposed Motion to appear telephonically. The Courtroom Deputy will separately provide counsel with the call-in information for the hearing. Signed by Magistrate Judge Monte C. Richardson on 3/13/2023. (SHS)** (Entered: 03/13/2023) |
| 03/10/2023 | 215 | RESPONSE in Opposition by Matthew Raymond Hoover re 190 MOTION in Limine to exclude argument and evidence at trial that is contrary to the law, 189 MOTION in Limine for Jury Instruction (Zermay, Zachary) (Entered: 03/10/2023) |

| | | |
|---|---|---|
| 03/10/2023 | 212 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 203 SIXTH MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 211 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 197 FIFTH MOTION in Limine , 202 FIFTH MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 210 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 201 FOURTH MOTION in Limine , 196 FOURTH MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 209 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 200 THIRD MOTION in Limine , 195 THIRD MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 208 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 199 SECOND MOTION in Limine , 194 SECOND MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 207 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 198 FIRST MOTION in Limine , 193 FIRST MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/09/2023 | 206 | UNOPPOSED MOTION to appear telephonically by Matthew Raymond Hoover. (Zermay, Zachary) Motions referred to Magistrate Judge Monte C. Richardson. Modified on 3/10/2023 to edit text (AET). (Entered: 03/09/2023) |
| 03/08/2023 | 205 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: re: 204 Fourth Superseding Indictment. Arraignment set for 3/14/2023 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 03/08/2023) |
| 03/06/2023 | 204 | FOURTH SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1ssss, 2ssss-8ssss, 9ssss, 10ssss-12ssss, Matthew Raymond Hoover (2) count(s) 1ss, 2ss-8ss. (Attachments: # 1 Restricted Unredacted Indictment) (BD) Modified on 3/16/2023 to edit text (AET). (Entered: 03/06/2023) |
| 02/27/2023 | 203 | SIXTH MOTION in Limine by Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 202 | FIFTH MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 201 | FOURTH MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 200 | THIRD MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 199 | SECOND MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 198 | FIRST MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 197 | FIFTH MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 196 | FOURTH MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Exhibit A)(King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 195 | THIRD MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 194 | SECOND MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 193 | FIRST MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/24/2023 | 192 | Proposed Jury Instructions by Matthew Raymond Hoover (Zermay, Zachary) (Entered: 02/24/2023) |
| 02/24/2023 | 191 | **ORDER granting in part and denying in part 187 Emergency Joint Motion for Extension of Filing Deadline. Motions in Limine due no later than 1:00 p.m. on Monday, February 27, 2023. See Order for details. Signed by Judge Marcia Morales Howard on 2/24/2023. (JCM)** (Entered: 02/24/2023) |
| 02/24/2023 | 190 | MOTION in Limine to exclude argument and evidence at trial that is contrary to the law by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) Modified on 2/27/2023 to edit text (AET). (Entered: 02/24/2023) |

| 02/24/2023 | 189 | MOTION in Limine for Jury Instruction by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) Modified on 2/27/2023 to edit text (AET). (Entered: 02/24/2023) |
| 02/23/2023 | 188 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 187 Emergency MOTION to Extend Time to Filing Deadline -- *Joint* (Mesrobian, David) (Entered: 02/23/2023) |
| 02/23/2023 | 187 | JOINT EMERGENCY MOTION to Extend Time to Filing Deadline by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/24/2023 to edit text (AET). (Entered: 02/23/2023) |
| 02/07/2023 | 186 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 2/7/2023; terminating as moot 118 Government's Motion In Limine to Exclude Trial Testimony of Defendants' Proposed Expert Witness; denying without prejudice 142 Defendants' Motion In Limine to Exclude Trial Testimony of Government's Purported Expert Witnesses; denying as moot, in part, and withdrawing, in part, 170 Government's Motion In Limine to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses. Proposed limiting instruction(s) due February 24, 2023. Court Reporter: Katharine Healey (JW) (Entered: 02/08/2023) |
| 02/07/2023 | 185 | NOTICE *of supplemental authority* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Attachments: # 1 Attachment 1)(Mesrobian, David) (Entered: 02/07/2023) |
| 02/07/2023 | 184 | NOTICE *of Filing* by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Attachments: # 1 Exhibit A)(King, Alex) (Entered: 02/07/2023) |
| 02/06/2023 | 183 | NOTICE *OF PROFFER* by Matthew Raymond Hoover (Zermay, Zachary) (Entered: 02/06/2023) |
| 02/06/2023 | 181 | NOTICE *of Filing Written Proffer of Opinions of Cody Toy in Anticipation of Trial* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 02/06/2023) |
| 02/06/2023 | 180 | NOTICE *of Filing Written Proffer of Testimony by Ernest Lintner in Anticipation of Trial* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 02/06/2023) |
| 02/03/2023 | 179 | NOTICE of Withdrawal; re 167 Notice of Disclosure of Summary of Expert Testimony by Matthew Raymond Hoover. (Zermay, Zachary) (Modified on 2/6/2023, to edit text) (BGR). (Entered: 02/03/2023) |
| 02/01/2023 | **177** | **ORDER directing the parties to file a written proffer of each proposed expert witness's opinions by 12:00 noon on Monday, February 6, 2023. Signed by Judge Marcia Morales Howard on 2/1/2023. (JCM)** (Entered: 02/01/2023) |
| 01/31/2023 | 176 | NOTICE to the Court by Matthew Raymond Hoover (Zermay, Zachary) Modified on 2/1/2023 to edit text (AET). (Entered: 01/31/2023) |
| 01/24/2023 | 175 | Minute Entry for Virtual proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Matthew Raymond Hoover held on 1/24/2023. On or before January 31, 2023, the parties shall either file the proposed stipulation of facts or a notice advising the Court of how they wish to proceed. Court Reporter: Katharine Healey (JW) (Entered: 01/25/2023) |
| 01/20/2023 | 174 | **ENDORSED ORDER granting** 173 Joint Motion for Status Conference as to Matthew Raymond Hoover **(2). A status conference is set for Tuesday, January 24, 2023, at 3:00 p.m. The hearing will be held via Zoom. The Courtroom Deputy Clerk will separately send participants the Zoom link. Signed by Judge Marcia Morales Howard on 1/20/2023. (JW)** (Entered: 01/20/2023) |
| 01/20/2023 | 173 | JOINT MOTION for Status Conference by USA as to Matthew Raymond Hoover. (Taylor, Laura) Modified on 1/23/2023 (AET). (Entered: 01/20/2023) |
| 01/18/2023 | 172 | RESPONSE in Opposition by Matthew Raymond Hoover re 170 MOTION in Limine *to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses* (Zermay, Zachary) (Entered: 01/18/2023) |
| 01/04/2023 | 170 | MOTION in Limine *to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 01/04/2023) |
| 01/04/2023 | | Set/Reset Deadlines as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: Exhibit List due by 4/10/2023. (AET) (Entered: 01/04/2023) |
| 01/03/2023 | 169 | **ORDER SCHEDULING TRIAL. As previously directed, Daubert motions are due January 4, 2023, and responses are due January 18, 2023. A Daubert hearing is set for February 7, 2023, at 10:00 a.m. in Courtroom 10B. Motions in limine shall be filed by February 24, 2023, and responses are due March 10, 2023. Jury selection and trial shall commence on April 10, 2023, at 9:00 a.m. Trial documents due no later than April 3, 2023. Signed by Judge Marcia Morales Howard on 1/3/2023. (Attachments: # 1 Instructions Regarding Jury Selection, # 2 Instructions Regarding Premarking Exhibits)(JW)** (Entered: 01/03/2023) |
| 12/22/2022 | 168 | **ORDER on Conflict of Interest re: Counsel for Matthew Raymond Hoover. Signed by Magistrate Judge Monte C. Richardson on 12/21/2022. (MDH)** (Entered: 12/22/2022) |

| 12/16/2022 | 167 | NOTICE of Disclosure of Summary of Expert Testimony by Matthew Raymond Hoover (Zermay, Zachary) Modified on 12/19/2022 to edit text (AET). (Entered: 12/16/2022) |
|---|---|---|
| 12/13/2022 | 166 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: Hearing to question Mrs. Erica Ibe Hoover regarding informed consent and waiver of right to attorney/client privilege with defense counsel as to Matthew Raymond Hoover held on 12/13/2022. Court Reporter: Katharine Healey (Digital) (SHS) (Entered: 12/13/2022) |
| 11/29/2022 | 164 | NOTICE OF HEARING as to Matthew Raymond Hoover: Hearing regarding informed consent and waiver of right to attorney/client privilege as to Mrs. Erica Ibe Hoover set for 12/13/2022 at 02:00 PM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. Defendant, Mrs. Hoover and defense counsel will appear via Zoom. The Courtroom Deputy will email Zoom information to parties. (SHS) (Entered: 11/29/2022) |
| 11/29/2022 | 163 | **ORAL ORDER granting 162 Motion to Continue as to Matthew Raymond Hoover (2). Signed by Magistrate Judge Monte C. Richardson on 11/29/2022. (SHS)** (Entered: 11/29/2022) |
| 11/29/2022 | 162 | ORAL MOTION to Continue Hearing as to Erica Ibe Hoover by Jeremy Lasnetksi. (SHS) (Entered: 11/29/2022) |
| 11/29/2022 | 161 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: Hearing to question Mrs. Erica Ibe Hoover regarding informed consent and waiver of right to attorney/client privilege with defense counsel held on 11/29/2022 as to Matthew Raymond Hoover. (Shelli Kozachenko/Digital) (SHS) (Entered: 11/29/2022) |
| 11/21/2022 | 160 | **ORDER appointing Jeremy Lasnetski, Esq. as to Erica Ibe Hoover. Signed by Magistrate Judge Monte C. Richardson on 11/21/2022. (SHS)** (Entered: 11/21/2022) |
| 11/18/2022 | 157 | NOTICE OF HEARING as to Matthew Raymond Hoover: Hearing to question Mrs. Erica Ibe Hoover regarding informed consent and waiver of right to attorney/client privilege with defense counsel set for 11/29/2022 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 11/18/2022) |
| 11/17/2022 | 159 | Minute Entry for Telephonic proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 11/17/2022; terminating 136 Government's Motion in Limine; granting 158 Oral Motion to Continue as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover (2). A Daubert hearing will be held on February 7, 2023. The time will be set at a later date. Jury Trial set for 4/10/2023 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. See Minutes for deadlines. The Court emphasized its expectation that the deadlines would be met and that the trial date is firm and will not change. Order Scheduling Trial to enter. Court Reporter: Katharine Healey (JW) (Entered: 11/21/2022) |
| 11/17/2022 | 158 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (JW) (Entered: 11/21/2022) |
| 11/17/2022 | 156 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: Garcia hearing held on 11/17/2022 as to Matthew Raymond Hoover. (Digital) (SHS) (Entered: 11/18/2022) |
| 11/16/2022 | 155 | RESPONSE in Opposition by Matthew Raymond Hoover re 137 MOTION for Hearing (Zermay, Zachary) Modified on 11/17/2022 to redact and replace PDF due to personal identifiers (AET). (Entered: 11/16/2022) |
| 11/10/2022 | 154 | **ENDORSED ORDER granting 152 Joint Emergency Motion for Extension of Time of Filing Deadline and Request for Status Conference. Motions in limine must be filed on or before November 18, 2022. A telephonic status conference is set for Thursday, November 17, 2022, at 1:00 p.m. The Courtroom Deputy Clerk will separately send participants the call-in information for the hearing. Absent a continuance of the trial, no further extensions of time will be granted. Signed by Judge Marcia Morales Howard on 11/10/2022. (JW)** (Entered: 11/10/2022) |
| 11/10/2022 | 153 | RESPONSE to Motion re 152 Joint MOTION to Extend Time to Filing Deadline and Request for Status Conference by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 11/10/2022) |
| 11/10/2022 | 152 | Joint MOTION to Extend Time to Filing Deadline and Request for Status Conference by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) (Entered: 11/10/2022) |
| 11/08/2022 | 151 | NOTICE OF HEARING as to Matthew Raymond Hoover: Garcia Hearing set for 11/17/2022 at 02:00 PM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 11/08/2022) |
| 11/08/2022 | 150 | **ENDORSED ORDER granting 137 Motion for Hearing as to Matthew Raymond Hoover (2). Signed by Magistrate Judge Monte C. Richardson on 11/8/2022. (SHS)** (Entered: 11/08/2022) |

| 11/07/2022 | 149 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 142 MOTION in Limine *to Exclude Trial Testimony of Government's Purported Expert Witnesses* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Taylor, Laura) (Entered: 11/07/2022) |
|---|---|---|
| 11/01/2022 | 148 | **ENDORSED ORDER granting 144 Unopposed Motion for Zachary Z. Zermany; Matthew Larosiere and Defendant Matthew Raymond Hoover to appear at the Garcia hearing telephonically as to Matthew Raymond Hoover. (2) Signed by Magistrate Judge Monte C. Richardson on 11/1/2022. (MDH)** (Entered: 11/01/2022) |
| 10/31/2022 | 147 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT (02/22/2022 Digitally Recorded Initial Appearance and Arraignment of Matthew Raymond Hoover). The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Matthew Raymond Hoover. Court Reporter: Katharine Healey (KMH) (Entered: 10/31/2022) |
| 10/31/2022 | 146 | TRANSCRIPT of Digitally Recorded Initial Appearance and Arraignment Proceedings as to Matthew Raymond Hoover held on 02/22/2022 before Judge Monte C. Richardson. Court Reporter/Transcriber Katharine M. Healey, RMR, CRR, FPR-C, Telephone number (904) 301-6843. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 11/21/2022 Redacted Transcript Deadline set for 12/1/2022 Release of Transcript Restriction set for 1/30/2023. (KMH) (Entered: 10/31/2022) |
| 10/28/2022 | 145 | **ORDER granting 143 Motion to Continue Motion in Limine Deadline. Motions in limine due 11/10/2022. Responses due 11/28/2022. Signed by Judge Marcia Morales Howard on 10/28/2022. (JCM)** (Entered: 10/28/2022) |
| 10/28/2022 | 144 | UNOPPOSED MOTION for Zachary Z Zermay, Matthew Larosiere, and Matthew Raymond Hoover to appear telephonically at the Garcia Hearing by Matthew Raymond Hoover. (Zermay, Zachary) Motions referred to Magistrate Judge Monte C. Richardson. Modified on 10/31/2022 (AET). (Entered: 10/28/2022) |
| 10/27/2022 | 143 | Unopposed MOTION to Continue Motion in Limine Deadline by Matthew Raymond Hoover. (Zermay, Zachary) (Modified on 10/28/2022, to edit text) (BGR). (Entered: 10/27/2022) |
| 10/18/2022 | 141 | **ORDER denying 132 Motion to Dismiss as to Matthew Raymond Hoover (2); denying 133 Motion to Dismiss as to Matthew Raymond Hoover (2). Signed by Judge Marcia Morales Howard on 10/18/2022. (JW)** (Entered: 10/18/2022) |
| 10/11/2022 | 140 | **ENDORSED ORDER granting 139 Unopposed Motion to Continue Daubert Deadline. Defendants shall have up to and including October 21, 2022, to file Daubert motions. The United States shall have up to and including November 7, 2022, to file responses. Signed by Judge Marcia Morales Howard on 10/11/2022. (JW)** (Entered: 10/11/2022) |
| 10/07/2022 | 139 | Unopposed MOTION to Continue Daubert Motion Deadline by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) (Entered: 10/07/2022) |
| 10/07/2022 | 138 | RESPONSE in Opposition by USA as to Matthew Raymond Hoover re 133 Second MOTION to Dismiss *First And Second Amendment Violations & to Declare Unconstitutional The National Firearms Act Of 1934*, 132 MOTION to Dismiss (Taylor, Laura) Modified on 10/11/2022 to edit text (AET). (Entered: 10/07/2022) |
| 10/07/2022 | 137 | MOTION for Hearing by USA as to Matthew Raymond Hoover. (Mesrobian, David) (Entered: 10/07/2022) |
| 09/28/2022 | 136 | MOTION in Limine *to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 09/28/2022) |
| 09/22/2022 | 133 | Second MOTION to Dismiss for First And Second Amendment Violations & to Declare Unconstitutional The National Firearms Act Of 1934 by Matthew Raymond Hoover as to Matthew Raymond Hoover. (Zermay, Zachary) Modified text on 9/26/2022 (BD). (Entered: 09/22/2022) |
| 09/22/2022 | 132 | MOTION to Dismiss by Matthew Raymond Hoover as to Matthew Raymond Hoover. (Attachments: # 1 Request for Judicial Notice)(Zermay, Zachary) Modified text on 9/26/2022 (BD). (Entered: 09/22/2022) |
| 09/22/2022 | 131 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: ARRAIGNMENT on the Third Superseding Indictment as to Kristopher Justinboyer Ervin (1) Count 1, 1s-7s, 1ss, 1sss, 2ss-7ss, 2ssss-8sss, 8s, 8ss-14ss, 9ssss-15sss, 15ss-17ss, 16sss-18sss, and Matthew Raymond Hoover (2) Count 1, 1s, 2-7, 2s-8s, held on 9/22/2022 Defendant(s) pled not guilty. (Digital) (SHS) (Entered: 09/22/2022) |
| 09/16/2022 | 130 | NOTICE of Disclosure of Summary of Expert Testimony by Matthew Raymond Hoover as to Matthew Raymond Hoover (Zermay, Zachary) Modified on 9/19/2022 to edit text (AET). (Entered: 09/16/2022) |

| 09/16/2022 | 129 | **ENDORSED ORDER granting 128 UNOPPOSED MOTION for Zachary Z. Zermay; Matthew Larosiere and Defendant Matthew Hoover to appear telephonically as to Matthew Raymond Hoover (2). Signed by Magistrate Judge Monte C. Richardson on 9/15/2022. (SHS)** (Entered: 09/16/2022) |
|---|---|---|
| 09/14/2022 | <u>128</u> | UNOPPOSED MOTION for Zachary Z. Zermay; Matthew Larosiere and Defendant Matthew Hoover to appear telephonically by Matthew Raymond Hoover. (Zermay, Zachary) Motions referred to Magistrate Judge Monte C. Richardson. Modified on 9/15/2022 (AET). (Entered: 09/14/2022) |
| 09/13/2022 | 127 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: re: <u>120</u> Third Superseding Indictment,. Arraignment set for 9/22/2022 at 11:30 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 09/13/2022) |
| 09/07/2022 | <u>126</u> | Minute Entry for Virtual proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 9/7/2022; granting <u>119</u> Motion to Continue as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover (2); denying, without prejudice, as moot <u>95</u> Defendant Hoover's Motion to Dismiss. Hoover's renewed motion to dismiss due September 22, 2022. Response due October 7, 2022. Motion hearing set for December 9, 2022, at 10:00 a.m. Jury Trial set for 1/9/2023 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. See Minutes for additional deadlines. Court Reporter: Katharine Healey (JW) (Entered: 09/12/2022) |
| 09/02/2022 | <u>125</u> | **ORDER denying 96 Motion to Transfer Venue and 97 Motion to Sever. Signed by Judge Marcia Morales Howard on 9/2/2022. (TMF)** (Entered: 09/02/2022) |
| 08/31/2022 | 123 | NOTICE OF HEARING ON <u>119</u> Joint and Unopposed Motion to Continue Trial. Motion Hearing set for September 6, 2022, at 3:00 p.m. before Judge Marcia Morales Howard. The hearing will be held via Zoom. The Courtroom Deputy Clerk will separately send participants the Zoom link. (JW) (Entered: 08/31/2022) |
| 08/31/2022 | <u>120</u> | THIRD SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1sss, 2sss-8sss, 9sss-15sss, 16sss-18sss, Matthew Raymond Hoover (2) count(s) 1s, 2s-8s. (Attachments: # <u>1</u> Restricted Unredacted Indictment) (AET) Modified on 3/16/2023 to edit text (AET). (Entered: 08/31/2022) |
| 08/30/2022 | <u>119</u> | JOINT UNOPPOSED MOTION to Continue trial by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 9/2/2022 to edit text (AET). (Entered: 08/30/2022) |
| 08/23/2022 | <u>118</u> | MOTION in Limine by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 56 Notice of Disclosure of Summary Expert Testimony in compliance with Fed. R. Crim. P. 16(b)(1)(C) and 107 Notice Regarding Expert Disclosure. (Attachments: # <u>1</u> Exhibit A, video on disk filed separately, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C)(AET) (Entered: 08/24/2022) |
| 08/05/2022 | <u>117</u> | **ORDER denying 111 Motion for Leave to File Reply to Opposition to Motion to Sever Trial. Signed by Judge Marcia Morales Howard on 8/5/2022. (TMF)** (Entered: 08/05/2022) |
| 08/05/2022 | <u>116</u> | **ORDER denying 112 Motion for Leave to File Reply to Opposition to Motion to Transfer Venue. Signed by Judge Marcia Morales Howard on 8/5/2022. (TMF)** (Entered: 08/05/2022) |
| 08/05/2022 | <u>115</u> | **ORDER denying 110 Motion for Leave to File Reply to Opposition to Motion to Dismiss. Signed by Judge Marcia Morales Howard on 8/5/2022. (TMF)** (Entered: 08/05/2022) |
| 08/05/2022 | 114 | NOTICE OF RESCHEDULING HEARING: The Motion Hearing/Status Conference previously scheduled for October 11, 2022, at 10:00 a.m. is rescheduled as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. New hearing date and time: Motion Hearing/Status Conference set for 10/12/2022 at 2:30 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. (JW) (Entered: 08/05/2022) |
| 08/05/2022 | | Set/Reset Deadlines as to Matthew Raymond Hoover: Expert Witness List due by 8/12/2022. (AET) (Entered: 08/05/2022) |
| 08/04/2022 | <u>113</u> | NOTICE of filing supplemental authority by Matthew Raymond Hoover re: <u>95</u> MOTION to Dismiss filed by Matthew Raymond Hoover (Zermay, Zachary) Modified on 8/5/2022 to edit text and to confirm with counsel page 3 is intentionally left blank (AET). (Entered: 08/04/2022) |
| 08/04/2022 | <u>112</u> | MOTION for Leave to File Reply to <u>104</u> Response in Opposition to Change Venue/Transfer Case by Matthew Raymond Hoover. Modified on 8/5/2022 to edit text (AET). (Entered: 08/04/2022) |
| 08/04/2022 | <u>111</u> | MOTION for Leave to File Reply to <u>105</u> Response in Opposition to Sever Defendant by Matthew Raymond Hoover. (Zermay, Zachary) Modified on 8/5/2022 to edit text (AET). (Entered: 08/04/2022) |
| 08/04/2022 | <u>110</u> | MOTION for Leave to File Reply to <u>103</u> Response in Opposition by Matthew Raymond Hoover. (Zermay, Zachary) Modified on 8/5/2022 to edit text (AET). (Entered: 08/04/2022) |
| 08/04/2022 | 109 | **ENDORSED ORDER regarding 107 Defendant Hoover's Notice Regarding Expert Disclosure, which, in this instance, the Court will construe as a motion for extension of time. The motion is granted only to the** |

| | | |
|---|---|---|
| | | extent that Defendant Hoover must disclose his experts by August 12, 2022. Signed by Judge Marcia Morales Howard on 8/4/2022. (JW) (Entered: 08/04/2022) |
| 08/03/2022 | 108 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover: Motion Hearing/Status Conference set for 10/11/2022 at 10:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Defendants are required to be present. (JW) (Entered: 08/03/2022) |
| 08/02/2022 | 107 | NOTICE *REGARDING EXPERT DISCLOSURE* by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Zermay, Zachary) (Entered: 08/02/2022) |
| 08/01/2022 | 106 | NOTICE *REGARDING JURY SELECTION* by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Zermay, Zachary) (Entered: 08/01/2022) |
| 07/20/2022 | 105 | RESPONSE in Opposition by USA as to Matthew Raymond Hoover re 97 MOTION to Sever Defendant *Matthew Raymond Hoover* (Taylor, Laura) (Entered: 07/20/2022) |
| 07/20/2022 | 104 | RESPONSE in Opposition by USA as to Matthew Raymond Hoover re 96 MOTION to Change Venue / Transfer Case (Taylor, Laura) (Entered: 07/20/2022) |
| 07/20/2022 | 103 | RESPONSE in Opposition by USA as to Matthew Raymond Hoover re 95 MOTION to Dismiss *and Supplement to Motion to Dismiss & To Declare Unconstitutional the National Firearms Act of 1934 (Doc. 101)* (Taylor, Laura) (Entered: 07/20/2022) |
| 07/12/2022 | 102 | NOTICE *Regarding Expert Disclosure* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 07/12/2022) |
| 07/01/2022 | 101 | SUPPLEMENT re 95 MOTION TO DISMISS & to Declare Unconstitutional the National Firearms Act of 1934 by Matthew Raymond Hoover (Zermay, Zachary) Modified on 7/7/2022 to edit text (AET). (Entered: 07/01/2022) |
| 06/27/2022 | 100 | Minute Entry for Virtual proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 6/27/2022; granting 99 Joint Oral Motion to Continue Trial as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover(2). Jury Trial set for the November 2022 trial term, scheduled to commence on 11/1/2022 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Court Reporter: Katharine Healey (CKS) (Entered: 06/29/2022) |
| 06/27/2022 | 99 | JOINT ORAL MOTION to Continue Trial as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (CKS) (Entered: 06/28/2022) |
| 06/27/2022 | 98 | NOTICE of filing supplemental authority by Kristopher Justinboyer Ervin, Matthew Raymond Hoover re: 95 MOTION to Dismiss filed by Matthew Raymond Hoover (Zermay, Zachary) (Entered: 06/27/2022) |
| 06/21/2022 | 97 | MOTION to Sever Trial by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Request for Oral Argument)(Zermay, Zachary) (Modified on 6/22/2022, to edit text) (BGR). (Entered: 06/21/2022) |
| 06/21/2022 | 96 | MOTION to Change Venue / Transfer Case by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Request for Judicial Notice, # 2 Declaration of Zachary Z. Zermay, # 3 Request for an Evidentiary Hearing and Oral Argument)(Zermay, Zachary) (Entered: 06/21/2022) |
| 06/21/2022 | 95 | MOTION to Dismiss by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Request for Judicial Notice, # 2 Request for Oral Argument)(Zermay, Zachary) (Entered: 06/21/2022) |
| 03/25/2022 | 85 | TRANSCRIPT of Digitally recorded arraignment and detention hearing as to Kristopher Justinboyer Ervin held on 3/15/2021 before Judge Patricia D. Barksdale. Court Reporter/Transcriber Katharine M. Healey, Telephone number (904) 301-6843. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/15/2022 Redacted Transcript Deadline set for 4/25/2022 Release of Transcript Restriction set for 6/23/2022 (KMH) (Entered: 03/25/2022) |
| 03/25/2022 | 84 | NOTICE OF ATTORNEY APPEARANCE David B. Mesrobian appearing for USA. (Mesrobian, David) (Entered: 03/25/2022) |
| 03/23/2022 | 83 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: STATUS CONFERENCE as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover held on 3/23/2022; granting 82 Oral Motion to Continue Trial as to Kristopher Justinboyer Ervin (1) and Matthew Raymond Hoover (2). Special Status Conference set for 6/27/2022 at 02:00 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Jury Trial set for trial term commencing on 7/5/2022 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. See Minutes for additional deadlines. Court Reporter: Shannon Bishop (JW) (Entered: 03/23/2022) |

| 03/23/2022 | 82 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin and Matthew Raymond Hoover. (JW) (Entered: 03/23/2022) |
|---|---|---|
| 03/21/2022 | 81 | **ENDORSED ORDER granting 80 Motion to Appear Telephonically. Zachary Zermay and Matthew Larosiere are permitted to appear telephonically at the status conference set for March 23, 2022, at 1:30 p.m. The Courtroom Deputy Clerk will separately provide counsel with the call-in information for the hearing. Signed by Judge Marcia Morales Howard on 3/21/2022. (JW)** (Entered: 03/21/2022) |
| 03/21/2022 | 80 | MOTION for Zachary Z. Zermay and Matthew Larosiere *at the Status Conference of March 23, 2022* by Matthew Raymond Hoover. (Zermay, Zachary) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 03/21/2022) |
| 03/07/2022 | 79 | **ORDER granting 78 Joint Motion to Hold Motions Deadlines in Abeyance and for a Status Hearing. The parties are relieved of the obligation of complying with the motions deadlines. The hearing scheduled for March 21, 2022, at 1:30 p.m. is cancelled. A status conference as to all parties is set for March 23, 2022, at 1:30 p.m. Signed by Judge Marcia Morales Howard on 3/7/2022. (JW)** (Entered: 03/07/2022) |
| 03/04/2022 | 78 | JOINT MOTION to Hold Motions Deadlines in Abeyance and For a Status Hearing by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Modified on 3/4/2022, to edit text) (BGR). (Entered: 03/04/2022) |
| 02/22/2022 | 77 | **SCHEDULING ORDER as to Matthew Raymond Hoover Status Conference set for 4/18/2022 at 03:00 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard Jury Trial set for trial term commencing 5/2/2022 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Discovery motions due by 3/8/2022 Dispositive motions due by 3/22/2022 Signed by Magistrate Judge Monte C. Richardson on 2/22/2022. (SHS)** (Entered: 02/22/2022) |
| 02/22/2022 | 76 | NOTICE of acceptance of general discovery (FILED IN OPEN COURT) by Matthew Raymond Hoover (SHS) (Entered: 02/22/2022) |
| 02/22/2022 | 75 | ORAL NOTICE OF ATTORNEY APPEARANCE: Zachary Z. Zermay and Matthew Larosiere appearing for Matthew Raymond Hoover (SHS) (Entered: 02/22/2022) |
| 02/22/2022 | 74 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: Initial Appearance and ARRAIGNMENT as to Matthew Raymond Hoover (2) Count 1, 2-7 held on 2/22/2022 Defendant(s) pled not guilty. (Digital) (SHS) (Entered: 02/22/2022) |
| 02/22/2022 | | Arrest of Matthew Raymond Hoover on 1/27/2022 (SHS) (Entered: 02/22/2022) |
| 02/22/2022 | 73 | NOTICE OF ATTORNEY APPEARANCE: Zachary Z. Zermay appearing for Matthew Raymond Hoover (Zermay, Zachary) (Entered: 02/22/2022) |
| 02/11/2022 | | Set/Reset Deadlines/Hearings as to Matthew Raymond Hoover: Initial Appearance set for 2/22/2022 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (LRB) (Entered: 02/11/2022) |
| 02/02/2022 | 70 | NOTICE OF HEARING as to Matthew Raymond Hoover: Initial Appearance and Arraignment set for 2/22/2022 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 02/02/2022) |
| 01/31/2022 | 68 | Rule 5(c)(3) documents received from the Eastern District of Wisconsin as to Matthew Raymond Hoover which includes: Docket Sheet, Initial Appearance Minutes, Waiver of Rule 5 or 32.1 Hearings, Order of Detention, Order Setting Conditions of Release. (Attachments: # 1 Initial Appearance, # 2 Waiver of Rule 5 Hearings, # 3 Order of Temporary Detention and Order Scheduling a Detention Hearing, # 4 Detention Hearing, # 5 Order Setting Conditions of Release)(RH) (Entered: 02/01/2022) |
| 01/31/2022 | 66 | **ORDER as to Matthew Raymond Hoover: Pursuant to the Due Process Protections Act, the Court confirms the United States' obligation to produce all exculpatory evidence to the defendant pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and orders the United States to do so. Failing to do so in a timely manner may result in consequences, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, and sanctions. Signed by Judge Timothy J. Corrigan on 12/1/2020. (BGR)** (Entered: 01/31/2022) |
| 01/27/2022 | 63 | Arrest Warrant Returned Executed on 1/27/2022 as to Matthew Raymond Hoover. (BGR) (Entered: 01/27/2022) |
| 01/26/2022 | 59 | **ORDER granting 58 Motion for Arrest Warrant as to Matthew Raymond Hoover (2). Signed by Magistrate Judge Monte C. Richardson on 1/26/2022. (BGR)** (Entered: 01/27/2022) |
| 01/26/2022 | 58 | MOTION for Arrest Warrant by USA as to Matthew Raymond Hoover. (BGR) (Entered: 01/27/2022) |

| 01/26/2022 | <u>57</u> | SECOND SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1ss, 2ss-7ss, 8ss-14ss, 15ss-17ss, Matthew Raymond Hoover (2) count(s) 1, 2-7. (BGR) (Additional attachment(s) added on 1/27/2022: # <u>1</u> Restricted Unredacted Indictment) (BGR). Modified on 3/16/2023 to edit text (AET). (Entered: 01/27/2022) |